# Exhibit 13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

U.S. Airways, Inc.,

v.

Sabre Holdings Corp., Sabre Inc., and Sabre
Travel Int'l Ltd.,

Civ. A. No. 1:11-cv-02725-MGC

ECF Case

Defendant Sabre Inc.'s First Request For
Production of Documents From Plaintiff

Pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure (the
"Federal Rules") and Rules 26.2 and 26.3 of the Local Civil Rules of the United States District
Court for the Southern District of New York (the "Local Rules"), defendant Sabre Inc., by its
undersigned attorneys Cleary Gottlieb Steen & Hamilton LLP, hereby requests that plaintiff US
Airways, Inc. produce for examination, inspection and copying, in accordance with the
instructions and definitions set forth below, at the offices of Cleary Gottlieb Steen & Hamilton
LLP, 2000 Pennsylvania Avenue, NW, Washington D.C. (attn: Steven J. Kaiser) or One Liberty
Plaza, New York, New York 10006 (attn: Lev Dassin) within thirty (30) days after the date of
service, all documents described below.

## DEFINITIONS

1.      All definitions and rules of construction set forth in Local Rule 26.3 are
incorporated herein. Terms that are defined or used in the complaint and not given another
definition herein shall be interpreted as defined or used in the complaint.

2.      "ATA" means the Air Transport Association of America, Inc. and any
associated entity that is referred to as the ATA and/or as the Air Transport Association.

3.    "BCG" means Boston Consulting Group.

4.    "Communication" is used in its broadest sense and includes without limitation all transmittal of information described in Local Rule 26.3(c)(1), and any other transmittal of information, whether orally or in writing or by any other means, including conversations, discussions, letters, phone calls, facsimile transmissions, e-mails or any other correspondence, and any document memorializing or concerning any such communication.

5.    "Complaint" means US Airways' complaint in this action.

6.    "DOJ" means the United States Department of Justice.

7.    "DOT" means the United States Department of Transportation.

8.    "Document" is used in the broadest sense and includes without limitation all writings and other material described in Federal Rule 34(a) and Local Rule 26.3(c)(2), whether printed or recorded or produced or reproduced by any other mechanical or electronic process, or written or produced by hand, including electronically stored information ("ESI") as defined by Federal Rule 34, and any other writings or other matter (such as charts, photographs, film, audio, video or computer tape or other electronic media or devices) of whatever description from which information can be obtained or translated if necessary into reasonably usable form, including agreements, letters, appointment books, calendars, electronic mail, computer diskettes, CD-ROMs and other electronically-recorded or stored data (including any exchange of information between computers and all information stored in an electronic form or computer database, whether or not printed out), bookkeeping ledgers and journals, memoranda, notes, notebooks, diaries, desk pads, logs, telephone bills and telephone call records. A draft or non-identical copy (including one with notations) is a separate document.

2

9.     "ESI" means electronically stored information as that term is used in Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure and the parties' agreement as to the production of electronically stored information.

10.    "IATA" means the International Air Transport Association.

11.    "Other airlines" means any entity or person that provides commercial air transportation service other than US Airways, and the subsidiaries, employees, agents, officers, and directors of such entities or persons.

12.    "Other airlines' counsel" means in-house or outside counsel for any other airline.

13.    "Person" is used in its broadest sense and includes all natural persons, corporations, partnerships or other business associations, and all other business or legal entities, including governmental agencies and organizations.

14.    "Relating to" is used in its broadest sense and includes without limitation assessing, analyzing, containing, constituting, describing, discussing, documenting, evidencing, involving, memorializing, mentioning, reflecting, recording, relating to, referring to, stating, or having any connection with.

15.    "Sabre" means the defendants in this action.

16.    "Transaction-level documents" means form documents generated on a regular basis that reflect individual transactions between contracting parties (such as invoices) but, for the avoidance of doubt, does not include contracts, emails, letters, faxes, presentations, or memoranda.

17.    "Travelocity" means the entity or entities referred to as "Travelocity" in the complaint and Travelocity.com, LP.

3

18.    "US Airways" means US Airways Inc., its subsidiaries, employees, agents, officers, and directors.

19.    "US Airways' counsel" means legal counsel for US Airways, including in-house and outside counsel.

20.    "You" and "Your" means US Airways, Inc., its subsidiaries, employees, officers, and directors.

## INSTRUCTIONS

1.    These document requests are continuing in nature. In accordance with Rule 26(e) of the Federal Rules, You are required to supplement Your responses and produce additional documents if You obtain further or different information, and Sabre specifically reserves the right to seek supplementary responses and the additional supplementary production of documents before trial.

2.    In the event that any document responsive to these document requests is to be withheld on the basis of a claim of privilege, that document is to be identified by stating:  (i) the type of document withheld (memorandum, letter, report, e-mail, etc.); (ii) the document's author or creator; (iii) the document's addressees; (iv) the document's indicated or blind copy recipients; (v) the document's date, subject matter, type, number of pages and attachments or appendices; (vi) all persons who drafted, sent, received or were to receive any copy or version of the document or to whom any copy or version of the document was distributed, shown or explained, indicating whether each such person was legal counsel acting as such for US Airways or were otherwise affiliated with US Airways (and, if so, what that affiliation was) and, if not, what entity or person the person was affiliated; (vii) its present custodian; and (viii) the nature of the privilege asserted.

4

3.	In the event that any document responsive to these document requests requested has been lost, discarded or destroyed, that document is to be identified by stating as completely as possible: (i) the type of document (memorandum, letter, report, e-mail, etc.); (ii) the document's author or creator; (iii) the document's addressees; (iv) the document's indicated or blind copy recipients; (v) the document's date, subject matter, type, number of pages and attachments or appendices; (vi) all persons who drafted, sent, received or were to receive any copy or version of the document or to whom any copy or version of the document was distributed, shown or explained; (vii) the document's date of destruction or discard, manner of destruction or discard and reason for destruction or discard; and (vi) the persons authorizing and carrying out such destruction or discard.

4.	These document requests shall not be deemed to call for identical copies of documents. "Identical" means precisely the same in all respects; for example, a document with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

5.	Unless otherwise specified, the time period covered by these document requests is from January 1, 2006 through the present and continuing in the future throughout the pendency of this Action (the "Relevant Time Period").

6.	In producing documents in connection with these document requests, each document to be produced should include all attachments and all enclosures referred to in the documents or originally attached or enclosed with the document requested or to be produced.

7.	ESI shall be produced per the parties' agreement as to ESI.

8.	The specificity of any single request shall not limit the generality of any other request.

5

9.    If objection is made to any of these requests, the response shall state whether documents are being withheld from inspection and production on the basis of such objection, or whether inspection and production of the responsive documents will occur notwithstanding such objection.

10.    If there are no documents responsive to any particular document request, the response shall state so in writing.

11.    In addition to the rules of construction in Local Rule 26.3(d), whenever necessary to bring within the scope of these requests documents that might otherwise be construed to be outside its scope:

a.    "and" and "or" shall be construed conjunctively or disjunctively;

b.    "each," "every" and "all" shall be construed as "each, every and all";

c.    "including" means "including without limitation";

d.    the use of the singular form of any word shall include the plural and vice versa;

e.    the use of a verb in any tense shall be construed as the use of that verb in all other tenses; and

f.    the use of the feminine, masculine or neuter genders shall include all genders.

## DOCUMENT REQUESTS

1.    Documents such as organizational charts sufficient to show the individuals at US Airways responsible in whole or in part, at any point from 2006 to the present for: (a) the executive management of US Airways; (b) the marketing or sale of air transportation or related services; (c) the relationship between US Airways and travel agents; (d) the relationship between

term is defined in paragraph 43 of the complaint; (h) the allegations regarding Northwest Airlines in paragraph 51 of the complaint; (i) the allegations regarding American Airlines in paragraph 52 of the complaint; (j) the allegations regarding America West in paragraph 55 of the complaint; (k) "agreements Sabre has allegedly entered with other GDSs, other airlines, and travel agents," referred to in paragraph 60 of the complaint; and (l) Sabre's technology, including, without limitation, Sabre Red.

3.    All documents reflecting or containing any communication from US Airways (including, without limitation US Airways' counsel), with the DOJ, the DOT, any state attorney general, or any other regulatory or governmental agency regarding Sabre, the distribution of US Airways' content through a GDS, any direct connect systems, or the distribution of ancillary fare information and all documents produced to the DOJ, the DOT, any state attorney general, or any other regulatory or governmental body since January 1, 2009, relating or referring to Sabre, the distribution of US Airways' content through a GDS, any direct connect systems, or the distribution of ancillary fare information.

4.    All documents reflecting or containing any communication from US Airways (including, without limitation US Airways' counsel), relating to Sabre or any GDS with (1) any trade associations (including, without limitation, IATA and ATA); (2) Open Axis; (3) any airline (including, without limitation, other airlines' counsel), including, without limitation, American Airlines.

5.    All documents relating to US Airways' unbundling of fares for services, including ancillary services such as priority boarding, checked luggage, or seat selection (including, without limitation, US Airways' "Choice Seats" program) and including, without limitation: (a) the terms of any such program; (b) any effort by Sabre to prevent US Airways

from implementing the program in any way; (c) any effort by any party to prevent US Airways from implementing the program in any way; (d) the effect that any effort to prevent US Airways from implementing the program had on US Airways' actual implementation of the program; and (e) the revenues and/or projected revenues that US Airways derives from the program.

6.    All documents relating to any effort by any airline, including, without limitation, US Airways, to distribute ancillary fares or content, including, without limitation, to use "direct connections" with travel agents, as that term is used in paragraph 9 of the complaint.

7.    All documents relating to communications that US Airways had with third parties, including investors and investment analysts, reflecting the alleged fact that without "[s]ales by US Airways through Sabre ... US Airways will not long survive," as alleged in paragraph 23 of the complaint.

8.    All documents (excluding transaction-level documents) relating to any of the travel agents that are discussed in paragraphs 27 to 34 of the complaint.

9.    All documents (excluding transaction-level documents) relating to US Airways' relationship with any travel agent or travel agents, including, without limitation, agreements or contracts that US Airways has with any travel agent or corporation regarding the provisioning of air transportation or related services that were in force at any point from 2006 to the present, including any amendments and supplements thereto.

10.    All documents relating to the Business Travel Coalition referred to in paragraph 103 of the complaint.

11.    All documents relating to the "Full Content Commission" referred to in paragraph 103 of the complaint.

18.    All documents (including, without limitation, communications) relating to G2 Switchworks, including, without limitation, US Airways' relationship with G2 Switchworks of any kind, including without limitation, any agreement or contract with G2 Switchworks.

19.    All documents (including, without limitation, communications) relating to Kayak, including, without limitation, US Airways' relationship with Kayak of any kind, including without limitation, any agreement or contract with Kayak.

20.    All documents (including, without limitation, communications) relating to Tripadvisor, including, without limitation, US Airways' relationship with Tripadvisor of any kind, including without limitation, any agreement or contract with Tripadvisor.

21.    All documents relating to any competition between GDSs and single-carrier distribution channels and/or direct-connect products, including, without limitation, all documents relating to (1) competition, competitors, market shares, or potential for entry into the "GDS industry," as that term is used in paragraph 56 of the complaint or otherwise, or the "GDS market," as that term is used in paragraph 133 of the complaint, or the "Sabre Submarket," as that term is used in paragraph 133 of the complaint; and (2) the ability of, or efforts by any entity or person to secure the business of travel agents or corporate travel departments relating to booking air travel or related services, including, without limitation, through incentive payments or other compensation.

22.    Documents sufficient to show the share of US Airways' bookings made through non-Sabre channels by year from 2006 to the present through each such channel.

23.    Documents sufficient to show all costs of distribution of US Airways' tickets through non-Sabre channels, by channel and by year from 2006 to the present.

with other airlines (including, without limitation, other airlines' counsel), regarding BCG and all documents relating to any such communications.

      31.    All documents relating to US Airways' contacts with other airlines (including, without limitation, American Airlines), including, without limitation, all communications involving US Airways (including, without limitation, US Airways' counsel), and other airlines (including, without limitation, other airlines' counsel).

      32.    All documents that US Airways intends to use to support any of its claims or allegations in this litigation.

August 24, 2011

George S. Cary (geary@cgsh.com)
Steven J. Kaiser (skaiser@cgsh.com)
Larry C. Work-Dembowski (lwork-dembowski@cgsh.com)
Kenneth Reinker (kreinker@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone: (202) 974-1500
Facsimile: (202) 974-1999

Lev Dassin (ldassin@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-2999

Don Scott (don.scott@bartlit-beck.com)
Karma Giulianelli (karma.giulianelli@bartlit-beck.com)
Sean Grimsley (sean.grimsley@bartlit-beck.com)
Sundeep K. Addy (rob.addy@bartlit-beck.com)
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
1899 Wynkoop Street, Suite 800
Denver, CO 80202
Telephone: (303) 592-3100
Facsimile: (303) 592-3140

Chris Lind (chris.lind@bartlit-beck.com)
Andrew Polovin (Andrew.polovin@bartlit-beck.com)
Kate Swift (kate.swift@bartlit-beck.com)
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP

54 West Hubbard Street
Chicago, IL 60610
Telephone: (312) 494-4400
Facsimile: (312) 494-4440

Attorneys for Defendants Sabre Holding Corp., Sabre Inc. and
Sabre Travel International Ltd.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| US AIRWAYS, INC.,<br><br>              Plaintiff,<br><br>    -against-<br><br>SABRE HOLDINGS CORPORATION;<br>SABRE INC.; and<br>SABRE TRAVEL INTERNATIONAL<br>LIMITED,<br><br>              Defendants. | Civil Action No. 11-cv-2725<br>(MGC)<br><br><br>ECF Case |

## PLAINTIFF US AIRWAYS, INC.'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Plaintiff US Airways, Inc., ("US Airways") hereby responds and objects to Defendants Sabre Holdings Corporation, Sabre Inc. and Sabre Travel International Limited's First Request for Production of Documents ("Defendants' requests") served on US Airways on August 24, 2011 as follows:

### General Objections

US Airways makes the following General Objections to Defendants' requests, definitions and instructions. These General Objections, unless otherwise stated, are incorporated by reference in the specific responses set forth below and are neither waived nor limited by the specific response.

1.    To the extent that US Airways responds to Defendants' requests by stating that it will produce documents, US Airways does not represent that any such documents actually exist, but that it will make a good-faith, reasonable search for documents in its possession in the time

period allotted. Further, US Airways reserves the right to amend and/or supplement its objections and responses to Defendants' requests.

2.      US Airways objects to Defendants' requests and to Defendants' "Instructions" and "Definitions" to the extent that they seek to impose obligations on US Airways that exceed the requirements prescribed by the Federal Rules of Civil Procedure or the Local Rules of this Court. US Airways will provide a response to these requests that complies with its obligations under the rules.

3.      US Airways objects to Defendants' requests to the extent that they require US Airways to submit information or produce documents that are subject to any applicable privilege or immunity from discovery, including the attorney-client privilege, the work-product doctrine or other applicable doctrine, privileges or immunity (generally referred to herein as "privileged" documents). Nothing contained in these responses is intended to be, or in any way constitutes, a waiver of any such privilege or doctrine, nor is the production of any document intended to be a waiver of any such applicable privilege or doctrine. To the extent that any such document is inadvertently produced, such production shall not waive or signify an intent to waive these respective privileges.

4.      US Airways objects to Defendants' requests to the extent that they are overbroad, seek documents that are not relevant to the claim or defense of any party of the pending action or do not appear reasonably calculated to lead to the discovery of admissible evidence.

5.      US Airways objects to Defendants' requests to the extent that they are unduly burdensome, unreasonably cumulative or duplicative, or seek documents that are publicly available or are available from some other source that is more convenient, less burdensome or less expensive, or the burden or expense of the discovery outweighs its benefits. US Airways

objects to Defendants' requests as unduly burdensome to the extent they call for production of "any" or "all" documents.

6.    US Airways objects to Defendants' requests to the extent that they are vague and ambiguous.

7.    US Airways objects to Defendants' requests to the extent that they seek the production of documents and things that are already in the possession of the Defendants.

8.    US Airways objects to Defendants' requests to the extent they seek production of documents that are not within US Airways' possession, custody or control and therefore subject US Airways to unreasonable and undue burden and expense.

9.    US Airways objects to Defendants' requests to the extent they may be construed as requiring US Airways to characterize documents or their contents or to speculate as to what the documents may or may not show.

10.    US Airways objects to Defendants' requests to the extent they call for the production of documents or information that are the subject of confidentiality obligations to third parties that prohibit or restrict the disclosure of such documents by US Airways (generally referred to herein as "third-party confidential" documents).

11.    US Airways objects to Defendants' requests to the extent that they seek the production of documents and things that include confidential business information or other proprietary information the disclosure of which would cause irreparable competitive injury to US Airways without adequate protections for the confidentiality of the information.

12.    US Airways' objections and responses are based on information presently known to US Airways. US Airways' investigation and review are continuing. US Airways reserves the

right to supplement, modify or amend these objections and responses, and to assert additional, general and specific objections arising from matters discovered during the course of litigation.

13.    US Airways objects to Definition 8 of "Electronically Stored Information" on the grounds that it is vague, overbroad and unduly burdensome and to the extent it purports to impose obligations beyond those permitted by the Federal Rules of Civil Procedure, the Local Rules and/or any other applicable rule or court order. To the extent US Airways agrees to produce Electronically Stored Information in response to a specific request, US Airways will produce such information in a reasonably usable, mutually agreed upon form.

14.    US Airways objects to Definition 16 of "Transaction-level documents" on the grounds it is vague, ambiguous, overbroad and unduly burdensome.

15.    US Airways objects to Instruction 6 on the grounds that it attempts to impose burdens and obligations on US Airways beyond those required by Rule 26 of the Federal Rules of Civil Procedure.

16.    Nothing in these responses should be construed as waiving rights that otherwise might be available to US Airways, nor should US Airways' production of documents in response to any of the Defendants' requests be deemed an admission of relevancy, materiality or admissibility in evidence of the documents produced. US Airways makes no admission or representation of any nature, and no admission or representation may be implied by or inferred from, these objections and responses.

These General Objections and Definitions are hereby expressly incorporated into each and every individual response herein, as though set forth in full. US Airways supplies its specific responses and objections to the Requests for production below. To the extent that specific objections are set forth in response to a particular request, those specific objections are set forth

because they are believed to be particularly applicable to the specific request and are not to be

construed as a waiver or limitation of any general objection applicable to such request.

## Responses to Document Requests

**Request No. 1:** Documents such as organizational charts sufficient to show the
individuals at US Airways responsible in whole or in part, at any point from 2006 to the present
for: (a) the executive management of US Airways; (b) the marketing or sale of air transportation
or related services; (c) the relationship between US Airways and travel agents; (d) the
relationship between US Airways and Sabre; (e) the relationship between US Airways and any
GDS; (f) the relationship between US Airways and corporate travel customers; (g) the
relationship between US Airways and other airlines; (h) the relationship between US Airways
and Boston Consulting Group (BCG); (i) the relationships between US Airways and Farelogix,
Bookingbuilder, G2 Switchworks, ITA Software, ATA, and IATA; (j) any of the programs
referred to in request 5 below, including, without limitation, "Choice Seats"; (k) any efforts that
US Airways has made or is making to institute a "direct connect" program with travel agents
and/or corporate customers; (l) public relations pertaining to the distribution of air transportation
or related services; (m) external communications pertaining to the distribution of air
transportation or related services; and (n) governmental relations pertaining to the distribution of
air transportation or related services.

**Response to Request No. 1:** US Airways objects to this Request on the grounds that it is

overbroad and unduly burdensome to the extent it seeks organizational charts regarding

individuals not relevant to this matter. US Airways objects on the grounds that this Request seeks

information and documents that are neither relevant to the subject matter of this action nor

reasonably calculated to lead to the discovery of admissible evidence. US Airways objects on the

grounds that this Request is vague and ambiguous with regard to the term "related services."

Subject to and without waiving the General Objections set forth above and the specific

objections set forth herein, US Airways will produce certain non-privileged documents

responsive to this Request, if any, that are in its possession, custody or control.

**Request No. 2:** All documents (excluding transaction-level documents) relating to Sabre
or Travelocity, including, without limitation, all documents constituting or relating to: (a) US
Airways' 2006 and 2011 contracts with Sabre and any other agreement that US Airways has or
has had with Sabre, including all amendments and supplements thereto; (b) the allegations in
paragraphs 68 and 69 of the complaint relating to "Choice Seats"; (c) the allegations in
paragraphs 90 to 91 of the complaint regarding Travelocity; (d) Sabre's alleged "agreements and
coordinated conduct with other GDSs," including, without limitation, any such conduct referred

**Response to Request No. 5:** US Airways objects to this Request on the grounds that it is overbroad and unduly burdensome because it seeks "all" documents. US Airways objects on the grounds that this Request seeks information and documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. US Airways objects on the grounds that this Request is vague and ambiguous with regard to the terms "services," "unbundling," "priority boarding," "checked luggage," "seat selection" and "the program." Subject to and without waiving the General Objections set forth above and the specific objections set forth herein, US Airways will produce certain non-privileged documents responsive to this Request, if any, that are in its possession, custody or control.

**Request No. 6:** All documents relating to any effort by any airline, including, without limitation, US Airways, to distribute ancillary fares or content, including, without limitation, to use "direct connections" with travel agents, as that term is used in paragraph 9 of the complaint.

**Response to Request No. 6:** US Airways objects to this Request on the grounds that it is overbroad and unduly burdensome because it seeks "all" documents. US Airways objects on the grounds that this Request seeks information and documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the General Objections set forth above and the specific objections set forth herein, US Airways will produce certain non-privileged documents responsive to this Request, if any, that are in its possession, custody or control.

**Request No. 7:** All documents relating to communications that US Airways had with third parties, including investors and investment analysts, reflecting the alleged fact that without "[s]ales by US Airways through Sabre ... US Airways will not long survive," as alleged in paragraph 23 of the complaint.

**Response to Request No. 7:** US Airways objects to this Request on the grounds that it is overbroad and unduly burdensome because it seeks "all" documents. US Airways objects on the

**Request No. 21:** All documents relating to any competition between GDSs and single-carrier distribution channels and/or direct-connect products, including, without limitation, all documents relating to (1) competition, competitors, market shares, or potential for entry into the "GDS industry," as that term is used in paragraph 56 of the complaint or otherwise, or the "GDS market," as that term is used in paragraph 133 of the complaint, or the "Sabre Submarket," as that term is used in paragraph 133 of the complaint; and (2) the ability of, or efforts by any entity or person to secure the business of travel agents or corporate travel departments relating to booking air travel or related services, including, without limitation, through incentive payments or other compensation.

**Response to Request No. 21:** US Airways objects to this Request on the grounds that it is overbroad and unduly burdensome because it seeks "all" documents. US Airways objects on the grounds that this Request seeks information and documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. US Airways objects on the grounds that this Request is vague and ambiguous with regard to the terms "single-carrier distribution channels" and "direct-connect products." US Airways objects to this Request to the extent that it would require US Airways to submit information or produce documents "privileged" as defined in the General Objections above. Subject to and without waiving the General Objections set forth above and the specific objections set forth herein, US Airways will produce certain non-privileged documents responsive to this Request, if any, that are in its possession, custody or control.

**Request No. 22:** Documents sufficient to show the share of US Airways' bookings made through non-Sabre channels by year from 2006 to the present through each such channel.

**Response to Request No. 22:** US Airways objects on the grounds that this Request seeks information and documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. US Airways objects on the grounds that this Request is vague and ambiguous with regard to the terms "bookings" and "non-Sabre channels." Subject to and without waiving the General Objections set forth above

Dated:  September 23, 2011

Respectfully Submitted,


_s/ Joseph J. Bial_____

Charles F. Rule (admitted *Pro Hac vice*)
        rick.rule@cwt.com
Joseph J. Bial
        joseph.bial@cwt.com
Andrew J. Forman (admitted *Pro Hac Vice*)
        andrew.forman@cwt.com
Daniel J. Howley
        daniel.howley@cwt.com
Derek W. Moore (admitted *Pro Hac Vice*)
        derek.moore@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
700 6th St. NW
Washington, DC 20001
Tel:    (202) 862-2200
Fax:    (202) 862-2400


*Of Counsel*

Howard Kass (admitted *Pro Hac Vice*)
        howard.kass@usairways.com
US AIRWAYS, INC.
1401 H Street, NW
Suite 1075
Washington, DC 20005

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

US Airways, Inc.

       Plaintiff,

   v.

Sabre, Inc.
Sabre Holdings Corp.
Sabre Travel Int'l Ltd.

       Defendants.

1:11-cv-02725-MGC-MHD

**Defendant Sabre's Second Requests for Production of Documents
From Plaintiff US Airways**

Pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rules 26.2 and 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York (the "Local Rules"), defendant Sabre, Inc., by its undersigned attorneys Cleary Gottlieb Steen & Hamilton LLP, hereby requests that plaintiff US Airways, Inc., produce for examination, inspection and copying, in accordance with the instructions and definitions set forth below and the parties' practices in this case as to prior production, at the offices of Cleary Gottlieb Steen & Hamilton LLP, 2000 Pennsylvania Avenue, NW, Washington D.C. (attn: Steven J. Kaiser) or One Liberty Plaza, New York, New York 10006 (attn: Lev Dassin) within thirty (30) days after the date of service, all documents described below.

## DEFINITIONS

1.    All definitions and rules of construction set forth in Local Rule 26.3 are incorporated herein. Terms that are defined or used in the complaint and not given another definition herein shall be interpreted as defined or used in the complaint.

2.    "Airline Content" means information relating to services provided by an airline in connection with air travel, including, without limitation, information relating to schedule, fare, checked and carry-on baggage, assigned seats, and preferred boarding.

3.    "American Airlines" means American Airlines, Inc., and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

4.    "BookingBuilder" means BookingBuilder Technologies, and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors

2

and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

5.    "Communication" is used in its broadest sense and includes without limitation all transmittal of information described in Local Rule 26.3(c)(1), and any other transmittal of information, whether orally or in writing or by any other means, including conversations, discussions, letters, phone calls, facsimile transmissions, e-mails or any other correspondence, and any document memorializing or concerning any such communication.

6.    "Complaint" means US Airways' Amended Complaint in this action, filed on or about September 22, 2011.

7.    "Concur" means Concur Technologies, Inc., and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

8.    "Distribution Strategy Group" means the Star Alliance's Distribution Strategy Group referred to in US-017-000250545, and any successor or predecessor groups, entities, or committees.

9.    "Distribution Task Force" means the Star Alliance's Distribution Task Force referred to in US-017-000250545, and any successor or predecessor groups, entities, or committees.

10.    "Document" is used in the broadest sense and includes without limitation all writings and other material described in Federal Rule 34(a) and Local Rule 26.3(c)(2), whether printed or recorded or produced or reproduced by any other mechanical or electronic

process, or written or produced by hand, including electronically stored information ("ESI") as defined by Federal Rule 34, and any other writings or other matter (such as charts, photographs, film, audio, video or computer tape or other electronic media or devices) of whatever description from which information can be obtained or translated if necessary into reasonably usable form, including agreements, letters, appointment books, calendars, electronic mail, computer diskettes, CD-ROMs and other electronically-recorded or stored data (including any exchange of information between computers and all information stored in an electronic form or computer database, whether or not printed out), bookkeeping ledgers and journals, memoranda, notes, notebooks, diaries, desk pads, logs, telephone bills and telephone call records. A draft or non-identical copy (including one with notations) is a separate document.

11.    "ESI" means electronically stored information as that term is used in Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure and the parties' agreement as to the production of electronically stored information.

12.    "Farelogix" means Farelogix, Inc., and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

13.    "GDS Task Force" means the Star Alliance GDS Task Force referred to in US-017-000250545, and any successor or predecessor groups, entities, or committees.

14.    "IATA" means the International Air Transport Association and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys,

4

representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

15.    "New Distribution Capability" or "NDC" means the air distribution standard approved by the IATA Passenger Services Conference on October 18, 2012, through IATA Resolution 787, available at http://www.iata.org/whatwedo/stb/Documents/resolution-787.pdf.

16.    "Other airlines" means any entity or person that provides commercial air transportation service other than US Airways, and each entity's or person's divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

17.    "PASS Consulting" means PASS Consulting Corporation, and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

18.    "Rearden" means Rearden Commerce and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

19.    "Relating to" is used in its broadest sense and includes, without limitation, assessing, analyzing, containing, constituting, describing, discussing, documenting, evidencing,

involving, memorializing, mentioning, reflecting, recording, relating to, referring to, stating, or having any connection with.

    20. "Sabre" means the defendants in this action.

    21. "Star Alliance" means the "global airline network," in which, among others, US Airways, United Airlines, Air Canada, and Lufthansa participate, and which is described at http://www.staralliance.com/en/about/.

    22. "US Airways" means US Airways, Inc., and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

    23. "Wholesale Model" means the distribution cost payment model reflected by, for example, the "Wholesale terms" contained in US-00163433.

    24. "You" and "Your" means US Airways.

**INSTRUCTIONS**

    1. In the event that any document responsive to these document requests is to be withheld on the basis of a claim of privilege, that document is to be identified by stating:  (i) the type of document withheld (memorandum, letter, report, e-mail, etc.); (ii) the document's author or creator; (iii) the document's addressees; (iv) the document's indicated or blind copy recipients; (v) the document's date, subject matter, type, number of pages and attachments or appendices; (vi) all persons who drafted, sent, received or were to receive any copy or version of the document or to whom any copy or version of the document was distributed, shown or explained, indicating whether each such person was legal counsel acting as such for US Airways or were otherwise affiliated with US Airways (and, if so, what that affiliation was) and, if not,

6

with what entity or person the person was affiliated; (vii) its present custodian; and (viii) the nature of the privilege asserted.

2.      In the event that any document responsive to these document requests has been lost, discarded or destroyed, that document is to be identified by stating as completely as possible:  (i) the type of document (memorandum, letter, report, e-mail, etc.); (ii) the document's author or creator; (iii) the document's addressees; (iv) the document's  indicated or blind copy recipients; (v) the document's date, subject matter, number of pages and attachments or appendices; (vi) all persons who drafted, sent, received or were to receive any copy or version of the document or to whom any copy or version of the document was distributed, shown or explained; (vii) the document's date of destruction or discard, manner of destruction or discard and reason for destruction or discard; and (vi) the persons authorizing and carrying out such destruction or discard.

3.      Unless otherwise specified, the time period covered by these document requests is from January 1, 2005, through the present.  Sabre specifically reserves the right to seek supplementary responses and the additional supplementary production of documents before trial.

4.      In producing documents in connection with these document requests, each document to be produced should include all attachments and all enclosures referred to in the documents or originally attached or enclosed with the document requested or to be produced.

5.      ESI shall be produced per the parties' agreement as to ESI.

6.      The specificity of any single request shall not limit the generality of any other request.

7.    If objection is made to any of these requests, the response shall state whether documents are being withheld from inspection and production on the basis of such objection, or whether inspection and production of the responsive documents will occur notwithstanding such objection.

8.    If there are no documents responsive to any particular document request, the response shall state so in writing.

9.    In addition to the rules of construction in Local Rule 26.3(d), whenever necessary to bring within the scope of these requests documents that might otherwise be construed to be outside its scope:

a.    "and" and "or" shall be construed conjunctively or disjunctively;

b.    "each," "every" and "all" shall be construed as "each, every and all";

c.    "including" means "including without limitation";

d.    the use of the singular form of any word shall include the plural and vice versa;

e.    the use of a verb in any tense shall be construed as the use of that verb in all other tenses; and

f.    the use of the feminine, masculine or neuter genders shall include all genders.

## DOCUMENT REQUESTS

33.    All documents relating to the IATA New Distribution Capability or any other distribution standards considered at any time by IATA or any other entity, whether adopted or not, including, without limitation, all communications between US Airways and Other airlines

or IATA discussing, referencing, or relating to the IATA New Distribution Capability (or other distribution standard).

34. All documents relating to any discussions or communications involving the Star Alliance or one or more Star Alliance Airlines relating to the distribution of Airline Content, including, without limitation, any discussions relating to GDSs or other distribution methods. Without limiting the foregoing, this request includes all documents relating to or involving the Distribution Strategy Group, the GDS Task Force, and/or the Distribution Task Force, as well as any similar group or committee of the Star Alliance.

35. All documents relating to any effort or contemplation by any airline, including, without limitation, US Airways, to use "direct connections" (as that term is used in Paragraph 9 of the Complaint), with one or more travel agents, GDSs, or other parties, including, but not limited to, Farelogix.

36. All documents relating to third parties that develop computer software or applications that interface or interact in any way with Sabre's systems or data (including, without limitation, Rearden, Concur, Pass Consulting, and BookingBuilder) (collectively "developers"), including, without limitation: (a) efforts to create or market a product relating to airline ticketing or the provisioning of air transportation or related services; (b) US Airways' relationship (if any) with any such developers, including without limitation, any agreement or contract with any such developers; and (c) all communications with any such developers.

37. All documents relating to any third parties that develop computer software or applications that interface or interact in any way with any of US Airways' systems or data, including, without limitation, (a) any US Airways policies governing the terms on which those third parties may interface or interact with US Airways' computer systems, (b) any documents

9

regarding US Airways' relationship (if any) with any such third parties, including, without limitation, any agreements or contracts with any such third parties, and (c) all communications with any such third parties.

38.     All documents relating to the distribution of US Airways' content through the Wholesale Model or any other arrangement whereby US Airways does not pay a booking or other fee to the GDS for bookings made on US Airways using a GDS, including, but not limited to, where any such fee (or other GDS charge, such as a technology fee) is the responsibility of the travel agent or other third party. This request includes documents sufficient to determine booking fees made to travel agents or corporations through such model.

39.     All documents relating to any potential acquisition of American Airlines (or any part thereof) by US Airways or of US Airways (or any part thereof) by American Airlines, or any potential merger or combination of the two.

DATED: December 18, 2012

/s/ Steven J. Kaiser
George S. Cary
Steven J. Kaiser
Larry C. Work-Dembowski
Kenneth Reinker
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lwork-dembowski@cgsh.com
kreinker@cgsh.com

Lev Dassin
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

US AIRWAYS, INC.,

              Plaintiff,

        -against-

SABRE HOLDINGS CORPORATION;
SABRE INC.; and
SABRE TRAVEL INTERNATIONAL
LIMITED,

              Defendants.

Civ. A. No. 1:11-cv-02725-MGC

ECF CASE

## US AIRWAYS, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT SABRE'S SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff US Airways, Inc. ("US Airways") hereby submits its responses and objections ("Responses and Objections") to the Second Requests for Production of Documents served by defendant Sabre Inc. on December 18, 2012 (the "Second Requests").

## GENERAL OBJECTIONS

The following General Objections are incorporated by reference into US Airways' responses to each individual request as if set forth fully therein.

1.      US Airways objects to the Second Requests, and to each and every definition, instruction, and request therein, to the extent they purport to impose on US Airways any obligations differing from, inconsistent with, or in addition to those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York, and any existing Court Order in this case. In responding to the Second Requests, US Airways will comply with those rules, orders, and applicable laws.

2.    To the extent US Airways responds to or produces documents requested in any individual request, it does not concede that the documents requested thereby are relevant, material or admissible. US Airways expressly reserves the right to object to further discovery into any subject matter covered by the Second Requests.

3.    US Airways has not yet completed its discovery and factual investigation relating to this action or trial preparation. US Airways' responses to the Requests are based on its best present knowledge, information, and belief. US Airways reserves the right to rely on any facts, documents, or other information that may develop or come to its attention at a later date.

4.    US Airways objects to the Second Requests to the extent they seek documents protected from disclosure by the attorney-client privilege, attorney work product immunity, joint defense privilege, common interest doctrine, or any other applicable privilege, immunity, rule of privacy or confidentiality, protection, or restriction that protects such documents from involuntary disclosure or production. US Airways intends to and does assert such privilege(s) with respect to all such documents, and such documents will not be produced. Any inadvertent production of such documents is not intended to constitute, and shall not constitute, a waiver in whole or in part of such privilege, doctrine, or objections.

5.    US Airways objects to the Second Requests to the extent they purport to require US Airways to search for and provide information that is in the possession of persons not believed to have had significant involvement in the transactions or events at issue because such requests seek to impose upon US Airways unreasonable burden and costs.

6.    US Airways objects to the Second Requests, and the Definitions and Instructions thereto, to the extent they purport to require the production of documents that are not in

US Airways' possession, custody or control. In responding to the Second Requests, US Airways will produce only documents reasonably known to it or within its possession, custody or control.

7.     Subject to the other general and specific objections set forth herein, US Airways will use reasonable diligence to obtain responsive documents in its possession, custody or control based on an examination of those files reasonably expected to yield responsive documents. Documents or information provided by US Airways in response to individual requests should not be construed as a representation that each and every document in its possession, custody or control has been examined. It is not practicable to review every document in US Airways' possession to determine if it may be responsive to one of Sabre's numerous individual requests.

8.     US Airways objects to the Requests to the extent they purport to require US Airways to search for and produce electronically stored information from sources that are not reasonably accessible because of undue burden or cost, as set forth in Federal Rule of Civil Procedure 26(b)(2)(B).

9.     US Airways reserves the right to modify, amend, or supplement its objections and responses to the Second Requests.

## OBJECTIONS TO DEFINITIONS

1.     US Airways objects to the definition of "Airline Content" as vague, ambiguous and overbroad. US Airways has no way of knowing all services offered by all airlines in connection with air travel. In responding to the Second Requests, US Airways will construe "Airline Content" to refer to services it knows are offered by airlines to passengers in connection with air travel.

2.     US Airways objects to the definition of "American Airlines" as vague, ambiguous and overbroad. US Airways has no way of knowing all of American Airlines, Inc.'s "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns,"

or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing." Moreover, the term "related entities" is vague and ambiguous because the Second Requests do not specify the type of relationship that would bring an entity within the definition's ambit. In responding to the Second Requests, US Airways will construe "American Airlines" to mean: (a) American Airlines, Inc.; and (b) its affiliates, employees and agents known to US Airways as such.

3.    US Airways objects to the definition of "BookingBuilder" as vague, ambiguous and overbroad. US Airways has no way of knowing all of BookingBuilder Technologies' "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns," or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing." Moreover, the term "related entities" is vague and ambiguous because the Second Requests do not specify the type of relationship that would bring an entity within the definition's ambit. In responding to the Second Requests, US Airways will construe "BookingBuilder" to mean: (a) BookingBuilder Technologies; and (b) its affiliates, employees and agents known to US Airways as such.

4.    US Airways objects to the definition of "Concur" as vague, ambiguous and overbroad. US Airways has no way of knowing all of Concur Technologies, Inc.'s "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns," or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing." Moreover, the term "related entities" is vague and ambiguous because the Second Requests do not specify the type of relationship that would bring an entity within the definition's ambit. In responding to the

Second Requests, US Airways will construe "Concur" to mean: (a) Concur Technologies, Inc.; and (b) its affiliates, employees and agents known to US Airways as such.

5.      US Airways objects to the definition of "Distribution Strategy Group" as vague, ambiguous and overbroad.  US Airways has no way of knowing all of the Distribution Strategy Group's "successor or predecessor groups, entities, or committees."  In responding to the Second Requests, US Airways will construe "Distribution Strategy Group" to mean the Distribution Strategy Group.

6.      US Airways objects to the definition of "Distribution Task Force" as vague, ambiguous and overbroad.  US Airways has no way of knowing all of the Distribution Task Force's "successor or predecessor groups, entities, or committees."  In responding to the Second Requests, US Airways will construe "Distribution Task Force" to mean the Distribution Task Force.

7.      US Airways objects to the definition of "Farelogix" as vague, ambiguous and overbroad.  US Airways has no way of knowing all of Farelogix, Inc.'s "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns," or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing."  Moreover, the term "related entities" is vague and ambiguous because the Second Requests do not specify the type of relationship that would bring an entity within the definition's ambit.  In responding to the Second Requests, US Airways will construe "Farelogix" to mean: (a) Farelogix, Inc.; and (b) its affiliates, employees and agents known to US Airways as such.

8.      US Airways objects to the definition of "GDS Task Force" as vague, ambiguous and overbroad.  US Airways has no way of knowing all of the GDS Task Force's "successor or

predecessor groups, entities, or committees." In responding to the Second Requests, US Airways will construe "GDS Task Force" to mean the GDS Task Force.

9.      US Airways objects to the definition of "IATA" as vague, ambiguous and overbroad. US Airways has no way of knowing all of the International Air Transport Association's "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns," or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing." Moreover, the term "related entities" is vague and ambiguous because the Second Requests do not specify the type of relationship that would bring an entity within the definition's ambit. In responding to the Second Requests, US Airways will construe "IATA" to mean: (a) the International Air Transport Association; and (b) its affiliates, employees and agents known to US Airways as such.

10.     US Airways objects to the definition of "Other airlines" as vague, ambiguous and overbroad. US Airways has no way of knowing each and every "entity or person that provides commercial air transportation service." Moreover, US Airways has no way of knowing all of each such entity or person's "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns," or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing." Moreover, the term "related entities" is vague and ambiguous because the Second Requests do not specify the type of relationship that would bring an entity within the definition's ambit. In responding to the Second Requests, US Airways will construe "Other airlines" to mean: (a) entities known by US Airways to offer commercial passenger air

transportation service; and (b) such entities' affiliates, employees and agents known to US Airways as such.

     11.    US Airways objects to the definition of "PASS Consulting" as vague, ambiguous and overbroad. US Airways has no way of knowing all of PASS Consulting Corporation's "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns," or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing." Moreover, the term "related entities" is vague and ambiguous because the Second Requests do not specify the type of relationship that would bring an entity within the definition's ambit. In responding to the Second Requests, US Airways will construe "PASS Consulting" to mean: (a) PASS Consulting Corporation; and (b) its affiliates, employees and agents known to US Airways as such.

     12.    US Airways objects to the definition of "Rearden" as vague, ambiguous and overbroad. US Airways has no way of knowing all of Rearden Commerce's "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns," or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing." Moreover, the term "related entities" is vague and ambiguous because the Second Requests do not specify the type of relationship that would bring an entity within the definition's ambit. In responding to the Second Requests, US Airways will construe "Rearden" to mean: (a) Rearden Commerce; and (b) its affiliates, employees and agents known to US Airways as such.

     13.    US Airways objects to the definition of "US Airways" as vague, ambiguous and overbroad. US Airways has no way of knowing the identity of all "persons ... purporting to act

on behalf of" US Airways' "divisions, affiliates, controlled entities, joint ventures, related

entities, predecessors, successors or assigns," or its "present and former employees, officers,

directors, agents, attorneys, representatives and any other persons acting ... on behalf of any of

the foregoing." Moreover, the term "related entities" is vague and ambiguous because the

Second Requests do not specify the type of relationship that would bring an entity within the

definition's ambit. In responding to the Second Requests, US Airways will construe

"US Airways" to mean: (a) US Airways, Inc.; and (b) its affiliates, employees and agents known

to US Airways as such.

     14.     US Airways objects to the definition of "Wholesale Model" as vague and

ambiguous. The definition is vague and ambiguous because Sabre does not explain the features

of the "Wholesale Model." The definition is also vague and ambiguous because Sabre refers to

the "distribution cost payment model reflected by, for example, the "Wholesale terms" contained

in US-00163433," but does not identify the characteristics of the proposed transaction that bring

it within the scope of Sabre's definition. Moreover, the reference to the "Wholesale terms"

contained in US-00163433 does not resolve the vagueness and ambiguity because that document

refers to a proposed agreement between US Airways and Expedia, Inc.

**OBJECTIONS TO INSTRUCTIONS**

     1.     US Airways objects to Instruction No. 1 on the grounds that it is unduly

burdensome and purports to impose on US Airways obligations differing from, inconsistent with,

and in addition to, those imposed by the Federal Rules of Civil Procedure. In responding to the

Second Requests, US Airways will comply with the Federal Rules.

     2.     US Airways objects to Instruction No. 2 on the grounds that it is unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

3.      US Airways objects to Instruction No. 3 on the grounds that the time period for Sabre's Second Requests is unduly burdensome and not reasonably calculated to lead to the discovery of non-cumulative, relevant, admissible evidence. The process of collecting and reviewing many additional months of documents from its custodians at this stage of the litigation—documents of marginal (at best) relevance, likely to be cumulative of documents already produced, and that Sabre could have requested with its initial requests, in which case the process of collecting and reviewing them could have been done more efficiently—would impose a significant and unnecessary burden on US Airways. US Airways will consider in good faith narrowly targeted requests for additional documents, but will not undertake full document collections from its custodians' files.

4.      US Airways objects to Instruction No. 8 on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In responding to the Second Requests, US Airways will conduct a reasonable search for responsive documents in files (a) reasonably believed to be likely to include responsive materials, and (b) maintained by or on behalf of persons who are reasonably believed to have had significant involvement in the facts, events, or transactions at issue in this litigation. US Airways will not provide a written statement that "no documents responsive to any particular document request" exist.

## OBJECTIONS TO SPECIFIC REQUESTS

Each of the General Objections, Objections to Definitions and Objections to Instructions set forth above is incorporated in each of the responses below.

## REQUEST FOR PRODUCTION NO. 33:

All documents relating to the IATA New Distribution Capability or any other distribution standards considered at any time by IATA or any other entity, whether adopted or not, including, without limitation, all communications between US Airways and Other airlines or IATA

discussing, referencing, or relating to the IATA New Distribution Capability (or other distribution standard).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

US Airways objects that the request is vague, ambiguous, overbroad, unduly burdensome and seeks information neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. US Airways also objects that the Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege and/or immunity from discovery. The request is vague and ambiguous because the term "distribution standards" is undefined. It is also unduly burdensome because, read broadly, "distribution standards" encompasses any standard used by any entity in connection with the distribution of any good or service. Moreover, US Airways has no way of knowing all "distribution standards" considered by the IATA or other entities. US Airways further objects that this Request imposes an undue burden because it is duplicative of Requests Nos. 4, 6, 29 and 31, which seek "[a]ll documents" on the following topics:

- "communications from US Airways ... relating to Sabre or any GDS with (1) any trade associations (including, without limitation, IATA and ATA); (2) Open Axis; (3) any airline" (Request No. 4);

- "any effort by an airline ... to distribute ancillary fares or content" (Request No. 6);

- "any airlines' [sic] efforts to deal collectively with one or more GDSs, including ... through BCG" (Request No. 29); and

- "US Airways' contacts with other airlines" (Request No. 31).

US Airways has already satisfied these Requests. US Airways further objects that this request encompasses "[a]ll documents" even if they have nothing to do with the subject matter of this litigation.

- "any airlines' [sic] efforts to deal collectively with one or more GDSs, including … through BCG" (Request No. 29); and

- "US Airways' contacts with other airlines" (Request No. 31).

US Airways has already complied with these Requests.

## REQUEST FOR PRODUCTION NO. 35:

All documents relating to any effort or contemplation by any airline, including, without limitation, US Airways, to use "direct connections" (as that term is used in Paragraph 9 of the Complaint), with one or more travel agents, GDSs, or other parties, including, but not limited to, Farelogix.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

US Airways objects that the request is vague, ambiguous, overbroad, unduly burdensome and seeks information neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.  US Airways also objects that the Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege and/or immunity from discovery.  The request is vague and ambiguous insofar as it refers to "any effort or contemplation by any airline" to use "direct connections." US Airways further objects that this Request imposes an undue burden because it is duplicative of several earlier Requests, including Nos. 4, 6, 29 and 31, which seek "[a]ll documents" relating to the following topics:

- "any effort by an airline … to distribute ancillary fares or content" (Request No. 6);

- "US Airways' relationship with any travel agent or travel agents" (Request No. 9);

- Farelogix (Request No. 16);

- "competition between GDSs and single-carrier distribution channels and/or direct-connect products" (Request No. 21); and

- "any contracts or agreements that were in force at any point from 2006 to the present between US Airways and any GDS or other distributor of US Airways' tickets" (Request No. 24).

US Airways has already satisfied these Requests.

## REQUEST FOR PRODUCTION NO. 36:

All documents relating to third parties that develop computer software or applications that interface or interact in any way with Sabre's systems or data (including, without limitation, Rearden, Concur, Pass Consulting, and BookingBuilder) (collectively "developers"), including, without limitation:  (a) efforts to create or market a product relating to airline ticketing or the provisioning of air transportation or related services; (b) US Airways' relationship (if any) with any such developers, including without limitation, any agreement or contract with any such developers; and (c) all communications with any such developers.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

US Airways objects that the request is vague, ambiguous, overbroad, unduly burdensome and seeks information neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.  US Airways also objects that the Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege and/or immunity from discovery.  US Airways objects that the terms "interface or interact" are vague and ambiguous.  Read broadly, any software or application that is used in connection with the Sabre system or data would be covered by this request.  US Airways has no way of knowing all computer software or applications that "interface or interact" with Sabre's system or data or how all software or applications are used in connection with Sabre's system or data.  US Airways further objects that this request encompasses "[a]ll documents" relating to "third parties that develop computer software or applications that interface or interact in any way," even if the software or applications have nothing to do with the subject matter of this litigation.  For example, it is unclear why "[a]ll documents" relating to developers of widely used commercial e-mail, Internet browsing, word processing or spreadsheet programs are relevant to this lawsuit.  While Sabre data is undoubtedly viewed using web

duplicates earlier Sabre requests, including Requests Nos. 2 and 9, which seek "[a]ll documents" relating to Travelocity (an entity with which US Airways has a wholesale arrangement) (Request No. 2), and "US Airways' relationships with any travel agent or travel agents" (Request No. 9). US Airways has already satisfied these Requests. US Airways further objects that this request encompasses "[a]ll documents" regarding the "Wholesale Model," even if they have nothing to do with the subject matter of this litigation. US Airways will produce data regarding booking fees paid to travel agents or corporations through wholesale distribution arrangements as part of a bilateral agreement with Sabre respect to the production of data, including data that we have previously requested from Sabre.

## REQUEST FOR PRODUCTION NO. 39:

All documents relating to any potential acquisition of American Airlines (or any part thereof) by US Airways or of US Airways (or any part thereof) by American Airlines, or any potential merger or combination of the two.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 39:

US Airways objects that the request is vague, ambiguous, overbroad, unduly burdensome and seeks information neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. US Airways also objects that the Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege and/or immunity from discovery. Documents relating to any actual or proposed merger between the airlines have no relevance to Sabre's pattern of anticompetitive conduct or to the anticompetitive acts giving rise to US Airways' claims. US Airways further objects that the requested documents are subject to confidentiality restrictions. Because of the delicate nature of the potential transaction, as has been publicly reported, a non-disclosure agreement has been entered between US Airways, the unsecured creditors committee involved in the bankruptcy process and AMR Corp. to prevent any interested party from gaining an upper

hand through the release of non-public information relating to a potential transaction.

Accordingly, US Airways will not produce any documents relating to any actual or proposed

merger with American Airlines.  US Airways further objects that this request encompasses "[a]ll

documents" even if they have nothing to do with the subject matter of this litigation.  For

example, a potential merger between the airlines would involve multiple issues having nothing to

do with the lawsuit such as environmental or labor issues.

Dated:  January 23, 2013

O'MELVENY & MYERS LLP

By:  _____

Charles P. Diamond (*pro hac vice*)
Andrew J. Frackman
Marc F. Feinstein (*pro hac vice*)
Kenneth T. Murata
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

*Counsel for Plaintiff US Airways, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

US Airways, Inc.

        Plaintiff,

     v.

Sabre, Inc.
Sabre Holdings Corp.
Sabre Travel Int'l Ltd.

        Defendants.

Civ. Action No. 1:11-cv-02725-MGC
ECF Case

## Defendant Sabre's Third Requests for Production of Documents From Plaintiff US Airways

Pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rules 26.2 and 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York (the "Local Rules"), defendants Sabre, Inc., Sabre Holdings Corp., and Sabre Travel International Ltd. (collectively, "Sabre"), by its undersigned attorneys, hereby requests that plaintiff US Airways, Inc., produce for examination, inspection and copying, in accordance with the instructions and definitions set forth below and the parties' practices in this case as to prior production, at the offices of Cleary Gottlieb Steen & Hamilton LLP, 2000 Pennsylvania Avenue, NW, Washington D.C. (attn: Steven J. Kaiser) or One Liberty Plaza, New York, New York 10006 (attn: Lev Dassin) within thirty (30) days after the date of service, all documents described below.

### DEFINITIONS

1.      All definitions and rules of construction set forth in Local Rule 26.3 are incorporated herein. Terms that are defined or used in the Complaint and not given another definition herein shall be interpreted as defined or used in the Complaint.

2.      "Booking Builder" means BookingBuilder Technologies, and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

3.      "Choice Seats" means the US Airways program in which it sells seat upgrades for "mostly window and aisle seats towards the front of coach" for an additional fee, as described at http://www.usairways.com/en-US/FAQs/choiceseats.html.

4.      "Complaint" means US Airways' Amended Complaint in this action, filed on or about September 22, 2011.

2

Pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rules 26.2 and 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York (the "Local Rules"), defendants Sabre, Inc., Sabre Holdings Corp., and Sabre Travel International Ltd. (collectively, "Sabre"), by its undersigned attorneys, hereby requests that plaintiff US Airways, Inc., produce for examination, inspection and copying, in accordance with the instructions and definitions set forth below and the parties' practices in this case as to prior production, at the offices of Cleary Gottlieb Steen & Hamilton LLP, 2000 Pennsylvania Avenue, NW, Washington D.C. (attn: Steven J. Kaiser) or One Liberty Plaza, New York, New York 10006 (attn: Lev Dassin) within thirty (30) days after the date of service, all documents described below.

### DEFINITIONS

1.      All definitions and rules of construction set forth in Local Rule 26.3 are incorporated herein. Terms that are defined or used in the Complaint and not given another definition herein shall be interpreted as defined or used in the Complaint.

2.      "Booking Builder" means BookingBuilder Technologies, and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

3.      "Choice Seats" means the US Airways program in which it sells seat upgrades for "mostly window and aisle seats towards the front of coach" for an additional fee, as described at http://www.usairways.com/en-US/FAQs/choiceseats.html.

4.      "Complaint" means US Airways' Amended Complaint in this action, filed on or about September 22, 2011.

2

5.      "Document" is used in the broadest sense and includes without limitation all writings and other material described in Federal Rule 34(a) and Local Rule 26.3(c)(2), whether printed or recorded or produced or reproduced by any other mechanical or electronic process, or written or produced by hand, including electronically stored information ("ESI") as defined by Federal Rule 34, and any other writings or other matter (such as charts, photographs, film, audio, video or computer tape or other electronic media or devices) of whatever description from which information can be obtained or translated if necessary into reasonably usable form, including agreements, letters, appointment books, calendars, electronic mail, computer diskettes, CD-ROMs and other electronically-recorded or stored data (including any exchange of information between computers and all information stored in an electronic form or computer database, whether or not printed out), bookkeeping ledgers and journals, memoranda, notes, notebooks, diaries, desk pads, logs, telephone bills and telephone call records.  A draft or non-identical copy (including one with notations) is a separate document.

6.      "ESI" means electronically stored information as that term is used in Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure and the parties' agreement as to the production of electronically stored information.

7.      "Relating to" is used in its broadest sense and includes, without limitation, assessing, analyzing, containing, constituting, describing, discussing, documenting, evidencing, involving, memorializing, mentioning, reflecting, recording, relating to, referring to, stating, or having any connection with.

8.      "Sabre" means the defendants in this action.

9.      "Sabre GDS" means the Global Distribution System operated by Sabre.

10.    "US Airways" means US Airways, Inc., and each of its divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors and assigns; and present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing.

11.    "You" and "Your" means US Airways.

## INSTRUCTIONS

1.    In the event that any document responsive to these document requests is to be withheld on the basis of a claim of privilege, that document is to be identified by stating:  (i) the type of document withheld (memorandum, letter, report, e-mail, etc.); (ii) the document's author or creator; (iii) the document's addressees; (iv) the document's indicated or blind copy recipients; (v) the document's date, subject matter, type, number of pages and attachments or appendices; (vi) all persons who drafted, sent, received or were to receive any copy or version of the document or to whom any copy or version of the document was distributed, shown or explained, indicating whether each such person was legal counsel acting as such for US Airways or were otherwise affiliated with US Airways (and, if so, what that affiliation was) and, if not, with what entity or person the person was affiliated; (vii) its present custodian; and (viii) the nature of the privilege asserted.

2.    In the event that any document responsive to these document requests has been lost, discarded or destroyed, that document is to be identified by stating as completely as possible:  (i) the type of document (memorandum, letter, report, e-mail, etc.); (ii) the document's author or creator; (iii) the document's addressees; (iv) the document's  indicated or blind copy recipients; (v) the document's date, subject matter, number of pages and attachments or appendices; (vi) all persons who drafted, sent, received or were to receive any copy or version of the document or to whom any copy or version of the document was distributed, shown or

4

explained; (vii) the document's date of destruction or discard, manner of destruction or discard and reason for destruction or discard; and (vi) the persons authorizing and carrying out such destruction or discard.

3.      Unless otherwise specified, the time period covered by these document requests is from January 1, 2005, through the present.  Sabre specifically reserves the right to seek supplementary responses and the additional supplementary production of documents before trial.

4.      In producing documents in connection with these document requests, each document to be produced should include all attachments and all enclosures referred to in the documents or originally attached or enclosed with the document requested or to be produced.

5.      ESI shall be produced per the parties' agreement as to ESI.

6.      The specificity of any single request shall not limit the generality of any other request.

7.      If objection is made to any of these requests, the response shall state whether documents are being withheld from inspection and production on the basis of such objection, or whether inspection and production of the responsive documents will occur notwithstanding such objection.

8.      If there are no documents responsive to any particular document request, the response shall state so in writing.

9.      In addition to the rules of construction in Local Rule 26.3(d), whenever necessary to bring within the scope of these requests documents that might otherwise be construed to be outside its scope:

a.      "and" and "or" shall be construed conjunctively or disjunctively;

5

b.   "each," "every" and "all" shall be construed as "each, every and all";

c.   "including" means "including without limitation";

d.   the use of the singular form of any word shall include the plural and vice versa;

e.   the use of a verb in any tense shall be construed as the use of that verb in all other tenses; and

f.   the use of the feminine, masculine or neuter genders shall include all genders.

### DOCUMENT REQUESTS

40.   All documents relating to US Airways' integration of its Choice Seats features or functionality with the Sabre GDS or any other indirect distribution channel, including any technical limitations, problems, failures or impediments.

41.   All documents relating to US Airways' development of a direct connect, including any investments made by US Airways and any technical limitations, problems, failures or impediments.

42.   All documents related to America West's HPagentlink.com program, including (1) any business plans or strategy documents, (2) any communications with travel agents regarding HPagentlink.com, (3) the HPagentlink.com Passive Segment Entry Agreement and any other proposed or actual agreements with travel agencies, (4) any performance reports, (5) any technical documents describing the design and functionality of HPagentlink.com, and (6) any documents related to the design, purpose, and functionality of the BookingBuilder interface on HPagentlink.com.

DATED: January 17, 2013

/s/ Steven J. Kaiser

George S. Cary
Steven J. Kaiser
Larry C. Work-Dembowski
Kenneth Reinker
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Phone: (202) 974-1500
Fax: (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
lwork-dembowski@cgsh.com
kreinker@cgsh.com

Lev Dassin
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Phone: (212) 225-2000
Fax: (212) 225-2999
ldassin@cgsh.com

Karma M. Giulianelli
Sean C. Grimsley
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
karma.giulianelli@bartlit-beck.com
sean.grimsley@bartlit-beck.com

Chris Lind
Andrew MacNally
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
Courthouse Place
54 West Hubbard
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
chris.lind@bartlit-beck.com
andrew.macnally@bartlit-beck.com

*Attorneys for Sabre Inc., Sabre Holdings Corporation, and Sabre Travel Int'l Ltd. d/b/a Sabre Travel Network*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

US AIRWAYS, INC.,

             Plaintiff,

      -against-

SABRE HOLDINGS CORPORATION;
SABRE INC.; and
SABRE TRAVEL INTERNATIONAL
LIMITED,

             Defendants.

Civ. A. No. 1:11-cv-02725-MGC

ECF CASE

**US AIRWAYS, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT
SABRE'S THIRD REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff US Airways, Inc. ("US Airways") hereby submits its responses and objections

("Responses and Objections") to the Third Requests for Production of Documents served by

defendant Sabre Inc. on January 17, 2013 (the "Third Requests").

**GENERAL OBJECTIONS**

The following General Objections are incorporated by reference into US Airways'

responses to each individual request as if set forth fully therein.

      1.      US Airways objects to the Third Requests, and to each and every definition,

instruction, and request therein, to the extent they purport to impose on US Airways any

obligations differing from, inconsistent with, or in addition to those imposed by the Federal

Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern

District of New York, and any existing Court Order in this case.  In responding to the Third

Requests, US Airways will comply with those rules, orders, and applicable laws.

2.     To the extent US Airways responds to or produces documents requested in any individual request, it does not concede that the documents requested thereby are relevant, material, or admissible. US Airways expressly reserves the right to object to further discovery into any subject matter covered by the Third Requests.

3.     US Airways has not yet completed its discovery and factual investigation relating to this action or trial preparation. US Airways' responses to the Third Requests are based on its best present knowledge, information, and belief. US Airways reserves the right to rely on any facts, documents, or other information that may develop or come to its attention at a later date.

4.     US Airways objects to the Third Requests to the extent they seek documents protected from disclosure by the attorney-client privilege, attorney work product immunity, joint defense privilege, common interest doctrine, or any other applicable privilege, immunity, rule of privacy or confidentiality, protection, or restriction that protects such documents from involuntary disclosure or production. US Airways intends to and does assert such privilege(s) with respect to all such documents, and such documents will not be produced. Any inadvertent production of such documents is not intended to constitute, and shall not constitute, a waiver in whole or in part of such privilege, doctrine, or objection(s).

5.     US Airways objects to the Third Requests to the extent they purport to require US Airways to search for and provide information that is in the possession of persons not believed to have had significant involvement in the transactions or events at issue because such requests seek to impose upon US Airways unreasonable burden and costs.

6.     US Airways objects to the Third Requests, and the Definitions and Instructions thereto, to the extent they purport to require the production of documents that are not in

2

US Airways' possession, custody or control. In responding to the Third Requests, US Airways will produce only documents reasonably known to it or within its possession, custody, or control.

7.    US Airways objects to the Third Requests to the extent purport to require the production of "all" documents relating a topic. It is not practicable to review every document in US Airways' possession to determine if it may be responsive to one of Sabre's sweeping requests.

8.    US Airways objects to the Third Requests to the extent they purport to require US Airways to search for and produce electronically stored information from sources that are not reasonably accessible because of undue burden or cost, as set forth in Federal Rule of Civil Procedure 26(b)(2)(B).

9.    US Airways incorporates by reference its Objections to the Instructions in Second Requests for Production of Documents.

10.    US Airways reserves the right to modify, amend, or supplement its objections and responses to the Third Requests.

## DEFINITIONS

1.    US Airways objects to the definition of "BookingBuilder" as vague, ambiguous, and overbroad. US Airways has no way of knowing all of BookingBuilder Technologies' "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns," or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting or purporting to act on behalf of any of the foregoing." Moreover, the term "related entities" is vague and ambiguous because the Third Requests do not specify the type of relationship that would bring an entity within the definition's ambit. In responding to the Third Requests, US Airways will construe "BookingBuilder" to

3

mean: (a) BookingBuilder Technologies; and (b) its affiliates, employees and agents known to US Airways as such.

2. US Airways objects to the definition of "US Airways" as vague, ambiguous, and overbroad. US Airways has no way of knowing the identity of all "persons . . . purporting to act on behalf of" US Airways' "divisions, affiliates, controlled entities, joint ventures, related entities, predecessors, successors or assigns," or its "present and former employees, officers, directors, agents, attorneys, representatives and any other persons acting . . . on behalf of any of the foregoing." Moreover, the term "related entities" is vague and ambiguous because the Third Requests do not specify the type of relationship that would bring an entity within the definition's ambit. In responding to the Third Requests, US Airways will construe "US Airways" to mean: (a) US Airways, Inc.; and (b) its affiliates, employees and agents known to US Airways as such.

## OBJECTIONS TO SPECIFIC REQUESTS

Each of the General Objections, Objections to Definitions and Objections to Instructions set forth above is incorporated in each of the responses below.

### REQUEST FOR PRODUCTION NO. 40:

All documents relating to US Airways' integration of its Choice Seats features or functionality with the Sabre GDS or any other indirect distribution channel, including any technical limitations, problems, failures or impediments.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 40:

US Airways objects to this Request on the ground that it is vague, ambiguous, overbroad, and unduly burdensome. US Airways also objects to the Request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege and/or immunity from discovery. US Airways further objects to the Request as overbroad and unduly burdensome because it seeks "[a]ll documents" regardless of whether they have anything to do with the subject matter of this litigation. US Airways further

4

objects to the Request as imposing an undue burden because it is duplicative of Requests Nos. 5,

6, and 24, which sought "[a]ll documents relating to" the following topics:

- "US Airways' unbundling of fares for services, including ancillary services such as . . . seat selection (including, without limitation, US Airways' "Choice Seats" Program)" (Request No. 5);

- "any effort by any airline, including, without limitation, US Airways, to distribute ancillary fares or content" (Request No. 6); and

- "contracts or agreements that were in force at any point from 2006 to the present between US Airways and any GDS or other distributor of US Airways' tickets" (Request No. 24).

US Airways already complied with those Requests, and already ran the search terms " choice

w/5 program," "choice w/2 seat*," and "Choiceseat*" in connection with its response to Sabre's

First Request for Production of Documents pursuant to the parties' mutually-agreed protocol for

e-discovery. If Sabre has additional narrowly-tailored, reasonable requests for documents

relating to Choice Seats, US Airways is prepared to meet and confer to address Sabre's request.

## REQUEST FOR PRODUCTION NO. 41:

All documents relating to US Airways' development of a direct connect, including any investments made by US Airways and any technical limitations, problems, failures or impediments.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

US Airways objects to this Request on the ground that it is vague, ambiguous, overbroad,

and unduly burdensome. US Airways also objects to the Request to the extent it seeks

information protected by the attorney-client privilege, the attorney work product doctrine, or any

other applicable privilege and/or immunity from discovery. US Airways further objects to the

Request as imposing an undue burden because it is duplicative of several earlier Requests,

including Nos. 6, 16, 21, and 24, which sought "[a]ll documents relating to" the following topics:

5

Request as unduly burdensome because, read broadly, "any business plans or strategy documents," "any performance reports," and "any technical documents" could sweep up every discussion about the website regardless of topic, including topics having no conceivable relevance to this lawsuit. US Airways further objects to the Request as imposing an undue burden because it is duplicative or Requests 6, 9, and 21, which sought "[a]ll documents relating to" the following topics:

- "any effort by any airline . . . to distribute ancillary fares or content" (Request No. 6);

- "US Airways' relationship with any travel agent or travel agents" (Request No. 9);

- "competition between GDSs and single-carrier distribution channels and/or direct-connect products" (Request No. 21);

US Airways already complied with those Requests. Without waiving any objections, US Airways is willing to discuss reasonable search terms and protocols to identify unreviewed documents that may be responsive to this request and to review and produce the resulting non-privileged documents.

Dated: February 22, 2013

O'MELVENY & MYERS LLP

By: _____

Charles P. Diamond (*pro hac vice*)
Andrew J. Frackman
Marc F. Feinstein (*pro hac vice*)
Kenneth T. Murata
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Counsel for Plaintiff US Airways, Inc.*

7