IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| US Airways, Inc.<br><br>            Plaintiff,<br><br>      v.<br><br>Sabre Inc.<br>Sabre Holdings Corp.<br>Sabre Travel Int'l Ltd.<br><br>            Defendants. | Civ. Action No. 1:11-cv-02725-LGS<br>ECF Case |

**Sabre's Motion for Partial Summary Judgment Based on Its Settlement Agreement with US Airways' Parent Company, American Airlines**

On October 30, 2012, American Airlines, now US Airways' parent company, and Sabre settled antitrust lawsuits that included claims virtually identical to the claims pending here. In that Settlement Agreement, American agreed that it, its subsidiaries, and *any future merger partners*—such as US Airways—would not seek relief under the antitrust laws for harms suffered as a result of Sabre's contracts with airlines, travel agents, and certain third parties after the date of the settlement. When US Airways merged with American Airlines, it became a party to that Settlement Agreement, receiving all of the benefits of that Agreement and concurrently-entered Related Agreements. But it is also bound by the terms of these agreements. The plain terms of the Settlement Agreement prevent US Airways from seeking damages incurred after October 30, 2012 and injunctive relief.

## FACTUAL BACKGROUND[1]

American Airlines brought lawsuits against Sabre in state and federal court in Texas that included (among others) claims virtually identical to those in this case. On October 30, 2012, Sabre and American settled their disputes and executed a Settlement Agreement. (¶ 97.) Among other things, the Settlement Agreement includes a release and a covenant not to sue providing that, for a period of seven years after the Effective Date (December 19, 2012), American would not seek relief for harm suffered after the Execution Date (October 30, 2012), as a result of certain terms in Sabre's contracts with American, Sabre's contracts with other airlines, Sabre's contracts with travel agents, or Sabre's contracts with other third parties. (¶ 98.) The covenant not to sue also covered several agreements that American entered into with Sabre at the time of the settlement (the so-called "Related Agreements"), including a new agreement for Sabre's GDS services. (¶ 99.) By its terms, the Settlement Agreement precludes US Airways from

---

[1] Citations to (¶ XX) are to the corresponding numbered paragraphs of the contemporaneously-filed Statement of Undisputed Facts, which includes specific citations to the record.

1

contesting the legality of that Settlement Agreement or Related Agreements. (¶ 100.) The Settlement Agreement binds American Airlines, its subsidiaries, and any future airline merger partners, including US Airways. (¶ 101.) At the time the Settlement Agreement was signed, US Airways and American Airlines already were "evaluat[ing] a potential combination." (¶ 102.)

On February 14, 2013, US Airways announced that it had reached an agreement to merge with American Airlines. (¶ 103.) The merger closed on December 9, 2013, and US Airways began operating under the new American-Sabre GDS agreement, including the full content provisions that US Airways challenges in this litigation. (¶ 104.)

In its first amended complaint, US Airways purports to seek "equitable relief" and "damages." (¶¶ 105, 107.) US Airways' original damages calculation, which it served before consummating the merger, includes damages incurred after October 30, 2012. (¶ 105.) After consummating the merger, US Airways provided "alternative" calculations that end damages as of October 31, 2012. (¶ 106.) US Airways has not contested that the settlement applies to it. (¶ 108.)[2] It has not, however, actually disclaimed damages after that date or injunctive relief.

## ARGUMENT

A movant is entitled to summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may obtain summary judgment on all or part of a claim or defense. *Id.*

A covenant not to sue, like the one at issue here, is a contract. Restatement (Second) of Contracts, § 285. Enforcement of an unambiguous contract is a matter of law, appropriate for disposition by the Court on summary judgment. *See Kay-R Elec. Corp. v. Stone & Webster*

---

[2] US Airways did not dispute that it is bound by the settlement, including the covenant not to sue, in its January 2 letter to the Court or at the conferences before the Court on January 7 or March 12. Indeed, in its letter to the Court of January 2, US Airways conceded that its claims are subject to the settlement and that the covenant not to sue "raises legitimate questions about the remedies" that it may seek here. US Airways' Letter to the Court, Jan. 2, 2014, ECF No. 168.

*Constr. Co.*, 23 F.3d 55, 58-59 (2d Cir. 1994); *Torain v. Clear Channel Broad., Inc.*, 651 F. Supp. 2d 125, 138 (S.D.N.Y. 2009).

I. **The Settlement Agreement Binds US Airways and Applies to US Airways' Claims for Injunctive Relief and for Damages after the Execution Date.**

    A. **The Settlement Binds US Airways**

By its own terms, the Settlement Agreement applies to any "entity that merges or consolidates with . . . American" and to any "subsidiaries" of American. (¶ 101.) It is undisputed that US Airways merged with American and US Airways is now a subsidiary of American. (¶ 103.) Likely for these reasons, US Airways does not contest that the Settlement Agreement, including the covenant not to sue, applies to it.

    B. **The Settlement Precludes Injunctive Relief**

US Airways (which is now American) seeks a "permanent injunction" against Sabre for "ongoing exclusionary conduct, and unreasonable agreements entered into" by Sabre. US Airways' First Am. Compl. 1, 57. Injunctive relief addresses alleged harm going forward. *See U.S. v. Oregon St. Medical Soc.*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall future violations."); *Chance v. Bd. of Exam'rs*, 561 F.2d 1079, 1092 n.25 (2d Cir. 1977) (noting that an injunction "is justified only by the [wrongdoing] that induced it and only so long as it counteracts a continuing [violation]").

Under the Settlement Agreement, however, US Airways is bound not to "seek relief" under the antitrust laws for any harm suffered after October 30, 2012 as a result of Sabre's contracts, whether it be the 2011 Sabre-US Airways GDS contract, the American-Sabre GDS contract that was entered into with the Settlement and under which US Airways now operates, or any other contract that Sabre has with airlines, travel agents, or other relevant parties. (¶ 98.) Forward-looking harm is inherently harm suffered after October 30, 2012.

In addition, the Settlement Agreement expressly bars US Airways from seeking to challenge the legality of that Agreement or the Related Agreements, including the new American-Sabre GDS contract, which by the completion of this briefing will be the only GDS contract with Sabre under which US Airways will be operating.  US Airways' claim for injunctive relief necessarily asks the Court to preclude enforcement of its current contract terms with Sabre, which are the very contract terms the Settlement Agreement expressly bars US Airways from challenging.

The Settlement Agreement therefore precludes injunctive relief and Sabre is entitled to summary judgment barring such relief.

### C. The Settlement Precludes US Airways' Claim for Damages Suffered After October 30, 2012

The covenant similarly bars US Airways' claims for monetary damages after the Execution Date of October 30, 2012 because it bars "seek[ing] relief" under the antitrust laws for "any injury allegedly suffered during the period from the Execution Date through seven (7) years following the Effective Date."  US Airways' proffered damages expert has presented a model that includes damages incurred after October 30, 2012.  (¶ 105.)  Such damages are for "injury allegedly suffered" after October 30, 2012, which the Settlement Agreement precludes.  Sabre is entitled to summary judgment barring US Airways' from recovering such damages.[3]

## II. The Court Should Enforce the Release and Covenant Not to Sue.

US Airways concedes that its claims are subject to the Settlement Agreement and that the covenant not to sue "raises legitimate questions about the remedies" that it may seek here.  (¶ 108.).  Yet, US Airways has suggested that "the scope of the American covenant might have to be tempered by public policy considerations."  US Airways' Letter to the Court, Jan. 2, 2014,

---

[3] Apparently anticipating this result, on January 15, 2014, US Airways served a supplemental expert report, cutting off the claimed damages as of October 31, 2012.  (¶ 106.)

ECF No. 168.  To the extent US Airways intends to argue that public policy precludes enforcement of its covenant not to pursue the very claims at issue in this litigation, the case law does not support it.

Sabre asserts a specifically negotiated covenant not to sue contained in a settlement agreement under which US Airways (through its parent, American) agreed not to pursue the precise claims at issue in this litigation.  Public policy favors settlement and accordingly courts routinely enforce releases—including releases of antitrust claims based on ongoing conduct like the one here—and dismiss claims to which they apply.  *See, e.g.*, *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 161 F.3d 443, 448 (7th Cir. 1998) (holding that "continued adherence" to a pre-release restraint could not give rise to a claim); *Xerox Corp. v. Media Sciences, Inc.*, 609 F. Supp. 2d 319, 326 (S.D.N.Y. 2009) ("[C]ourts have enforced even general releases to bar antitrust claims predicated on *continuing violations of pre-release* conduct . . .") (*citing VKK Corp v. Nat'l Football League*, 244 F.3d 114, 126 (2d Cir. 2001); *Madison Square Garden, L.P. v. Nat'l Hockey League*, No. 07 CV 8455 (LAP) 2008 WL 4547518, at *7-11 (S.D.N.Y. Oct. 10, 2008) (hereinafter "*MSG*").[4]

In *MSG*, for example, the court granted the defendants' motion for partial summary judgment enforcing a covenant not to sue over the future effects of existing contracts, noting that the public policy of settling disputes is "especially valuable" in antitrust.  *MSG* at *8 *citing* II

---

[4] *See also Hunter Douglas, Inc. v. Comfortex Corp.*, 98-CV-0479, 1999 U.S. Dist. LEXIS 10906, at *19-21 (N.D.N.Y. Mar. 11, 1999) (holding that, where the parties had released claims related to the implementation of a distribution policy, a party could not assert the release was unenforceable and sue based on the continued  implementation of the distribution policy); *Record Club of Am., Inc. v. United Artists Records, Inc.*, 611 F. Supp. 211, 217 n.8 (S.D.N.Y. 1985) (enforcing a release of an antitrust claim because "all of the harm alleged flows from and is related to the terms of conditions [of the release]" and was merely the "continuing effect" of pre-release conduct); *Shane v. Humana, Inc.*, No. 00-MD-1334-MORENO, 2009 WL 7848518, at *4-10 (S.D. Fl. Nov. 5, 2009) (holding prospective release of future injuries resulting from pre-release conduct enforceable).

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law, ¶ 320a (3d ed. 2004 & 2007 Supp.). As Judge Preska stated, "public policy considerations differ when the only prospective application of the release in question is the continued adherence to a pre-release restraint." *MSG* at *8. Judge Preska further noted the strength of the public policy issue relating to settlement; barring enforcement on public policy grounds in situations like the instant case—where the challenged contractual provisions are the same before and after the release and covenant—would lead to the "logical corollary" that "parties can *never* settle antitrust claims predicated on 'ongoing violations' even if they are based on the 'same kind of acts repeated in the subsequent period.'" *Id.* (emphasis added). Thus "even if the Court found that public policy counseled in favor of invalidating this Release an antitrust grounds, competing policy considerations favor its enforcement." *Id.* Indeed, a result that did not give effect to the Settlement Agreement would deter private parties from settling antitrust claims because there would be no reliable way for an antitrust defendant to protect itself from being sued the day after striking a settlement for ongoing behavior of the very type the plaintiff had seemingly released.

Fundamental fairness likewise requires enforcement of the Settlement Agreement. The covenant not to sue provided Sabre with valuable certainty that American (either as constituted at that time, or as made larger in a future merger or consolidation) would not challenge the contractual provisions that are at the heart of its value proposition to travel agents and the traveling public. Sabre bargained and paid for this certainty, and the peace associated with it, by providing US Airways (through its parent) with the favorable terms US Airways now enjoys under the related GDS agreement. It would be fundamentally unfair for US Airways to receive the benefit of Sabre's adherence to the Settlement Agreement (and the Related Agreements) while depriving Sabre of the benefit of US Airways' adherence to the same agreements.

## **CONCLUSION**

For the foregoing reasons, Sabre requests that the Court enter an order granting its motion for summary judgment, denying US Airways' claim for injunctive relief and barring US Airways from claiming any damages after October 30, 2012.

DATED:  April 1, 2014

Chris Lind
Andrew MacNally
BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP
Courthouse Place
54 West Hubbard
Chicago, IL  60654
Phone:  (312) 494-4400
Fax:  (312) 494-4440
chris.lind@bartlit-beck.com
andrew.macnally@bartlit-beck.com

Karma M. Giulianelli
Sean C. Grimsley
BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, Colorado  80202
Phone:  (303) 592-3100
Fax:  (303) 592-3140
karma.giulianelli@bartlit-beck.com
sean.grimsley@bartlit-beck.com

Joseph Kattan, PC
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone: (202) 955-8500
Fax: (202) 467-0539
JKattan@gibsondunn.com

Respectfully submitted,

/s/ George S. Cary
George S. Cary
Steven J. Kaiser
Kenneth Reinker
Bradley Justus
Carl Lawrence Malm
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Phone:  (202) 974-1500
Fax:  (202) 974-1999
gcary@cgsh.com
skaiser@cgsh.com
kreinker@cgsh.com
bjustus@cgsh.com
lmalm@cgsh.com

Lev Dassin
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Phone:  (212) 225-2000
Fax:  (212) 225-2999
ldassin@cgsh.com

*Attorneys for Sabre Inc., Sabre Holdings Corporation, and Sabre Travel Int'l Ltd. d/b/a Sabre Travel Network*