UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
US AIRWAYS, INC.,                                           :
                                    Plaintiff,              :
                                                            :     11 Civ. 2725 (LGS)
                  -against-                                 :
                                                            :     OPINION AND ORDER
SABRE HOLDINGS CORPOPATION, et al.,                         :
                                    Defendants.             :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      An Order and Opinion dated January 6, 2015, granted in part and denied in part a motion for summary judgment filed by Defendants Sabre Holdings Corporation, Sabre Travel International Ltd., and Sabre GLBL Inc. (collectively, "Sabre") ("Opinion").  By notice of motion filed under seal on January 12, 2015, Plaintiff moves for reconsideration of the portions of the Opinion (1) granting Sabre's motion for summary judgment on Plaintiff's claim for damages arising out of an agreement entered into by the parties in 2006 ("2006 Agreement"); and (2) granting Sabre's motion for summary judgment on Plaintiff's claim for lost profits arising out of Sabre's alleged refusal to implement Plaintiff's preferred seating program, Choice Seats ("Motion").  For the reasons that follow, the Motion is denied.

**I.     BACKGROUND**

      For purposes of the Motion, relevant facts and procedural history are as follows.[1]  On April 1, 2014, Sabre filed its motion for summary judgment, asserting, *inter alia*, that Plaintiff's claims under the 2006 Agreement were time-barred and that Plaintiff's claim for lost profits due to Sabre's failure to implement Choice Seats did not constitute antitrust injury.  Both issues were fully briefed by the parties, and summary judgment was granted in Sabre's favor on both grounds.

---

[1] Familiarity with the facts and procedural history of the case is assumed in light of the extensive background recounted in the Opinion.

A.  **Statute of Limitations**

On the statute of limitations defense, Plaintiff argued that its overcharge damages "accrued only as it paid each excessive segment fee to Sabre." In making that argument, Plaintiff relied on the holding in *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979), where the Second Circuit found that a Section 2 monopoly cause of action by a purchaser who paid overcharges as a result of the monopolist's conduct accrues on the date of payment. In the alternative, Plaintiff argued that its damages were overly speculative at the time the 2006 Agreement was executed and therefore fell within the "speculative damages" exception to the general accrual rule enunciated in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971). In *Zenith*, the Court held, with two limited exceptions, that an antitrust cause of action "accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Id.* at 338. The two exceptions the *Zenith* Court identified were the speculative damages exception, and the continuing violation exception. Under the first exception, which applies only where future damages are "speculative or . . . unprovable," a cause of action accrues on the date the damages are suffered. *Id.* at 339. Under the second exception, where an antitrust violation is of a continuing nature, a cause of action accrues "whenever the defendant commits an overt act in furtherance of an antitrust conspiracy or, in the absence of an antitrust conspiracy, commits an act that by its very nature is a continuing antitrust violation." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051 (5th Cir. 1982) (citing *Zenith*, 401 U.S. at 338-40).

By Order dated October 7, 2014, the Court directed the parties to appear for oral argument to "address the statute of limitations arguments *presented in the briefing* and any additional authority supporting their respective arguments" and "to submit via ECF any legal authority upon which they wish to rely at oral argument that has not been cited in prior briefing." (Emphasis

2

added). On October 13, 2014, each party submitted additional authorities, with Plaintiff submitting *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 185 F. Supp. 826 (M.D. Pa. 1960), *Hanover Shoe, Inc., v. United Shoe Machinery Corp.*, 245 F. Supp. 258 (M.D. Pa. 1965), *National Souvenir Ctr., Inc. v. Historic Figures, Inc.*, 728 F.2d 503 (D.C. Cir. 1984) and *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59 (2d Cir. 1986).

On October 14, 2014, oral argument was held. Plaintiff appeared to have abandoned both of its prior arguments in favor of an entirely new argument, that the 2006 Agreement was a "contract outside of the limitations period that has ongoing anticompetitive effects and harm during the limitations period that is distinct from the mere payment of an overcharge during the limitations period." According to Plaintiff, the cases it submitted on October 13 supported its new theory. Plaintiff expressly disavowed reliance on the continuing violation exception.

The Opinion held that, consistent with *Zenith*'s general accrual rule, Plaintiff's cause of action for overcharges under the 2006 Agreement accrued on the date of that agreement's execution, because the injury alleged by Plaintiff -- the overcharges -- was fixed by the terms of the 2006 Agreement. It declined to extend *Berkey*'s holding -- made in the context of a section 2 monopoly case -- to Plaintiff's section 1 claim, for reasons articulated in the Opinion. It similarly rejected Plaintiff's alternative argument regarding the speculative damages exception, finding that the facts of the case did not warrant application of that exception. It did not expressly address the new theory that Plaintiff raised at oral argument.

    **B.    Choice Seats**

On the Choice Seats claim, Plaintiff argued in its opposition to Sabre's motion for summary judgment that Plaintiff suffered damages in the form of lost profits from Sabre's failure to implement Plaintiff's Choice Seats product. Plaintiff asserted that Sabre imposed both vertical restraints on Choice Seats, because it used "its market power to suppress competition and avoid

the expense of state of the art distribution, like US Airways' Choice Seats offering," and horizontal restraints, by conspiring with its competitors to resist implementation of the "push model" used for Choice Seats.

The Opinion concluded that the Choice Seats damages did not constitute antitrust injury for two reasons.  First, on the vertical restraints argument, the Opinion reasoned that a company's decision to adopt or not adopt a new product, such as Choice Seats, is typically considered a business decision immune from antitrust scrutiny.  Second, on the horizontal restraints argument, the Opinion found that the antitrust laws should not facilitate the foisting of a particular product on a company or group of companies, but that a decision by competitors to refuse a particular product "could run afoul of the antitrust laws, if a plaintiff were able to show that the collective decision harmed competition, for example, by reducing output or restricting prices."  Plaintiff, however, had not shown that the refusal to implement Choice Seats, even if collective, had harmed competition in such a way.

## II.     STANDARD

The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation and internal quotation marks omitted).  "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted).  A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52

(citation and internal quotation marks omitted).  The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court."  *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

### III. DISCUSSION

#### A. Statute of Limitations

The Motion appears to rely on the "clear error" basis for reconsideration and argues that the Opinion overlooked authority holding that "when a contract obligates a plaintiff to engage in ongoing conduct (or forbearance) that facilitates the defendant's unlawful maintenance and exercise of market power, then the plaintiff can recover damages proximately linked to the contractual restraints during the limitations period, even though the contract imposing the restraints was executed before the limitation period."  The Motion contends that had the Court followed that authority, it would have deemed Plaintiff's claims under the 2006 Agreement timely because Sabre's unlawful conduct -- which it characterizes on its Motion as the "enforcement" of the anticompetitive provisions of the 2006 Agreement (referred to in the Opinion as the "Contractual Restraints") -- continued "well into the limitations period."

The motion is denied as to the statute of limitations argument as Plaintiff has not demonstrated clear error.  As an initial matter, the authority that the Court allegedly overlooked consists of the four decisions Plaintiff submitted before oral argument, in support of the theory it articulated for the first time at oral argument.  The Court's Order of October 7, 2014, however, authorized the parties to submit new authorities in support of the arguments they had already briefed; it was not an invitation to present a wholly new argument.  Plaintiff's interpretation of the Court's Order was both unwarranted and unfair to Defendant, which had no advance notice of Plaintiff's new argument and no opportunity to brief its opposition.  On that ground alone, the Court need not have considered Plaintiff's theory.

In any case, Plaintiff's argument lacks merit. First, *Hanover* and *National Souvenir* (which is not binding on this Court) both involved monopoly claims and dealt specifically with leases that allegedly perpetuated the defendant's monopoly power and thereby enabled the defendant to inflict continuing harm on the plaintiffs. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 500 (1968);[2] *National Souvenir*, 728 F.2d at 513. As the Opinion recognized, a statute of limitations analysis may well be different in the context of a monopoly claim, *see* Opinion at 15 -- but the Opinion did not address a monopoly claim. Second, *Andrea Theaters*, the sole Second Circuit case upon which Plaintiff relies, involved claims under sections 1 and 2 of the Sherman Act and principally considered whether the district court had erred in dismissing the case without prejudice on abstention grounds; the Second Circuit merely stated in dicta that it was not "clear" that the claims were time-barred, without deciding the issue either way. 787 F.2d at 65. In short, Plaintiff identifies not a single binding case holding that a section 1 claim for overcharges under a contract to which the plaintiff is a counterparty accrues after the execution of the contract. Finally, to the extent Plaintiff now argues that the harm it complains of under the 2006 Agreement is something other than the overcharges, such a claim is disingenuous in light of the Plaintiff's initial presentation of its argument, where it expressly stated that its harm "accrued only as it paid each excessive segment fee to Sabre," and in light of its damages calculation for claims under the 2006 Agreement, which were confined to the amount of overcharges allegedly suffered.

B.  **Choice Seats**

The Motion also apparently argues clear error as to Choice Seats and contends that the Court applied inconsistent reasoning in granting summary judgment in Sabre's favor on

---

[2] Plaintiff relied on the Supreme Court's decision in *Hanover* in its opposition to Sabre's motion for summary judgment in support of arguments other than the statute of limitations issue. In its Motion, it relies specifically on the statute of limitations analysis in *Hanover*, which it apparently sought to buttress by submitting the district court decisions in *Hanover* in advance of oral argument.

Plaintiff's claim for lost profits on account of Sabre's failure to implement Choice Seats. Specifically, the Motion argues that the Court erred in finding that Plaintiff lacked standing to pursue its Choice Seats claim because it did not adduce evidence that the alleged horizontal agreement resulting in a failure to implement Choice Seats "reduced or limited competition," while simultaneously denying summary judgment on Plaintiff's claim for horizontal restraint in trade because Plaintiff had adduced sufficient evidence of a conspiracy among Sabre and its competitors to restrain trade.

Plaintiff's argument misconstrues the Opinion. The Opinion found that the horizontal conspiracy claim with respect to Choice Seats failed because "the antitrust laws do not enable US Airways to foist a particular product on the GDSs." It also observed that a collective decision to withhold a product or innovation might conceivably be actionable under the antitrust laws if the evidence showed harm to competition, for example, by artificially moving prices. Separately, the Opinion found that there was evidence that the GDSs conspired to restrain trade, principally by agreeing to perpetuate the "Full Content" model -- with the result that airlines such as Plaintiff must offer the same fares to all of the GDSs. That analysis was limited to conduct by the GDSs other than the conduct surrounding Choice Seats, which the Court had already found not actionable earlier in the Opinion for the reasons stated above. Accordingly, Plaintiff has demonstrated no error in the Opinion.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion is DENIED. Plaintiff will be required to file its Motion on ECF and is directed to submit any proposed redactions no later than March 12, 2015. The parties are directed to appear for a conference to address trial dates on April 7, 2015, at 10:30 a.m.

Dated: March 5, 2015
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

7