UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| US AIRWAYS, INC.,<br><br>     Plaintiff,<br><br>  -against-<br><br>SABRE HOLDINGS CORPORATION;<br>SABRE GLBL INC.; and SABRE TRAVEL<br>INTERNATIONAL LIMITED,<br><br>    Defendants. | Case. No. 1:11-cv-02725-LGS |

**US AIRWAYS' MEMORANDUM OF LAW IN OPPOSITION
TO SABRE'S  MOTION FOR ENTRY OF JUDGMENT**

**[FILED UNDER SEAL]**

O'MELVENY & MYERS LLP
Charles P. Diamond (*pro hac vice*)
Andrew J. Frackman
Katrina M. Robson (*pro hac vice*)
Madhu Pocha (*pro hac vice*)
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Counsel for Plaintiff US Airways, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

I.     Sabre's Rejected Rule 68 Offer of Judgment Does Not Moot US Airways' Case................................................................................................... 2

     A.     Under Second Circuit Law, a Rejected Rule 68 Offer Is a Nullity............ 2

     B.     Because Sabre Has Not Offered US Airways "Complete Relief," Judgment Cannot Be Entered Over US Airways' Objection..................... 3

     C.     Sabre Can "Throw In the Towel" By Defaulting, Which Would Trigger a Prove-Up To Determine the Declaration To Be Entered ........... 6

II.     US Airways' Declaratory Relief Claim Remains Justiciable and Is Not Barred By The American Settlement Agreement .................................................. 7

     A.     *Powell* is Binding Precedent Establishing a Claim for Declaratory Relief Is Not Moot When Tied To a Claim for Damages......................... 8

     B.     US Airways Declaratory Judgment Claim Is As Ripe Now As It Was Before the 2011 Contract Expired Even Putting Aside *Powell* ....... 12

     C.     Declaratory Relief Is Not Barred By The American Settlement ............. 16

CONCLUSION.................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*,
  485 F.3d 85 (2d Cir. 2007)................................................................................ 5

*Abrams v. Interco Inc.*,
  719 F.2d 23 (2d Cir.1983)................................................................................ 6

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
  300 U.S. 227 (1937)................................................................................ 7

*Am. Safety Equip. Corp. v. J.P. Maguire & Co.*,
  391 F.2d 821 (2d Cir. 1968)................................................................................ 15

*Broadview Chemical Corp. v. Loctite Corp.*,
  417 F.2d 998 (2d Cir. 1969)................................................................................ 5, 14

*Campbell-Ewald Co. v. Gomez*,
  2015 WL 246885 (May 18, 2015)................................................................................ 2

*Christopher Village, Ltd. P'ship v. Retsinas*,
  190 F.3d 310 (5th Cir. 1999)................................................................................ 9

*Compressor Eng'g Corp. v. Thomas*,
  2015 WL 730081 (E.D. Mich. Feb. 19, 2015)................................................................................ 3

*Cont'l Ins. Co. v. Huff Enters. Inc.*,
  2009 WL 3756630 (E.D.N.Y Nov. 6, 2009)................................................................................ 6

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)................................................................................ 11

*Dean v. Blumenthal*,
  577 F.3d 60 (2d Cir. 2008)................................................................................ 10, 11, 12, 14

*Diaz v. First Am. Home Buyers Prot. Corp.*,
  732 F.3d 948 (9th Cir. 2013) ................................................................................ 3

*F.E.R. v. Valdez*,
  58 F.3d 1530 (10th Cir. 1995) ................................................................................ 9

*Garcia v. Scoppetta*,
  289 F. Supp. 2d 343 (E.D.N.Y. 2003) ................................................................................ 5

*Genesis Healthcare Corp. v. Symczyk*,
  133 S. Ct. 1523 (2013)................................................................................ 2

*Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*,
  962 F.2d 268 (2d Cir. 1992)................................................................................ 5

*GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*,
  445 U.S. 375 (1980)................................................................................ 13

*Guideone Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*,
  696 F. Supp. 2d 203 (E.D.N.Y. 2010) ................................................................................ 6

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Hepler v. Abercrombie & Fitch Co.*,
  No. 14-4113-CV, __ F. App'x __, 2015 WL 3823883 (2d Cir. June 22, 2015) .................. 3, 6

*Hrivnak v. NCO Portfolio Mgmt., Inc.*,
  719 F.3d 564 (6th Cir. 2013) ............................................................................................. 3

*In re Delaney*,
  504 B.R. 738 (Bankr. D. Conn. 2014) ............................................................................... 6

*Lane v. Reid*,
  559 F. Supp. 1047 (S.D.N.Y. 1983) ............................................................................... 9, 10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ....................................................................................................... 11

*Maximo v. 140 Green Laundromat*,
  2015 WL 4095248 (S.D.N.Y. July 7, 2015) ................................................................... 4

*McCauley v. Trans Union, L.L.C.*,
  402 F.3d 340 (2d Cir. 2005) .......................................................................................... 5, 6

*Nelson v. Miller*,
  570 F.3d 868,882-83 (7th Cir. 2009) .............................................................................. 9

*New York v. Solvent Chem. Co., Inc.*,
  664 F.3d 22 (2d Cir. 2011) ............................................................................................ 5

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
  392 U.S. 134 (1968) ...................................................................................................... 15

*Powell v. McCormack*,
  395 U.S. 486 (1969) ................................................................................................. passim

*Royal Ins Co. of Am. v. Zygo Corp.*,
  212 F.R.D. 444 (D. Conn. 2003) ................................................................................... 7

*Stein v. Buccaneers Ltd. P'ship*,
  772 F.3d 698 (11th Cir. 2014) ....................................................................................... 3

*Stokes v. Village of Wurtsboro*,
  818 F.2d 4 (2d Cir. 1987) ....................................................................................... 10, 12, 14

*Tanasi v. New Alliance Bank*,
  786 F.3d 195 (2d Cir. 2015) ......................................................................................... 3, 5

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) ...................................................................................................... 4

*United States v. Diaz*,
  176 F.3d 52 (2d Cir. 1999) ............................................................................................ 7

*Velvet Underground v. Andy Warhol Foundation for the Visual Arts*,
  890 F. Supp. 2d 398 (S.D.N.Y. 2012) ..................................................................... 11, 12, 14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Weiss v. Fein, Such, Kahn & Shepard, P.C.,*
  2002 WL 449653 (S.D.N.Y. Mar. 22, 2002) ........................................................... 4

*Yniguez v. Arizona,*
  975 F.2d 646 (9th Cir.1992) ........................................................................ 9

**Statutes**

28 U.S.C. § 2201 ........................................................................................... 3

28 U.S.C. § 2202 ......................................................................................... 11

42 U.S.C. § 1983 ......................................................................................... 10

**Rules**

*Restatement (Second) of Judgments* § 33 cmt. b (1982) ....................................... 5, 6

Fed. R. Civ. P. 68 ................................................................................. passim

## INTRODUCTION

Sabre seeks to exit this long-running, potentially industry-changing antitrust suit by simply paying $20 plus reasonable costs and attorneys' fees.  It advances two principal arguments for doing so:  first, contrary to well-settled law in this Circuit, it claims that its rejected Rule 68 offer of $20 renders the case moot; and second, contrary to established Supreme Court precedent, it challenges the justiciability of US Airways' declaratory judgment claim, presumably to justify and excuse its failure to include judgment on that claim in the offer of judgment it made.  Both arguments are plainly wrong.

Sabre is not entitled to any judgment in its favor, and the law and common sense dictate that the trial proceed as scheduled.  As to Sabre's first argument, in the Second Circuit, a rejected Rule 68 offer may shift costs, but it does not moot cases.  While a defendant is free to capitulate, doing so requires it to confess to a judgment that affords the plaintiff all the relief it seeks at the time of the offer, not just those the defendant deems viable.  Sabre expressly refused to offer judgment on US Airways' claim for declaratory relief—a claim which this Court only last month acknowledged currently remains available.  So, rather than mooting this case altogether, Sabre's offer was a nullity *ab initio*.

Sabre's second argument is likewise meritless.  Because Sabre's Rule 68 offer is of no consequence, two interrelated claims remain to be tried, one for damages and a second for declaratory judgment.  They are interrelated because a declaratory judgment will establish the liability predict for damages.  Sabre says that the expiration of the 2011 contract renders the declaratory judgment claim moot.  But, under *Powell v. McCormack*, 395 U.S. 486, 492-98 (1969), an otherwise moot declaratory judgment claim remains justiciable so long as it is paired with an associated damage claim, even a nominal one.

Putting aside *Powell*'s stamp of ripeness, there is nothing remotely moot about the parties' dispute over the lawfulness of Sabre's anti-steering Contractual Restraints. While the contract imposing them when US Airways suffered its damages has lapsed, US Airways remains subject to the very same restraints under a Sabre contract it inherited when it merged with American Airlines' parent. The parties thus have as much incentive to fully and forcefully litigate now as they did prior to April 23, 2014, when the 2011 contract expired. And, a ruling is no less necessary as the current contract is slated to expire in another twenty-eight months. Given this and the nearly half decade and the tens of millions of dollars the parties have already invested to arrive at a trial that technically started this week with the submission of plaintiff's experts' direct testimony, justice demands that it go the distance. Neither the "case or controversy" clause nor the settlement agreement Sabre made with American requires that the parties wait until that agreement expires just to start all over again.

## ARGUMENT

**I.     Sabre's Rejected Rule 68 Offer of Judgment Does Not Moot US Airways' Case**

     **A.     Under Second Circuit Law, a Rejected Rule 68 Offer Is a Nullity**

On July 8, 2015, Sabre made what purported to be an offer of judgment. Five days later, US Airways rejected it. That aborted any case-dispositive transaction, and neither the offer nor the rejection has any effect here. The Second Circuit could not have been clearer when, joining at least four of the current Supreme Court justices[1] and two other circuits,[2] it ruled just two months ago that a rejected offer cannot moot a case:

---

[1] In dissent on an unrelated issue, Justice Kagan—joined by three other justices—explained that "an unaccepted offer of judgment cannot moot a case. When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1533 (2013) (Kagan, J. dissenting). The majority of the Court saw no reason to address the effect of an unaccepted offer, but the issue may be settled by the Court in *Campbell-Ewald*

> [I]t remains the established law of this Circuit that a 'rejected settlement offer [under Rule 68], by itself, [cannot render][ ] [a] case.' . . . If the parties agree that a judgment should be entered against the defendant, then the district court should enter such a judgment. . . . Absent such agreement, however, the district court should not enter judgment against the defendant if it does not provide complete relief.

*Tanasi v. New Alliance Bank*, 786 F.3d 195, 199-200 (2d Cir. 2015) (citations omitted).  Accordingly, the rejection of Sabre's offer has no effect whatever on the viability of this lawsuit.

### B.     Because Sabre Has Not Offered US Airways "Complete Relief," Judgment Cannot Be Entered Over US Airways' Objection

As *Tanasi* makes clear, an offer of judgment that "does not provide complete relief" cannot be entered over the plaintiff's objection.  *See also Hepler v. Abercrombie & Fitch Co.*, No. 14-4113-CV, __ F. App'x __, 2015 WL 3823883, at *1 (2d Cir. June 22, 2015).  "Complete relief" means **all** the relief the plaintiff was seeking at the time the offer was made.  *See, e.g. Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir. 2013).  US Airways' complaint now seeks two types of relief:  damages and a declaratory judgment under 28 U.S.C. § 2201 to the effect that the Contractual Restraints Sabre has imposed are unreasonably anticompetitive and violate Section 1 of the Sherman Act.  (At the June 30, 2015 status conference, this Court correctly acknowledged that currently declaratory relief remains "part of the case."  Hr'g Tr. 9:21-23, Jun. 30, 2015.)  Yet, Sabre has expressly excluded declaratory relief from its Rule 68 offer.

To have even a cost-shifting effect, a Rule 68 offer must "meet the plaintiff on *his terms*." *Hrivnak*, 719 F.3d at 567 (emphasis added); *see also Compressor Eng'g Corp. v. Thomas*, 2015

---

*Co. v. Gomez*, 2015 WL 246885 (May 18, 2015), *granting cert. sub nom. Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014).
[2] *See Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 702 (11th Cir. 2014) (holding that an unaccepted Rule 68 offer cannot moot a case because "[g]iving controlling effect to an unaccepted Rule 68 offer . . . is flatly inconsistent with the rule"); *Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 954–55 (9th Cir. 2013) (holding that "an unaccepted Rule 68 offer that would have fully satisfied a plaintiff's claim does not render that claim moot . . . [as a result of] the language, structure and purposes of Rule 68 and . . . fundamental principles governing mootness").

WL 730081, at *5 (E.D. Mich. Feb. 19, 2015) (same).[3]  By excluding declaratory relief, Sabre's

did not.  Granted, in Sabre's view, the declaratory judgment claim should be dismissed.  But ar-

guing that US Airways is compelled to accept a $20 offer that excludes declaratory relief be-

cause that claim could someday be found defective is putting the cart before the horse.  ***Until Sa-***

***bre gets it dismissed***, an offer of judgment that does not include the declaratory relief US Air-

ways is seeking is no offer at all, and a rejection of an offer that does not include complete relief

ends the matter.[4]  To construe Rule 68 differently would allow every defendant the opportunity

to seek, in effect, summary judgment long after the deadline for filing such motions.  Sabre

chose not to seek summary judgment with respect to the declaratory claim when it had the oppor-

tunity, and Rule 68 does not afford it a belated opportunity to raise such issues now.

Sabre contends that US Airways is improperly using its declaratory judgment claim to

coerce from Sabre an offer having collateral estoppel consequences, and it argues that an offeree

cannot so condition a Rule 68 acceptance.  Granted, when a plaintiff seeks only damages that the

defendant has offered to pay in accordance with Rule 68, no purpose is served by also exacting

---

[3] Sabre cites no authority to the contrary and misrepresents this Court's ruling in *Weiss v. Fein, Such, Kahn & Shepard, P.C.*, 2002 WL 449653 (S.D.N.Y. Mar. 22, 2002).  Sabre says this Court found, "that a Rule 68 offer afforded complete relief even though it did not address plaintiff's request for an injunction because injunctive relief was otherwise unavailable."  (Memo in Support of Motion for Entry of Judgment, Dkt. No. 325 at 10 (hereafter "Motion").)  However, the injunctive relief in that case was legally unavailable *under the applicable statute*, not because the offer of judgment mooted that plaintiffs' claims.  *Id.* at *3.

[4] Sabre offers nothing to justify a Rule 68 offer with missing pieces other than a footnote reference to the wholly inapposite decision in *Maximo v. 140 Green Laundromat*, 2015 WL 4095248 (S.D.N.Y. July 7, 2015).  There, plaintiff sued for money damages for overtime violations under federal and state law, to which defendant responded with an offer exceeding the maximum permissible federal recovery and that the court decline to exercise its supplemental jurisdiction under *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), and instead send the state law claim to state court.  *Id.* at *1-3.  Plaintiff's flimsy opposition, all three and a half pages of it, failed to mention the facial deficiency of a Rule 68 offer that did not address her state law claims, to mention any of the controlling Second Circuit decisions, or even to cite Rule 68.  (Affirmation in Opposition of Motion to Dismiss (Dkt. 33, July 17,2015).)  Not surprisingly, the court agreed with defendant that the state law claims would be more appropriately prosecuted in state court, and, having elicited plaintiff's concession that the Rule 68 offer more than satisfied the federal claim over which it had jurisdiction, the court entered judgment in that amount.  *Maximo*, 2015 WL 4095248, at *4.  The key difference with our case is the nature of the claim the defendant's Rule 68 offer fails to address. Here, in contrast to *Maximo*, US Airways' declaratory judgment claim is based on federal question jurisdiction, cannot be sent to a state court, and is properly before this Court.

an admission of guilt or finding of liability that can be used by others.  But this is not just a damages case, and Sabre is able to cite only cases where damages alone were at issue.[5]  That principal does not apply when the complaint includes a claim for declaratory relief in addition to damages.  After all, the principal purposes of declaratory judgments are "clarifying or settling the legal issues involved" and "finaliz[ing] the controversy and offer[ing] relief from uncertainty." *See also Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969); *New York v. Solvent Chem. Co., Inc.*, 664 F.3d 22, 26 (2d Cir. 2011) (citation omitted).[6]

Depriving a declaratory judgment of collateral estoppel effect would render it toothless, and forcing a plaintiff under Rule 68 to accept such a judgment would "not provide [it] complete relief." *Tanasi*, 786 F.3d at at 200; *cf. ABN Amro Verzekeringen*, 485 F.3d at 94 n.8 ("Plaintiff made no demand for declaratory relief on liability [so w]e do not decide whether this judgment could properly be entered over the plaintiff's objection . . ."). By its very nature, declaratory relief must have preclusive legal effect to ensure certainty over the issues in dispute and to prevent the parties from having to litigate the same issues again and again.  Because of that, in a related context, courts have applied collateral estoppel to declaratory judgments entered against defaulting defendants.  *See infra* Part I(C).  As noted by the authors of the *Restatement of Judgments*: "If a non-appearing party were not concluded as to matters declared by [a declaratory] judgment, a defendant might abort all possible effects of the declaratory action simply by defaulting." *Restatement (Second) of Judgments* § 33 cmt. b (1982).  It would indeed be odd if a defendant de-

---

[5] *See, e.g.*, *McCauley v. Trans Union, L.L.C.*, 402 F.3d 340, 340-42 (2d Cir. 2005); *ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 93 (2d Cir. 2007) (same).  In *McCauley*, "both parties agreed that entry of a default judgment would satisfactorily resolve this case."  402 F.3d at 342.  Thus, the court was not required to decide whether the offer afforded "complete relief" because the plaintiff ultimately accepted a Rule 68 offer.  And in *ABN Amro Verzekeringen*, the court expressly noted "ABN's suit was only for money damages."  485 F.3d at 93.

[6] There is no dispute that Sabre can make a Rule 68 offer that includes a declaratory judgment with preclusive effect. *See Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 272-73 (2d Cir. 1992); *see also Garcia v. Scoppetta*, 289 F. Supp. 2d 343, 350 (E.D.N.Y. 2003) ("The basically contractual nature of consent judgments has led to general agreement that preclusive effect should be measured by the intent of the parties.") (citation omitted).

faulting on a declaratory judgment claim could avoid preclusive consequences by the simple expedient of instead offering under Rule 68 to confess to a judgment not having any.

### C.  Sabre Can "Throw In the Towel" By Defaulting, Which Would Trigger a Prove-Up To Determine the Declaration To Be Entered

While an unaccepted Rule 68 offer of the type Sabre made cannot end a case, that does not mean that a defendant is unable to "throw in the towel."  As the Second Circuit observed in *McCauley,* 402 F.3d at 341 (citation omitted), "it is always open to a defendant to default and suffer judgment to be entered against him," either expressly or by agreeing to submit to a judgment for all the relief being sought.  *See also Hepler*, 2015 WL 3823883, at *1 ("A defendant offering judgment for *complete* relief is, in essence, submitting to the entry of default judgment."); *Abrams v. Interco Inc.*, 719 F.2d 23, 32 (2d Cir.1983) (same).   Sabre's default would not end the case.  US Airways would still be entitled to prove up its declaratory judgment claim at a Rule 54 inquest.  *See Cont'l Ins. Co. v. Huff Enters. Inc.,* 2009 WL 3756630 at *5 (E.D.N.Y Nov. 6, 2009) (finding "an inquest to be the best mechanism to determine whether judgment should enter and what particular relief it should contain.  Plaintiff can present evidence and argument on the merits of its claims, as well as the propriety of ***declaratory or other relief***.") (emphasis added).

Of course, if US Airways succeeded at such an inquest, its default would put Sabre at risk of being estopped from denying any facts the Court determined since "[i]f the court permits a declaratory action to be maintained against a defaulting defendant, the preclusive effect of the judgment with respect to the matters declared may be viewed as a special instance of issue preclusion without adversary contest." *Restatement (Second) of Judgments* § 33 cmt. b (1982); *see In re Delaney,* 504 B.R. 738, 750 (Bankr. D. Conn. 2014) (default judgment had collateral estoppel effect where the issues were actually litigated as part of an inquest on damages); *Guideone*

*Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.,* 696 F. Supp. 2d 203, 212-13 (E.D.N.Y. 2010) (awarding declaratory relief in conjunction with a default judgment because it would "undoubtedly clarify and settle the legal issue of whether [plaintiff] is responsible for providing coverage to defendants").  But the choice is Sabre's.[7]

## II.    US Airways' Declaratory Relief Claim Remains Justiciable and Is Not Barred By The American Settlement Agreement

US Airways seeks a judicial declaration that Sabre's Contractual Restraints as well as its horizontal agreement with other GDSs not to compete for airline business are anti-competitive and unlawful.  There is nothing moot about these claims.  Indeed, Sabre's motion **says *nothing*** whatsoever about US Airways' horizontal claim other than to falsely characterize its object as "an alleged *past* conspiracy among the GDSs." (emphasis added).  While Sabre may contend the damages US Airways can recover as a result of the conspiracy cut off as of the American settlement—and we do not concede that[8]—Sabre cites nothing but its own *ipse dixit* to establish that the conspiracy ended.  The complaint alleges a continuing conspiracy, and, only if Sabre could somehow prove at trial a lawfully significant withdrawal, that conspiracy is deemed to continue. *See United States v. Diaz,* 176 F.3d 52, 98 (2d Cir. 1999) ("Unless a conspirator produces affirmative evidence of withdrawal, his participation in a conspiracy is presumed to continue.") (citation omitted).  Declaratory relief on US Airways' horizontal Section 1 claim is therefore

---

[7] Of course, Sabre would not be entitled to assurance in advance from this Court that a default would not have collateral estoppel consequences since the application of the doctrine must be decided at the time, and under the circumstances, it is invoked.  *See Royal Ins Co. of Am. v. Zygo Corp.*, 212 F.R.D. 444, 448 (D. Conn. 2003), *vacated on other grounds,* 349 F. Supp. 2d 295 (D. Conn. 2004).  Jumping the gun would constitute an improper advisory opinion.  *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 241 (1937) (A court may not advise "what the law would be upon a hypothetical set of facts.").

[8] The Settlement Agreement, at §5.1.5(y), (z), only prevents American from suing over "any other agreement between Sabre and American" or "any other existing or future Sabre agreement with [a list that does not include other GDSs] to the extent that those provisions or terms are the same or substantially similar to provisions and terms in any other existing Sabre agreement with a similarly situated counterparty."

"alive and kicking," and it must be allowed to proceed at trial. As we show next, so too must US Airways' vertical Section 1 claim.

> **A.**     ***Powell* is Binding Precedent Establishing a Claim for Declaratory Relief Is Not Moot When Tied To a Claim for Damages**

Granted, the 2011 contract in effect at the time US Airways' damages arose expired on April 23, 2014. That does not, however, prevent this Court from entertaining US Airways' declaratory judgment claim as US Airways is seeking damages growing out of the same Sherman Act violation that it asks the Court to declare Sabre committed. The Supreme Court, in *Powell v. McCormack,* 395 U.S. 486 (1968), held that in such circumstances an otherwise moot declaratory judgment claim remains justiciable.

In *Powell*, Congressman Adam Clayton Powell sued House Speaker John McCormack and five other congressmen for declaratory relief, back pay, and an injunction when he was denied a seat in the 90th Congress. *Id.* at 493-94. While the case progressed, Powell's constituents reelected him to Congress, and the House leadership seated him in the 91st Congress, prompting defendants to move to dismiss his claims—including his claims for declaratory relief—as moot. *Id.* at 494-95. The Supreme Court addressed each aspect of the relief Powell sought, including declaratory relief, and concluded that all except an injunction remained available. *Id.* at 499. As to declaratory relief, the Court said: "[A] court may grant declaratory relief even though it chooses not to issue an injunction . . . [because a] declaratory judgment can then be used as a predicate to further relief." *Id.* at 499. The "further relief" referenced by the Court consisted of damages in the form of back pay for having been wrongfully prevented from taking his seat. *Id.* at 498-99. Though Sabre prefers to read *Powell* as declaring only that "the case" was not moot, that is not at all what the Court said or did. Rather, it "remanded [the case] to the United States District Court for the District of Columbia with instructions ***to enter a declaratory judgment***."

*Id.* at 550 (emphasis added).  The Court would not have directed the lower court to enter a judgment on a non-justiciable claim in violation of the Article III "case or controversy" clause if Powell's declaratory relief claim had been moot.

Circuit courts that have considered the justiciability of otherwise moot declaratory judgment claims that underlie damage claims have uniformly followed *Powell*'s teaching.  *See Nelson v. Miller*, 570 F.3d 868,882-83 (7th Cir. 2009) (where injunction deemed moot, "[d]eclaratory relief survive[d] as a predicate for damages"); *Christopher Village, Ltd. P'ship v. Retsinas*, 190 F.3d 310, 315 (5th Cir. 1999) (where injunction deemed moot, "declaration [survived] as a predicate for a damages"); *F.E.R. v. Valdez*, 58 F.3d 1530, 1533 (10th Cir. 1995) (where injunction deemed  moot, declaratory relief survived because "similar to their claim for damages . . . the question  still exists as to whether the defendants violated the[ir] right to privacy"); *Yniguez v. Arizona*,  975 F.2d 646, 647 (9th Cir.1992) ("[N]ominal damages provides a sufficiently concrete  interest in the outcome of the litigation to confer standing to pursue declaratory relief and  thereby prevents mootness.") (disapproved on other grounds in *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)).

The *Powell* rule has been followed in this Circuit as well.  In *Lane v. Reid*, 559 F. Supp. 1047, 1052 (S.D.N.Y. 1983), for example, Judge Motley ruled that a request for declaratory relief, even if otherwise moot, remains justiciable when it sought "to declare a set of legal relations which attributes legal liability for damages to the party against whom relief is sought."  Sabre claims that *Lane* supports its position because, it says, this Court found "the request for declaratory relief related only to past conduct," and therefore "dismissed as moot the plaintiff's request for declaratory relief because no damages were stated in the complaint."  (Motion at 6.)  Not so. Judge Motley specifically granted leave to amend *because of Powell's* reasoning, holding that

plaintiffs could amend their complaint to seek damages and then, *as a result*, could seek a declaratory judgment. *Lane*, 559 F. Supp. at 1052-53.

Sabre does not and cannot present any authority that in any way refutes or distinguishes *Powell* or its progeny. Rather, Sabre is able to cite only decisions that do not refer to *Powell* at all, (Motion at 4-5), understandably because they did not involve declaratory claims seeking, in the words of *Lane*, to declare a set of legal relations which attributes legal liability for damages. Thus, in *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 5 (2d Cir. 1987), the pro se plaintiffs sued to declare unconstitutional a local law that had been abandoned by the defendant village even before the complaint's filing and superseded by "a binding, judicially enforceable agreement" that barred its enforcement. That law had required the termination of water service to buildings not in compliance the building code. *Id.* Separately and independently, plaintiffs sued under 42 U.S.C. § 1983 claiming town officials had discriminatorily terminated plaintiffs' water service "in order to single [them] out and punish them for their noncompliance with certain building ordinances." *Id.* at 6. Plaintiffs did not assert that the award of damages was at all dependent on or even related to the unconstitutionality of the local law. Holding that plaintiffs were entitled to prosecute their § 1983 claim for damages, the Court not surprisingly dismissed the separate constitutional challenge as moot. *Id.* *Stokes* is not *Powell*, not even close.

Similarly, the court in *Dean v. Blumenthal*, 577 F.3d 60 (2d Cir. 2008), had no occasion to consider or apply the *Powell* rule. There, an appeal was taken from the district court's dismissal of a declaratory judgment claim seeking to invalidate the Connecticut Attorney General's ban on political contributions to Attorney General candidates by law firms doing work for the state. *Id.* at 62. The complaint, brought by an unsuccessful candidate for the office, additionally sought damages in the form of foregone political contributions, which the district court had also

10

dismissed.  *Id.* at 62-63.  The Court of Appeals affirmed dismissal both of the damages claim on

the ground of qualified immunity and of the declaratory judgment claim because of mootness (no

risk of recurrence because legislation at the center of the declaratory relief claim had not been

enforced for over six years and had since been expressly superseded by new legislation).  *Id.* at

65-67.  Since there was no viable damages claim to which the now moot declaratory judgment

claim could attach, the *Powell* issue did not even arise.

Sabre's final case, *Velvet Underground v. Andy Warhol Foundation for the Visual Arts*,

890 F. Supp. 2d 398 (S.D.N.Y. 2012), is even farther afield.  There, a disbanded rock group, for

whom Andy Warhol had designed an iconic album cover, sued Warhol's foundation claiming its

licensing of the graphic violated their rights.  *Id.* at 401-02.  Plaintiffs asserted a cause of action

for a declaration that the Foundation owned no enforceable copyright in the design.  *Id.* at 402.

The court dismissed it as mooted by the Foundation's "unconditionally and irrevocably cove-

nant[ing]" not to sue the defunct rock group.  *Id.* at 404-07.  Unlike *Powell* and the situation

here, plaintiffs asserted no damage claim on the alleged copyright violation, as they had never

been damaged.  Their request for an accounting under 28 U.S.C. § 2202 (authorizing "[f]urther,

necessary or proper relief based on a declaratory judgment") could not survive, the court deter-

mined, because by statute ancillary relief could only be afforded to a party "whose rights have

been determined by such judgment."  *Id.* at 410 (quoting 28 U.S.C. § 2202).  And since plaintiffs

were not entitled to a declaratory judgment trial, there would never be occasion for a Section

2202 ancillary proceeding after their rights had been determined.  *Id.*[9]

---

[9] Sabre also argues that "Supreme Court precedent requires that each claim *independently* satisfy the case or contro-
versy requirement."  (Motion at 5) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-54 (2006)).  However,
*DaimlerChrysler* held only that "a plaintiff must demonstrate **standing** for each claim he seeks to [assert]."  *Daim-
lerChrysler*, 547 U.S. at 352 (emphasis added).  US Airways has standing to pursue both its claim for damages and
declaratory relief, because standing is evaluated based upon "the facts **as they exist when the complaint is filed**."
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992) (emphasis in original) (citation omitted).

Finally, Sabre presumes it can piecemeal US Airways claims, pick off only the $20 damage claim with a Rule 68 offer, and then argue no damage claim remains to serve as a *Powell* predicate for declaratory relief.  (Motion at 5-6).  But as we have seen before, Rule 68 requires that a defendant confess judgment on all pending claims and grant the plaintiff all the relief he seeks, not just some it.  A purported Rule 68 offer that does not conform with that standard has no legal significance, and cannot moot US Airways' claims.

### B.      US Airways Declaratory Judgment Claim Is Just As Ripe Now As It Was Before the 2011 Contract Expired Even Putting Aside *Powell*

The cases on which Sabre relies to support its mootness assertion stand in sharp contrast to the continuing live nature of the dispute here.  In each of them, the underlying controversy was dead as a doornail.  In *Velvet Underground,* the "Warhol Foundation 'unconditionally and irrevocably' agreed to 'refrain from making any claim(s)'" for copyright infringement against the plaintiff.   890 F. Supp. 2d at 402.  In *Dean v. Blumenthal,* the Connecticut Attorney General had suspended the allegedly unconstitutional political contribution policy six years earlier, and it had since been expressly superseded by new legislation.  557 F.3d at 65.  In *Stokes,* the village had "entered into a binding, judicially enforceable agreement," barring it from ever enforcing the challenged ordinance. 818 F.2d at 5.  In each case, the controversy had long since been put to rest with no likelihood of being revived.

In contrast, Sabre's imposition of Contractual Restraints is not only likely to recur, it is ongoing.  By virtue of its merger with American Airlines' parent, US Airways inherited essentially the same restraints as set out in its 2011 Sabre contract that expired last year.  As shown in the following matrix, the most pernicious of them are as operative today as they were throughout the term of the 2011 contract.

| Provision | 2011 US Airways TMA (PX-006) | 2012 AA Content Agreement (PX-066) |
|---|---|---|
| No Discount[10] | ██████████████████ | ██████████████████ |
| No Charge-Back[11] | ██████████████ | ██████████████████ |
| Parity[12] | Requires "parity" across reservation outlets as to flight availability, marketing and promotion, and subscriber and customer benefits. | Requires terms ████████ ██████████████ with ████████ as to availability and subscriber and customer benefits. |

And, as the Court will see from the recently filed direct testimony of Nobel Laureate economist, Joseph Stiglitz, those same restraints have been imposed on all the major legacy airlines.[13]

The "case or controversy" clause exists to ensure that judicial resources will be spent only on disputes that really matter and to assure that issues are litigated only by parties with clear and substantial interests at stake. *See GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 382-83 (1980). Both factors are fully satisfied here. A decision in this case really matters to the parties and to the public. Sabre's Contractual Restraints prohibit airlines from offering lower fares on travel booked through lower-cost distribution channels. So they adversely affect both airlines, which cannot promote competition by rewarding the use of lower-cost distribution, and travelers, who are deprived of lower fares. And, as Professor Stiglitz makes clear in his re-

---

[10] *Compare* PX-006, Section 3(a) and Attachment B (Full content defined to include ████████ ████████ with PX-066, Section 3(a) and Attachment B (Full content defined to include ██████ made available on any other distribution channel).

[11] *Compare* PX-006, Attachment D, Section 3 *with* PX-066, Attachment C, Section 2(a), SBR-40003419 at 3434.

[12] *Compare* PX-006, 3(a), 3(b), 4(b), and Attachments B, C, and D *with* PX-066, Section 3(a) and 3(i), and Attachment C, Sections 2(b), (c) and (d), SBR-40003419 at 3419-21, 3434.

[13] Direct Testimony of Professor Joseph E. Stiglitz, ¶ 42, n.45.

cently submitted trial testimony, this is only the first link in the chain of unfortunate and anti-competitive consequences.[14]

A decision will also have enormous, if slightly delayed, implications for the immediate parties. The Sabre contract currently applicable to US Airways' bookings expires in another twenty-eight months, and twenty-four months later US Airways will be freed of all American-settlement imposed restrictions. Final judicial resolution of the lawfulness of the restraints will likely arrive just as the parties begin to remake their contract. If matters are resolved in US Air-ways' favor, Sabre will be hard-pressed to insist that the new combined US Airways-American carrier submit to them again, or threaten again to take the airline dark if it resists (as it has re-peatedly threatened both US Airways and American in the past). This fits to a tee the circum-stances the courts have said make declaratory relief most appropriate: when the declaration "will a serve a useful purpose in clarifying and settling the legal relations in issue" and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969). Sabre could, of course, obviate the need for a declaration by abandoning the challenged conduct, as did the de-fendants in *Stokes*, *Dean* and *Velvet Underground*, but we expect that offer will not be forthcom-ing.

Though US Airways may not economically benefit from a favorable ruling immediately (though it would welcome the repayment of its attorneys' fees), the value of allowing the case to proceed should also take into account the private attorney general role that antitrust plaintiffs

---

[14] Professor Stiglitz has offered testimony that "[t]he provisions in the 2006 TMA and 2011 TMA significantly dis-tort economic outcomes. . . . As a result of reduced competition, Sabre commands a higher booking fee from US Airways than would exist in a competitive market. As a result of the higher fee paid by US Airways to Sabre, ticket prices for all US Airways' flights are higher than they would be if Sabre had faced meaningful competition. . . . Without meaningful competition, Sabre has less incentive to offer innovative and beneficial services to travelers or travel agencies. The consequences of these restraints are higher prices, diminished entry, and less innovation." Di-rect Testimony of Professor Joseph E. Stiglitz, ¶ 11.

play in our system of enforcement of the competition laws.  Antitrust cases have value beyond benefitting the litigants.  "[T]he plaintiff asserting his rights under the [Sherman] Act has been likened to a private attorney-general who protects the public's interest."  *Am. Safety Equip. Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 826 (2d Cir. 1968).  Accordingly, "the law encourages his suit to further the overriding public policy in favor of competition."  *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968), *overruled on other grounds in Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

Nor can there be any doubt about the adequacy of the parties' motivation to litigate the issues fully, fiercely and without restraint.  For US Airways, this is its opportunity to attempt to inject competitive alternatives into a GDS marketplace that last saw a successful entrant twenty-five years ago.  It is an opportunity to realign the way airlines must deal with industry partici-pants, and to bring down costs for everyone.  It presents US Airways with a chance to use fares to encourage the development and use of more efficient cost-effective distribution channels, not only for it and its merger partner, but for all other airlines as well.

Sabre will be equally motivated.  Its business model is on trial.  Hanging in the balance will be Sabre's ability to perpetuate a business the success of which hinges on paying travel agencies large incentives to remain loyal to a channel that can leverage very large booking fees from the airlines that in turn enable Sabre and its travel agency subscribers to repeat the cycle indefinitely.

Finally, consideration of the efficient use of judicial and legal resources demand that the case proceed.  Nearly a half decade of time, both the parties' and the court's, have been invested in readying this case for trial.  Nearly tens of millions of pages of documents have been ex-changed, read, digested and selected for exhibits; over three million more pages more have been

collected from third-parties; fifty-nine witnesses have been deposed.  To do all this, tens of mil-

lions of dollars have been spent by both sides to arrive at the threshold of a disposition.[15]

In the four and a half years since the case was filed, very considerable judicial re-

sources—of two federal judges—have also been invested.  The docket is now approaching four

hundred entries.  Trial has in effect commenced, the Court having received 176 pages of US

Airways' expert direct testimony together with 110 exhibits.  After all that has gone on and the

investment both by the Court and the parties in this case, it would be a colossal waste to call it

quits now, and force US Airways and another federal district judge to start all over again two or

four years from now.

## C.      Declaratory Relief Is Not Barred By The American Settlement

Sabre argues that the American settlement agreement "bars US Airways from seeking . . .

prospective relief in this case."  (Motion at 8.)  This is plainly not true, as US Airways has previ-

ously explained.  *See* Dkt. No. 304 at 6-8.  By its terms, the agreement itself bars US Airways

from seeking relief for an "injury allegedly suffered" after October 2012, and it does so only for

a limited period of time (as the Court has previously acknowledged, *see* Dkt. No. 245 at 17

("AMR did not release antitrust claims against Sabre for all conduct into eternity but for a lim-

ited period of time."))  The settlement leaves intact US Airways' right to sue for relief under the

antitrust laws for injuries suffered prior to October 31, 2012, which is exactly what it is doing.

---

[15] Though certainly not dispositive, we note that the parties have been diligent in trying to bring the case to trial sooner, indeed long before the expiration of the 2011 contract.  US Airways commenced this action on April 21, 2011, less than eight weeks after signing that contract.  Discovery proceeded at a fast pace, pausing by stipulation only for three months (July 16 to October 31, 2012) when it appeared that the issues might be resolved by the trial of American Airlines' very similar antitrust case against Sabre.  After the American case settled, on January 13, 2013, the parties jointly proposed a schedule that would have had the case trial-ready by June 2013, and when that was not acted on, a second one on July 3, 2013 that would have brought the case to trial in early 2014.  On November 8, 2013, US Airways requested a schedule that would have brought the case to trial in March 2014, a month prior to the contract's expiration, but a transfer to this Court required a partial reset. The wheels of justice turned deliberately but slowly.  For that reason, it would not only be unwarranted to declare the case moot, it would be unfair.

*See* Dkt. No. 259-28 at ¶ 5.1.5(y), (z) (barring American Airlines and future merger parents from seeking "relief [under the antitrust laws] with respect to . . . any injury allegedly suffered during the period from Execution Date through seven (7) years after.").  Sabre could have negotiated for a provision that would have killed this lawsuit altogether upon US Airways' merger with American Airlines' parent; it chose not to.

That the declaratory relief US Airways requests is very likely to have forward-looking consequences does not mean that it is barred by the American Settlement Agreement.  Sabre argues that US Airways is improperly seeking a declaratory judgment "solely for the same *prospective* purpose injunctive relief would serve," a remedy it says the Settlement Agreement precludes because it would require an allegation of current and future injury.  (Motion at 8.)  But injunctions are completely different.  When a court enters an injunction barring future conduct, a party is under a court order not to engage in that conduct and faces contempt if does so.  A declaration of parties' rights under a contract is, of course, an entirely different animal, and does not necessarily require a showing of current or future injury.  While a declaration that Sabre's past conduct violated the antitrust laws might have forward-looking effects—for example, by informing the future course of Sabre's contract negotiations—a declaratory judgment is not self-enforcing and would not place Sabre at risk of contempt for failing to conform its conduct to the declaration.  US Airways' sole remedy would be to bring suit and invoke collateral estoppel or res judicata on the basis of the declaratory judgment entered here, and a court would have to determine whether and to what extent those doctrines apply (an issue not before the Court today since all of that is speculative indeed).

Simply securing a declaratory judgment that Sabre's past conduct violates the antitrust laws thus does not transgress the Settlement Agreement in any way.  What US Airways does

17

with the declaration, should it receive one, is an entirely different matter.  While we have no intention of using a declaratory judgment for an improper purpose, whether we have done so would be a matter of contract interpretation to made in the future.  If Sabre considers a future use of a declaratory judgment to violate the Settlement Agreement, its remedy would be a breach of contract action; the remote prospect of a future breach cannot be the basis for dismissing the legitimate declaratory judgment claim US Airways has brought.

## CONCLUSION

For the foregoing reasons, US Airways respectfully requests findings that: (1) US Airways' rejection of Sabre's Rule 68 offer is of no consequence; (2) unless and until Sabre defaults, no judgment may be entered; and (3) US Airways' declaratory judgment claim remains justiciable and not moot, both because of *Powell* and as a matter of "case or controversy" jurisprudence.  For these same reasons, it respectfully asks that Sabre's motion for entry of judgment be denied.

Dated:  July 31, 2015

O'MELVENY & MYERS LLP

By: _____

Charles P. Diamond (*pro hac vice*)
  cdiamond@omm.com
Andrew J. Frackman
  afrackman@omm.com
Katrina M. Robson (*pro hac vice*)
  krobson@omm.com
Madhu Pocha (*pro hac vice*)
  mpocha@omm.com

7 Times Square
New York, New York 10036
Telephone:     (212) 326-2000
Facsimile:     (212) 326-2061

*Counsel for Plaintiff US Airways, Inc.*

18