UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

US AIRWAYS, INC.,

      Plaintiff,

-against-

SABRE HOLDINGS CORPORATION;
SABRE GLBL INC.; and SABRE TRAVEL
INTERNATIONAL LIMITED,

      Defendants.

Case No. 1:11-cv-02725 (LGS)

---

## US AIRWAYS' TRIAL MEMORANDUM OF LAW

O'MELVENY & MYERS LLP
Charles P. Diamond (*pro hac vice*)
Andrew J. Frackman
7 Times Square
New York, New York 10036
Telephone:    (212) 326-2000
Facsimile:    (212) 326-2061

*Counsel for Plaintiff US Airways, Inc.*

Table of Contents

Page

Preliminary Statement........................................................................................................ 1

Argument ........................................................................................................................... 3

I.      Sabre's *In Pari Delicto* Defense Is Invalid as a Matter of Law and Should Be
        Stricken. ................................................................................................................. 3

II.     Sabre Cannot Introduce Evidence on Topics that it Has Previously and
        Successfully Sought to Exclude.............................................................................. 7

        A.      Air Canada ................................................................................................... 7

        B.      American Airlines......................................................................................... 9

III.    The Second Circuit's Recent *MacDermid* Decision.......................................... 12

i

Table of Authorities

Page(s)

**Cases**

*Columbia Nitrogen Corp. v. Royster Co.*,
    451 F.2d 3 (4th Cir. 1971) ....................................................................................5

*F.T.C. v. Ind. Fed'n of Dentists*,
    476 U.S. 447 (1986) ..........................................................................................12

*General Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*,
    830 F.2d 716 (7th Cir. 1987) ..............................................................................5

*Laumann v. Nat'l Hockey League*,
    907 F. Supp. 2d 465 (S.D.N.Y. 2012)................................................................12

*MacDermid Printing Solutions LLC v. Cortron Corp.*,
    2016 WL 4204795 (2d Cir. Aug. 10, 2016)................................................3, 12, 13

*N.Y. Citizens Comm. on Cable TV v. Manhattan Cable TV, Inc.*,
    651 F. Supp. 802 (S.D.N.Y. 1986)....................................................................12

*Perma Life Mufflers v. Int'l Parts Corp.*,
    392 U.S. 134 (1968)........................................................................................4, 6

*San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*,
    2015 WL 8482187 (N.D. Cal. Dec. 10, 2015).....................................................4

*Sullivan v. Nat'l Football League*,
    34 F.3d 1091 (1st Cir. 1994)...........................................................................5, 6

*Tops Markets, Inc. v. Quality Markets, Inc.*,
    142 F.3d 90 (2d Cir. 1998)................................................................................13

*United States v. Rosa*,
    11 F.3d 315 (2d Cir. 1993)..................................................................................8

*United States v. Visa U.S.A., Inc.*,
    163 F. Supp. 2d 322 (S.D.N.Y. 2001)................................................................13

**Rules**

Fed. R. Civ. P. 12(f)(1) ............................................................................................1, 4

## PRELIMINARY STATEMENT

US Airways submits this trial memorandum to provide additional discussion of the remaining legal issues to be decided in this case before the start of trial.

*First*, it is now clear that Sabre's *in pari delicto* or "equal involvement" defense is the centerpiece of its case, as demonstrated by Sabre's decision to feature it as the first question on its proposed verdict form.  To the extent the Court has not granted US Airways' Motion *in Limine* No. 7, it should use its discretion under Federal Rule of Civil Procedure 12(f)(1) to strike Sabre's *in pari delicto* defense now.  Waiting to resolve this on a motion for judgment as a matter of law after trial will prejudice US Airways because it will permit Sabre to infect the jury with Sabre's legally deficient "equal involvement" defense.  It is appropriate to strike this defense now because even if the Court were to agree with Sabre that the *in pari delicto* defense is available in Sherman Act cases in the Second Circuit, the defense would be available only in extreme circumstances when the plaintiff has actively participated in the establishment of the challenged restraints, affirmatively sought them out, and derived benefit from them.  Accordingly, it does not apply to the facts of this case, even accepting those that Sabre has indicated it will present.  (*See* Sabre's Mem. of Law in Opp'n to US Airways' Mot. *in Limine* No. 7 to Preclude Argument Concerning Sabre's Affirmative Defenses ("Sabre's Mem. of Law in Opp'n to US Airways' Mot. *in Limine* No. 7") at 6–9.)  There is no legitimate reason to permit Sabre to confuse the jury and complicate the case with a defense that is defective as a matter of law.

*Second*, through its deposition designations, it is also now clear that Sabre intends to offer evidence in this case about its commercial relationship with other airlines, including Air Canada and American Airlines ("American").  Yet this is the very type of evidence that Sabre sought to exclude and the Court excluded.  (*See* Dkt. No. 456, Order Granting Sabre's Mot. *in*

*Limine.*)  Specifically, Sabre is relying on deposition testimony concerning the Air Canada

booking fee that arose out of a commercial disagreement that began in 2006 when the companies

stalemated over Air Canada's refusal to allow Sabre to distribute its low-cost "Tango" fares—the

very evidence that Sabre argued to preclude.  (*See* Dkt. No. 408, Sabre's Mot. *in Limine* to

Exclude "Prior Bad Acts" Evidence Relating to Disputes with Third Parties ("Sabre's Prior Bad

Acts MIL") at 4, 9, 15–17.)  This Court should not permit Sabre to introduce its story concerning

Air Canada, including its reliance on the Air Canada ███████████████████████, if

US Airways is not able to present evidence explaining the origins of that fee.  The Court should

bar this one-sided evidence.

Likewise, the Court should bar the hundreds of pages of Sabre-designated deposition

testimony of American witnesses that Sabre intends to use to show that American willingly

agreed to the contract restraints in 2006, and that Sabre did not possess leverage that permitted it

to foist the restraints on American.  Again, this evidence will be a time-consuming distraction

from the issues in the case, and is the very type of evidence of the dealings between Sabre and

other airlines that Sabre sought to preclude in its motion *in limine* regarding prior airline

disputes.  (*See* Dkt. No. 408, Sabre's Prior Bad Acts MIL.)  There, Sabre argued that its

commercial dealings with other airlines did not "shed any meaningful light" on the issues in this

case and would burden the trial with unnecessary witnesses and evidence.  (*See id.* at 2–3, 15.)

But what Sabre failed to disclose in its briefing was that it intended to offer its own evidence

concerning its dealings with Air Canada and American.  Such a tactic should not be

countenanced.  And to the extent the Court permits Sabre to flood the record with this evidence,

US Airways must be permitted to introduce evidence countering Sabre's mischaracterizations to

show the true nature of Sabre's relationships with both airlines.

*Third*, US Airways shares its views with the Court on the Second Circuit's recent decision in *MacDermid Printing Solutions LLC v. Cortron Corp.*, 2016 WL 4204795 (2d Cir. Aug. 10, 2016), on which Sabre relies.

## ARGUMENT

I.  **Sabre's *In Pari Delicto* Defense Is Invalid as a Matter of Law and Should Be Stricken.**

Sabre's primary defense—as evidenced by its very first proposed jury question—is that US Airways is barred from recovering any damages because it had "substantially equal involvement" in bringing about the challenged restraints.  (*See, e.g.*, Sabre's Aug. 26, 2016 Proposed Verdict Form, p. 1, Q. No. 1 ("Do you find by a preponderance of evidence that US Airways is equally responsible for the terms of its contract with Sabre?").)  But that cornerstone of Sabre's case lacks any legal merit because, as US Airways has explained in its Motion *in Limine* No. 7 (Dkt. No. 486, US Airways' Mem. of Law in Support of its Mot. *in Limine* No. 7 to Preclude Argument at Trial Concerning Sabre's Legally Deficient Affirmative Defenses), Sabre has not proffered any facts that even approach those that would be required to establish an *in pari delicto* or "equal involvement" defense,[1] even if that defense were available in antitrust cases in this Circuit.  There is no good reason to permit Sabre to present such a flawed theory to the jury, either during the presentation of evidence or at the close of the trial.  A curative instruction fixes nothing, because by then Sabre will have infected the jury with a false apprehension of the law and extensive prejudicial testimony.  If the Court does not grant US Airways' Motion *in Limine* No. 7 and exclude argument relating to Sabre's *in pari delicto* defense, US Airways requests that the Court exercise its discretion to strike this defense under

---

[1] Sabre refers to this defense as the "equal involvement defense" to avoid the Supreme Court's ruling in *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134 (1968).

Rule 12(f)(1) now before Sabre can prejudice the jury. *See San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*, 2015 WL 8482187, at *2 (N.D. Cal. Dec. 10, 2015) ("Under Rule 12(f)(1) a court, in its discretion, may act at any time" to strike an invalid defense.).

As US Airways has demonstrated in prior submissions, *in pari delicto* has never been recognized in this Circuit in Sherman Act cases. But even if the Second Circuit were to recognize such a defense, Sabre could never establish it here. Moreover, the facts here are almost identical to those in *Perma Life* and fall far outside the narrow ambit of the defense as permitted by the out-of-circuit authority on which Sabre relies. Those cases all hold that *in pari delicto* is available *only* where the plaintiff actually participated in creating or pressing for the challenged restraints, and not simply where the plaintiff accepted restraints the defendant proposed, perhaps even trading them off for other contractual concessions:

- In *Sullivan v. National Football League*, 34 F.3d 1091, 1107–09 (1st Cir. 1994), the First Circuit held that the district court committed reversible error by failing to give a jury instruction on an *in pari delicto* defense asserted by the NFL against claims by a former team owner that the league had violated the Sherman Act by imposing a policy that restricted owners from selling shares of their teams to the public. The First Circuit explained that: "In order to establish an 'equal involvement' defense, an antitrust defendant must prove, by a preponderance of the evidence, that the plaintiff bears at least substantially equal responsibility for any anticompetitive restriction by creating, approving, maintaining, continually and *actively supporting, relying upon, or otherwise utilizing and implementing, that restriction to his or her benefit*." *Id.* at 1107 (emphasis added). It explained further that evidence that the plaintiff "was substantially responsible for maintaining and otherwise effectuating the policy" would support the defense, while evidence that he "benefited from the challenged policy or failed to object to the policy, without more" would be insufficient. *Id.* at 1108. The court concluded that the defense was available because, among other things, the plaintiff had participated in a committee that established the policy and had supported the policy in sworn testimony in prior litigation. *Id.* at 1108.

- In *General Leaseways, Inc. v. National Truck Leasing Association*, 830 F.2d 716, 722 (7th Cir. 1987), the plaintiff voted for the very restriction it challenged as anticompetitive, and "even pressed for its enforcement against other Association members on occasion." The court affirmed the jury's finding that *in pari delicto* applied based on evidence in the record that the plaintiff had "approved and supported" the restrictions. *Id.*

- In *Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 16 (4th Cir. 1971), the Fourth Circuit affirmed a verdict finding equal involvement where the Sherman Act counterclaim plaintiff had "formulate[d] and equally participated" in a reciprocal dealing arrangement for its own financial benefit and then brought suit to challenge that arrangement only after a "declining market ma[de] its purchases unprofitable."

The facts of this case have nothing in common with these extreme fact patterns. Negotiating and ultimately agreeing to the 2011 contract is not the same as establishing, formulating, pressing for, and equally benefiting from the challenged restraints. Sabre's anti-steering rules were entirely of its own creation, and Sabre does not suggest otherwise. The most Sabre can muster is the halfhearted assertion that US Airways somehow "benefit[ed]" from the restraints. (*See* Sabre's Mem. of Law in Opp'n to US Airways' Mot. *in Limine* No. 7 at 6.) But US Airways would have had the option of selling the same number of tickets through Sabre with or without the restraints—unless, of course, Sabre is admitting that it conditioned US Airways' participation in the Sabre network at a reasonable price on US Airways' acceptance of the restraints. And that would constitute the very kind of economic coercion the Supreme Court addressed in *Perma Life*. The so-called "benefit" that Sabre contends US Airways enjoyed here is no different from the benefit that the Midas dealers received from agreeing to Midas's anticompetitive contract terms. That was insufficient to support the defense in *Perma Life* and it is insufficient here. *See Sullivan*, 34 F.3d at 1108 (that the plaintiff "benefited from the challenged policy or failed to object to the policy, without more, is not sufficient to show 'substantially equal participation.'"). Moreover, availing itself of a lower price is a benefit that flows from Sabre's purported exchange of preferred pricing for the restraint, not from the restraint itself.

Simply stated, this is a flawed defense based on a gross attempt to expand the law and to apply it to facts that *__no__* court has ever come close to holding sufficient in an antitrust case. The

Court should not condone Sabre's extreme position and should decline Sabre's invitation to be the first in this Circuit to recognize *in pari delicto* as an antitrust defense—much less under facts that would not withstand scrutiny even under the limited circumstances recognized in other circuits.  Sabre's overreaching view of the in *pari delicto* defense would all but eliminate Section 1 cases arising from anticompetitive contracts imposed on a plaintiff.  The Court should strike the defense here to avoid prejudice, protect the jury from misleading argument, and streamline the trial.

## II.     Sabre Cannot Introduce Evidence on Topics that it Has Previously and Successfully Sought to Exclude.

### A.     Air Canada

In its motion *in limine*, Sabre successfully argued to block evidence concerning the dispute between Sabre and Air Canada that resulted in the imposition of the punitive Air Canada booking fee.  (*See* Dkt. No. 408, Sabre's "Prior Bad Acts" MIL.)  Now that it has neutered US Airways' evidentiary presentation, Sabre seeks to introduce ███████████████████ ██████████████████████.  Allowing Sabre to introduce one-sided evidence (*i.e.*, the booking fee without the facts providing the context for how it was reached) would be highly prejudicial to US Airways and should not be permitted.

Sabre argued to this Court that allowing evidence of its dispute with Air Canada "would require evidence and testimony regarding the Sabre / Air Canada contract terms, what those terms provided . . . what Air Canada's booking fees were, how they were set, and why they increased over time."  (*Id.* at 9.)  But Sabre has now designated deposition testimony of Graham Wareham—Air Canada's former head of distribution and the only witness from that airline who was deposed—on those same exact subjects.  Indeed, Mr. Wareham was the sole Air Canada witness whom US Airways indicated it would call, yet Sabre objected to introducing any

evidence of disputes with Air Canada as irrelevant and prejudicial. Even though it sought to block the testimony of Mr. Wareham that US Airways sought to introduce, Sabre has now designated testimony from Mr. Wareham stating that (i)



[3]

Sabre cannot have it both ways, and the Court should bar Sabre from introducing this evidence just as it barred US Airways' proffered evidence concerning Air Canada. US Airways has prepared its case in reliance on the Court's order. US Airways has not designated all of the deposition testimony that it would have relating to the Air Canada dispute, it has not included any exhibits related to the dispute on its list, and it has not asked Mr. Wareham to block off his calendar to testify live at trial.[4] US Airways would have taken all three of these steps if not for the Court's order granting Sabre's request. Allowing Sabre to reverse course now would be grossly unfair.

If the Court allows Sabre to introduce evidence relating to Air Canada, it should also allow US Airways to introduce the evidence it would need for a fair rebuttal. *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993) ("The rule of 'opening the door,' or 'curative

---

[2] *See* Deposition Transcript of Graham Wareham (June 27, 2012) ("Wareham") at Dep. Tr. 233:15-22, 234:13–235:9, 238:9–14.

[3] *See id.* at 282:7–14.

[4] US Airways' deposition designations and proposed trial exhibits have assiduously avoided the merits of any disputes Sabre had with other airlines. But Sabre's ability to deny its services to airlines—specifically by selectively biasing airline listings on agents' computer screens—remains critical to show how Sabre can wield its market power without harming its own business, particularly because Sabre's economist, Dr. Kevin Murphy, contends that it cannot do so with respect to US Airways. *See* Direct Testimony of Kevin Murphy, Ph.D. ¶¶ 54-64.

admissibility,' gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence.").

Sabre's Air Canada tale leaves out critical information that the jury should hear to put the ███████████████████████ in context.  Air Canada's ████████████████, as Sabre's one-sided presentation is meant to suggest, simply because ████████████████████████████████ ███.  Rather, Air Canada is the poster child for the power that Sabre has (and the punitive nature with which it wields that power) to ████████████████ when it can isolate an airline and exploit its dependency on Sabre to reach high value-added customers.  Among other things, Sabre's story conveniently omits that ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████.  These facts and others that Sabre has sought to exclude support US Airways' arguments regarding Sabre's market power and its contention that the ███████████

████████████████████████████████████████████████

████████████████  If Sabre's relationship with Air Canada is part of this case, it would be fundamentally unfair for the jury to hear only those snippets of the story that Sabre has selected. Rather, the jury should hear the full story of the relationship between Sabre and Air Canada, including the dispute that led to the imposition of the very ████████████ that Sabre is touting as a benchmark.

### B.    American Airlines

The story with American is similar.  Sabre successfully argued that US Airways should be precluded from introducing evidence of Sabre's dispute with American because that "would require a series of time intensive mini-trials regarding the specific contract provisions under which the dispute arose, the negotiating history of those provisions, the particular leverage each party to the contract had in such negotiations . . . and more."  (Dkt. No. 408, Sabre's Prior Bad Acts MIL at 6.)[5]  Yet Sabre has now designated more than 250 pages of testimony from four former American employees—Daniel Garton, Beverly Goulet, Charles Sultan, and William Hopping—most of which relates to those precise issues.  Indeed, Sabre has designated broad swaths of testimony regarding what it characterizes as intense contract negotiations between American and Sabre in 2006,[6] the "leverage" that American supposedly had in those negotiations,[7] and the specific "unwind" provision in the 2006 contract whose interpretation the

---

[5] *See also id.* at 7–8 ("Sabre would be compelled to elicit evidence describing its negotiations with American, the contract that resulted from those negotiations, why the [2006] American contract included the specific unwind provision (which is not in the US Airways agreement) that led to the dispute, what circumstances led Sabre to bias American flights over a five-day period in 2011, why Sabre's conduct was appropriate under the terms of its agreement with American, the harm (or lack thereof) that resulted from the parties' actions, the terms of the Settlement Agreement and its preclusion of any US Airways challenge to such contract terms, and more.").

[6] *See, e.g.*, Deposition of Charles L. Sultan (Apr. 13, 2012) ("Sultan") at 17:11–18:14; *id.* at 94:4–15 (characterizing the negotiations as "hard fought"); *id. a*t 21:22–22:8 (number of drafts exchanged); *id.* at 18:5 ("This was negotiated for, I think, over a year."), Deposition of William G. Hopping (Aug. 31, 2012) ("Hopping AA") at 28:23–29:2; Deposition of William G. Hopping (Feb. 24, 2012) at 275:15–25 ("And that contract [the 2006 agreement with Sabre] was a result of both parties taking positions and giving and taking and getting what they could out of the contract, right?").

[7] *See, e.g.*, Deposition of Daniel P. Garton (June 20, 2012) ("Garton") at 87:3–89:23 (American's "willingness to discontinue participation in one or more GDS's" was "one of the points of leverage that American had"); *id.* at 121:8–122:9 ("American's booking source premium strengthened its negotiating position with Sabre, correct?"); *id.* at 192:3–20 ("Do you agree that in the 2006 negotiations for the Sabre contract, American was able to use whatever leverage it had to negotiate hundreds of millions of dollars in booking fee discounts?'); Sultan at 64:8–65:13 ("So, again, the expiration of the marketing cooperation agreement, or MCA, was another way that American put pressure on Sabre to come to the table and reach an agreement?"); *id.* at 144:21–145:22 (suggesting that impending contract expiration date gave American increased leverage); *id.* at 167:20–169:4 (noting that American "had some leverage" based in part on its status as "the largest carrier in the world").

parties disputed in 2011.[8]  Sabre's attempt to rely on the unwind provision is particularly

egregious because Sabre sought to exclude as irrelevant evidence relating to the dispute over *that*

*very provision* because it is "not found in the US Airways' contract."  (Dkt. No. 408, Sabre's

Prior Bad Acts MIL at 8.)

      What is more, Sabre previously represented to this Court in support of its motion *in*

*limine* that three of the four witnesses that it now intends to call by deposition would be

necessary *only if US Airways were allowed to introduce evidence of Sabre's dispute with*

*American*.  (*See* Dkt. No. 477, Sabre's Reply in Support of Its Mot. *in Limine* to Exclude "Prior

Bad Acts" Evidence Relating to Disputes with Third Parties at 5 ("Just to rebut these disputed

claims, Sabre would be compelled to introduce [testimony] from American's Chief Restructuring

Officer, Beverly Goulet"); *id*. at 5 n.2 ("In addition to witnesses who are currently likely to

testify at trial, Sabre would also need to call . . . American witnesses Daniel Garton and Charlie

Sultan to testify about the American dispute.").)  Sabre has offered no justification for why it

needs to call these witnesses by deposition now that the Court has granted Sabre's motion to

exclude—and none exists.

      As with Air Canada evidence, US Airways relied on the Court's prior order in preparing

its case, including its pretrial submissions.  Accordingly, it would prejudice US Airways if Sabre

were now permitted to offer evidence on topics that it successfully sought to exclude previously.

---

[8] *See* Garton at 164:23–165:24; *id*. at 166:17–167:22 ("In fact what happened is American and Sabre in the final
agreement agreed to language that would let the contract be unwound after year three, but it was up to -- American
was the one who had the option to take those steps?"); *id*. at 168:7–23 ("And you agree that the unwind provision in
the contract where the contract could be terminated based on a certain series of steps after three years was a
compromise position that both parties reached?"); *id*. at 188:20–189:4 ("Q. And by September 1st of 2009, there
were no restrictions in the contract on marketing Direct Connect any way you pleased?  A. If we were prepared to
have the unwind clause implemented.").

Nevertheless, if the Court does allow Sabre to offer its evidence concerning the 2006 negotiations, Sabre has opened the door to the 2010–2011 dispute so that the jury can have a complete picture of Sabre's relationship with American.  If events in 2006 are relevant to show that Sabre *lacked* market power over American, then events in 2010 and 2011 must be at least equally relevant to show that Sabre *possessed* market power.  In 2006, American caved to Sabre's contractual demands.  In 2010, American did not at first cave, only to be faced with Sabre's retaliation that brought American to resolution.  In other words, if Sabre is permitted to call witnesses from 2006 to show that American voluntarily acceded to its anti-steering rules, then US Airways should be permitted to show that more recently, just the opposite happened. That is exactly the purpose for which US Airways tendered the American Airlines evidence in the first place.  When American sought to bypass Sabre by offering travel agencies a lower-cost way of connecting directly to it, Sabre retaliated by, among other things, biasing American flights in the Sabre system and organizing a boycott of American among the leading corporate travel agencies, ultimately succeeding in forcing American into renewing the challenged contract restraints.

## III.    The Second Circuit's Recent *MacDermid* Decision

In its Memorandum of Law in Support of its Proposed Jury Instructions ("Sabre Mem.") (Dkt. No. 514), Sabre discussed a recent Second Circuit decision, *MacDermid Printing Solutions LLC v. Cortron Corp.*, 2016 WL 4204795 (2d Cir. Aug. 10, 2016), suggesting that it changed the law in some relevant respect.  Since this is a recent decision, we wanted to share with the Court our views as to how it relates to this case.

First, *MacDermid* confirmed that "reduced consumer choice can constitute harm to competition." *MacDermid*, 2016 WL 4204795, at *9; *id.* at *7 ("We have suggested that actions that reduce consumer choice are inherently anticompetitive.").  This dispels any uncertainty

about whether the jury should be instructed that lack of consumer choice is competitive harm. *See Sabre* Mem. at 2–3.[9]  Contrary to Sabre's assertion, the answer is yes.

Second, *MacDermid* does not undermine US Airways' position—consistent with its proposed jury instructions—that it may establish adverse effects on competition either "directly" or "indirectly." *See MacDermid,* 2016 WL 4204795, at *14 (explaining that a plaintiff can meet its initial burden "either directly (by offering evidence of higher prices, lower output, or reduced quality in the relevant market) or indirectly (by showing that the defendant exercised 'market power' in the relevant market, as well as some other ground for believing that the challenged behavior has harmed competition)."). The crux of *MacDermid* is that proof of competitive harm cannot be speculative or hypothetical. *Id.* at *7. Consistent with *MacDermid*, US Airways will prove adverse effects on competition in the form of increased prices, reduced innovation, reduced consumer choice, and excluded competitors, all of which have been repeatedly recognized as evidence of competitive harm, and any of which would be sufficient to establish competitive harm by itself. *See id.* at *7–8 (plaintiff can show competitive harm by reduced "consumer choice," or "increased prices"); *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 100 (2d Cir. 1998) (excluded competitors); *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322, 408 (S.D.N.Y. 2001) (reduced innovation).

---

[9] *See also F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447, 459 (1986) ("Absent some countervailing procompetitive virtue . . . an agreement limiting consumer choice by impeding the ordinary give and take of the market place cannot be sustained under the Rule of Reason."); *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 490 (S.D.N.Y. 2012) (Plaintiffs "have alleged the anticompetitive effect of 'forc[ing] ... consumers to forego the purchase of [these games] from other distributors [the individual clubs]' resulting in ***decreased consumer choice*** and increased price— an allegation that states an injury to competition.") (emphasis added); *N.Y. Citizens Comm. on Cable TV v. Manhattan Cable TV, Inc.*, 651 F. Supp. 802, 810 (S.D.N.Y. 1986) ("lack of choice and diminution in quality have been seen as manifestations of injury to competition").

Dated:  August 31, 2016

O'MELVENY & MYERS LLP

By:

Charles P. Diamond (*pro hac vice*)
Andrew J. Frackman
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
cdiamond@omm.com
afrackman@omm.com

*Counsel for Plaintiff US Airways, Inc.*