# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK 10001-8602

———

TEL: (212) 735-3000

FAX: (212) 735-2000

**www.skadden.com**

DIRECT DIAL
212-735-3834
DIRECT FAX
917-777-3834
EMAIL ADDRESS
BORIS.BERSHTEYN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

March 30, 2022

**VIA ECF**

Hon. Lorna G. Schofield
United States District Court Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

>    RE:   *US Airways, Inc. v. Sabre Holdings Corp., et al.*,
>          No. 1:11-cv-02725, Pre-Motion Conference Regarding Motion to Exclude
>          <u>USAir's Damages Estimates Between April 21, 2007 and February 23, 2011</u>

Dear Judge Schofield:

In light of the Court's summary judgment decision (ECF No. 1129 ("Op.")), defendants (collectively, "Sabre") write to respectfully request a pre-motion conference regarding a motion to exclude certain aggregate damages estimates from Dr. Rosa Abrantes-Metz because those estimates no longer fit the scope of USAir's available damages recovery. In particular, this Court held that USAir "cannot recover damages from Sabre's alleged conduct to maintain monopoly power if that conduct was merely the performance of the 2006 Contract." (Op. 13.) Rather, to recover damages, "both the conduct and resulting injury" must have occurred between 2007 and 2011 and be "independent of the 2006 Contract." (*Id.*) As detailed below, Dr. Abrantes-Metz's damages estimates for the period between April 21, 2007 and February 23, 2011 incorporate estimates of damages allegedly caused by mere performance of the 2006 Contract (for which USAir cannot recover) and do not disaggregate alleged harm caused by any other alleged acts after April 2007 (for which USAir may potentially recover). Sabre is mindful that it sought to exclude portions of Dr. Abrantes-Metz's testimony on other grounds, and respectfully seeks leave to brief this basis for exclusion promptly after the Court's summary judgment opinion.

In antitrust cases, damages calculations must "provide the jury with a reasonable basis upon which to estimate the amount of [the plaintiff's] losses" caused by conduct for which the plaintiff may recover, and the amount of losses caused by "other factors" for which the plaintiff may not recover. *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1378-79 (2d

Hon. Lorna G. Schofield
March 30, 2022
Page 2

Cir. 1988).  Accordingly, damages calculations fail when they "identif[y] damages that [were] not the result of the wrong," and provide no means to disaggregate those damages from the overall calculation.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 36-37 (2013).  As the leading antitrust treatise explains, an "issue of disaggregation" arises when a plaintiff provides an "aggregated damages estimate" for "multiple counts" in a case, but "some counts [are] dismissed on summary judgment," and as a result, there is "no way to eliminate the damages allegedly flowing from those [dismissed] counts from a global damage calculation."  Areeda, Antitrust Law ¶ 392g (4th & 5th Eds. Sept. 1, 2021).

In deriving aggregated estimates of USAir's purported damages, Dr. Abrantes-Metz relied on a "characterization of the but-for world" (ECF No. 1051, USAir Response to Asserted Fact 53) that reflected the elimination of pre-2007 conduct, especially the 2006 Contract.  USAir asserts that Sabre's agreements with airlines contain full content terms that prevent airlines from "encourag[ing] customers to use channels which were more efficient (cost less), in part by offering differentiated content on alternative distribution channels."  (Stiglitz Opening Report ¶ 263.)  According to USAir, if such content were available outside of Sabre's GDS—as in a but-for world without full content agreements, including the 2006 Contract—travel agencies "would demand that Sabre unwind the various barriers it erected to booking outside the Sabre system . . . and Sabre would lose the market power that it derived from being the exclusive pipe connecting the airlines to Sabre-subscribing travel agencies."  (*Id.*)  Indeed, USAir has made clear that "the challenged conduct" at issue in this case "first and foremost, consists of [the full content] provisions in the 2006 and 2011 TMA contracts between Sabre and [USAir] (and in similar contracts that Sabre has with other airlines)."  (*Id.* ¶ 92.)

At summary judgment, the parties disputed whether the statute of limitations under Section 2 of the Sherman Act could restart upon an act that amounted to mere performance of the 2006 Contract—such as compliance with allegedly anticompetitive non-monetary terms and allegedly inflated fees USAir paid to Sabre under the 2006 Contract.  (ECF No. 1039 at 9-11; ECF No. 1050 at 13-18.)  As under Section 1 of the Sherman Act, the Court held that mere contractual performance does not "restart[] the statute of limitations," and thus, precluded USAir from recovering damages from the mere "performance of the 2006 Contract."  (Op. 12-13.)  But the Court also held that USAir could seek damages to the extent it could prove unlawful monopolistic conduct "independent of the 2006 Contract and within the four years preceding the filing of this action in 2011," which USAir asserts prevented it from "be[ing] able to move its bookings to alternative distribution channels."  (*Id.* 13.)

Based on the summary judgment ruling, Dr. Abrantes-Metz's damages estimates for the period between April 21, 2007 and February 23, 2011 should be excluded because they include alleged harm resulting from mere "performance of the 2006 Contract" and do not disaggregate alleged harm resulting from post-2007 conduct that is "independent of the 2006 Contract."

***First***, in modeling USAir's alleged "overcharge" damages in this period, Dr. Abrantes-

Hon. Lorna G. Schofield
March 30, 2022
Page 3

Metz calculates damages resulting from mere payment of the booking fee set in the 2006 Contract (for which USAir cannot recover), without disaggregating any purported harm from any other alleged conduct.  That is, Dr. Abrantes-Metz calculates the difference between the booking fee USAir paid to Sabre in the actual world (as set in the 2006 Contract), and the booking fee USAir allegedly would have paid to Sabre in the but-for world.  (Abrantes-Metz Opening Report ¶¶ 151-153 & Table 17.)  But Dr. Abrantes-Metz does not provide any method for estimating the portion of that purported overcharge that results merely from performance of the contractual booking fee (and other non-monetary terms) versus the portion that resulted from Sabre's other alleged conduct after April 2007.  Indeed, USAir posits that absent the full content terms in the 2006 Contract, USAir could have encouraged travel agencies to use alternative distribution channels "in part by offering differentiated content on" those channels.  (Stiglitz Opening Report ¶ 263.)  But as of April 2007, USAir (and other domestic legacy carriers) could not have offered lower fares in alternative channels, because USAir (and other domestic legacy carriers) signed full content deals with Sabre before April 2007.  (*Id.* ¶ 94 & n.118.)  It is not plausible to suggest that USAir's aggregate damages estimates remain unchanged without this alleged "exclusionary" conduct as a basis for recovery.  And USAir's experts do not offer an opinion to that effect.

Nor does Dr. Abrantes-Metz provide any analysis to calculate the amount that USAir was allegedly damaged as a result of Sabre's purported extra-contractual, unlawful monopolistic conduct that USAir asserts prevented it from "be[ing] able to move its bookings to alternative distribution channels." (Op. 13.)  To the contrary, Dr. Abrantes-Metz's "overcharge" calculations expressly assume that USAir "would have sold the same quantity of airfares through Sabre in the But-for World as it did in the actual world."  (Abrantes-Metz Opening Report ¶ 152.)

**Second**, Dr. Abrantes-Metz's model of USAir's claimed "lost profits" damages between April 21, 2007 and February 23, 2011 suffers from the same deficiency as her overcharge calculations.  In the "lost profits" model, Dr. Abrantes-Metz seeks to estimate the "foregone sales that [USAir] could have made" in the but-for world without the challenged terms in the 2006 Contract, because absent full content provisions, USAir believes that it "could stimulate demand on alternatives to Sabre (which are lower-cost options for [USAir]) and therefore [USAir] could increase total output."  (Abrantes-Metz Opening Report ¶ 146.)  But like her "overcharge" calculations, Dr. Abrantes-Metz's lost-profits model necessarily includes damages based on mere "performance of the 2006 Contract" because it assumes that USAir could steer customers to alternative distribution channels in violation of the terms of the 2006 Contract.  And because Dr. Abrantes-Metz's model fails to provide any method to disaggregate those unactionable damages from the overall lost-profits estimate, it should not be presented to the jury.

We thank the Court for its consideration of this request.

Hon. Lorna G. Schofield
March 30, 2022
Page 4

                                     Respectfully submitted,

                                     */s/ Boris Bershteyn*
                                     Boris Bershteyn

cc:  Counsel for US Airways, Inc., via ECF