# Skadden, Arps, Slate, Meagher & Flom LLP

ONE MANHATTAN WEST

NEW YORK 10001-8602
————
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3834
DIRECT FAX
917-777-3834
EMAIL ADDRESS
BORIS.BERSHTEYN@SKADDEN.COM

March 29, 2022

> The Court construes Sabre's letter motion for a conference as a motion to preclude US Airways from adding Sabre's CEO, Sean Menke, to its witness list.  (*See* Dkt. No. 1133.)  For substantially the reasons stated by US Airways (Dkt. No. 1144), the motion to preclude is **DENIED**.  The Clerk of Court is respectfully directed to close the motion at Dkt. No. 1133.
>
> Dated: April 1, 2022
> New York, New York
>
> _____
> LORNA G. SCHOFIELD
> **UNITED STATES DISTRICT JUDGE**

<u>VIA ECF</u>

Hon. Lorna G. Schofield
United States District Court Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

RE:   *US Airways, Inc. v. Sabre Holdings Corp., et al.*,
      No. 1:11-cv-02725, Pre-Motion Conference Regarding Motion to
      <u>Preclude Plaintiff From Adding Sabre's CEO, Sean Menke, to Its Witness List</u>

Dear Judge Schofield:

Defendants (collectively, "Sabre") write to respectfully request a pre-motion conference regarding a motion to preclude USAir from adding Sabre's current CEO, Sean Menke, to its witness list in the upcoming retrial.  Sabre makes this request in light of recent statements by USAir's counsel that USAir intends to call Mr. Menke to testify about Sabre's technology, even though:  (i) neither side called Mr. Menke as a witness during the first trial in this case; (ii) USAir omitted Mr. Menke from its "likely trial witness" list filed on February 16, 2022; and (iii) Mr. Menke did not join Sabre until October 2015, more than four years after USAir filed the original complaint in this matter and three years after the end of the damages period.

USAir asserts that Mr. Menke possesses purportedly relevant knowledge of the state of Sabre's technology, but its belated addition of Mr. Menke to its witness list is improper and suggests gamesmanship.  Mr. Menke's testimony about Sabre's technology after he joined the company in 2015 is irrelevant because his employment at Sabre post-dates the damages period in this case by three years.  In addition, to the extent it is relevant at all, Mr. Menke's testimony about his views of Sabre's technology when he was an airline executive would duplicate testimony of the 11 other employees from seven different airlines on USAir's witness list who could likewise observe Sabre's technology from an outsider's perspective, not to mention USAir's dedicated technology expert.  Moreover, any minimal probative value of Mr. Menke's

Hon. Lorna G. Schofield
March 29, 2022
Page 2

testimony about views he formed before joining Sabre is substantially outweighed by the significant unfair prejudice Sabre would suffer if USAir called him to testify, as Mr. Menke's current role as Sabre's CEO is likely to invite jury confusion.  Accordingly, and for the reasons detailed below, the Court should preclude USAir from adding Mr. Menke to its witness list.

**Background**

Mr. Menke did not join Sabre until October 2015, when he became President of Sabre Travel Network.  In December 2016, Mr. Menke became Sabre's President & CEO.  Before joining Sabre, Mr. Menke held executive positions at airlines, including:  (i) Frontier Airlines, where he served as CEO from September 2007 to March 2010 and as COO from January 1999 to June 2005; and (ii) Air Canada, where he served as CCO from June 2005 to August 2007.

At no time over the first decade of this litigation—between April 2011 (when USAir filed its original complaint) and June 2021—had Mr. Menke surfaced on either party's Rule 26 disclosures.  Then, on July 16, 2021, USAir listed Mr. Menke on a supplemental disclosure, stating that it believed Mr. Menke likely had discoverable information regarding "Sabre's historical technology."  Nevertheless, USAir did not seek documents or deposition testimony from Mr. Menke following its July 2021 supplemental disclosure and chose to omit him from its February 16, 2022 list of likely trial witnesses.  (*See* ECF No. 1082-1.)  Only in response to a direct question from Sabre's counsel on a March 3, 2022 call—posed in an abundance of caution given USAir's July 2021 Rule 26 disclosure—did USAir suggest that it might call Mr. Menke as a trial witness.  Then, in a March 11, 2022 voicemail, USAir's counsel confirmed it now intended to do so.

The parties then met and conferred, and Sabre sought to ascertain USAir's basis for calling Mr. Menke at trial.  During a March 23, 2022 call, USAir's counsel stated that USAir planned to call Mr. Menke to testify about Sabre's technology both before and after he joined Sabre in October 2015.  In particular, USAir's counsel asserted that Mr. Menke has a relevant perspective on Sabre's technology during the damages period from his experience at Air Canada and Frontier Airlines.  USAir's counsel also stated that USAir will seek testimony about Mr. Menke's post-2015 view of Sabre's technology because, during the first trial in this case, Sabre presented evidence of the state of its technology through the end of 2016.  During the March 23, 2022 call, Sabre's counsel inquired as to whether USAir intended to question Mr. Menke on any other topics.  USAir's counsel stated that they were aware of no plans to do so, but in subsequent email exchanges, USAir's counsel suggested that USAir might question Mr. Menke on other unspecified topics.  Finally, both during and after the parties' March 23, 2022 call, Sabre's counsel proposed that Sabre would not present evidence regarding the state of its technology after the damages period if USAir agreed not to call Mr. Menke at trial to testify on this subject, but USAir's counsel has responded that it would not remove Mr. Menke from its witness list.

Hon. Lorna G. Schofield
March 29, 2022
Page 3

**USAir Should Be Precluded From Adding Mr. Menke to Its Witness List**

For two reasons, the Court should reject USAir's ploy to add Mr. Menke to its witness list to testify regarding Sabre's technology either before or after he joined Sabre in 2015. ***First***, any testimony about the state of Sabre's technology after Mr. Menke joined Sabre in 2015 is irrelevant because USAir does not (and as a legal matter cannot) seek damages incurred after October 30, 2012. Accordingly, the parties have stipulated, subject to certain exceptions, that "no evidence shall be offered about any party's or third party's conduct or market conditions . . . from January 1, 2013 onward." (ECF No. 1078 at 2.) USAir thus has no basis to seek testimony from Mr. Menke regarding his post-2015 view of Sabre's technology, particularly when Sabre's counsel made clear to USAir's counsel before requesting a pre-motion conference that it would not present evidence regarding the state of its technology after the damages period if USAir agreed not to call Mr. Menke at trial to testify on this subject.

***Second***, any minimal probative value of Mr. Menke's testimony regarding Sabre's pre-2015 technology is substantially outweighed by the significant risk of unfair prejudice to Sabre. USAir's timely witness list was already replete with airline employees who are positioned to testify about their experience with Sabre's technology before 2013. Meanwhile, because Mr. Menke is Sabre's current CEO, his testimony will prejudice Sabre by carrying the imprimatur of Sabre's highest ranking executive officer with an insider's perspective on Sabre's technology, even though Mr. Menke would have gained his outside-looking-in understanding of Sabre's pre-2015 technology from his employment with various airlines. Simply put, the jury is unlikely to separate its perception of Mr. Menke's testimony in his capacity as a former airline employee from his current role as Sabre's CEO.

Nor is there sound reason to subject Sabre to the risks of such unfair prejudice. In recognition of "the potential for harassment and disruption to business affairs when highly-placed executives are forced to testify," a plaintiff may not call a defendant's "CEO . . . to testify at trial" when the CEO lacks "some unique knowledge of the issues in the case." *Plew v. Ltd. Brands, Inc.*, 2012 WL 379933, at *3 (S.D.N.Y. Feb. 6, 2012). Here, USAir's witness list already includes multiple individuals who are in an equal—if not better—position to testify about Sabre's pre-2015 technology. For example, USAir has already listed 11 witnesses who, like Mr. Menke, would have experienced Sabre's technology while airline employees prior to 2015. Moreover, USAir plans to call an expert witness to opine specifically about Sabre's technology. USAir cannot show that Mr. Menke possesses unique information regarding Sabre's pre-2015 technology, and it should be precluded from forcing him to testify on this subject.

At bottom, the eleventh hour timing and threadbare rationale for calling Mr. Menke suggests improper harassment and gamesmanship. USAir should be precluded from adding him to its witness list at this late date. We thank the Court for its consideration of this request.

Hon. Lorna G. Schofield
March 29, 2022
Page 4

          Respectfully submitted,

          */s/ Boris Bershteyn*
          Boris Bershteyn

cc:  Counsel for US Airways, Inc., via ECF