

O'Melveny & Myers LLP T: +1 212 326 2000
Times Square Tower F: +1 212 326 2061
7 Times Square omm.com
New York, NY 10036-6537

April 4, 2022

**Andrew J. Frackman**
D: +1 212 326 2017
afrackman@omm.com

<u>VIA ECF</u>

Hon. Lorna G. Schofield
United States District Court
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re: ***US Airways, Inc., for American Airlines, Inc. as Successor and Real Party in Interest v. Sabre Holdings Corp., et al., No. 1:11-cv-02725-LGS***
> <u>Response to Sabre's Letter Requesting Pre-Motion Conference Regarding Motion to Exclude US Airways' Damages Estimates (ECF No. 1136)</u>

Dear Judge Schofield:

 Sabre's latest attempt to challenge US Airways' causation evidence and damages estimates on "disaggregation" grounds (ECF No. 1136) should be denied. The Court has already rejected Sabre's attacks on causation and damages, crediting Professor Joseph Stiglitz's testimony that there are "multiple ways … a competitive market would result from the termination of Sabre's allegedly anticompetitive conduct," ECF No. 1129, at 14, and holding that Dr. Abrantes-Metz may testify about US Airways' damages caused by that anticompetitive conduct, *id.* at 5. And as the Court recognized, US Airways can recover damages caused by Sabre's exclusionary conduct, even apart from the 2006 contract. See *id.* at 13. Sabre's letter motion misconstrues this Court's rulings, the applicable law (including *Comcast*), and US Airways' claims.

 The Court correctly summarized US Airways' damages theory and Dr. Abrantes-Metz's methodology in its recent order excluding part of Dr. Robert Topel's testimony:

> Dr. Abrantes-Metz … (1) calculated the net transaction booking fee that Sabre would earn for airline bookings in the competitive But-for World (i.e., … the price needed for Sabre to cover its costs and earn a reasonable profit); (2) estimated how that net transaction fee would be allocated between airlines and travel agencies in the But-for World (i.e., … determined the respective shares of the airlines and travel agents in payments and/or incentives to arrive at the net fee); (3) compared what US Airways would have been charged with the amount actually charged to determine US Airways' overcharge damages; and (4) quantified US Airways lost profits based on these overcharges and other anticompetitive factors.

ECF No. 1151, at 3-4.

Dr. Abrantes-Metz's methodology is entirely consistent with the Court's summary judgment order. Nothing in Dr. Abrantes-Metz's calculations is dependent on the 2006 contract being within the statute of limitations period. Her opinions do not rely on an assumption that the 2006 contract is the sole cause of US Airway's injuries. And, as the Court recognized, US Airways can recover damages caused by Sabre's exclusionary conduct, even apart from the 2006 contract, if it proves those acts are material, but-for causes of its injuries. *See id.* at 13 ("US Airways can seek § 2 claim damages arising from other monopolizing conduct…").

As the Court noted, US Airways' claim is not a Section 1 claim arising merely from that 2006 contract. *Id.* Instead, it is a Section 2 claim: faced with the threat of technology that would erode its inherited-from-regulation monopoly power, starting in 2004 and continuing through 2012, Sabre engaged in a series of unlawful acts to maintain that monopoly power, including the following:

- Sabre secured its gatekeeper power over TMC bookings by paying the TMCs over a billion dollars in "incentives" between 2006–2012, and cemented that exclusivity with long-term contracts containing volume commitments and penalty provisions. As Professor Stiglitz opined, these bribes "bind travel agencies to a single-homing system that allows Sabre to act as a bottleneck and accumulate monopoly power." Stiglitz Opening Report ¶ 220.

- Sabre quashed alternative distribution channels throughout the relevant period—including "GDS New Entrants" and aggregators, such as Farelogix (whose authorized developer contract Sabre terminated in 2009)—by denying new entrants access to its authorized developer program and, for entrants permitted in the program, imposing uneconomic fees and other restraints that limited their competitive opportunities. *See* Stiglitz Opening Report ¶¶ 228 ("Sabre's strategy was to 'establish fences' to ensure full participation in Sabre remains attractive'…" (quoting PX-224)).

- Sabre went to war with any airline that sought to utilize alternative distribution methods having the potential to create competition to the Sabre GDS, including American (2010), Air Canada (2006–2011), United (2006) and Northwest (2004). This "retaliation... helped Sabre maintain the One Price Rule." Stiglitz Opening Report ¶ 188.

Sabre continued engaging in all of the exclusionary acts described above during the 2007–2011 period. *See* ECF No. 1050, at 18-19, ECF No. 1051 at 13-15, 20, 51-53 (describing specific 2007–2011 acts).

In the absence of these exclusionary acts, competition would have emerged, US Airways would never have agreed to full content restraints in 2006,[1] and even if it had, Sabre would have had no mechanism to enforce the unlawful restraints because US Airways **would have had alternatives to Sabre** and therefore would have moved bookings to competing distribution channels or used the threat of doing so to get out from the terms of the 2006 contract. *See* ECF No. 1050, at 19-20. Sabre's exclusionary acts, *collectively*, permitted Sabre to maintain its gatekeeper monopoly control to (a) overcharge for its services; (b) impose all of

---

[1] Even though US Airways cannot seek damages arising "merely [from] the performance of the 2006 contract," ECF No. 1129, at 13, as this Court recognized, "Dr. Abrantes-Metz's model should be designed to contemplate a world in which there never was any anticompetitive conduct, rather than a point in time when anticompetitive conduct ceased," *id.* at 5.

the costs of its services on airlines, rather than the travel agencies benefiting from them; and (c) harm the entire market by preventing innovation, increasing costs, and eliminating choice.  *See* Stiglitz Opening Report ¶ 161 ("Sabre engaged in numerous exclusionary acts that protected its grip on access to Sabre-subscribing TMCs and thereby maintained its monopoly power.").  US Airways' (and the market's) harm flows from the combination of all of Sabre's misconduct to preserve the monopoly power it inherited from decades of regulation.  US Airways' 2006 contract was just one of many exclusionary acts taken by Sabre during the 2004–12 period to preserve its monopoly power.  Sabre's other exclusionary conduct choked off alternative distribution channels preventing competition.  If Sabre had not prevented competition, US Airways would not have paid Sabre, or any of the competitors it quashed, more than the competitive price calculated by Dr. Abrantes-Metz.

US Airways' approach is consistent with the applicable law.  In monopolization cases, "[a]ny obligation on plaintiffs to separate out the contribution of each individual act to the defendant's monopoly price, and then to collect damages only for that portion of the overcharge attributed to unlawful conduct, either invites extreme speculation or else becomes an effective rule of nonrecovery." Areeda & Hovenkamp, Antitrust Law ¶ 657 (4th and 5th Editions 2015-2021); *accord U.S. Football League v. Nat'l Football League*, 842 F.2d 1355, 1377 (2d Cir. 1988) (a plaintiff "need only show that their injury to *some* degree resulted from defendants' violation").  "[A]n antitrust defendant's unlawful conduct need not be the *sole* cause of the plaintiffs' alleged injuries." *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 65-66 (2d Cir. 2012) (emphasis added).  And "a plaintiff need not exhaust all possible alternative sources of injury in fulfilling [its] burden of proving compensable injury." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969).  "Once any exclusionary practice has been found unlawful and shown to be a significant contributor to the monopolist's monopoly price, then" it is a "sensible presumption … that in the absence of the unlawful exclusionary practice, the monopolist would have charged the competitive price." Areeda ¶ 657.  Sabre's insistence on disaggregation is contrary to law and would result in "an effective rule of nonrecovery" in most monopolization cases.  *See id.*

Dr. Abrantes-Metz's method of calculating US Airways' damages does not depend on a finding that every exclusionary component part of this anticompetitive, decade-long scheme was actionable and/or unlawful.  Sabre's reliance on *Comcast Corp. v. Behrend*, 569 U.S. 27, 36-37 (2013), is thus misplaced.  There, the expert's damage's model explicitly "assumed a market that contained none of the four distortions" the plaintiffs challenged, leaving it unable to disaggregate the harm caused by the three practices that were held not to be unlawful, *Comcast*, 569 U.S. at 36.  Unlike in *Comcast*, here, there is nothing to disaggregate because exclusionary conduct other than the 2006 contract (including between 2007-2011) is a material cause of *all* of the claimed damages.[2]

In short, Sabre's request for leave to file another (untimely) motion to exclude Dr. Abrantes-Metz's damages estimates should be rejected because it is yet another attempt to exclude evidence relevant to whether Sabre's conduct caused US Airways substantial injuries, which this Court has repeatedly held is an issue for the jury to decide.

---

[2] *See Nat'l Farmers' Org., Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1307 (8th Cir. 1988) ("[I]f an antitrust plaintiff alleges that the defendant engaged in unlawful acts A, B, C, and D, and acts C and D are later rejected as a basis of liability, it does not automatically follow that the damage award must be reduced. Rather, if acts A and B support the entire damages award, it must be sustained.").

O'Melveny

Respectfully submitted,

Andrew J. Frackman
of O'MELVENY & MYERS LLP
*for US Airways, Inc. for American Airlines, Inc. as Successor and Real Party in Interest*

cc:   Counsel for Sabre (via ECF)