UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| US AIRWAYS, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SABRE HOLDINGS CORP.,<br>SABRE GLBL INC., and<br>SABRE TRAVEL INT'L LTD.,<br><br>　　　　Defendants. | Civil Action No. 1:11-cv-02725-LGS<br><br>ECF Case |

**SABRE'S PROPOSED VERDICT FORM**

**VERDICT FORM**

All jurors must agree on the answer to the following questions.

**Claim 1: Contract Claim**

Question 1:

Has US Airways proved, by a preponderance of the evidence, the existence of a valid market consisting of GDSs linking airlines to traditional travel agents?[1]

    Yes _____        No_____

**If you answered "Yes," proceed to Question 2.**
**If you answered "No," proceed to Question 5.**

Question 2:

Has US Airways proved, by a preponderance of the evidence, that Sabre unreasonably restrained trade by means of the challenged contract provisions in the 2011 agreement between US Airways and Sabre?[2]

    Yes_____        No_____

**If you answered "Yes," proceed to Question 3.**

---

[1] The jury should first answer whether USAir has proven a relevant market because market definition is a "threshold step in any antitrust case." *FTC v. Qualcomm Inc.,* 969 F.3d 974, 992 (9th Cir. 2020) (citing *Ohio v. American Express*, 138 S. Ct. 2274, 2285 (2018)); *see also PepsiCo, Inc. v. Coca-Cola Co*., 315 F.3d 101, 105 (2d Cir. 2002) ("As an initial matter, it is necessary to define the relevant product and geographic market Coca-Cola is alleged to be monopolizing."); *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc*., 296 F. Supp. 3d 442, 470 (E.D.N.Y. 2017) ("The determination of the relevant market is a necessary predicate to analyzing antitrust claims under the rule of reason."), *aff'd*, 883 F.3d 32 (2d Cir. 2018). While Sabre is mindful that the verdict form at the last trial did not include this question for the 2011 contract claim, USAir's inclusion of a Sabre-only proposed market in its new monopolization claim makes it necessary for the jury to clearly address whether USAir has proved the all-GDS market it proposes in support of the 2011 contract claim. In addition, including this question will eliminate juror confusion as to which market USAir may prove in connection with its Section 1 claim.

[2] Given the wide variety of conduct, including certain of Sabre's contracts, at issue in the monopolization claim, Sabre believes it is necessary to make clear to the jury that the only conduct at issue in the Section 1 claim is the 2011 contract between USAir and Sabre.

**If you answered "No," proceed to Question 5.**

Question 3:

Has US Airways proved, by a preponderance of the evidence, that it was injured as a result of the challenged contract provisions in the 2011 agreement between US Airways and Sabre?

  Yes_____  No_____

**If you answered "Yes," proceed to Question 4.**
**If you answered "No," proceed to Question 5.**

Question 4:

Please state the amount that will fairly compensate US Airways for any injury it actually sustained between February 23, 2011 and October 30, 2012[3] as a result of the challenged contract provisions in the 2011 agreement between US Airways and Sabre:

$_____

**Proceed to Question 5.**

**Claim 2: Monopolization Claim**

Question 5:

Has US Airways proved, by a preponderance of the evidence, the existence of a valid market consisting of GDS services provided only to Sabre subscribers?[4]

  Yes_____  No_____

---

[3] Sabre believes that the verdict form should, unlike USAir's proposal, specify the period of time within which USAir may be awarded damages on each claim because the two periods are different and might be confused by the jury.

[4] For similar reasons as explained above, *see supra* n. 1, the jury should first answer whether USAir has proven a relevant market for its monopolization claim. *See Spectrum Sports Inc. v. McQuillan,* 506 U.S. 447, 457 (1993) (market definition is required for Section 2 claims); *see also PepsiCo, Inc.*, 315 F.3d at 105 ("As an initial matter, it is necessary to define the relevant product and geographic market Coca-Cola is alleged to be monopolizing."). As USAir acknowledges in its proposed jury instructions, proving a relevant market is a separate element from proving whether Sabre possessed monopoly power, and should be treated as such in the verdict form.

**If you answered "Yes," proceed to Question 6.**
**If you answered "No," you are finished.**

Question 6:

Has US Airways proved, by a preponderance of the evidence, that Sabre possessed monopoly power in the relevant antitrust market?

  Yes_____  No_____

**If you answered "Yes," proceed to Question 7.**
**If you answered "No," you are finished.**

Question 7:

Has US Airways proved, by a preponderance of the evidence, that Sabre willfully maintained monopoly power in the relevant antitrust market by engaging in exclusionary conduct—as opposed to by supplying better products or services, possessing superior business skills, or because of historic accident?[5]

  Yes _____  No_____

**If you answered "Yes," proceed to Question 8.**
**If you answered "No," you are finished.**

Question 8

If Sabre has proved non-pretextual procompetitive justifications for its actions, has US Airways proved, by a preponderance of the evidence, that the anticompetitive harm from Sabre's actions substantially outweighs the procompetitive benefits?[6]

---

[5] USAir's proposed verdict form omits important language regarding the standard for finding willful maintenance of monopoly power. Consistent with well-established caselaw from the Supreme Court and Second Circuit, the jury should answer whether USAir has proved "the willful acquisition or maintenance of [monopoly] power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *see also Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 97-98 (2d Cir. 1998) ("The second element [willfully acquired or maintained monopoly power] is distinct from business growth or development as a consequence of superior product, business acumen or historic accident.") (citing *Grinnell*, 384 U.S. at 570-71).

[6] As the Second Circuit and courts in this district have explained "once a plaintiff establishes that a monopolist's conduct is anticompetitive or exclusionary, the monopolist may proffer 'nonpretextual' procompetitive justifications for its conduct," and the plaintiff "may then either rebut those justifications or demonstrate that the anticompetitive harm outweighs the

*(cont'd)*

Yes _____    No_____

**If you answered "Yes," proceed to Question 9.**
**If you answered "No," you are finished.**

Question 9:

Has US Airways proved, by a preponderance of the evidence, that it was injured in its business or property because of exclusionary actions that Sabre took between April 21, 2007 and October 30, 2012? Such actions cannot include mere performance of the 2006 contract between US Airways and Sabre, or Sabre's pre-2007 contracts with other airlines or travel agencies.[7]

Yes_____    No_____

**If you answered "Yes," proceed to Question 10.**
**If you answered "No," you are finished.**

Question 10:

Please state the amount that will fairly compensate US Airways for any injury it actually sustained as a result of exclusionary actions that Sabre took between April 21, 2007 and October

---

procompetitive benefit." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 651 (2d Cir. 2015) (citation omitted); *see also Fed. Trade Comm'n v. Shkreli*, 2022 WL 135026, at *33 (S.D.N.Y. Jan. 14, 2022) ("Once a plaintiff establishes that a monopolist's conduct is anticompetitive or exclusionary, the monopolist may proffer nonpretextual procompetitive justifications for its conduct," and the "plaintiff may then either rebut those justifications or demonstrate that the anticompetitive harm outweighs the procompetitive benefit") (citation omitted); *In re Actos End-Payor Antitrust Litig.*, 417 F. Supp. 3d 352, 370 (S.D.N.Y. 2019) (similar); *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 4358244, at *10 (S.D.N.Y. May 23, 2017) (similar), *aff'd sub nom. United Foot & Com, Workers Loc. 1776 v. Takeda Pharm. Co.*, 11 F. 4th 118 (2d Cir. 2021); *Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 223 (S.D.N.Y. 2014) (similar); *In re Fresh Del Monte Pineapples Antitrust Litig.*, 2009 WL 3241401, at *6 (S.D.N.Y. Sept. 30, 2009) (similar); *In re Apollo Air Passenger Computer Rsrv. Sys. (CRS)*, 720 F. Supp. 1068, 1078 (S.D.N.Y. 1989) (explaining, in a case involving legacy GDS systems, that "[i]n evaluating conduct on which a § 2 monopolization claim is based, the same basic approach taken with a § 1 claim is used, i.e., a rule of reason analysis").

[7] As the Court's summary judgment order made clear, USAir may only recover if it can prove that "Sabre engaged in willful conduct to acquire or maintain monopoly power independent of the 2006 Contract and within the four years preceding the filing of this action in 2011." *US Airways v Sabre*, No. 11 CIV. 2725 (LGS), 2022 WL 874945, at *8 (S.D.N.Y. Mar. 24, 2022) (ECF No. 1129).

30, 2012.[8]  Such actions cannot include mere performance of the 2006 contract between US Airways and Sabre, or Sabre's pre-2007 contracts with other airlines or travel agencies.  If you have awarded US Airways damages in response to Question 4, you must reduce any damages awarded in response to this Question 10 if (and to the extent that) US Airways is being compensated twice for the same damages.

$_____

---

[8] As stated above, Sabre believes that the verdict form should specify the period of time within which USAir may be awarded damages on each claim, because the two periods are different and could be confused by the jury.