SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 NORTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-1720
─────
TEL: (312) 407-0700
FAX: (312) 407-0411
www.skadden.com

DIRECT DIAL
(312) 407-0508
DIRECT FAX
(312) 827-9320
EMAIL ADDRESS
PATRICK.FITZGERALD@SKADDEN.COM

FIRM/AFFILIATE OFFICES
─────
BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
─────
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

May 1, 2022

**VIA ECF**

Hon. Lorna G. Schofield
United States District Court Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

      RE:    *US Airways, Inc. v. Sabre Holdings Corp., et al.*, No. 1:11-cv-02725,
               <u>Motion to Introduce Evidence Regarding USAir's "Sign-and-Sue" Strategy</u>

Dear Judge Schofield:

      In light of USAir's trial presentation—and in particular, the testimony of its chief contract negotiator in 2011, John Gustafson—Sabre respectfully requests leave to present the jury with directly responsive evidence, which this Court indicated could be admitted if USAir "puts its subjective state of mind at issue." (ECF No. 1132 at 1.) As explained below, USAir has done just that.

      During proceedings related to the first trial in this matter, the parties disputed whether the jury could hear evidence that, despite months of stating its willingness to provide Sabre with full content (*see* DX-134; PX-116), USAir sent Sabre a series of emails around December 2010 and January 2011 as part of a secret "sign-and-sue" plan late in the 2011 negotiations. USAir's self-described "sign-and-sue" plan, formulated at an internal meeting on December 4, 2010 (reflected in handwritten notes) sought to set Sabre up for the antitrust claims in this case by "forc[ing] Sabre to show" that USAir lacked an option to sign a contract in 2011 without full content. (DX-147, at -58.) Among the carefully orchestrated "sign-and-sue" emails were those dated December 10, 2010 (*see* PX-714; PX-714R) and January 14, 2011 (*see* PX-715) between USAir's contract negotiators John Gustafson and Andrew Nocella, and Sabre's negotiators Chris Wilding and David Gross. (*See also* ECF No. 393 at 4; ECF No. 436 at 7-9 (addressing these emails in connection with USAir's prior motion to exclude evidence of its "sign-and-sue" strategy).) In those emails, USAir purported to inquire about a non-full content deal late in the 2011 negotiations (PX-714; PX-714R; PX-715), even though the "sign-and-sue" evidence shows

Hon. Lorna G. Schofield
May 1, 2022
Page 2

that those inquiries were not genuine, and instead, were designed to be rejected to set the stage for USAir's lawsuit.

Prior to the retrial in this matter, the parties again disputed the admissibility of "sign-and-sue" evidence, which the Court conditionally excluded in its Order on USAir's Motion *in limine* No. 4.  (ECF No. 1132 at 1.)  The Court reasoned that under Federal Rule of Evidence 403, the probative value of "sign-and-sue" evidence was outweighed by its potential for unfair prejudice to USAir, where the issue to be tried was "whether Sabre insisted on anti-competitive contractual provisions, ***and not [USAir's] sincerity when it offered alternatives***."  (*Id.* (emphasis added).)  However, the Court made clear that this "balance may change" based on the evidence adduced at trial, and thus, granted USAir's motion "without prejudice" to Sabre pursuing admission of the challenged evidence "at trial . . . in the event that [USAir] puts its subjective state of mind at issue."  (*Id.*)  At the final pre-trial conference, the Court further affirmed that "if [USAir] opens the door by putting a subjective state of mind at issue, then the jury won't hear just one side of the story, they'll hear the entire story." (Pre-Trial Conference Tr. 18:24-19:5.)

USAir has plainly opened that door.  Proffering its corporate representative, Mr. Gustafson, as a witness to discuss the parties' contract negotiations, counsel for USAir elicited testimony that USAir's purported "goal was to get out" from full content restrictions "going into the contract negotiations in 2010 and '11."  (Trial Tr. 823:25-824:6.)  In addition to questioning about the parties' negotiations, counsel for USAir proceeded to walk Mr. Gustafson through emails in furtherance of USAir's "sign-and-sue" plan—in particular, those from December 10, 2010, and January 14, 2011.  In doing so, USAir created the highly prejudicial and misleading impression that those emails reflected genuine efforts to seek a non-full content contract with higher rates before USAir was purportedly forced to accept a full content deal.

***First***, counsel for USAir introduced a December 10, 2010 email from Mr. Wilding to Mr. Gustafson in which Mr. Wilding provided information on higher pricing for a non-full content contract, and scenarios in which the parties might extend their soon-to-expire agreement.  (Trial Tr. 838:11-839:12 (citing PX-714R).)  Mr. Gustafson testified that the email made clear to him that Sabre would "not agree to extend" the parties' agreement if USAir provided a "non-full-content" offer.  (*Id.* 838:11-839:16.)  As a result, Mr. Gustafson testified that he "was obviously very concerned," and that "[i]t didn't look like we had an option to participate with Sabre or we were not going to achieve any of the objectives that I wanted." (*Id.* 839:13-841:13.)  While in a January 11, 2011 email, Mr. Gustafson later identified "goals" for 2011 as "[n]egotiat[ing] and sign[ing] GDS Full Content Agreements" (DX-2551), he testified that he did so because USAir had no choice following what Sabre had communicated about full content:  USAir could "either agree to Sabre's terms and sign the agreement or not sign the agreement and be out of the Sabre system."  (*Id.* 848:25-850:8.)

***Second***, and on the basis of USAir's purported efforts "in trying to loosen up a full-content deal," counsel for USAir questioned Mr. Gustafson about an email dated January 14, 2011, involving communications between Mr. Gustafson, his co-negotiator, Mr. Nocella, and

Mr. Wilding and Mr. Gross. (*Id.* 843:20-845:12 (citing PX-17R & PX-715).) After counsel for USAir highlighted portions of that email—in which Mr. Gross informed Mr. Nocella that Sabre "ha[d] no offer that does not [involve] full content" and Mr. Wilding stated that Sabre desired "a full-content proposal"—Mr. Gustafson testified that he believed that Sabre was issuing "an ultimatum," leaving USAir with "a decision to sign the agreement or not be in Sabre, . . . so [USAir] agreed to sign the agreement" with full content. (*Id.* 844:15-846:6, 851:5-20.)

In response to USAir's direct examination, counsel for Sabre asked Mr. Gustafson questions to clarify the timeline of the 2011 negotiations, including whether the January 14, 2011 email represented the first time that USAir "wrote to Sabre . . . in the entire negotiation to ask about a price for a non-full content deal." (*Id.* 877:11-878:22.) After Mr. Gustafson requested to be shown the January 14, 2011 email that his counsel had introduced (*Id.* 877:25-879:2), counsel for Sabre stressed—multiple times—that his "only question to [Mr. Gustafson] was" about the timing of Mr. Nocella's January 14, 2011 email in relation to the expiration date of the parties' then-existing agreement. (*Id.* 881:10-25.)

Yet Mr. Gustafson went further, volunteering additional testimony that created the misimpression that USAir genuinely pursued a non-full content inquiry late in the 2011 contract negotiations. Specifically, Mr. Gustafson volunteered to the jury that he "would characterize" Mr. Nocella's January 14, 2011 email regarding a non-full content deal "as a hail mary" to "see if Sabre will allow it." (*Id.* 881:10-25.) Counsel for Sabre then asked—consistent with this Court's *in limine* Order—whether the email was "less than a hail mary and more designed to provoke a reaction," without reference to whether USAir was seeking to set up a lawsuit. (*Id.* 882:1-9.) Mr. Gustafson replied that Mr. Nocella "was actually asking" for a non-full content deal, and that his email "was designed to see if we could actually get an agreement" without full content. (*Id.*)

By relying on a series of "sign-and-sue" emails, particularly those on December 10, 2010, and January 14, 2011, and sponsoring the testimony of Mr. Gustafson, USAir has affirmatively placed before the jury its state of mind, especially when sending the relevant emails at issue. Sabre should thus be permitted to introduce its "sign-and-sue" evidence, which directly rebuts Mr. Gustafson's affirmative testimony and answers on cross-examination. Otherwise, the jury will be left with the highly prejudicial and erroneous impression—affirmatively created by USAir in testimony—that USAir's inquiries about a non-full content offer in 2011 were genuine when they in fact were not, and that USAir was ultimately forced to sign the 2011 Contract.

For instance, while Mr. Gustafson testified that he was "very concerned" about the December 10, 2010 email response suggesting that Sabre would not continue the parties' agreement absent a full content proposal (*id.* 841:7-13), the "sign-and-sue" evidence establishes that USAir ***wanted*** Sabre to decline inquiries about a non-full content deal. In fact, the "sign-and-sue" evidence shows that the December 10, 2011 email was sent in response to an email from Mr. Gustafson designed to achieve that very result. Mr. Gustafson's testimony omits that, on the same day as USAir hatched its December 4, 2010 "sign-and-sue" plan, Mr. Gustafson

Hon. Lorna G. Schofield
May 1, 2022
Page 4

emailed his colleague to notify her about a plan to "pursue something," and raised strategies to "identif[y] rack rates," i.e., non-full content pricing from Sabre. (DX-148.) Then, just days later, Mr. Gustafson emailed Sabre to "explicitly advise[]" USAir about rack rates, prompting Sabre to respond with the December 10, 2010 email that Mr. Gustafson self-servingly testified left him feeling "very concerned." (DX-425.) In reality, "sign-and-sue" emails between Mr. Gustafson and his colleague, Brett Berman, establish that USAir was privately celebrating Sabre's response, and—believing it had elicited litigation fodder—cheered: "*That's a keeper*." (*Id.* (emphasis added).)

Mr. Gustafson likewise shielded from the jury important information about the January 14, 2011 email introduced by USAir, in which Mr. Nocella emailed Sabre purportedly to "clarify one point" in its supposed effort to seek a non-full content deal. (PX-715.) Contrary to USAir's misleading suggestion to the jury that Mr. Nocella was "trying to loosen up a full-content deal" (Trial Tr. 843:23-845:12), the "sign-and-sue" evidence establishes that USAir had actually settled on a plan to have it both ways: sign a full content deal with Sabre to receive discounted rates (as it had wanted all along), while deliberately creating the impression that it wanted a deal without full content, so it could use that evidence to extract further concessions from Sabre under threat of litigation. (*See, e.g.*, DX-147, at -58; DX-363; DX-425; DX-2540.) On cross-examination, Mr. Gustafson continued to anchor the jury to USAir's misleading narrative, volunteering that Mr. Nocella's email represented USAir's genuine "hail mary" attempt to obtain a non-full content deal. (Trial Tr. 881:18-882:4.) But in reality, USAir was seeking to set Sabre up for this lawsuit, not "actually asking" for a deal without full content, as Mr. Gustafson told the jury. (*Id.* 882:3.)

For this same reason, the "sign-and-sue" evidence also rebuts Mr. Gustafson's assertion that he and Mr. Nocella genuinely "tried" their "best" to resist a full content-deal, but were forced to sign the 2011 Contract to avoid "putting $4 billion of revenue at risk." (Trial Tr. 845:23-846:6, 851:5-20.) The evidence likewise rebuts the reasoning that USAir's President, Scott Kirby, echoed to the jury, contending that USAir made the "choice" to "sign full content" in 2011 purportedly under threat that any other choice would "put the company out of business." (*Id.* 754:2-15.)

Under this Court's *in limine* ruling and controlling Second Circuit authority, Sabre is "entitled to show that there is evidence that suggests that [USAir] had a different motive" for inquiring about non-full content options before signing the full content deal in 2011, and that USAir did not sign the contract under "pressure" from a supposed monopolist. *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1351-52, 1369-70 (2d Cir. 1988) ("*USFL*"). As the Second Circuit explained in *USFL*, it "was hardly an abuse of discretion" for the district court to admit evidence—much like the "sign-and-sue" evidence—of the plaintiff's "view of the three ways to make money in professional football, namely 'tickets, television and triple damages,'" when the plaintiffs, like USAir, had "put in issue" their motive for taking action. *Id.* at 1370-71 (citation omitted); *see also Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 43 (2d

Hon. Lorna G. Schofield
May 1, 2022
Page 5

Cir. 1986) (affirming summary judgment for defendant, and relying on evidence that the plaintiff "ha[d] been searching for the means of entering the antitrust fray").

      If Sabre is prevented from offering evidence of USAir's "sign-and-sue" strategy, Sabre will suffer severe prejudice, as it will be handicapped in rebutting USAir's affirmative and misleading narrative that, around January 2011, USAir genuinely sought to reach a non-full content deal with higher booking fees before allegedly acquiescing to Sabre's full content demand. Without hearing the "sign-and-sue" evidence, the jury will also be unfairly left with the self- serving and inaccurate explanation from Mr. Gustafson, echoed by Mr. Kirby, as to "[w]hy . . . [USAir would] agree to . . . full content restrictions." (Trial Tr. 798:16-799:4 (Gustafson); *see also id.* 754:2-15 (Kirby).) Accordingly, the Court should admit evidence of USAir's "sign-and-sue" strategy, and prevent USAir from unfairly depriving the jury of information it has affirmatively made highly probative.

                                            Respectfully submitted,

                                            */s/ Patrick Fitzgerald*
                                            Patrick Fitzgerald

cc:  Counsel for US Airways, Inc., via ECF