**COURT EXHIBIT NO. 8**

Final with Footnotes

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                    :
US AIRWAYS, INC.,                      :
                   Plaintiff,    :
                                      :
          -against-         :      11 Civ. 2725 (LGS)
                                      :
                                      :
SABRE HOLDINGS CORP., et al.,   :
                  Defendants. :
------------------------------------------------------------ X

# Final Jury Instructions
# Before Closings

Final with Footnotes

## TABLE OF CONTENTS

I.      INTRODUCTION TO INSTRUCTIONS ................................................................. 1

II.     ROLES OF THE JUDGE AND JURY ...................................................................... 1

III.    IMPARTIALITY ....................................................................................................... 2

IV.     WHAT IS AND IS NOT EVIDENCE .................................................................... 2

V.      DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................................. 4

VI.     CREDIBILITY OF WITNESSES ........................................................................... 5

VII.    DEPOSITION TESTIMONY ................................................................................... 7

VIII.   EXPERT WITNESSES ............................................................................................ 7

IX.     BURDEN OF PROOF ............................................................................................. 7

X.      INTRODUCTION .................................................................................................... 9

XI.     THE SHERMAN ACT ............................................................................................ 9

XII.    FIRST CLAIM:  MONOPOLIZATION CLAIM ................................................. 10

        A. Elements of the Monopolization Claim ........................................................ 10

            1.    First Element -- Relevant Market .......................................................... 11

            2.    Second Element -- Monopoly Power ..................................................... 14

            3.    Third Element -- Exclusionary Conduct ................................................ 17

            4.    Fifth Element -- Antitrust Injury and Causation ................................... 19

XIII.   SECOND CLAIM: CONTRACTUAL RESTRAINT CLAIM ............................... 21

        A. Elements of the Second Claim ...................................................................... 21

            1.    Second Element -- Unreasonably Restrained Trade .............................. 22

            2.    Fourth Element -- Antitrust Injury and Causation ................................ 28

XIV.    ANTITRUST DAMAGES ..................................................................................... 30

        A. Introduction and Purpose ............................................................................. 30

        B. Measure of Damages ..................................................................................... 30

        C. Causation of Damages ................................................................................... 32

XV.     CLOSING ARGUMENTS ..................................................................................... 34

Final with Footnotes

## NON-SUBSTANTIVE JURY INSTRUCTIONS

### I.      INTRODUCTION TO INSTRUCTIONS

Members of the jury, you have now heard all of the evidence in the case.  You are about to hear the final arguments of the parties and then you will undertake your final and most important function as jurors.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in this case.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them, just as it has been my duty to preside over the trial and to decide what testimony and evidence was proper under the law for your consideration.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.

### II.      ROLES OF THE JUDGE AND JURY

It is a tradition and right of our legal system that parties involved in legal disputes have a jury, chosen from the members of their community, render a verdict.  Your role, as the jury, is to decide the factual issues in the case.  I, as the Judge, will instruct you on the law, and you must accept the law as I state it to you.  Then, you will apply that law to the facts as you find them. The result of your work will be the verdict that you return.

You, as jurors, are the sole and exclusive arbiters of the facts.  You determine the weight of the evidence.  You appraise the credibility of the witnesses.  You draw the reasonable inferences from the evidence or lack of evidence.  And you resolve such conflicts as there may be in the testimony.  In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence.  I will instruct you momentarily on what is and is not evidence.

Because you are the sole and exclusive arbiters of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views on what your decision should be.  You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

My role, as the Judge, is to instruct you on the law that you are to apply to the facts as you find them.  You, as jurors, are bound to accept my instructions on the law even if you feel that the law should be different from what I say it is.  Also, if anyone has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You should not single out any one instruction or any one word or phrase in an instruction as alone stating the law, but you should consider the instructions as a whole.

## III.    IMPARTIALITY

All parties to a civil lawsuit are entitled to a fair trial.  Therefore, you must make fair and impartial decisions in order to arrive at a just verdict.  Under your oath as jurors, you are to be guided solely by the evidence (or lack of evidence) presented during the trial, as well as the applicable law, without regard to your feelings, positive or negative, for any party or attorney.  All parties are entitled to the same fair and conscientious consideration.  If you let sympathy or bias interfere with your clear thinking, then there is a risk that you will not arrive at a just verdict.

## IV.    WHAT IS AND IS NOT EVIDENCE

As I have said, in determining the facts, you must rely upon your own recollection of the evidence.  What is evidence?  Evidence consists of the testimony of the witnesses, the exhibits that have been received into evidence and any stipulations.  The stipulation contains facts that the parties have agreed on, and you are to take these facts as true.  By contrast, what counsel have said in their opening statements, questions and objections, as well as what they may say in their

closing arguments, is not evidence. Also, anything that I have said or may say about the facts, as well as anything you have heard outside the courtroom is not evidence.

You should bear in mind that a question put to a witness is never evidence; it is only the answer that is evidence. At times, a questioner may have incorporated into a question a statement that assumed certain facts to be true and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it simply because it was contained in a question. You also may not consider any answer that I directed you to disregard or that I directed be stricken from the record.

Exhibits that have been marked for identification or have been identified as demonstrative aids are not evidence, unless they have been admitted into evidence by the Court. If a demonstrative aid misstates the underlying evidence, it is the underlying evidence that you must consider. Materials used only to refresh a witness's recollection also are not evidence.

Arguments made by the attorneys are not evidence. If your recollection of the facts differs from the statements made by attorneys in their arguments, then it is your recollection that controls.

During the trial, I have been called upon to make various rulings. There may have been objections, motions may have been made to strike answers. You are to disregard these procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them. Objections are not evidence. Objections are a proper part of the trial process, and you should make no inference or be influenced in any way by an objection or by the Court's ruling on it. Likewise, it is my function to cut off questioning, to strike remarks and to reprimand any person when I think it is necessary, but you should draw no inference from that.

Also, the fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness.  I have no such feelings, and my comments were intended only to clarify the issue at hand.  You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party because of any comment, question, or instruction of mine.  It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Lastly, anything that you may have seen or heard when the Court was not in session is not evidence.  You are to decide the case solely on the evidence that is presented to you in this courtroom.

## V.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may use in reaching your verdict -- direct evidence and circumstantial evidence.  Direct evidence is when a witness testifies about something the witness knows by virtue of his or her own senses -- something the witness has seen, felt, touched or heard.  Direct evidence may also be in the form of an exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts.  Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in this courthouse.  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom windows were covered and you could not look outside.  Then, as you were sitting here, someone walked in with an umbrella that was dripping wet.  A few minutes later, another person also entered with a wet umbrella.  Now, you cannot look

4

outside of the courtroom and you cannot see whether or not it is raining, so you have no direct

evidence of that fact.  But on the combination of facts that I have asked you to assume, it would

be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer from one or more established

facts, on the basis of reason, experience and common sense, the existence or non-existence of

some other fact.  An inference is not a speculation, suspicion or guess.  An inference is a

reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to

draw from the facts that have been established by either direct or circumstantial evidence.

There are times when different inferences may be drawn from the same proven facts.

Here, the one side asks you to draw one set of inferences, while the other side asks you to draw

another.  It is for you, and you alone, to decide what inferences you will draw.

## VI.    CREDIBILITY OF WITNESSES

You have now had the opportunity to listen to and observe all of the witnesses.  It is now

your job to decide how believable you find each witness's testimony to be.  How do you

determine where the truth lies?  You should use all of the tests for truthfulness that you would

use in determining matters of importance to you in your everyday life.

One thing you should consider is any bias, hostility or affection that a witness may have

shown for or against a party.  It is your duty to consider whether the witness has permitted any

such bias to color his or her testimony.  If you find that a witness is biased, then you should view

the witness's testimony with caution, weigh it with care and subject it to close and searching

scrutiny.

You should also consider any other interest or motive that the witness may have in

cooperating with a particular party, as well as any interest the witness may have in the outcome

of the case.  Interest in the outcome of the case creates a motive to testify falsely and may sway a

witness to testify in a way that advances his or her own interests.  Therefore, you should accept

the testimony of an interested witness with great care.  Keep in mind, though, that it does not

automatically follow that testimony given by an interested witness is to be disbelieved.  There

are many people who, no matter how strong their interest in the outcome of the case, would not

testify falsely.  It is for you to decide, based on your own perceptions and common sense, to

what extent, if at all, the witness's interest has affected his or her testimony.

Additional factors you should consider are:  the opportunity the witness had to see, hear

and know the things about which he or she testified; the accuracy of the witness's memory; the

witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's

testimony; and the testimony's consistency or lack of consistency with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of

the witness's demeanor, the explanations given and all of the other evidence in the case.  Always

remember that you should use your common sense, your good judgment and your own life

experience.

If you find that any witness has willfully testified falsely to any material fact (that is, to

an important matter), then the law permits you to disregard the entire testimony of that witness

based upon the principle that someone who testifies falsely about one material fact is likely to

testify falsely about everything.  You are not required, however, to consider such a witness as

totally unworthy of belief.  You may accept so much of the witness's testimony as you deem true

and disregard what you feel is false.

While it is quite legitimate for an attorney to try to attack the credibility of a witness, as

the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe,

what portion of their testimony you will accept and what weight you will give to that testimony.

## VII.    DEPOSITION TESTIMONY

You have heard testimony of certain witnesses in the form of depositions which have been received in evidence.  You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the live and in-person testimony of a witness given at trial.

## VIII.   EXPERT WITNESSES[1]

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

## IX.    BURDEN OF PROOF

I am now going to explain the concept of "burden of proof."  This is a civil case, so the burden of proof, unless otherwise instructed, is proof by a "preponderance of the evidence."

---

[1] 4 L. Sand, et al., Modern Federal Jury Instructions ("FJI"), § 76-9 (2020).

The party with the burden of proof on any given issue has the burden of proving to you every disputed element of that party's claim by a preponderance of the evidence.  If you conclude that the party bearing the burden of proof has failed to establish that party's claim by a preponderance of the evidence, you must decide against that party on the issue you are considering.

What does a "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence, which refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you should consider the relevant testimony of all witnesses, regardless of who may have called them, and all of the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties, meaning it is as equally probable that one side is right as it is that the other side is right, then you must decide that issue against the party having the burden of proof.  That is because the party with the burden of proof must prove more than simple equality of evidence.  On the other hand, the party with the burden of proof does not need to prove any more than a preponderance of the evidence.  This means that as long as you find on a given issue that the scales tip, however slightly, in favor of the party with the burden of proof, then you must find for that party on that issue, as that issue will have been proved by a preponderance of the evidence.

Once more I remind you, as I did at the beginning of the trial, that proof beyond a reasonable doubt is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this, and you should put it completely out of your mind.

Final with Footnotes

## SUBSTANTIVE JURY INSTRUCTIONS

### X.     INTRODUCTION

I'm now going to tell you about the law that you will have to apply to the facts as you

find them.  They are to help you evaluate the evidence in light of what you are asked to do now

that you have heard all the evidence.  To the extent that there are any differences between the

preliminary instructions that I gave you at the beginning of trial and these final instructions, these

final instructions are the ones you must follow in your deliberations.

### XI.     THE SHERMAN ACT

As you have heard, US Airways asserts two claims against Sabre under a federal antitrust

law known as the Sherman Act.  The Sherman Act rests on the central premise that business

competition produces the best allocation of our economic resources, the lowest prices, the

highest quality goods and services, better choice and the greatest material progress.  To protect

free and unfettered competition in the marketplace, the Sherman Act prohibits unreasonable

restraints or unlawful[2] monopolization of any business or industry.

<u>First</u>, US Airways alleges that Sabre maintained an illegal monopoly by taking actions

that prevented competition for the business of those travel agents who used Sabre's system.

<u>Second</u>, US Airways asserts that certain provisions of the 2011 Sabre-US Airways distribution

contract excluded or reduced competition in the market for the distribution of airline flights and

fares to traditional travel agents.  As a result of these alleged antitrust violations, US Airways

alleges that Sabre charged US Airways more fees than Sabre otherwise would have been able to,

which harmed both US Airways and U.S. consumers.  US Airways also alleges that, if Sabre had

---

[2]  Adopts Sabre's proposed addition of the word "unlawful" before "monopolization."  *See Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 298 (2d Cir. 1979).

not violations of the antitrust laws, US Airways would have been able to sell more tickets and earn more profits.

Sabre denies these allegations. First, Sabre denies that it is a monopolist. Second, Sabre contends that the terms of the parties' 2011 contract were the result of a competitive agreement between US Airways and Sabre, and that the terms benefit competition and serve legitimate business purposes. Third, Sabre contends that its actions benefitted competition and consumers. Finally, Sabre asserts that the fee it charged US Airways was a result of competitive forces, and that US Airways did not lose profits because of any improper action by Sabre.

## XII.    FIRST CLAIM:  MONOPOLIZATION CLAIM[3]

### A.    Elements of the Monopolization Claim

US Airways' first claim is that Sabre willfully maintained a monopoly in a relevant market. To prevail against Sabre on this claim, the monopolization claim, US Airways must prove each of the following elements by a preponderance of the evidence:[4]

The **<u>first</u>** element of a monopolization claim is that the alleged market is a valid antitrust market.[5]

The **<u>second</u>** element is that Sabre possessed monopoly power in the relevant market.[6]

The **<u>third</u>** element is that Sabre willfully maintained that monopoly power in the relevant market by engaging in exclusionary conduct.[7]

---

[3]  As the party with the burden of proof, US Airways' preferred order of the claims shall govern both in the substantive instructions to the jury and on the jury verdict form.

[4]  ABA Model Jury Instructions in Civil Antitrust Cases ("ABA Model Instr.") 3.A.1.

[5]  ABA Model Instr. 3.A.1.

[6]  ABA Model Instr. 3.A.1.

[7]  ABA Model Instr. 3.A.1.

The **<u>fourth</u>** element is that Sabre's conduct occurred in or affected interstate commerce.[8] The parties agree that the fourth element is satisfied.  So you will not have to decide it.

The **<u>fifth</u>** element is that US Airways was actually injured in its business or property because of Sabre's alleged anticompetitive conduct.[9]

These are the five elements of the monopolization claim.  You will have to decide whether US Airways has proved each of these elements except the fourth element, which is undisputed.  Each element is necessary to prevail on the monopolization claim.  I will now further explain the four elements that are disputed.

### 1.    First Element -- Relevant Market

The parties agree that the relevant *geographic* market is the United States.  However, the parties dispute, and you must decide, how to define the relevant *product* market.  For US Airways' monopolization claim, US Airways alleges that the relevant product market is the market for Sabre's GDS services to traditional travel agencies that primarily serve business travelers.[10]

Products or services are in the same relevant market if they are reasonable substitutes for each other from the consumer's point of view; that is, the products or services compete with each other.  Stated slightly differently, a relevant product market consists of all products or services that are reasonably interchangeable by consumers for the same purposes.  Products or services need not be identical or precisely interchangeable as long as they are reasonable substitutes.  This is a practical test taking into account to actual behavior of buyers and marketing efforts of

---

[8]  ABA Model Instr. 3.A.1.

[9]  ABA Model Instr. 3.A.1.

[10]  Adopts US Airways' proposed description of what it alleges is the relevant market.

sellers. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of packaging material -- such as aluminum foil, plastic wrap, or even plastic containers -- to be reasonable alternatives, then all those products would be in the same relevant product market.[11]

Let me pause here briefly to explain what I mean by "consumers" when I say that products are in the same relevant market if they compete with each other from the "consumer's" point of view. This case involves a "two-sided transaction platform."[12] Two-sided transaction platforms connect two different groups of consumers to facilitate single, simultaneous transactions between them, and thus are best understood as supplying one product.[13] In this case, Sabre's GDS is a two-sided transaction platform, which brings together airlines on one side of the platform and travel agents[14] on the other side of the platform in order to facilitate a single, simultaneous transaction for booking an airline ticket. Thus, to determine the relevant product market, you need to evaluate what substitutes exist for booking transactions via Sabre's GDS. To make this evaluation, you should consider what participants on both sides of Sabre's GDS -- meaning the airlines and travel agents --[15] consider as reasonable substitutes for their selling and buying transactions via Sabre's GDS.

_____

[11] Adapted from joint proposal. *See Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 496 (2d Cir. 2004).

[12] Adopted from joint proposal. *See US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 58 (2d Cir. 2019) ("[T]he Sabre GDS is a transaction platform, and the relevant market for such a platform must as a matter of law include both sides.").

[13] Adopted from joint proposal. *See US Airways*, 938 F.3d at 58.

[14] Adopts US Airways' proposal and omits Sabre's proposed addition of "the travelers they serve."

[15] Adapted from US Airways' proposal and omits Sabre's proposed addition of "on behalf of the traveling public."

The purpose of a market definition is to identify the market participants and competitive pressures that restrain an individual firm's ability to raise prices or restrict output.[16]  To determine whether products or services are reasonable substitutes for each other, you may consider:

- whether a small but significant (e.g., 5%) permanent increase in the price of one product or service would result in a substantial number of consumers switching from that product or service to another;

- whether those consumers who actually use the product or service view the other products or services as interchangeable;

- the relationship between the price of one product or service and sales of another;

- the presence or absence of specialized vendors; the perceptions in the industry or the public as to whether the products or services are in separate markets;

- the views of US Airways and Sabre regarding who their respective competitors are;

- the existence or absence of different customer groups or distribution channels;

- whether the product has distinct characteristics and uses from other products;

- whether, as a matter of practical fact and the actual behavior of buyers, the products are reasonable substitutes for the buyer's needs;

- whether the product has distinct customers from other products; and

---

[16]  Adopted from joint proposal.  *See Geneva Pharma. Tech. Corp.*, 386 F.3d at 496 (purpose of market definition is "to identify the market participants and competitive pressures that restrain an individual firm's ability to raise prices or restrict output").

- other evidence of how a product's pricing is constrained by other products.[17][18]

### 2.     Second Element -- Monopoly Power

Monopoly power is the power to control price or exclude competition in the relevant antitrust market, but the possession of monopoly power in and of itself is not unlawful.[19]  US Airways may prove that Sabre possessed monopoly power in the relevant market through either direct or indirect evidence.[20]

### a.     Direct Proof of Monopoly Power

One way to prove that a firm is a monopolist is if the firm can profitably raise prices substantially above the competitive level for a significant period of time.[21]  Under that approach, US Airways has the burden of proving that Sabre had the ability to raise or maintain the prices that it charged in the relevant market above competitive levels.[22]  Supracompetitive pricing means setting prices higher than competitive levels within the relevant market.[23]  In considering

---

[17]  Adopted from joint proposal.  *Brown Shoe Co. v. United States,* 370 U.S. 294, 325 (1962); Modern Federal Jury Instr. 80-5.

[18]  Sabre's requested change -- in part that the jury "must determine whether Sabre faces competition (including from other GDSs) in seeking to obtain contracts and bookings with those travel agents" -- is confusing.  The classic monopolist situation involves a company that has no competitors, as Professor Murphy testified.  The instruction above in the text is an accurate statement of the law and avoids this confusion.

[19]  Sentence adopted from preliminary charge and condensed from joint proposal.  Language mirrors summary judgment opinion.  *US Airways, Inc. v. Sabre Holdings Corp.*, No. 11 Civ. 2725, 2022 WL 1125956, at *9 (S.D.N.Y. Apr. 15, 2022) (Dkt. No. 1171) (quoting *Geneva Pharms. Tech. Corp.*, 386 F.3d at 500).

[20]  Adopted from joint proposal.  *See Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 97-98 (2d Cir. 1998).

[21]  Adopted from joint proposal (citing ABA Model Instr. 3.A.8).

[22]  Adopted from joint proposal (citing ABA Model Instr. 3.A.8).

[23]  Adopted from joint proposal (citing *United States v. Am. Express Co.*, 838 F.3d 179, 194 (2d Cir. 2016) (hereinafter "*Amex I*")).

whether Sabre charged supracompetitive prices, you must consider whether the net price --

booking fees Sabre charged the airlines minus incentives it paid the travel agents -- exceeded the

net prices that Sabre would have charged in a competitive market.[24]  US Airways must prove

that Sabre by itself had the power to raise or maintain the combined net price that it charged --

that is, without the assistance of, and despite competition from, any existing or potential

competitors.[25]

An ability to sell at higher net prices or earn higher profit margins than competitors for

similar goods or services over a long period of time may be evidence of monopoly power.[26]  If a

company attempted to maintain net prices above competitive levels, but would lose so much

business to other competitors that the price increase would become unprofitable and would have

to be withdrawn, then that company does not have monopoly power.[27]  The ability to earn high

profit margins or a high rate of return on the net transaction cost does not necessarily mean that a

company has monopoly power.[28]  Other factors may enable a company without monopoly power

to sell at higher prices or earn higher profit margins than its competitors.  Such other factors

include having superior products or services, low costs, or superior advertising or marketing.[29]

Evidence that Sabre would have lost a substantial amount of sales if it had raised net prices, or

that Sabre's profit margins were low compared to its competitors, or that Sabre's margins went

---

[24]  Adapted from joint proposal (citing *US Airways*, 938 F.3d at 59).

[25]  Adapted from joint proposal (citing ABA Model Instr. 3.A.8).

[26]  Adopted from joint proposal (citing ABA Model Instr. 3.A.8).

[27]  Adapted from joint proposal (citing ABA Model Instr. 3.A.8).

[28]  Adapted from joint proposal (citing ABA Model Instr. 3.A.8).

[29]  Adopted from joint proposal (citing ABA Model Instr. 3.A.8).

up and down or were steadily decreasing, might be evidence that Sabre did not have monopoly power.[30]

Another way to prove monopoly power is by showing that Sabre had the ability to exclude competition.[31]  The power to exclude competition means the power to dominate the relevant market by eliminating existing competition from that market or by preventing new competition from entering that market.  In other words, the power to exclude competition is the power to place major barriers in the way of other companies trying to remain in or enter the particular arena of trade and compete for customers.  The power to exclude competition may be shown by evidence of Sabre's reducing or restricting the share of the market held by competitors by means other than the normal process of competition.[32]  However, if Sabre attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could react in a way that would make the price increase unprofitable, then Sabre did not have monopoly power.[33]

### b.    Indirect Proof of Monopoly Power

To determine whether Sabre had monopoly power in the relevant market, you also may consider *indirect* evidence.  In considering indirect evidence of monopoly power, you may consider evidence about the structure of the relevant market, and whether or not that structure permits an inference that Sabre had the power to control price or exclude competition in the

---

[30]  Adapted from US Airways' proposal, which tracks ABA Model Instr. 3.A.8.

[31]  Adapted from joint proposal (citing *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107 (2d Cir. 2002)).

[32]  Adapted from joint proposal (citing Modern Federal Jury Instructions (Instruction 80-4 First Element-Monopoly Power)).

[33]  Adopted from joint proposal (citing ABA Model Instr. 3.A.8).

relevant market.[34]  Structural factors include the following:  Sabre's share of the relevant market;

market share trends; the number and size of Sabre's competitors; the entry or exit by other

companies into the market; and barriers to entry.[35]  Barriers to entry might include the large

financial investment required to build a plant or satisfy governmental regulations, specialized

marketing practices, and the reputation of the companies already participating in the market or

the brand name recognition of their products.[36]

### 3.        Third Element -- Exclusionary Conduct

If you find that US Airways has met its burden of proving the first two elements of

unlawful monopolization -- first, that US Airways has proven a relevant market and second, that

Sabre possessed monopoly power in that relevant market -- then you must turn to the third

element.  The third element is that Sabre willfully maintained its monopoly power in the relevant

market by engaging in exclusionary conduct.

Exclusionary conduct is conduct that has the effect of preventing or excluding

competition, or frustrating the efforts of other companies to compete for customers in the

relevant market.[37]  It can sometimes be difficult to determine whether an act is a good business

---

[34]  *See* ABA Model Instr. 3.A.7; *Tops Markets*, 142 F.3d at 98 ("A court will draw an inference of monopoly power only after full consideration of the relationship between market share and other relevant market characteristics.").

[35]  Condensed from joint proposal (citing *Geneva Pharms.*, 386 F.3d at 496 (market share); ABA Model Instr. 3.A.7 (market share trends, barriers to entry).

[36]  Condensed from joint proposal (citing ABA Model Instr. 3.A.7).

[37]  Adopted from preliminary charge.  P. Areeda & H. Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 563d (4th ed. 2020 supp.) ("We define monopolistic conduct as acts that (1) are reasonably capable of creating, enlarging or prolonging monopoly power by impairing the opportunities of rivals; and (2) either (2a) do not benefit consumers at all, or (2b) are unnecessary for the particular consumer benefits claimed for them, or (2c) produce harms disproportionate to any resulting benefits.").

practice or an exclusionary action.  Some conduct may both help customers and hurt competitors.

If this seems to be the case, you must ask yourselves whether the conduct hurts competitors

precisely because it appeals to customers.  That is, you must ask yourselves whether the harm to

competitors was caused by customers' preference for Sabre's products.  If it was, then the

conduct involved is not exclusionary because the goal of the antitrust laws is to protect

competition itself rather than any particular competitor's right to succeed.[38]  However, if the

harm to competitors is caused by something other than Sabre's success in competing on the

merits of its products and operations -- in other words, if the harm is caused mainly by the

defendant's deliberate efforts to injure or block competition -- then you may find that the

conduct was exclusionary.[39]

Also keep in mind that a company -- even a company with monopoly power in a relevant

market -- has no general duty to deal with its rivals, and ordinarily may refuse to deal for

legitimate business reasons.  However, a company violates the antitrust laws if its refusal to deal

is undertaken only to maintain its monopoly power and harm a competitor.[40]

---

[38]  Adopted from joint proposal (citing Model Federal Jury Instructions (Instruction 80-12 Fourth Element -- Anticompetitive Conduct Defined)).

[39]  Adopted from joint proposal (citing Model Federal Jury Instructions (Instruction 80-12 Fourth Element -- Anticompetitive Conduct Defined)).

[40]  At the charging conference, Sabre requested additional language regarding the "duty to deal." US Airways objected.  The instruction above the line is adapted from Sabre's proposal, which is consistent with binding precedent and the model ABA instruction.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004) (explaining there are "few existing exceptions" to the principle that "there is no duty to aid competitors," and holding "that Verizon's alleged insufficient assistance in the provision of service to rivals is not a recognized antitrust claim"); ABA Model Instr. 3.B.2.

If you find that Sabre engaged in exclusionary conduct, Sabre may offer nonpretextual,[41] procompetitive justifications for it; and you must then determine whether US Airways has proved by a preponderance of the evidence that the anticompetitive harm outweighs the procompetitive benefit.[42]

### 4.    Fifth Element -- Antitrust Injury and Causation

If you find that US Airways has shown, by a preponderance of the evidence, that Sabre's conduct was exclusionary and that any anticompetitive harm resulting from Sabre's conduct outweighs any procompetitive benefits, then you must consider the final element of US Airways' monopolization claim -- whether US Airways has proved that it suffered an injury to its business or property because of the alleged anticompetitive conduct.  This element requires US Airways to prove:

> <u>First</u>, that US Airways was in fact injured as a result of Sabre's antitrust violation;[43]

> <u>Second</u>, that Sabre's illegal conduct was a material cause of US Airways' injury;[44] and

---

[41]  At the charging conference, US Airways requested -- and Sabre consented to -- the addition of "nonpretextual" here.  *See New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 652 (2d Cir. 2015).

[42]  Adopted from preliminary charge and Sabre's proposal (citing *Actavis*, 787 F.3d at 652 ("[O]nce a plaintiff establishes that a monopolist's conduct is anticompetitive or exclusionary, the monopolist may proffer 'nonpretextual' procompetitive justifications for its conduct" and the plaintiff "may then either rebut those justifications or demonstrate that the anticompetitive harm outweighs the procompetitive benefit." (citation omitted))).

[43]  Adopted from preliminary charge and joint proposal.  *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004) ("To establish antitrust injury . . . a plaintiff must show (1) an injury-in-fact; (2) that has been caused by the violation; and (3) that is the type of injury contemplated by the statute.")

[44]  Adopted from preliminary charge.  Sabre relies on *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 138, 140-42 (2d Cir. 2021), to request an instruction that its conduct must be a "***direct and***" material cause of US Airways' injury.  But this guidance is misplaced.  The section of the Second Circuit's opinion on which Sabre relies deals with whether non-Amex merchants were efficient enforcers when those merchants did not accept Amex and

19

Third, that US Airways' injury is an injury of the type that the antitrust laws were intended to prevent.[45]

Let me explain each of these briefly. The first element of proving antitrust injury is sometimes called "injury in fact." US Airways must prove that its business suffered because of Sabre's alleged violation of the antitrust laws. Proving the fact of damage does not require US Airways to prove the dollar value of its injuries, but instead requires only that US Airways prove that it was in fact injured by Sabre's alleged antitrust violation.[46]

For the second requirement of an antitrust injury, US Airways must prove as a matter of fact and with a fair degree of certainty that Sabre's illegal conduct was a "material cause" of US Airways' injury.[47] This means that US Airways must prove that some damage occurred to it as a result of Sabre's alleged antitrust violation, and not some other cause. US Airways is not required to prove that Sabre's antitrust violation was the sole cause of its injury; nor must it eliminate all other causes of injury.[48] However, if you find that US Airways' injuries were caused primarily by something other than the alleged antitrust violation, then the second element is not satisfied.

---

thus Amex did not raise their fees directly. The current instruction omits the "direct" language and follows the 2016 instruction.

[45] Adopted from preliminary charge and from joint proposal. *Blue Tree Hotels Inv.*, 369 F.3d at 220.

[46] Adapted from joint proposal. *See* ABA Model Instr. 6.A.1 (citing *In re Publication Paper Antitrust Litig.*, 690 F.3d 51, 65-67 (2d Cir. 2012)).

[47] *See infra* note 44.

[48] *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969) ("It is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury.").

For the third requirement for an antitrust injury, US Airways must prove that its injuries are the type of injuries that the antitrust laws were intended to prevent.[49]  For example, being made to pay higher prices that no longer reflect ordinary market conditions is an injury of the type the antitrust laws were intended to prevent.[50]  On the other hand, if US Airways' injuries were caused by heightened competition, or by acts that would benefit consumers, then US Airways' injuries are not antitrust injuries.  Antitrust laws were enacted for the protection of competition, not competitors.[51]

## XIII.  SECOND CLAIM: CONTRACTUAL RESTRAINT CLAIM

### A.    Elements of the Second Claim

US Airways' second claim is that certain provisions of the 2011 Sabre-US Airways distribution contract excluded or reduced competition in the market for the distribution of airline flights and fares to traditional travel agents.  To establish this claim, US Airways must prove the following elements by a preponderance of the evidence:

The **<u>first</u>** element is the existence of a contract, combination, or conspiracy between or among at least two separate entities.[52]  In this case, we're talking about the 2011 contract between Sabre and US Airways.  This element is undisputed.  So you will not have to decide it.

---

[49]  Adopted from joint proposal (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 489 (1977)).

[50]  Adopted from 2016 final charge (citing *Gelboim v. Bank of America Corp*. 823 F.3d 759, 772 (2d Cir. 2016) ("Generally, when consumers, because of a conspiracy, must pay prices that no longer reflect ordinary market conditions, they suffer injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.") (internal quotation marks omitted)).

[51]  Adopted from joint proposal (citing *Brunswick Corp.*, 429 U.S. at 488).

[52]  Adopted from preliminary charge and condensed from joint proposal.  *See also* 15 U.S.C. § 1; ABA Model Jury Instr. 1.B.

The **<u>second</u>** element is that the contract unreasonably restrained trade.[53]

The **<u>third</u>** element is that the contract affects interstate or foreign commerce.[54]  This element is undisputed.  So you will not have to decide it.

The **<u>fourth</u>** element of the contractual restraint claim is that the contract caused US Airways to suffer injury to its business or property.[55]

I will now further explain the two elements that are disputed.

### 1.    Second Element -- Unreasonably Restrained Trade

The second element that US Airways must prove by a preponderance of the evidence is that parts of the 2011 contract with Sabre unreasonably restrained trade.  A restraint of trade is illegal only if it is unreasonable.  So you must determine whether the contractual terms that US Airways challenges as a whole unreasonably restrained trade.  In other words, there are certain parts of the 2011 contract that the parties agree are restraints on trade.  The question for you is whether the restraints were unreasonable.

To decide that, you must go through several steps.  <u>First</u>, you must determine whether US Airways has proved by a preponderance of the evidence that the challenged contract terms have caused an actual adverse effect on competition as a whole in the relevant market.[56]

---

[53]  Adopted from preliminary charge and condensed from joint proposal.  *See also* 15 U.S.C. § 1; ABA Model Jury Instr.1.B.

[54]  Adopted from preliminary charge and condensed from joint proposal.  *See also* 15 U.S.C. § 1; ABA Model Jury Instr. 1.B.

[55]  Adopted from preliminary charge and condensed from joint proposal.  *See also* 15 U.S.C. § 1; ABA Model Jury Instr. 1.B.

[56]  Adopted from preliminary charge and joint proposal.  *Ohio v. American Express*, 138 S. Ct. 2274, 2283-84 (2018) (hereinafter "*Amex II*"); *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 182 (2d Cir. 2016) ("A plaintiff seeking to prove an antitrust violation under the rule of reason must initially show that the challenged action adversely affected competition in the relevant market."); *Geneva Pharm. Tech. Corp.*, 386 F.3d at 506-07 ("Under the rule of reason, the plaintiffs bear an initial burden to demonstrate the defendants' challenged behavior had an

If so, then <u>second</u>, you must consider whether Sabre has offered evidence that the challenged contract terms produce countervailing competitive benefits in the relevant market.[57]

If so, then at the <u>third</u> step, you must determine whether US Airways has proved by a preponderance of the evidence that any legitimate competitive benefits offered by Sabre could have been achieved through reasonably available alternative means that create substantially less harm to competition.[58]

Ultimately, you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal only if you find that the competitive harm substantially outweighs the competitive benefit.[59]

### a.   Unreasonably Restrained Trade, Step One -- Adverse Effect on Competition in a Relevant Market

To decide whether Sabre has unreasonably restrained trade on this claim, you must first determine whether US Airways has proved by a preponderance of the evidence that the challenged restraints in the 2011 contract caused a substantial adverse effect on competition in a "relevant product and geographic market."[60] The analysis for the "relevant market" part of this

---

*actual* adverse effect on competition as a whole in the relevant market." (emphasis in original; internal quotation marks omitted)); *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 96 (2d Cir. 1998) ("[P]laintiff initially must show that the challenged action had an *actual* adverse effect on competition as a whole in the relevant market . . . ." (emphasis in original) (internal quotation marks omitted)).

[57] Adopted from preliminary charge and joint proposal (citing *Capital Imaging Associates, P.C. v. Mohawk Valley Med. Associates, Inc.*, 996 F.2d 537, 543 (2d Cir. 1993)).

[58] Adopted from preliminary charge and joint proposal (citing *Capital Imaging Associates, P.C.*, 996 F.2d at 543).

[59] Adopted from preliminary charge and from joint proposal (citing *Capital Imaging*, 996 F.2d at 543; *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127 (2d Cir. 1995)).

[60] *See Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 2160 (2021) ("[T]he plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect." (quoting *Amex II*, 138 S. Ct. at 2284)); *United States v. Visa U.S.A., Inc.*, 344 F.3d 229,

element is the same analysis that I already explained for the monopolization claim, although the parties may define the relevant markets differently for each claim. For US Airways' contractual restraint claim, US Airways alleges that the relevant market is the market for GDS services linking airlines with traditional travel agents that primarily serve business travelers.[61]

If US Airways has proved its proposed relevant market, then you must also determine whether US Airways has proved that the challenged restraints had a substantial adverse effect on competition as a whole in the relevant market.[62] Because Sabre's GDS is a two-sided transaction platform, you must consider whether US Airways has demonstrated an adverse effect on competition "as a whole" in the relevant market -- encompassing airlines on one side and travel agencies on the other.[63]

To demonstrate that a restraint has resulted in an adverse effect on competition as a whole considering both sides of the relevant market,[64] US Airways may rely on either direct or indirect proof.

---

238, 242 (2d. Cir 2003) (explaining that plaintiff "must demonstrate that within the relevant market, the defendants' actions have had substantial adverse effects on competition" and "the proper inquiry" is if the conduct has a substantial adverse effect on competition "as a whole in the relevant market" (citations omitted)); ABA Model Instr. 1.C.2 ("If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff also has proven that the challenged restraint has [or is likely to have] a substantial harmful effect on competition in the market.").

[61] Adopts US Airways' proposed description of what it alleges is the relevant market.

[62] *See Nat'l Collegiate Athletic Ass'n*, 141 S. Ct. at 2160; *Visa U.S.A.*, 344 F.3d at 238, 242; ABA Model Instr. 1.C.2 ("If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff also has proven that the challenged restraint has [or is likely to have] a substantial harmful effect on competition in the market.").

[63] Adopts joint proposal. *See Amex II*, 138 S. Ct. at 2287 (explaining that "competition cannot be accurately assessed by looking at only one side of the platform in isolation"); *US Airways, Inc.*, 938 F.3d 43 at 59.

[64] Adopts Sabre's proposal, which includes "as a whole on both sides of the relevant market."

US Airways may rely on *direct* evidence of an actual adverse effect on competition by proving, for example, that the challenged 2011 contractual restraints resulted in higher net prices, fewer transactions, lesser quality, or reduced innovation in the relevant market, taking into account the impact of the challenged restraint on both sides of the relevant market -- here, the airlines and the travel agents.[65]

Instead of relying on direct evidence, US Airways may show an adverse effect on competition indirectly.  US Airways may establish anticompetitive effects with *indirect* evidence by proving *both* that Sabre had sufficient "market power" and thus the capacity to inhibit competition market-wide,[66] *plus* some other ground for believing that the challenged contract terms had the capacity to harm competition market-wide, such as the nature of the challenged restrictions, the structure of the relevant market, or a reduction in the range of options available to consumers.[67]

Market power has been defined as the ability to profitably raise prices for a sustained period of time above those that would be charged in a competitive market,[68] or to exclude

---

[65] Adopts Sabre's proposal, which includes "taking into account the impact of the challenged restraint to consumers on both sides of the relevant market."  *See Amex II*, 138 S. Ct. at 2284-85, 2287 ("Evaluating both sides of a two-sided transaction platform is also necessary to accurately assess competition.  Only other two-sided platforms can compete with a two-sided platform for transactions."); *US Airways Inc.*, 938 F.3d at 58.

[66] Adopts joint proposal (citing *K.M.B. Warehouse*, 61 F.3d at 129 ("However, 'where the plaintiff is unable to demonstrate such actual effects' -- as KMB is unable to do here -- 'it must at least establish that defendants possess the requisite market power' and thus the capacity to inhibit competition market-wide.")).

[67] *See MacDermid Printing Sols. LLC*, 833 F.3d at 186; *K.M.B. Warehouse*, 61 F.3d at 129.

[68] Adopts joint proposal (citing ABA Model Instr. 1.C.2; *K.M.B. Warehouse*, 61 F.3d at 129).

competition,[69] or to force a purchaser to do something it would not do in a competitive market.[70] In other words, market power is the "power to control prices or exclude competition."[71]  Market power is similar to, but distinct from monopoly power, a concept related to US Airways' monopolization claim.[72]

Some factors that might indicate that a company has market power are:

- the company's having a large share of the relevant market;

- the company's ability to raise prices without losing customers or market share;

- high barriers that new firms have to overcome to enter the market;

- few or no competitors having entered the market;

- few or insignificant competitors in the market; and

- the company's earning higher profits than it would have earned in a competitive market.

The ability to charge higher prices for better products or services is not market power.

### b.    Unreasonably Restrained Trade, Step Two -- Evidence of Competitive Benefits

We have just talked about the first step in deciding whether the challenged contract terms unreasonably restrained trade in the relevant market.  If you find that US Airways has proved this first step by a preponderance of the evidence, then you must go on to the second step and

---

[69]  Adopts joint proposal (citing *Tops Markets*, 142 F.3d at 97-98).

[70]  Adopts joint proposal (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992)).

[71]  Adopts joint proposal (citing *Visa II*, 344 F.3d at 239).

[72]  Sentence adopted from Sabre's proposal (citing *Eastman Kodak*, 504 U.S. at 481 (explaining that "[m]onopoly power under § 2 requires, of course, something greater than market power under § 1" and is a "more stringent . . . standard")).

consider whether Sabre has offered evidence that the challenged contract terms also produce countervailing *benefits* to competition in other ways.[73]

As with the first step, you must consider both the airline side and travel agent side of the relevant market when determining whether Sabre has offered evidence that the challenged contract terms in the parties' 2011 contract benefit competition.

### c.    Unreasonably Restrained Trade, Step Three -- Whether Contract Restraints Were Reasonably Necessary To Achieve the Competitive Benefits

If you find that Sabre has offered evidence that the challenged restraints result in competitive benefits, then you must decide whether US Airways has proved by a preponderance of the evidence that either:

- the challenged provisions in the 2011 contract between US Airways and Sabre are not reasonably necessary to achieve Sabre's procompetitive justifications, or

- those benefits may be achieved in a manner substantially less restrictive of competition.[74]

If US Airways proves that the same competitive benefits claimed by Sabre could have been readily achieved by other, reasonably available alternative means that would have resulted in substantially less harm to competition, then Sabre cannot use the claimed competitive benefits to justify the challenged restraints.

---

[73] Adopts joint proposal (citing ABA Model Instr. 1.C.4).

[74] Adopts joint proposal (citing *Amex I*, 838 F.3d at 195; *Geneva Pharms.*, 386 F.3d at 507; *Visa II*, 344 F.3d at 238).

d. **Unreasonably Restrained Trade -- Balancing Benefits and Harm**

Ultimately, you must weigh the harms and benefits of the challenged behavior.[75]  If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable.  If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable.[76]  In conducting this analysis, you must consider the benefits and harm to competition in the relevant market as a whole, accounting for both the airline and travel agent sides of the relevant market.   The overarching standard is whether Sabre's actions diminish overall competition.[77]

2. **Fourth Element -- Antitrust Injury and Causation**

If you find that US Airways has proved the other elements of its contractual restraint claim, you must also decide whether US Airways has proved by a preponderance of the evidence that it was actually injured as a result of Sabre's alleged unlawful conduct.  As I previously explained for the same requirement in the monopolization claim, this element requires US Airways to prove the following three steps:

First, that US Airways was in fact injured as a result of Sabre's antitrust violation;[78]

Second, that Sabre's illegal conduct was a material cause of US Airways' injury;[79] and

---

[75]  Adopts joint proposal (citing *Amex I*, 838 F.3d at 195; *Visa II*, 344 F.3d at 238; *K.M.B. Warehouse*, 61 F.3d at 128; *Capital Imaging*, 996 F.2d at 543).

[76]  Adopts joint proposal.  *See also* ABA Model Instr. 1.C.4.

[77]  Adopts joint proposal.  *See also* ABA Model Instr. 1.C.4.

[78]  Adopted from preliminary charge and joint proposal.  *Blue Tree Hotels Inv.*, 369 F.3d at 220 ("To establish antitrust injury . . . a plaintiff must show (1) an injury-in-fact; (2) that has been caused by the violation; and (3) that is the type of injury contemplated by the statute.")

[79]  *See infra* note 44.

<u>Third</u>, that US Airways' injury is an injury of the type that the antitrust laws were intended to prevent.[80]

The first two steps of this analysis are the same as before -- except as applied to the contract violation.  For the third element, US Airways must prove that its injuries arising out of the 2011 contract are the type of injuries that the antitrust laws were intended to prevent.[81]

For example, US Airways did not suffer an antitrust injury if it paid higher booking fees as a result of a bargained for exchange in a competitive market.  On the other hand, if US Airways paid higher fees as the result of an anticompetitive aspect[82] -- meaning competition-reducing aspect or effect -- of Sabre's conduct,[83] US Airways suffered an antitrust injury.  It is irrelevant for the purpose of determining antitrust injury, whether US Airways knew the terms were anticompetitive, agreed to them voluntarily, or used them to obtain other concessions,[84] but such evidence may be relevant for other issues, such as causation and damages.  Under the antitrust laws, a plaintiff is permitted to sign a contract containing anticompetitive terms and then sue for relief from those terms.[85]  If the terms violate the Sherman Act, they are illegal.

---

[80]  Adopted from preliminary charge and from joint proposal.  *Blue Tree Hotels Inv.*, 369 F.3d at 220.

[81]  Adopted from joint proposal (citing *Atl. Richfield Co.*, 495 U.S. at 334; *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

[82]  Adopts US Airways' proposal, which omits US Airways "***proves that*** it paid" to align with 2016 final charge.  *See Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 290 (2d Cir. 2006)).

[83]  Adopts US Airways' proposal, which omits "***market wide***" to align with 2016 final charge.  *See Atl. Richfield*, 495 U.S. at 339 ("Antitrust injury does not arise . . . until a private party is adversely affected by an *anticompetitive* aspect of the defendant's conduct.").

[84]  Adopts joint proposal (citing *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 140 (1968) *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752 (1984)).

[85]  *See, e.g.*, *Perma Life*, 392 U.S. at 139-40.

## XIV.   ANTITRUST DAMAGES

### A.    Introduction and Purpose

I am now going to instruct you on the issue of damages.  The fact that I am giving you these instructions does not mean that I have any opinion about whether US Airways should or should not prevail in this case.  I give you these damages instructions so that you will have them in the event that you find that US Airways has proved either or both of its claims.  If you find that Sabre is not liable on both claims, then you should not consider the issue of damages, and you may disregard the damages instruction I am about to give.

If you find that Sabre violated the antitrust laws -- on the monopolization claim, the 2011 contract claim, or both -- and that this violation caused injury to US Airways, then you must determine the amount of damages, if any, US Airways is entitled to recover.  The law provides that a plaintiff should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that is found unlawful.

Antitrust damages are compensatory, meaning their purpose is to put an injured plaintiff as nearly as possible in the position in which it would have been had the alleged antitrust violation not occurred.  The law in this case does not permit you to award damages to punish a wrongdoer --what we sometimes refer to as punitive damages -- or to deter particular conduct in the future.  Also, you are not permitted to award to the plaintiff any amount for attorneys' fees or the costs of maintaining this lawsuit.

### B.    Measure of Damages

On both the monopolization claim and the contract claim seeks damages in the form of excess fees and lost profits, asserting that (1) it paid Sabre higher GDS fees than it would have paid in the absence of Sabre's alleged violation of the antitrust laws, and (2) it earned fewer profits than it would have in the absence of Sabre's alleged violation of antitrust laws.  If you

determine that Sabre violated the Sherman Act and caused some injury to US Airways, you must then consider the extent of US Airways' damages.

You are permitted to make just and reasonable estimates in calculating US Airways' damages. You are not required to calculate damages with mathematical certainty of precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. US Airways must prove the reasonableness of each of the assumptions upon which the damages calculation is based.[86]

If you find that US Airways has provided a reasonable basis for determining damages, then you may award damages based on a reasonable estimate supported by the evidence. If you find that US Airways has failed to carry its burden of providing a reasonable basis for determining damages, then you may award no damages or nominal damages not to exceed one dollar.[87]

US Airways asserts two claims at issue in this case -- the monopolization claim and the contract claim. On the monopolization claim, you may award damages to US Airways only for injury to US Airways between April 21, 2007, and October 30, 2012. In other words, you may award damages on the monopolization claim only for injuries that occurred during this period.[88] On the 2011 contract restraint claim, you may award damages to US Airways only for injury to

---

[86] Adopted from joint proposal (citing ABA Model Instr. 6.B.3).

[87] Adopted from joint proposal (citing ABA Model Instr. 6.B.3).

[88] Adapts Sabre's proposal, which aligns with the April 15, 2022, Amended Opinion granting in part and denying in part Sabre's summary judgment motion. *US Airways, Inc. v. Sabre Holdings Corp.*, No. 11 Civ. 2725, 2022 WL 1125956, at *5 (S.D.N.Y. Apr. 15, 2022) (Dkt. No. 1171) ("US Airways seeks damages it suffered during the four years preceding the filing of this action, i.e., from April 21, 2007, to the end of 2012.").

Final with Footnotes

US Airways between February 23, 2011 (when the 2011 contract took effect), and October 30, 2012. In other words, you may award damages on the 2011 contract restraint claim only for injuries that occurred during this period.[89]

As you have heard, US Airways is asserting two claims and seeking damages for each of those claims. However, even if you find Sabre liable for more than one claim, you must not award damages in a manner that results in double recoveries for the same injury.

### C.    Causation of Damages

If you find that Sabre violated the antitrust laws and that US Airways was injured by that violation, US Airways is entitled to recover for those injuries that were the direct result or likely consequence of Sabre's relevant unlawful acts. On the monopolization claim, you may award US Airways damages caused by any of Sabre's monopolizing conduct that you find is unlawful, except not any conduct that was merely the performance of the 2006 contract -- such as payment of the 2006 contract's booking fee or following the 2006 contract's full content terms.[90] If you find that any unlawful conduct (excluding mere performance of the 2006 contract) was a material and but-for cause of US Airways injuries, then you may award damages for those injuries even if the injuries were also caused by other things, such as the performance of the 2006 contract.[91] A

---

[89] *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019) ("We thus conclude that each supracompetitive price charged to US Airways by Sabre pursuant to the 2006 contract was not an overt act of its own, but a manifestation of the prior overt act of entering into the 2006 contract. . . . We therefore affirm the district court's decision to limit US Airways' damages to those arising out of US Airways' 2011 contract with Sabre and prior to the execution of the 2012 settlement agreement with US Airways.")

[90] *US Airways, Inc.*, 2022 WL 1125956, at *5-6. At the charging conference, US Airways suggested alternative language to rephrase this sentence through the end of the paragraph. The Court adopts US Airways' suggestion in part, replacing "***this*** unlawful conduct" with "***any*** unlawful conduct" and adding "***such as the performance of the 2006 contract***" before note 91.

[91] *See In re Actos End-Payor Antitrust Litig.*, 848 F.3d 89, 98 (2d Cir. 2017) ("An antitrust plaintiff must show that a defendant's anticompetitive act was a 'material' and 'but-for' cause of

"but-for-cause" means that, if the unlawful conduct had not occurred, the injury would not have occurred.[92]  If you find that Sabre's monopolizing conduct (apart from mere performance of the 2006 contract) was not a material or but-for cause of US Airways injuries, then you may not award damages on the monopoly claim.

On the 2011 contract constraint claim, you may award US Airways damages arising from the performance of that contract.

US Airways bears the burden of showing that its injuries were caused by Sabre's antitrust violation, as opposed to other factors.  If you find that US Airways' alleged injuries were caused in part by Sabre's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of US Airway's alleged injuries that was caused by Sabre's alleged antitrust violation.[93]

US Airways bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes.[94]  If you find that US Airways was injured by Sabre's alleged antitrust violation, and there is a reasonable basis to apportion US Airways' alleged injury between lawful and unlawful causes, then you may award

---

plaintiff's injury, although not necessarily the sole cause."); *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 67.69 (2d Cir. 2012) (same); *US Airways, Inc. v. Sabre Holdings Corp.*, No. 11 Civ. 2725, 2022 WL 1140291, at *2 (S.D.N.Y. Apr. 18, 2022) (Dkt. No. 1172) (Abrantes-Metz Daubert Opinion).

[92]  *See generally Associated Gen. Contractors of Cal., Inc. v. Cal. St. Council of Carpenters*, 459 U.S. 519 (1983) (applying common law principles of causation derived from tort and contract law to determine whether the plaintiff had sufficiently alleged an antitrust injury under section 4 of the Clayton Act); 1 Jury Instructions on Damages in Tort Actions § 4.04 (2022) (collecting cases).

[93]  Adapted from joint proposal (citing ABA Model Instr. 6.B.4).

[94]  Adopts US Airways' proposal, which does not repeat the statute of limitations on each claim here.

damages caused by the unlawful causes.  If you find that there is no reasonable basis to apportion US Airways' alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all or may award nominal damages not to exceed one dollar.[95]

## XV.    CLOSING ARGUMENTS

With these instructions in mind, you will now hear from the lawyers, who will give their closing arguments.  I remind you that arguments by lawyers are not evidence, because the lawyers are not witnesses.  However, what they say to you in their closing arguments is intended to help you understand the evidence and to reach your verdict.  Please pay careful attention to their arguments.

---

[95]  Adopts US Airways' proposal, which omits the bolded text proposed by Sabre:  "If you find that there is no reasonable basis to apportion US Airways' alleged injury between lawful and unlawful causes, ***or between conduct for which it may recover and conduct for which it may not recover, or*** that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all."