UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| US AIRWAYS, INC., FOR AMERICAN AIRLINES, INC., AS SUCCESSOR AND REAL PARTY IN INTEREST,<br><br>          Plaintiff,<br><br>     -against-<br><br>SABRE HOLDINGS CORPORATION; SABRE GLBL INC.; and SABRE TRAVEL INTERNATIONAL LIMITED,<br><br>          Defendants. | Civ. A. No. 1:11-cv-02725-LGS-JLC |

**US AIRWAYS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ORDER ON ENTITLEMENT TO COSTS, INCLUDING A REASONABLE ATTORNEY'S FEE, UNDER 15 U.S.C. § 15**

Andrew J. Frackman
afrackman@omm.com
Anton Metlitsky
ametlitsky@omm.com
Mia N. Gonzalez
mgonzalez@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000

Ian Simmons (admitted *pro hac vice*)
isimmons@omm.com
Katrina M. Robson (admitted *pro hac vice*)
krobson@omm.com
1625 Eye Street, NW
Washington, DC 20006
Telephone:  (202) 383-5300

Madhu Pocha (admitted *pro hac vice*)
mpocha@omm.com
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone:  (310) 553-6700

R. Paul Yetter (admitted *pro hac vice*)
pyetter@yettercoleman.com
Bryce L. Callahan (admitted *pro hac vice*)
bcallahan@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas  77002
Telephone:  (713) 632-8000

*Attorneys for Plaintiff US Airways, Inc., for American Airlines, Inc., as Successor and Real Party in Interest*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .......................................................................................................... 1

II.     RELEVANT BACKGROUND ..................................................................................... 4

     A.      US Airways' Claims .......................................................................................... 5

     B.      Motion Practice, Discovery, and 2016 Trial ..................................................... 6

     C.      Appeal and 2022 Trial ...................................................................................... 6

III.    US AIRWAYS IS ENTITLED TO COSTS, INCLUDING A REASONABLE
        ATTORNEY'S FEE ..................................................................................................... 8

     A.      The Plain Language of the Clayton Act Entitles US Airways to an Award
                of Recoverable Costs and Reasonable Attorney's Fees....................................... 8

     B.      *Farrar* Does Not Compel a Different Result ...................................................... 9

IV.     US AIRWAYS IS ENTITLED TO RECOVER FOR FEES AND COSTS
        RELATED TO ITS INTERTWINED CLAIMS AND ITS SUCCESSFUL
        APPEAL ..................................................................................................................... 14

     A.      All Four of US Airways' Claims Were Inextricably Intertwined and Based
                on a Common Core of Facts and Legal Theories ............................................... 15

     B.      US Airways' Contractual Restraint Claim Is Subsumed within its Winning
                Monopolization Claim ...................................................................................... 18

     C.      US Airways' Conspiracy to Monopolize Claim Was Based on the Same
                Facts as its Monopolization Claim.................................................................... 22

     D.      The Facts Underlying the Horizontal Conspiracy Claim Overlapped with
                Facts Underlying US Airways' Section 2 Claim ................................................ 23

     E.      US Airways Is Entitled to Recover for Fees and Costs Relating to the
                Appeal of the 2016 Verdict............................................................................... 24

V.      CONCLUSION............................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abner v. Kansas City S. Ry. Co.*,
 541 F.3d 372 (5th Cir. 2008) ............................................................. 24

*Abshire v. Walls*,
 830 F.2d 1277 (4th Cir. 1987) ............................................................ 20

*Advance Bus. Sys. & Supply Co. v. SCM Corp.*,
 415 F.2d 55 (4th Cir. 1969) ................................................................. 9

*Am. Safety Equip. Corp. v. J. P. Maguire & Co.*,
 391 F.2d 821 (2d Cir. 1968) .............................................................. 13

*Auwood v. Harry Brandt Booking Office, Inc.*,
 647 F. Supp. 1551 (D. Conn. 1986), *aff'd in part, vacated in part on other grounds*,
 850 F.2d 884 (2d Cir. 1988) ................................................................. 8

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
 603 F.2d 263 (2d Cir. 1979) ................................................................. 9

*City of Riverside v. Rivera*,
 477 U.S. 561 (1986) .............................................................................. 4

*Concord Boat Corp. v. Brunswick Corp.*,
 34 F. Supp. 2d 1125 (E.D. Ark. 1998) ............................................... 10

*Dippin' Dots, Inc. v. Mosey*,
 2005 WL 1866839 (N.D. Tex. Aug. 4, 2005), *vacated on other grounds*, 476 F.3d
 1337 (Fed. Cir. 2007) .......................................................................... 12

*Farrar v. Hobby*,
 506 U.S. 103 (1992) ........................................................... 2, 10, 12, 15

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
 695 F.3d 330 (5th Cir. 2012) ......................................................... 11, 13

*Gierlinger v. Gleason*,
 160 F.3d 858 (2d Cir. 1998) ......................................................... 24, 25

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
 995 F.2d 414 (3d Cir. 1993) ................................................ 9, 11, 13, 24

*Hawaii v. Standard Oil Co. of Cal.*,
 405 U.S. 251 (1972) ............................................................................ 14

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ............................................................................ 17

*Home Placement Serv., Inc. v. Providence J. Co.*,
 819 F.2d 1199 (1st Cir. 1987) .......................................................... 9, 13

*Hydrolevel v. Am. Soc. of Mech. Engineers, Inc.*,
   635 F.2d 118 (2d Cir. 1980) ............................................................................ 8

*Litton Sys. Inc. v. American Tel. & Tel. Co.*,
   613 F. Supp. 824 (S.D.N.Y. 1985) ........................................................ 17, 19, 27

*Lunday v. City of Albany*,
   42 F.3d 131 (2d Cir. 1994) .......................................................................... 16

*MCA TV, Ltd. v. Pub. Interest Corp.*,
   171 F.3d 1265 (11th Cir. 1999) .................................................................... 9, 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   105 S. Ct. 3346 (1985) ................................................................................ 13

*Morning Pioneer, Inc. v. Bismarck Trib. Co.*,
   493 F.2d 383 (8th Cir. 1974) ......................................................................... 9

*Morse v. Univ. of Vermont*,
   973 F.2d 122 (2d Cir. 1992) ......................................................................... 14

*Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018) ............................................................................... 1, 7

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986) ..................................................................................... 24

*Perkins v. Standard Oil Co. of Cal.*,
   399 U.S. 222 (1970) ..................................................................................... 27

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
   392 U.S. 134 (1968) ..................................................................................... 14

*Quaratino v. Tiffany & Co.*,
   166 F.3d 422 (2d Cir. 1997) ................................................................... passim

*Sabre Global Technologies Ltd. v. Hawaiian Airlines, Inc.*,
   22-cv-07395 (S.D.N.Y.) ............................................................................... 16

*Sciambra v. Graham News*,
   892 F.2d 411 (5th Cir. 1990) ......................................................................... 9

*Sheet Metal Div. v. Local Union 38 of the Sheet Metal Workers Int'l Ass'n*,
   63 F. Supp. 2d 211 (N.D.N.Y. July 23, 1999) ............................................... 11

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993) ..................................................................................... 13

*U.S. Football League v. Nat'l Football League*,
   644 F. Supp. 1040 (S.D.N.Y. 1986) ............................................................. 22

*U.S. Football League v. Nat'l Football League*,
   704 F. Supp. 474 (S.D.N.Y. 1989) ............................................................... 23

*U.S. Football League v. Nat'l Football League*,
   887 F.2d 408 (2d Cir. 1989) ................................................................... passim

*US Airways, Inc. v. Sabre Holdings Corp.*,
    938 F.3d 43 (2d Cir. 2019) ........................................................................ 7, 27

*Wilson v. Aquino*,
    2006 WL 8453633 (N.D.N.Y. Feb. 27, 2006) ........................................................ 14

*Wilson v. Garcia*,
    471 U.S. 261 (1985) ........................................................................................ 14

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
    529 F. Supp. 866 (E.D. Pa. 1981) ...................................................................... 13

**Statutes**

15 U.S.C. § 15 ...................................................................................... 1, 8, 9

I.    **INTRODUCTION**

On May 19, 2022, a jury found that US Airways had proved that Sabre was a monopolist and violated Section 2 of the Sherman Act, thereby entitling US Airways to its costs, including reasonable fees.  This victory was significant in the following respects:

- First, it was the culmination of over 11 years of hard-fought litigation, involving years of broad discovery, two lengthy jury trials, and a trip to the Court of Appeals.  US Airways had to overcome the formidable defense presented by Sabre's five national law firms—Cleary Gottlieb, Bartlit Beck, Cravath, Gibson Dunn, and Skadden.[1]  Few cases involve such effort over such a long period of time.

- Second, the case presented legal issues never before litigated, and was the first case involving two-sided platforms to be tried to a jury since *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018), in which the Supreme Court set forth the new way to analyze two-sided platform claims.

- Third, it addressed anticompetitive conduct that every year harmed tens of thousands of consumers as well as airlines operating in the U.S. market in which Sabre dominates ticket distribution.

- Fourth, the verdict established that Sabre exercised monopoly power, and took unlawful actions to maintain that monopoly power.

US Airways' victory achieved precisely what the antitrust laws were designed to encourage— private enforcement to eliminate anticompetitive conduct.  That is why the Clayton Act mandates attorney's fees for prevailing plaintiffs.  *See* 15 U.S.C. § 15.

Contrary to both the text of the statute and decades of precedent, Sabre asks this Court to deprive US Airways of any recovery merely because the jury awarded US Airways nominal damages.  *See* ECF No. 1252, at 2.  But the Second Circuit long ago held "the award of nominal damages in antitrust cases . . . does not affect [a plaintiff's] right to attorney's fees."  *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 411 (2d Cir. 1989) ("*USFL*").  The

---

[1] Sabre retained and was represented by at least five elite law firms: Skadden, Arps, Slate, Meagher & Flom LLP (lead counsel in 2022 trial); Bartlit Beck Herman Palenchar & Scott LLP (lead counsel in 2016 trial, discovery, and appeal); Cleary Gottlieb Steen & Hamilton LLP (counsel during discovery, 2016 trial, and appeal); Gibson, Dunn & Crutcher, LLP (counsel during discovery); and Cravath, Swaine & Moore (lead appellate counsel).

Court of Appeals has not overruled that well-established precedent.  And the case on which Sabre relies—*Farrar v. Hobby*, 506 U.S. 103 (1992)—is inapplicable, because (a) it did not involve the Clayton Act but rather a different fee-shifting statute altogether, and (b) the plaintiff there failed to prove the alleged conspiracy was the proximate cause of his injury—an essential element of his claim.  Here, US Airways proved all the elements of its Section 2 claim, including causation and harm, because otherwise it could not have prevailed.

Sabre advances several other arguments in addition to its wholesale attempt to deny US Airways of any fee recovery.  They boil down to the assertion that US Airways did not prevail on all of the claims in its original complaint, because some were dropped and for others the jury returned a defense verdict.  But the law is clear on this issue.  A prevailing plaintiff is entitled to its fees even on claims on which it did not prevail as long as those claims are inextricably intertwined with the claims on which it did prevail.  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1997).  That is the case here, where all claims were related and arose from the same nucleus of facts.

Sabre claims that US Airways is not entitled to the fees it incurred leading to its Section 1 jury verdict in 2016 because, in 2022, US Airways prevailed only on its Section 2 claim.  *See* ECF No. 1252, at 2.  Any suggestion that the work leading to and at the 2016 trial could be separated from the 2022 trial victory is fanciful.  The Section 2 claim was broader than the Section 1 claim and encompassed the facts concerning Sabre's conduct towards US Airways in 2010–2011, which supported the Section 1 claim.  Judge Schofield acknowledged as much, noting that "US Airways' § 1 claim arises out of the two contracts, and its § 2 claim is based on the contracts and other alleged anticompetitive behavior by Sabre."  ECF No. 1171, at 3.  Sabre too has stated that the Section 1 and 2 work and evidence were interrelated:  in opposing

additional discovery after the remand, Sabre's counsel argued that in preparation for the 2016 trial, US Airways had "t[aken] discovery on a Section 2 case," "questioned [Sabre's] witnesses on" a Section 2 case, and ultimately "tried a Section 2 case."  ECF No. 945, 11/20/2019 Conf. Tr., at 25.  And it is undisputed that most of the evidence proffered in support of US Airways' Section 2 claim at the 2022 trial had been proffered at the first trial: 31 of the 44 witnesses who testified in 2016 testified again in 2022, and 72% of the exhibits admitted in 2022 had also been admitted in 2016.  Moreover, the parties stipulated that nearly all of the Court's evidentiary rulings in the 2016 trial, including many *in limine* motions, would apply to the 2022 evidence, thereby permitting what had been an eight-week trial to be completed in three weeks.

The same holds true for the Section 2 conspiracy to monopolize claim (which US Airways dropped) and the Section 1 horizontal conspiracy claim between Sabre and its competitors (which the jury rejected in 2016).  The fees related to development and presentation of evidence relevant to both these claims are recoverable because it "cannot be said that the . . . evidence was completely distinct, either factually or legally, from the broad monopolization claim that plaintiff prevailed upon."  *USFL*, 887 F.2d at 412–413 (quotation omitted).  The conspiracy to monopolize claim that US Airways dropped before trial alleged a conspiracy between Sabre and the travel agencies who received billions of dollars of incentives from Sabre and coordinated with Sabre to penalize airlines that challenged Sabre's dominance.  Evidence that relates to that claim was presented at trial as part of US Airways' Section 2 claim—the Sabre travel agency agreements, Sabre's enormous payments to the travel agencies, and communications between Sabre and the travel agencies in connection with Sabre's coordinated response to the airlines.  And the core evidence relating to Sabre's coordination with the other GDSs was also presented as part of US Airways' proof at the 2022 trial, even though that claim

3

was not retried in 2022.  The Court has already rejected Sabre's objection that the evidence was irrelevant to the Section 2 claim.  ECF No. 1220, 4/26/2022 Trial Tr. 338:9–340:12 (admitting PX-149, an agreement between Sabre and Amadeus, another GDS, not to compete for airline content).  Sabre cannot show that the work on these other claims was completely distinct from the broad Section 2 claim on which US Airways prevailed, which it must in order to deprive US Airways of the fees as part of its successful Section 2 claim.

It is not the role of the Court to do the type of auditing work that Sabre suggests would be needed to separate out some specific time entries that would be associated solely with these other claims, given the factual interrelatedness of the four antitrust claims.  But even if such an effort were appropriate when considering reasonableness, that is for a later stage and not now, which is limited to "the threshold issue of whether plaintiff is entitled to fees (and the degree of recovery").  *See* ECF No. 1264.[2]  What the current record does make clear is that because these claims are intertwined, any attempt to categorically exclude fees related to a specific claim should be rejected.  To the contrary, US Airways' fees related to these claims should be considered presumptively recoverable, subject to a general reasonableness inquiry to be briefed in the next stage of this proceeding.

## II.    RELEVANT BACKGROUND

This 11-year-old battle has a sprawling and complex history.  We describe below only the background necessary to the current dispute.

---

[2] When we get to "reasonableness," we believe the Court will be aided by a review of Sabre's own billing records, since a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986).

A.    <u>US Airways' Claims</u>

On April 21, 2011, US Airways filed its original complaint, asserting claims under both

Sherman Act Sections 1 and 2.  *See* ECF No. 1.  In pertinent part, US Airways alleged that:

- Sabre operates a Global Distribution System ("GDS"), which provides travel agents with information on schedules and fares and the ability to book tickets offered by participating airlines.  *Id.* ¶ 2.

- Sabre has power over airlines because it is the largest GDS in the United States and, as a result of Sabre's anticompetitive agreements with travel agents and other technology companies, travel agents use one GDS per corporate customer for virtually all of the airfares they book, so airlines must participate in every GDS to reach the travel agents' lucrative corporate travelers.  *Id.* ¶¶ 2–6, 40–45.

- Sabre uses its power to extract supracompetitive booking fees from airlines and to force airlines to enter into "full content" agreements preventing airlines from providing any content through other distribution channels unless that content is also provided to Sabre.  *Id.* ¶ 8.

- When airlines challenged Sabre's business model and contractual restraints, Sabre retaliated against them through a variety of exclusionary conduct, including engaging in display bias to hide airline content from travel agents.  *Id.* ¶¶ 50–55.

US Airways alleged four related Sherman Act violations:

- **Count I**:  Sabre's contracts with airlines and travel agents unreasonably restrained competition, in violation of Section 1, *id.* ¶¶ 153–159 ("contractual restraints claim");

- **Count II**:  Sabre's agreements with airlines, agreements with travel agents, and other exclusionary conduct willfully maintained Sabre's monopoly power, in violation of Section 2, *id.* ¶¶ 160–164 ("monopolization claim");

- **Count III**:  Sabre, Sabre subscribers, and others conspired to preserve Sabre's monopoly power, in violation of Section 2, *id.* ¶¶ 165–168 ("conspiracy to monopolize claim"); and

- **Count IV:**  Sabre and the two other GDSs entered into a horizontal conspiracy intended to entrench each GDS's dominance and impede competition on the merits, in violation of Section 1, *id.* ¶¶ 169–173 ("horizontal conspiracy claim").

### B.     Motion Practice, Discovery, and 2016 Trial

In 2011, Sabre moved to dismiss US Airways' complaint twice.  *See* ECF No. 39, 67.

The Court denied the motion as to the Section 1 claims and granted it as to the Section 2 claims.

*See* ECF No. 59; ECF No. 73, at 35.  The parties proceeded to fact and expert discovery.

In early 2015, the Court denied Sabre's motion for summary judgment on the Section 1

claims.  *See* ECF No. 245.  In May 2015, US Airways moved to amend its complaint to forgo

damages and seek a bench trial on its equitable claims "[i]n the interest of achieving a prompt,

efficient and correct outcome in this case."  ECF No. 298, at 1.  The Court agreed with Sabre that

US Airways' equitable claims were moot in light of the fact that US Airways had merged with

American Airlines, its 2011 contract had expired, and Sabre had entered into a separate

settlement with American Airlines, collectively barring US Airways' requests for injunctive and

declaratory judgment relief.  *See* ECF No. 350 at 7–8.  US Airways amended its complaint again

to add back its damages claim and to proceed to a jury trial, *see* ECF No. 378, which the parties

promptly did in October 2016.

During the eight-week trial, the parties presented 44 witnesses and introduced more than

300 exhibits.  On December 20, 2016, the jury returned a verdict in US Airways' favor on its

principal Section 1 contractual restraints claim relating to the Sabre-US Airways contract, and

awarded US Airways over $5 million in damages, pre-trebling.  ECF No. 720.[3]

### C.     Appeal and 2022 Trial

Sabre appealed the verdict on several grounds, and requested the Court of Appeals to

enter judgment in its favor.  US Airways cross-appealed, seeking reinstatement of its Section 2

claims that had been dismissed in 2011.  After the parties appealed, the Supreme Court decided

---

[3] The jury found against US Airways on its secondary Section 1 horizontal conspiracy claim.

*Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018), which heightened the requirements for proving Sherman Act violations in cases involving "two-sided transaction platforms," requiring courts to evaluate competition on "both sides" of those platforms.  *Id.* at 2286–87.  The Second Circuit vacated the verdict on the ground that Sabre is a two-sided transaction platform and the district court had failed to properly instruct the jury in light of the (later-decided) *American Express* case, but denied Sabre's request to enter judgment in its favor because the jury "could have reasonably concluded instead that when considering both sides of the platform, Sabre did violate Section 1 of the Sherman Act."  *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 61 (2d Cir. 2019).  The Second Circuit also reinstated US Airways' Section 2 claims, reversing the district court's 2011 dismissal, and remanded the case for a new trial.  *Id.*

In late 2021, Sabre filed another sweeping motion for summary judgment, and US Airways again prevailed on nearly every issue.  ECF No. 1129.[4]  The case proceeded to trial in April 2022, and the jury again found in US Airways' favor, this time on the reinstated Section 2 claim, finding that "Sabre willfully maintained monopoly power through exclusionary conduct in the relevant market" and US Airways "was harmed as a result of Sabre's exclusionary conduct."  ECF No. 1208 (verdict form).  In contrast to the first trial, the jury did not find that Sabre's "full content" agreement with US Airways was an unreasonable restraint on trade in violation of Section 1.  ECF No. 1208.  Although the jury found that Sabre's monopolization had willfully maintained monopoly power, harming the market and US Airways, it awarded US Airways only nominal damages.  *Id.*  Neither party appealed the verdict.

---

[4] Before Sabre filed for summary judgment, US Airways agreed to dismiss its conspiracy to monopolize claim and filed its sixth—and final—amended complaint.  *See* ECF No. 1036; ECF No. 1037.

## III. US AIRWAYS IS ENTITLED TO COSTS, INCLUDING A REASONABLE ATTORNEY'S FEE

### A. The Plain Language of the Clayton Act Entitles US Airways to an Award of Recoverable Costs and Reasonable Attorney's Fees

The Clayton Act mandates that "*any person who shall be injured* in his business or property by reason of anything forbidden in the antitrust laws . . . *shall recover* threefold the damages by him sustained, and *the cost of suit*, *including a reasonable attorney's fee*." 15 U.S.C. § 15 (emphasis added).[5] Here, the verdict required that the jury find US Airways was "in fact injured as a result of Sabre's antitrust violation," "Sabre's illegal conduct was a material cause of US Airways' injury," and "US Airways' injury is an injury of the type that the antitrust laws were intended to prevent." ECF No. 1207, Exh. 8, at 19–20 (final jury instructions). Thus, US Airways is entitled to costs, including reasonable attorney's fees.

Based on the unambiguous statutory language, courts have long awarded cost and attorney's fee awards "[e]ven where only nominal damages are recovered." *USFL*, 887 F.2d at 411 (collecting cases).[6] For example, in *USFL*, the jury found that the NFL had willfully acquired or maintained monopoly power in the United States major league professional football market, but awarded the USFL only $1.00 in damages (before trebling). 887 F.2d at 409–10. Rejecting the NFL's argument that these nominal damages undercut any entitlement to fees, the Second Circuit held that based on the "plain meaning of Section 4 . . . an injury is all that is

---

[5] *See also Hydrolevel Corp. v. Am. Soc. of Mech. Engineers, Inc.*, 635 F.2d 118, 130 (2d Cir. 1980) ("Section 4 of the Clayton Act expressly requires such an award [of reasonable attorney's fees]."); *USFL*, 887 F.2d at 411 ("An award of attorney's fees to the injured party [under Section 4] is mandatory.")

[6] *See, e.g., Auwood v. Harry Brandt Booking Office, Inc.*, 647 F. Supp. 1551, 1557 (D. Conn. 1986) ("It is beyond dispute that a finding of nominal damages [under the antitrust laws] is sufficient for an award of attorney fees."), *aff'd in part, vacated in part on other grounds*, 850 F.2d 884 (2d Cir. 1988); *see also Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 418 n.5 (3d Cir. 1993) ("Courts have consistently held that an antitrust plaintiff who receives a favorable verdict, even if that verdict awards only nominal damages, is still entitled to seek attorney's fees." (citing *U.S. Football League*, 887 F.2d at 411; *Sciambra v. Graham News*, 892 F.2d 411, 415 (5th Cir. 1990)).

required for an award of attorney's fees." 887 F.2d at 411. The First, Third, Fourth, Fifth and Eleventh Circuits are in accord.[7]

Once an injury has been found, the only remaining questions are whether the requested costs are "recoverable," *see Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 n.75 (2d Cir. 1979), and whether the attorney's fees are "reasonable," 15 U.S.C. § 15, questions that are not before the Court at this stage. *See* ECF No. 1264 (the focus for this round of briefing is "the threshold issue of whether plaintiff is entitled to fees (and the degree of recovery)").

### B.    *Farrar* **Does Not Compel a Different Result**

Notwithstanding the statutory language and Second Circuit precedent, Sabre argues that *Farrar v. Hobby*, 506 U.S. 103 (1992), precludes US Airways from recovering fees or costs because it was awarded nominal damages. *See* ECF No. 1252, at 2. To our knowledge, no Court of Appeals has applied *Farrar* in this manner to a prevailing plaintiff under the antitrust laws.[8] *Farrar* was a civil rights case where the plaintiffs failed to prove an element of their claim—that

---

[7] *See Home Placement Serv., Inc. v. Providence J. Co.*, 819 F.2d 1199, 1210 (1st Cir. 1987) (nominal damages "does not mean that the fee award may also be nominal"); *Gulfstream III*, 995 F.2d at 419 ("An antitrust plaintiff who has proven to the satisfaction of the factfinder that defendant violated the antitrust laws and has established the fact of damage has established the prerequisites for defendant's liability and its own entitlement to attorney's fees."); *Advance Bus. Sys. & Supply Co. v. SCM Corp.*, 415 F.2d 55, 70 (4th Cir. 1969) ("When the damages recovered are relatively small, as in the present case, it is not necessarily an abuse of discretion to grant fees exceeding the amount of single damages."); *Sciambra*, 892 F.2d at 415 (5th Cir. 1990) ("[A] plain reading of section 4 suggests that the only issue relevant in determining the recoverability of attorneys' fees is whether the plaintiff has been 'injured in his business or property.'"); *Morning Pioneer, Inc. v. Bismarck Trib. Co.*, 493 F.2d 383, 390 (8th Cir. 1974) (no abuse of discretion to award fees despite nominal damages award); *MCA TV, Ltd. v. Pub. Interest Corp.*, 171 F.3d 1265, 1281 n.21 (11th Cir. 1999) ("[N]owhere in Section 4 of the Clayton Act is a minimal injury requirement mentioned and . . . accordingly, . . . the dollar amount of the injury alleged is not relevant to the grant of attorney's fees." (quotation omitted)).

[8] One district court in Arkansas conducted a *Farrar* analysis and decided to award no fees in an antitrust case where the award was nominal damages. *Concord Boat Corp. v. Brunswick Corp.*, 34 F. Supp. 2d 1125, 1133–34 (E.D. Ark. 1998). For the reasons explained above, the court's analysis is contrary to binding Second Circuit precedent. And to the extent *Farrar* is relevant, *Concord Boat* is distinguishable. Unlike here, the nominal damages award was for a Section 1 counterclaim raised by the defendant after the plaintiffs' complaint was filed. *Id.* at 1132–33. The judge stated without explanation that he had "viewed every exhibit" and "heard testimony of every witness who testified about the counterclaim" and was "convinced that the pursuit of [the defendant's] [c]ounterclaim served no public goal or purpose." *Id.* Here, the presiding judge has made no such observation and the monopolization claim at issue was at the heart of US Airways' case.

the "conspiracy was not a proximate cause of any injury suffered by plaintiffs." *Id.* at 105. Under these particular facts, where a Section 1983 plaintiff has "recover[ed] only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." 506 U.S. at 115.

*Farrar* does not apply here, because it involved a different fee statute with different text from Section 4 of the Clayton Act. As the Third Circuit explained in *Gulfstream III*, **after Farrar** was decided, "the entitlement of a party to recover attorney's fees is not necessarily identical in" antitrust and civil rights actions. 995 F.2d at 418. In civil rights actions, "fee awards are discretionary but available to both plaintiffs and defendants, whereas under the Clayton Act fee awards are mandatory but available only to plaintiffs who prove an antitrust injury." *Id.* Because fee awards are mandatory when an antitrust plaintiff proves antitrust injury, in many cases "an award of compensatory damages will accompany an award of Section 4 attorneys' fees, [but] the latter is not dependent upon the former." *Id.* at 419 (awarding attorney's fees even though verdict was "entirely offset by prior settlements"). The Fifth and Eleventh Circuits have agreed in cases post-dating *Farrar*.[9] This is consistent with what the Second Circuit concluded before *Farrar* in the *USFL* case, holding that civil rights cases were "of limited applicability" in antitrust cases, where "[a]n award of attorney's fees to the injured party is mandatory." *USFL*, 887 F.2d at 411.[10] Courts in this Circuit have continued to rely upon *USFL* post-*Farrar*. *See Sheet Metal Div. v. Local Union 38 of the Sheet Metal Workers*

---

[9] *See Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 336 (5th Cir. 2012) ("[P]laintiffs have a right under § 4 to sue for the statutorily mandated costs and reasonable attorneys' fees even if a settlement with one defendant means that no additional compensatory damages actually will be recovered [because the] right to recover attorneys' fees from the defendants depends on whether the plaintiffs can succeed in demonstrating that the defendants violated the antitrust laws and can establish the fact of damage." (quotation and brackets omitted; emphasis added)); *MCA TV, Ltd.*, 171 F.3d at 1281 n.21.

[10] To US Airways' knowledge, there are no post-*Farrar* antitrust cases in the Second Circuit that have addressed the issue of attorney's fees for plaintiffs who receive nominal damages.

*Int'l Ass'n*, 63 F. Supp. 2d 211, 215 (N.D.N.Y. July 23, 1999) ("Although plaintiffs correctly state that an award of attorney's fees is not tied to the amount of damages recovered, *see USFL*, 887 F.2d at 411, a showing of an injury is, however, required.").[11]

In addition to the textual differences between the relevant fee statutes, there is a material difference between what an award of nominal damages means in antitrust and civil rights actions. Unlike in *Farrar*, a plaintiff in an antitrust action who receives nominal damages (like US Airways) has not "failed to prove an essential element" of an antitrust claim. *See* 506 U.S. at 115. The USFL (like US Airways here) proved that the "NFL's monopolization . . . injured the USFL." *USFL*, 887 F.2d at 411. "An injury having been found, the awarding of attorney's fees to the USFL was compulsory," and the nominal damages award did "not affect [the] right to attorney's fees" because an "award of nominal damages in antitrust cases is not 'suspect.'" *Id.* In contrast, in civil rights actions under Section 1983, a court ***must*** award "nominal damages when a plaintiff establishes the violation of his right to procedural due process but ***cannot prove actual injury***." *Farrar*, 506 U.S. at 112 (emphasis added). Thus, unlike in antitrust suits, in "civil rights suits for damages . . . the award of nominal damages . . . ***highlights the plaintiff's failure to prove actual, compensable injury***." *Id.* (emphasis added). This is why the award of nominal damages in civil rights actions is "suspect."

That different standards apply to fee awards in antitrust and civil rights suits is not surprising given the different purposes of the statutory regimes. Congress mandated awards of attorney's fees and costs under the Clayton Act "in order to encourage individuals to bring suits to enforce the antitrust laws and to discourage potential defendants from violating [such] laws."

---

[11] *See also Dippin' Dots, Inc. v. Mosey*, 2005 WL 1866839, at *1 (N.D. Tex. Aug. 4, 2005), *vacated on other grounds*, 476 F.3d 1337 (Fed. Cir. 2007) (awarding attorney's fees under the Clayton Act despite no monetary damages).

*Funeral Consumers All.*, 695 F.3d at 338.[12]  "Private plaintiffs bringing damages actions under

the [antitrust laws] are 'private attorneys general,' whose successful lawsuits vindicate societal

interests as well as their own."  *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F.

Supp. 866, 905 (E.D. Pa. 1981).[13]  "What is important is encouraging the detection and cessation

of anticompetitive behavior, not the amount of damages found.  Because of the importance of the

policy of encouraging private parties to bring antitrust actions, recovery of their reasonable

attorney's fees must be sustained regardless of the amount of damages awarded."  *USFL*, 887

F.2d at 411.[14]  In contrast, Section 1983 is a "'a general remedy for injuries to personal rights'"

and claims under the statute are "best characterized as personal injury actions."  *Morse v. Univ.

of Vermont*, 973 F.2d 122, 126 (2d Cir. 1992) (quoting *Wilson v. Garcia*, 471 U.S. 261, 276–78

(1985)).  Unlike "personal injury actions" under Section 1983, *see Morse*, 973 F.2d at 126,

"[e]very violation of the antitrust laws is a blow to the free-enterprise system envisaged by

Congress," *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972), and successful, private

antitrust suits inherently "further the overriding public policy in favor of competition," *Perma

Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968).  Because the two fee statutes

have different purposes, they are often neither "applicable [n]or persuasive" in cases brought

---

[12] *See also Home Placement Serv.*, 819 F.2d at 1210 ("In all successful antitrust cases, the award of reasonable attorney's fees as part of costs is mandatory in order to encourage private prosecution of antitrust violations").
[13] *See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 105 S. Ct. 3346, 3358 (1985) ("A claim under the antitrust laws is not merely a private matter.  The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general *who protects the public's interest*." (emphasis added)); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) ("The purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market.  The law directs itself . . . against conduct which unfairly tends to destroy competition itself.  *It does so not out of solicitude for private concerns but out of concern for the public interest*." (emphasis added)); *Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 826 (2d Cir. 1968) ("Antitrust violations can affect hundreds of thousands—perhaps millions—of people and inflict staggering economic damage.").
[14] *See also Gulfstream III*, 995 F.2d at 419 ("Any other holding would not only deter the private prosecution of antitrust violations, which is a critical element in the antitrust enforcement scheme and the primary reason attorney's fees are mandatory under the statute . . . , but could also deter plaintiffs from early settlements with some defendants." (citing *USFL*, 887 F.2d at 412)).

under one or the other statute. *See Wilson v. Aquino*, 2006 WL 8453633, at *14 (N.D.N.Y. Feb. 27, 2006) (Sherman Act cases are neither "applicable or persuasive" in deciding attorney's fees in the civil rights context "[a]s the animating purpose of the fee-shifting statute in antitrust cases is dissimilar to the animating purpose of the fee-shifting statute in a civil rights case").

This is especially true for Section 2 cases, which by definition focus on market-wide misconduct, as opposed to a personal injury claim. Here, over the course of more than a decade, US Airways shouldered significant business risk to prove—and in the process, bring to the public's attention—that Sabre excluded and harmed competition in the broad air travel booking market. The case was not, unlike many Section 1983 actions, merely about individual damages. In fact, US Airways was willing to forego damages altogether "[i]n the interest of achieving a prompt, efficient and correct outcome in this case." ECF No. 298, at 1.

In the end, US Airways proved that Sabre's conduct distorted competition for GDS competitors, airlines, and travel agents alike—and in the process, harmed consumers. *See* ECF No. 1207, Exh. 9, at 15 (jury instructions defining exclusionary conduct element as "conduct that has the effect of preventing or excluding competition"). The verdict incentivizes future plaintiffs to bring suits to ensure that a known monopolist is held to account for its anticompetitive acts, even where the amount of damages may be uncertain or difficult to calculate. And this, in turn, deters monopolists like Sabre from engaging in exclusionary acts to maintain their monopoly power.

Sabre knows all of this and that this decade-plus litigation is far from the "usual" civil rights case contemplated by *Farrar*. *See* 506 U.S. at 115. For example, in the months since the 2022 verdict, Sabre's relationships with its airline customers have changed. A mere two weeks after the verdict, on May 31, 2022, Hawaiian Airlines implemented a new policy applying a

surcharge on US-based travel agencies that book through Sabre and other GDSs.[15]  Instead of resorting to the exclusionary biasing tactics and threats it employed against other airlines that took similar actions during the time period at issue during the US Airways trial and that the jury found unlawful,[16] Sabre sought relief in court for an alleged breach of contract.[17]

## IV.    US AIRWAYS IS ENTITLED TO RECOVER FOR FEES AND COSTS RELATED TO ITS INTERTWINED CLAIMS AND ITS SUCCESSFUL APPEAL

Sabre's other gating objections fare no better.  Binding Supreme Court and Second Circuit law provides that US Airways is entitled to work done on claims that US Airways dropped or did not prevail on, because the work overlapped with that done for the successful Section 2 claim.

The Court of Appeals has repeatedly held that "[a]ttorney's fees may be awarded for unsuccessful claims as well as successful ones . . . where they are inextricably intertwined and involve a common core of facts or are based on related legal theories."  *Quaratino*, 166 F.3d at 425; *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam) (reduction not required so long as the unsuccessful claims were not "wholly unrelated to the plaintiff's successful claims" (quotations omitted)).  As the Supreme Court has explained:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. ***Normally this will encompass all hours reasonably expended on the litigation*** . . . . In these circumstances ***the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.*** . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or

---

[15] *Priceline and Hawaiian Airlines partner to offer best content to guests*, July 28, 2022, https://newsroom.hawaiianairlines.com/releases/releases-20220728.
[16] *See, e.g.*, ECF No. 1220, 4/26/2022 Trial Tr. 414:19–418:19 (Madeleine Gray, former Sabre technology executive, testifying that, in retaliation for Northwest Airlines implementing a $7.50 GDS surcharge, Sabre applied "penalty points" to artificially push Northwest's flights further down travel agent screens and "zeroed out" inventory on the airline's international flights).
[17] *Sabre Global Technologies Ltd. v. Hawaiian Airlines, Inc.*, 22-cv-07395 (S.D.N.Y.).

> failure to reach certain grounds is not a sufficient reason for
> reducing a fee. **The result is what matters**.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (emphasis added).  Relying on these precedents,

courts in this district have rejected an "issue-by-issue analysis . . . in favor of a more

straightforward 'bottom line' approach" in various types of cases, including antitrust.  *Litton Sys.*

*Inc. v. American Tel. & Tel. Co.*, 613 F. Supp. 824, 830 (S.D.N.Y. 1985).  When claims are not

"severable," courts need not engage in any "hair-splitting" to allocate time spent in connection

with successful and unsuccessful claims.  *Quaratino*, 166 F.3d at 426 n.8.  And a prevailing

plaintiff like US Airways need not "identify which hours were spent on issues it clearly won and

which hours were spent on issues it did not clearly win."  *Litton*, 613 F. Supp. at 830.

Here, all the fees at issue—whether related to work in the district or appellate court—

relate to claims that are inextricably intertwined with US Airways' successful monopolization

claim and are based on a common core of facts and legal theories.  The Court should therefore

reject Sabre's attempt to categorically exclude fees it argues are related only to US Airways'

unsuccessful or abandoned claims and find these claims are presumptively recoverable, subject

to a general reasonableness inquiry to be briefed in the next stage of this proceeding.

A.   **All Four of US Airways' Claims Were Inextricably Intertwined and Based on a Common Core of Facts and Legal Theories**

All four of US Airways claims—(1) monopolization, (2) conspiracy to monopolize,

(3) contractual restraints, and (4) horizontal conspiracy—were based on a common core of facts.

Although these claims have slightly different elements, they all center on the same issues,

described in detail in the table below, including Sabre's power to compel US Airways and other

airlines to agree to its terms; the presence (or lack thereof) of alternatives to Sabre; and how

Sabre's anticompetitive conduct stifled innovation and prevented airlines and travel agents from

pursuing other, better distribution methods.

| Issue | Monopolization, § 2 (winning jury verdict 2022) | Conspiracy to Monopolize, § 2 | Vertical Agreements in Restraint of Trade, § 1 (winning jury verdict 2016) | Horizontal Agreement between GDSs, § 1 |
|---|---|---|---|---|
| **"Full content" contracts** | Component of Sabre's suite of monopolistic exclusionary conduct | Conspiracy forced US Airways to sign anticompetitive deal with Sabre | Core challenged conduct, in addition to contracts with travel agents | GDSs sought same scope of "full content" from legacy airlines |
| **Contracts with travel agents** | Component of Sabre's suite of monopolistic exclusionary conduct | Core challenged conduct | Core challenged conduct, in addition to "full content" contracts | Virtually identical provisions in GDS contracts with travel agents |
| **Retaliation against airlines** | Component of Sabre's suite of monopolistic exclusionary conduct | Probative of Sabre's monopoly power | Probative of Sabre's market power | Engaged in joint retaliation against airlines |
| **Lack of alternative channels** | Probative of Sabre's monopoly power and anticompetitive effects | Probative of Sabre's monopoly power | Probative of Sabre's market power | Probative of GDSs' monopoly power and anticompetitive effects |
| **Travel agent lock-in** | Probative of Sabre's monopoly power and anticompetitive effects | Probative of Sabre's monopoly power and anticompetitive effects | Probative of Sabre's market power; proof of anticompetitive effects | Probative of GDSs' monopoly power and anticompetitive effects |
| **Excessive prices and profits** | Probative of Sabre's monopoly power and anticompetitive effects | Probative of Sabre's monopoly power and anticompetitive effects | Probative of Sabre's market power; proof of anticompetitive effects | Probative of lack of competition between GDSs |

| Issue | Monopolization, § 2 (winning jury verdict 2022) | Conspiracy to Monopolize, § 2 | Vertical Agreements in Restraint of Trade, § 1 (winning jury verdict 2016) | Horizontal Agreement between GDSs, § 1 |
|---|---|---|---|---|
| **Sabre's antiquated technology** | Probative of Sabre's monopoly power and anticompetitive effects | Probative of Sabre's monopoly power and anticompetitive effects | Probative of Sabre's market power; proof of anticompetitive effects | Probative of lack of competition between GDSs |

Given the intertwined nature of US Airways' claims, US Airways need not "identify which hours were spent on issues it clearly won and which hours were spent on issues it did not clearly win." *See Litton*, 613 F. Supp. at 830.  During the next stage of briefing over the reasonableness of the fee request, Sabre may attempt to demonstrate that certain attorney work was not intertwined with the Section 2 claim.  Although that issue is not currently before the Court, Sabre's attempts to disentangle the Section 2 claim from the Section 1 claim will fail. [18] Unlike a Section 1 claim that might relate to a specific alleged contract or agreement, US Airways' Section 2 claim encompassed the challenged contracts as well as Sabre's market-wide conduct over the course of a decade, involving not only its conduct towards US Airways, but also its conduct towards other airlines, other GDSs, travel agencies, and potential new entrants. US Airways is entitled to fees related to the development of its secondary claims because they are based on the same factual record as its primary, successful monopolization claim.  *See Abshire v. Walls*, 830 F.2d 1277, 1282–83 (4th Cir. 1987) (holding that claims based on different

---

[18] US Airways reserves the right to explain in further detail how specific work, as detailed in its attorney time entries, in pursuit of the abandoned and unsuccessful claims was intertwined with and based on the same facts or issues as the Section 2 monopolization claim.

legal theories were, nonetheless, based on a "common core of facts" since the successful claim

required "developing and presenting the facts surrounding the entire sequence of events").

**B.**     **US Airways' Contractual Restraint Claim Is Subsumed within its Winning Monopolization Claim**

US Airways' successful monopolization claim is broader than, and subsumes, US

Airways' contractual restraints claim.  Judge Schofield acknowledged as much in 2022, noting

that "US Airways' § 1 claim arises out of the two contracts, and its § 2 claim is based on the

contracts and other alleged anticompetitive behavior by Sabre."  ECF No. 1171.  Because the

Section 1 and Section 2 claims are not "severable," this Court need not engage in any "hair-

splitting" to allocate time spent in connection with one or the other.  *See Quaratino*, 166 F.3d at

426 n.8.

Because US Airways' Section 2 claim was based on the same facts and legal theories as

its other claims, the work to prepare US Airways' Section 1 claims leading up to the 2016 trial

served as the foundation for US Airways' Section 2 claim in the 2022 trial, and should be

recoverable subject to an assessment of reasonableness.  For example, the vast majority of

evidence proffered in support of US Airways' 2022 victory was also proffered at the first trial,

which focused solely on US Airways' Section 1 claims: 31 of the 44 witnesses who testified in

2016, testified again in 2022, and 72% of the exhibits admitted in 2022 were admitted in 2016.

US Airways presented evidence to contest the legality of the "full content" terms of the

contracts with Sabre to support both the Section 1 and Section 2 claims at the 2022 trial, and the

jury considered that evidence in finding that Sabre's exclusionary conduct as a whole violated

the law under Section 2.  For example, both of US Airways' witnesses who testified about US

Airways' agreements with Sabre—John Gustafson, one of the lead negotiators of the 2011

agreement, and Scott Kirby, former President of US Airways and one of the lead negotiators of

the 2006 agreement—testified to a variety of elements of both the Section 1 and Section 2

claims, including: (1) US Airways' reliance upon the corporate travel agent business coming

through Sabre[19]; (2) Sabre's monopoly power over US Airways[20]; and (3) benefits to US

Airways and consumers of removing full content contract provisions.[21]  Similarly, in both 2016

and 2022, US Airways marshalled testimony from executives from other airlines regarding

Sabre's retaliation against those airlines and the necessity of doing business with Sabre

regardless of how odious the offered terms were.[22]  This testimony established Sabre's market

power over the airlines and the economic harm that would come to US Airways from failure to

---

[19] ECF No. 1222, 4/27/2022 Trial Tr. 744:4–19 (Kirby testifying that "half of our revenues are coming through travel agencies, so it doesn't take much of a boycott to have severe implications.  Remember, in 2005, US Airways, we had just come out of bankruptcy."); ECF No. 1224, 4/28/2022 Trial Tr. 845:23–846:6 (Gustafson testifying that travel agents booking through "Sabre at the time was roughly 40 percent of US Airways' total revenue.  It was the equivalent of $4 billion annually that was booked through Sabre, and if we did not have US Airways available for sale in Sabre, losing $4 billion of revenue would be catastrophic.")

[20] ECF No. 1222, 4/27/2022 Trial Tr. 735:1–19 (Kirby testifying that "at US Airways, we were going to have to toe the line and abide by the full content rules that Sabre was going to insist upon."); *id.* 737:17–738:19 (Kirby testifying that full content was "nonnegotiable.  We could either be in Sabre with full content or we could be out of Sabre" and that "kicking US Airways out of Sabre, I think, would have put us out of business."); *id.* (Kirby testifying that "If Sabre turned us off, it meant the airline shut down, because they had that much leverage."); ECF No. 1224, 4/28/2022 Trial Tr. 827:15–828:2 (Gustafson testifying that US Airways was in a "weak position" in negotiation because "we really didn't have any alternatives to the GDS."); *id.* 847:5–15 (Gustafson testifying that removal from the Sabre GDS "was effectively a death sentence because, in our case, there is no way that we replace $4 billion of revenue.")

[21] ECF No. 1222, 4/27/2022 Trial Tr. 752:3–753:7 (Kirby testifying that without Sabre's full content restraints, "lower distribution costs would act just like oil prices.  We would have more flights than we otherwise have, and fares would have gone down."); ECF No. 1224, 4/28/2022 Trial Tr. 794:15–795:6 (Gustafson testifying that in the absence of full content "if we were able to and [sic] provide customers with a discount for booking through a preferred or lower cost distribution channel, that would be something that would be very attractive to customers.")

[22] *See, e.g.*, ECF No. 1226, 5/2/2022 Trial Tr. 1056:11–1057:18 (Keith Wallis, a former Air Canada executive, testifying that Sabre "biased" against Air Canada by "chang[ing] the Sabre system so that regardless if Air Canada had the best option or not, Air Canada would appear at the very bottom of the results . . . making it more difficult for travel agents to find us as an option."); ECF No. 1224, 4/28/2022 Trial Tr. 910:3–25 (Gavin Molloy, one of United Airlines' lead negotiators for their 2006 agreement with Sabre, testifying that "We could sign up to a full content agreement, which was not essentially what we wanted to do, or we could be in a situation where a huge portion of our revenues were at risk, and we would essentially lose control of how our own inventory was displayed in the Sabre system," and that Sabre had communicated that in the absence of an agreement "there was the possibility of bias[ing]" against United); ECF No. 789, 12/12/2016 Trial Tr. 5199:3–13 (Al Lenza, a former Northwest Airlines executive, testifying that Sabre biased against Northwest such that "flights in [the airline's] most important markets that used to show up first, because were non-stops and had the best service, were now in the ninth or tenth display [page] which essentially made it impossible for travel agents to find."); *id.* 5153:3–24 (Malloy testifying that a Sabre distribution deal without full content was not a serious option because it would "put [United's] revenue at risk by allowing a third party like Sabre to essentially manage the revenue on [United's] behalf, through biasing").

reach a deal with Sabre—critical elements of both the Section 1 and Section 2 claims—and evidence of exclusionary conduct Sabre engaged in to preserve its monopoly power—a critical element of a Section 2 claim.

That the conduct was not sufficient on its own for the jury to find a Section 1 violation in the 2022 trial does not make the work on the intertwined claims unrecoverable.  *USFL*, 887 F.2d at 412–413.  In *USFL*, the NFL claimed the USFL was not entitled to fees, because the only evidence of harm the USFL had presented was related to its unsuccessful "television-related Section 1 claims," rather than its winning Section 2 claim.  887 F.2d at 412–413.  But "the jury's rejection of plaintiffs' television-related Section 1 claims d[id] not mean that the jury could not have properly considered some of the NFL's television-related conduct to have been anticompetitive." *Id.* (quoting *U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1044 (S.D.N.Y. 1986)).  Fees related to the television-related evidence were warranted because it could not "be said that the television evidence was completely distinct, either factually or legally, from the broad monopolization claim that plaintiff prevailed upon." *Id.* (quoting *U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474, 480 (S.D.N.Y. 1989)).

The same is true here.  Sabre would have to demonstrate that the evidence related to US Airways' contracts with Sabre was "completely distinct, either factually or legally," from the broad monopolization claim US Airways prevailed upon.  *See id.*  But Sabre cannot do that, because the evidence of Sabre's imposition of the contractual restraints on numerous airlines, including US Airways in 2011, was evidence of Sabre's exclusionary conduct relevant to the Section 2 claim. [23]  Sabre itself has acknowledged (well before this fee dispute) that the Section 1

---

[23] *See, e.g.,* ECF No. 1226, 5/2/2022 Trial Tr. 1005:15–1008:24 (Professor Stiglitz' testimony about how full content agreements between Sabre and numerous airlines, including US Airways, are one of several categories of exclusionary conduct).

and Section 2 claims are intertwined.  In 2019, when Sabre opposed additional discovery on the reinstated Section 2 claims, it argued to this Court that US Airways "took discovery on a Section 2 case" and "tried a Section 2 case," including with testimony from US Airways' economic expert that "Sabre is a monopolist, has monopoly power, is guilty of monopolization, has taken monopoly activities, monopoly rents."  ECF No. 945, 11/20/2019 Conf. Tr., at 25.

The reason little additional discovery was needed for the reinstated Section 2 claim after the appeal was that that discovery had already been conducted as part of the work preceding the 2016 trial.  The principal additional work for the Section 2 claims was the economic experts' work to prove that Sabre possessed "monopoly" power, in addition to "market power" needed for the Section 1 claim, and that the "net" Sabre booking fee was anticompetitive, as required by the Supreme Court in *American Express*.  US Airways also had to replace its technology expert, but the parties agreed that scope of the opinions was no different from those offered by the technology expert at the 2016 trial, *see* ECF No. 1077, at 1, further confirming the overlap and intertwined nature of the Section 1 and Section 2 claims.

Finally, the Second Circuit's reversal of US Airways' 2016 verdict does not mean US Airways should be awarded zero fees for the years of work spent preparing the Section 1 claim for trial in 2016 and again in 2022.  Work done in connection with prior or related proceedings is "properly . . . included in the calculation of a reasonable attorney's fee" where "the work was 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" *Gulfstream III*, 995 F.2d at 420 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986)); *see id.* (proper to award fees for "other litigation" where "the time spent on other litigation was "inextricably linked' to the issues raised in the present litigation").  Where a verdict is vacated by a court of appeals and the plaintiff is ultimately

21

successful during a retrial, so long as "the plaintiff's unreasonable behavior did not cause the first trial verdict to be vacated, a plaintiff may receive attorneys' fees for the expenses incurred during a trial that was later vacated."  *Abner v. Kansas City S. Ry. Co.*, 541 F.3d 372, 381–82 (5th Cir. 2008); *accord Gierlinger v. Gleason*, 160 F.3d 858, 877–81 (2d Cir. 1998).  Here, it was an intervening change in the law, not any "unreasonable behavior" by US Airways that caused the Court of Appeals to vacate the verdict, *see Abner*, 541 F3d at 381–82, and the 2016 trial work was "useful and of a type ordinarily necessary to secure the final result," *see Gierlinger*, 160 F.3d at 877–81 (appropriate to award fees for "time spent . . . in pretrial discovery and preparation for the first trial [that was] reasonable and necessary" despite remand by Second Circuit due to erroneous jury instructions where the "fact that at the first trial the court did not give a sufficiently specific instruction . . . was not the fault of [plaintiff]").

## C.    US Airways' Conspiracy to Monopolize Claim Was Based on the Same Facts as its Monopolization Claim

US Airways alleged that Sabre conspired to preserve Sabre's monopoly power by entering into agreements that "lock[ed] travel agents into Sabre and disincentiviz[ed] their use of other distribution channels."  ECF No. 1, ¶ 167.[24]  Although US Airways ultimately agreed to dismiss its "conspiracy to monopolize" theory before the 2022 trial, Sabre's relationship and agreements with travel agents remained one of the core categories of exclusionary conduct challenged in US Airways' successful monopolization claim.[25]  As with the contractual restraints claim, because the factual and legal bases of the monopolization and conspiracy to monopolize

_____

[24] After US Airways' conspiracy to monopolize claim was reinstated by the Second Circuit, US Airways added new allegations to its Fourth Amended Complaint that "Sabre and the travel agents have entered into oral agreements to discourage airlines' challenges to Sabre's market dominance."  ECF No. 952, at ¶ 69.  But no additional discovery was taken related to the new allegations and, as noted above, US Airways subsequently agreed to dismiss the conspiracy to monopolize claim.

[25] *See, e.g.*, ECF No. 1226, 5/2/2022 Trial Tr. 987:3–11, 988:6–997:3 (Professor Stiglitz' testimony about exclusionary travel agent contracts).

claims were the same, the claims are not "severable" and this Court need not engage in any "hair-splitting" to allocate time spent in connection with one or the other. *See Quaratino*, 166 F.3d at 426 n.8.

### D. The Facts Underlying the Horizontal Conspiracy Claim Overlapped with Facts Underlying US Airways' Section 2 Claim

Sabre's argument that the work done on the horizontal conspiracy claim should be excluded is also wrong. Even though that claim was rejected by the 2016 jury and not pursued thereafter, relevant underlying evidence was admitted and played an important role in the 2022 trial.

In both trials, US Airways introduced evidence concerning Project Cervantes—a content-sharing agreement between Sabre and Amadeus, another GDS. That evidence was relevant to the 2016 horizontal conspiracy claim, but it was also relevant to the Section 2 claim. US Airways' witnesses testified that the content-sharing agreement eliminated the risk to Sabre of not reaching an agreement with US Airways and other airlines, thereby reinforcing its monopoly and negotiating power, because even if Sabre failed to come to terms with a given airline, Sabre's travel agents could still access the airlines' information by way of the content sharing agreement and had no reason to switch to using another GDS or use multiple GDSs.[26]

Like the evidence of Sabre's "full content" agreements and agreements with travel agents, evidence of Sabre's arrangements with other GDSs was part of the overall presentation of Sabre's monopoly power and exclusionary conduct that led the jury to find that Sabre violated

---

[26] *See, e.g.*, ECF No. 1220, 4/26/2022 Trial Tr. 435:9–23 (Madeleine Gray, a former Sabre executive, testifying that the content sharing agreement "meant that . . . if Sabre didn't have a participating contract, a contract with that airline to participate in the Sabre system, well, there was not going to be any leverage there."); ECF No. 1224, 4/28/2022 Trial Tr. 799:12–800:10 (Gustafson testifying that the content sharing agreement between Amadeus and Sabre "meant that there was very little risk in Sabre's not having an agreement with a particular airline because they could go get the content from Amadeus . . . So it was very low risk for Sabre, but it was very high risk for the airlines.").

Section 2.  So even though US Airways did not prevail on its horizontal conspiracy claim, the work in developing the facts relating to that claim and presenting that evidence to the jury was common to both the Section 1 and Section 2 claims for relief, and thus is recoverable.  *See USFL*, 887 F.2d at 412–413.

### E. US Airways Is Entitled to Recover for Fees and Costs Relating to the Appeal of the 2016 Verdict

"Both the language and purpose" of Section 4 of the Clayton Act "authorize the award of counsel fees for legal services performed at the appellate stages of a successfully prosecuted antitrust action."  *Perkins v. Standard Oil Co. of Cal.*, 399 U.S. 222, 223 (1970).  US Airways' appeal was successful, because the Court of Appeals reinstated the Section 2 claim on which US Airways ultimately prevailed at trial.  In contrast, Sabre largely lost its appeal.  Although the Section 1 jury verdict was vacated, the Court of Appeals rejected Sabre's request to enter judgment in its favor, stating that the jury "could have reasonably concluded instead that when considering both sides of the platform, Sabre did violate Section 1 of the Sherman Act by implementing the challenged full content provisions."  *Sabre Holdings Corp.*, 938 F.3d at 61. And for all the reasons discussed above, the intertwined issues and common legal theories between US Airways' Section 1 and 2 claims also entitles US Airways to recover for its appellate work.  *See Litton Sys.*, 613 F. Supp. at 830 ("[S]ince the arguments presented [on appeal] were so interrelated, . . . the fact that [plaintiff] prevailed on one of them justifies an award of the reasonable costs and attorney's fees incurred in litigating both of them.").

## V. CONCLUSION

Sabre's request to deny US Airways of any fee recovery conflicts with the plain language of the Clayton Act, decades of legal precedent in this circuit and others, and the interconnected nature of the claims US Airways brought to challenge Sabre's stranglehold on the market for

airline ticket distribution.  After battling no less than five elite law firms for more than a decade, US Airways won vindication twice: first in 2016, and again in 2022.  The Court should reject Sabre's untenable arguments and find that US Airways is entitled to its costs and fees subject to an assessment of their reasonableness in the next round of briefing.

Dated:  November 18, 2022
          New York, New York

By:  ___/s/ Andrew J. Frackman_____

Andrew J. Frackman
afrackman@omm.com
Anton Metlitsky
ametlitsky@omm.com
Mia N. Gonzalez
mgonzalez@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Ian Simmons (admitted *pro hac vice*)
isimmons@omm.com
Katrina M. Robson (admitted *pro hac vice*)
krobson@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Madhu Pocha (admitted *pro hac vice*)
mpocha@omm.com
1999 Avenue of the Stars
O'MELVENY & MYERS LLP
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

R. Paul Yetter (admitted *pro hac vice*)
pyetter@yettercoleman.com
Bryce L. Callahan (admitted *pro hac vice*)
bcallahan@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Phone: (713) 632-8000
Facsimile: (713) 632-8002

*Attorneys for Plaintiff US Airways, Inc., for*
*American Airlines, Inc., as Successor and*
*Real Party in Interest.*