USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __04/10/2023__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
US AIRWAYS, INC., FOR AMERICAN        :
AIRLINES, INC. AS SUCCESSOR AND      :
REAL PARTY IN INTEREST,              :
                                     :
                 Plaintiff,          :       **REPORT &**
                                     :       **RECOMMENDATION**
         -against-                   :
                                     :       11-CV-2725 (LGS) (JLC)
SABRE HOLDINGS CORPORATION, *et al.*,  :
                                     :
                 Defendants.         :
                                     :
------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Lorna G. Schofield, United States District Judge:**

Following a one dollar jury verdict against Sabre Holdings Corporation,

Sabre Travel International Limited, and Sabre GLBL Inc. (collectively, "Sabre"), US

Airways Inc. ("US Air") has now moved for its attorneys' fees.  The motion was

referred to me for a report and recommendation and I ordered briefing on the

threshold issue of US Air's entitlement to fees in light of the jury's nominal

damages award.  For the reasons set forth below, US Air should be awarded

reasonable attorneys' fees, subject to a downward adjustment once those fees are

calculated.[1]

---

[1] For purposes of Rule 72 of the Federal Rules of Civil Procedure, post-trial motions
for attorneys' fees are treated as dispositive motions.  *See, e.g.*, *Estate of Thomas v.
Cigna Grp. Ins.*, No. 09-CV-5029 (ENV) (SJB), 2018 WL 4141033, at *2 n.2
(E.D.N.Y. Aug. 30, 2018) (citing Fed. R. Civ. P. 54(d)(2)(D) ("[T]he court . . . may
refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were
a dispositive pretrial matter.")).  Accordingly, the Court adjudicates the current
motion by report and recommendation.

## I.     BACKGROUND

The Court assumes familiarity with the underlying facts and lengthy procedural history of the case and will not recount them here.  To summarize for purposes of the pending motion, US Air brought antitrust claims against Sabre pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15 ("Section 4"), to recover treble damages and the costs of the suit, including reasonable attorneys' fees, for injuries allegedly sustained as a result of Sabre's violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  *See* Sixth Amended Complaint ("SAC"), Dkt. No. 1037, ¶ 1.  At the conclusion of a second trial, the jury returned a verdict for US Air under Section 2 of the Sherman Act and awarded one dollar in nominal damages.[2]  *See* SAC ¶¶ 139–45 (alleging "[m]onopolization . . . in [v]iolation of Section 2 of the Sherman Act, 15 U.S.C. § 2"); Jury Verdict Form, Dkt. No. 1208, at 1 (finding that "Sabre willfully maintained monopoly power" and that US Air "was harmed as a result").  The jury did not find in favor of US Air on its claim brought under Section 1 of the Sherman Act.  *Id*. at 1–2.

On June 9, 2022, US Air moved for attorneys' fees and costs, Dkt. No. 1215, and on June 27, 2022, the motion was referred to me.  Dkt. No. 1253.  On July 7, 2022, the parties agreed to attempt to settle the issue of fees and costs with the assistance of a private mediator, and accordingly I vacated the motion without prejudice to renewal.  Dkt. No. 1255.  Following a status report of an unsuccessful

---

[2] The damages were trebled to three dollars pursuant to Section 4 of the Clayton Act.  15 U.S.C. § 15(a) (an "injured" person "shall recover threefold the damages").

mediation, Dkt. No. 1258, on November 1, 2022, I held another conference at the end of which I concluded that the renewed motion for costs and fees should be bifurcated.  Dkt. No. 1264.  To that end, I directed the parties to brief first the threshold issue of whether US Air is entitled to fees at all in light of the jury's one dollar verdict (and the degree of recovery).  *Id.*  Pursuant to that order, on November 18, 2022, US Air filed a motion arguing in favor of its entitlement to costs, including reasonable attorneys' fees, and an accompanying memorandum of law ("Pl. Mem.").  Dkt. Nos. 1266–67.  On December 9, 2022, Sabre filed a memorandum of law in opposition to the motion ("Def. Mem.") and an accompanying Declaration of Evan Kreiner dated December 9, 2022.  Dkt. Nos. 1268–69.  US Air filed a reply memorandum ("Pl. Reply") on January 6, 2023.  Dkt. No. 1270.  On January 13, 2023, Sabre requested leave to file a sur-reply, which the Court denied without prejudice.  Dkt. Nos. 1271–73.

## II.   DISCUSSION

The issues presented here are whether US Air, in light of the jury's nominal damages award, is entitled to reasonable attorneys' fees, and, if so, whether those fees are subject to reduction.  US Air argues that it is entitled to fees, and that the Court's inquiry into the reasonableness of those fees should be decided after subsequent briefing.  Pl. Mem. at 8–14.  Sabre counters that US Air's fee request is precluded as a matter of law as the only reasonable fee is no fee at all.  *See* Def. Mem. at 9–18.  Sabre argues in the alternative that if US Air is entitled to any fees,

then they should be subject to at least a 99% reduction based on a lack of success on the merits.  Def. Mem. at 18–21.

## A.  US Air Is Entitled to the Cost of the Suit, Including Reasonable Attorneys' Fees

Section 4 of the Clayton Act, 15 U.S.C. § 15(a), the applicable fee provision here, provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . *shall* recover . . . the cost of suit, including a reasonable attorney's fee." (emphasis added).[3]  The text "makes it clear that an injury is required for an award of attorney's fees."  *Sheet Metal Div. of Capitol Dist. Sheet Metal, Roofing & Air Conditioning Contractors Ass'n, Inc. v. Loc. Union 38 of Sheet Metal Workers Int'l Ass'n*, 63 F. Supp. 2d 211, 213 (N.D.N.Y. 1999) (citing *United States Football League v. National Football League*, 887 F.2d 408, 411 (2d Cir. 1989), *cert. denied*, 493 U.S. 1071 (1990) ("*USFL II*")).  Section 4 is distinct from another, more commonly applied fee statute in civil rights cases, 42 U.S.C. § 1988(b), which provides that "the court, *in its discretion*, *may* allow the *prevailing party* . . . a reasonable attorney's fee[.]" (emphasis added).

Unlike in § 1988, "there is no requirement in [S]ection 4 of the Clayton Act that an antitrust plaintiff be a 'prevailing party' to recover attorney's fees[, as t]he term 'prevailing party' appears nowhere in [the statute]."  *USFL II*, 887 F.2d at 412. Rather, Section 4, "like the [almost identical provision in the] Racketeer Influenced and Corrupt Organizations Act ("RICO")" is "straightforward"—*injury*, not whether

---

[3] "[A]ntitrust laws" covered by Section 4 "includ[e] . . . the Sherman Act." *Davitashvili v. Grubhub Inc.*, No. 20-CV-3000 (LAK), 2022 WL 958051, at *7 (S.D.N.Y. Mar. 30, 2022).

a party prevailed, "trigger[s] relief in the form of attorney's fees and costs." *Specht v. Netscape Commc'ns Corp.*, No. 00-CV-4871 (AKH), 2005 WL 8177020, at *1 (S.D.N.Y. Apr. 22, 2005), *aff'd sub nom. Weindorf v. Netscape Commc'ns Corp.*, 173 F. App'x 44 (2d Cir. 2006).

In this case, a jury returned a verdict for US Air on its claim of monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2, specifically finding that "US Airways [had] prove[n], by a preponderance of the evidence, that it was *harmed* as a result of Sabre's exclusionary conduct[.]" Jury Verdict Form (emphasis added).[4] Thus, under a plain reading of Section 4 of the Clayton Act, which applies to "any person . . . injured in his business or property by reason of anything forbidden in the antitrust laws," US Air "shall recover . . . the cost of suit, including a reasonable attorney's fee." *See USFL II*, 887 F.2d at 412 ("All that is required is an injury[;] . . . an injury was found, therefore the award of attorney's fees was automatic."). "A reasonable fee award under the statute is [therefore] mandatory." *United States Football League v. National Football League*, 704 F. Supp 474, 480 (S.D.N.Y. 1989) ("*USFL I*"), *aff'd*, 887 F.2d 408 (2d Cir. 1989).

Nonetheless, Sabre argues that the Supreme Court's decision in *Farrar v. Hobby*, 506 U.S. 103 (1992), requires this Court to conclude instead that "*the only reasonable fee*" here "is no fee." *Id.* at 118 (O'Connor, J., concurring) (emphasis in

---

[4] "Injury" is synonymous with "harm." *See, e.g.*, *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 697 (1995) ("The dictionary definition of the verb form of 'harm' is 'to cause hurt or damage to: injure.'") (citation omitted).

original); *see* Def. Mem. at 9 (citing *Farrar*, 506 U.S. at 114–16 (majority op.)). Sabre's position fails for several reasons.

First, *USFL II*, even though it was decided before *Farrar*, remains good law and is controlling here. The court in *USFL II* was presented with an identical issue to the one here: a plaintiff's entitlement to reasonable attorneys' fees after a decade-long antitrust litigation resulting in a one dollar jury verdict only on Sherman Act Section 2 grounds. 887 F.2d at 410–11. There, the Second Circuit held that USFL was entitled to a reasonable fee based on the plain language of Section 4 of the Clayton Act, and further explained that civil rights cases are inapposite as they concern discretionary awards of fees, while Section 4 *mandates* them. *Id.* at 412. It also directly rejected the defendant's argument (essentially identical to the one Sabre makes here) that standards dictating "reasonable" fees in the civil rights context could apply to require that no fees be awarded under the Clayton Act. *Id.* As the *USFL II* court concluded, "[g]iven the clear language of [S]ection 4, an award of attorney's fees was justified." *Id.*

Second, *Farrar* does not apply here. *Farrar* concerned the entitlement to fees under § 1988, not the Clayton Act or any other mandatory fee statute, and there is no suggestion in the opinion itself that its holding extended beyond § 1988. In *Farrar*, the Supreme Court was presented with plaintiffs who had litigated a § 1983 action for ten years and sought $17 million in damages before ultimately winning a $1 jury award. *See* 506 U.S. at 107–08. As a result, the Court held that "a *civil rights* plaintiff who receives a nominal damages award is a 'prevailing party'

6

eligible to receive attorney's fees under 42 U.S.C. § 1988," *id.* at 105 (emphasis added), and further explained that in "*civil rights* litigation . . . 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award." *Id.* at 114 (emphasis added) (citation omitted).  Thus, although the plaintiffs were determined to be prevailing parties, the only reasonable fee in those circumstances was no fee at all.  *Id.* at 114–15.  The *Farrar* Court provided additional reasons for its conclusion—the need for "damages awarded in a § 1983 action [to] be designed to compensate injuries caused by the constitutional deprivation," "the plaintiff's failure to prove actual, compensable injury," and "fee awards under § 1988 were never intended to produce windfalls to attorneys"—all of which are specific to civil rights cases.  *Id.* at 115 (cleaned up).

According to Sabre, Justice O'Connor's concurrence in *Farrar* solidifies its applicability here, s*ee* Def. Mem. at 1, 9, 11, but a close review of her opinion leads to the opposite conclusion.  Justice O'Connor explained that the Court's decision was supported by the "specific purpose" behind § 1988: "to restore the former equitable practice of awarding attorney's fees to the prevailing party in certain civil rights cases" that had been rejected by a previous Supreme Court decision.  *Farrar,* 506 U.S. at 118 (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975)).  She observed that the earlier judge-made practice of awarding fees in civil rights cases included the practice of denying fees in the cases of "*de minimis* victor[ies]."  *Id.* at 119.  Section 1988 codified that judge-made practice by explicitly leaving district courts "discretion" to award fees to "prevailing parties."  *Id.*  Thus,

according to Justice O'Connor, the only-reasonable-fee-is-no-fee rule was linked to a party's "prevailing" status. *Accord Husain v. Springer*, 579 F. App'x 3, 4 (2d Cir. 2014) ("[W]hile prevailing parties are eligible for fees under § 1988, they are not invariably entitled to them . . . because it is not the technical fact of prevailing party status, but the 'degree of success obtained' that determines a party's entitlement to a fee award and, relatedly, the reasonableness of the amount of that award." (citing *Farrar*, 506 U.S. at 115)).

Sabre presses that *Farrar* applies to this case because the facts are on all fours: US Air won one dollar in nominal damages after ten years of litigating multimillion-dollar claims. Thus, it argues, quoting the O'Connor concurrence in *Farrar*, "the plaintiff's success is purely . . . *de minimis*[, and] no fees can be awarded." Def. Mem. at 9 (citing *Farrar*, 506 U.S. at 117 (O'Connor, J., concurring)). But the quote is taken out of context, as the Court in *Farrar* made clear that the rule it announced applied to § 1988, and there is no suggestion anywhere in either the opinion of the Court or in Justice O'Connor's concurrence that it applied beyond § 1988 (much less to mandatory-fee statutes such as the Clayton Act). Altogether, a plain reading of *Farrar* puts to bed Sabre's contention that the denial of fees to certain prevailing civil rights parties is "generally applicable." Def. Mem. at 9. Indeed, the Supreme Court itself has rejected that view. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) ("Our 'prevailing party' precedents . . . do not govern the availability of fees awards under

[ERISA] because this provision does not limit the availability of attorney's fees to the 'prevailing party.'").

Third, Sabre's position that *Farrar* extends to the interpretation of a "reasonable attorney's fee" here because the term appears in both § 1988 and Section 4 of the Clayton Act is without merit.  Def. Mem. at 9.  The *Farrar* holding itself, the rationale provided, and Justice O'Connor's further explanation all make clear that the only-reasonable-fee-is-no-fee conclusion relied on the particular text and legislative history of § 1988 as a whole, rather than an interpretation of the meaning of "reasonable" in a vacuum.  Indeed, Sabre's assertion that "the Supreme Court has held that its 'case law construing what is a 'reasonable' fee applies uniformly to all,'" Def. Mem. at 10, cuts short a discussion of "prevailing party" in the very case it cites for that proposition.  *See City of Burlington v. Dague,* 505 U.S. 557, 561–62 (1992).[5]  Moreover, Sabre cites no *in-circuit* authority for the proposition that *Farrar* requires an award of no fees in the context of any

---

[5] The full paragraph explains:

> "[The applicable federal statutes] authorize a court to 'award costs of litigation (including reasonable attorney . . . fees )' to a 'prevailing or substantially prevailing party.' 42 U.S.C. § 6972(e); 33 U.S.C. § 1365(d).  This language is similar to that of many other federal fee-shifting statutes, *see, e.g.*, 42 U.S.C. §§ 1988, 2000e–5(k), 7604(d); our case law construing what is a 'reasonable' fee applies uniformly to all of *them*."

*City of Burlington*, 505 U.S. at 561–62 (citation omitted) (emphasis in original omitted) (emphasis added).

mandatory-fee statute.  *See* Def. Mem. at 10 (citing Eastern District of Arkansas

case as "[t]he lone post-*Farrar*, nominal damages antitrust case").[6]

Notably, the Second Circuit weighed in on the application of *Farrar* to a

mandatory-fee statute the year after it was decided.  In *Stochastic Decisions, Inc. v.

DiDomenico*, after analyzing RICO's "virtually identical" mandatory fee provision,

the court explained that *Farrar* is "'of limited applicability' to statutes that mandate

. . . attorney fees" such as "the Clayton Act."  995 F.2d 1158, 1168 (2d Cir. 1993)

(citing *USFL II*, 887 F.2d at 412)).[7]  In relevant part, RICO's fee provision is

identical to Section 4 of the Clayton Act; it provides that "[a]ny person injured . . .

shall recover . . . the cost of the suit, including a reasonable attorney's fee."  18

U.S.C. § 1964(c).  Thus, the Second Circuit has made plain that *Farrar*'s only-

reasonable-fee-is-no-fee rule does not apply here.  Sabre's argument that *USFL* II

was effectively overruled by *Farrar* thus lacks merit.

---

[6] For the same reasons, Sabre's reliance on *Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir. 1996), *McGrath v. Toys "R" Us, Inc.*, 409 F.3d 513, 518 (2d Cir. 2005), *Alvarez v. City of New York*, No. 11-CV-5464 (JPO), 2017 WL 6033425, at *4 (S.D.N.Y. Dec. 5, 2017), and other cases concerning the application of "prevailing party" statutes, *see, e.g.*, Def. Mem. at 8, 15, is misguided and not applicable here.

[7] Following the filing of US Air's reply memorandum, in which it cited *Stochastic* for the first time, Sabre sought leave to file a sur-reply.  *See* Dkt. No. 1271.  The Court denied the request, Dkt. No. 1273, as sur-replies are generally disfavored.  *See Soto v. Wright*, No. 11-CV-2289 (PAC) (JLC), 2012 WL 265962, at *2 n.3 (S.D.N.Y. Jan. 26, 2012) (quoting *Kapiti v. Kelly*, No. 07-CV-3782 (RMB) (KNF), 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008)), *adopted by* 2012 WL 639166 (S.D.N.Y. Feb. 28, 2012).  Moreover, US Air did not present a new argument in citing to *Stochastic*, but did so only in response to Sabre's arguments attempting to limit *USFL II* in light of *Farrar*.

In sum, nothing in *Farrar* suggests that its holding extends to any mandatory fee statute.  Sabre has not pointed to any other case suggesting *USFL II* is no longer good law in this Circuit.  Rather, *USFL II* has been cited regularly in the years since.  *See, e.g.*, *Bingham v. Zolt*, 66 F.3d 553, 565 (2d Cir. 1995) (citing *USFL II*); *Rivera v. Corp. Receivables, Inc.*, 540 F. Supp. 2d 329, 338 (D. Conn. 2008) (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 238 (S.D.N.Y. 1993) (same).  US Air is thus entitled to reasonable attorneys' fees.[8]

## B.  US Air's Reasonable Attorneys' Fees Are Subject to a Downward Adjustment

In calculating a reasonable fee award, the Second Circuit uses the "presumptively reasonable fee" approach, *Clark v. New York City Health & Hosps. Corp.*, No. 10-CV-8046 (SAS), 2011 WL 10563693, at *2 (S.D.N.Y. Aug. 24, 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)), in which "a court determines the 'presumptively reasonable fee' to which that party is entitled by multiplying a reasonable hourly rate for each attorney by the reasonable number of hours he or she expended on the case."  *Capitol Records, LLC v. ReDigi Inc.*, No. 12-CV-95 (RJS), 2022 WL 3348385, at *1 (S.D.N.Y. Aug. 12, 2022) (quoting *Arbor Hill*,

---

[8] Sabre encourages the Court to follow an Eastern District of Arkansas case which, like the case here, concerned the award of attorneys' fees under Section 4 of the Clayton Act following a nominal damages award and, relying on Eighth Circuit precedent, held that no award should be made.  *See* Def. Mem. at 10 (citing *Concord Boat Corp. v. Brunswick Corp.*, 34 F. Supp. 2d 1125, 1133 (E.D. Ark. 1998), *rev'd on other grounds*, 207 F.3d 1039 (8th Cir. 2000)).  However, *USFL II* and *Stochastic* remain binding precedent in the Second Circuit, so there is no basis to consider *Concord Boat* here.

522 F.3d at 189–90). "The presumptively reasonable fee[ is] also known as the lodestar[.]" *Olaechea v. City of New York*, No. 17-CV-4797 (RA), 2022 WL 3211424, at *13 (S.D.N.Y. Aug. 9, 2022) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).[9]

In this Circuit, "[t]he lodestar figure may be adjusted upward or downward," and the "party advocating the reduction of the lodestar amount bears the burden of establishing that [it] is justified." *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 326–27 (S.D.N.Y. 2006) (quoting *USFL II*, 887 F.2d at 413). The decision to apply an adjustment is based on a 12-factor test, in the court's discretion. *See, e.g., Jones v. City of New York,* No. 16-CV-8080 (JGK) (KNF), 2021 WL 3773460, at *13 (S.D.N.Y. Aug. 24, 2021) ("In calculating the presumptively reasonable fee, a district court considers, among others, the twelve factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)), *adopted sub nom. by Jones v. Treubig*, 2022 WL 1223215 (Apr. 26, 2022). The 12 *Johnson* factors are:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the level of skill required to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the case;
> (5) the attorney's customary hourly rate;

---

[9] Although the Second Circuit suggested abandoning the use of the term "lodestar" in *Arbor Hill*, 522 F.3d at 190 n.4, courts in this Circuit still routinely use the term to refer to the calculation of "reasonably expended hours and a reasonable hourly rate." *Frommert v. Conkright*, 223 F. Supp. 3d 140, 149 (W.D.N.Y. 2016) (citing cases), *amended on other grounds*, 2017 WL 3867795 (May 4, 2017); *see also Rivera*, 540 F. Supp. 2d at 336 n.3 ("Due to its widespread use in both the relevant case law and the parties' filings in this case, the court will use the term in this decision and employ the analysis associated with the 'lodestar method[.]'").

> (6) whether the fee is fixed or contingent;
> (7) the time limitations imposed by the client or the
> circumstances;
> (8) the amount involved in the case and the results
> obtained;
> (9) the experience, reputation, and ability of the
> attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship
> with the client; and
> (12) awards in similar cases.

*Id.* (citing *Arbor Hill*, 522 F.3d at 186–87 n.3).[10]  "[M]any of the . . . factors are

usually subsumed within the initial calculation of hours reasonably expended at a

reasonable hourly rate."  *Miltland,* 840 F. Supp. at 239 (quoting *Hensley v.*

*Eckerhart*, 461 U.S. 424, 434 n.9 (1983)) (cleaned up).

"One instance where courts have been inclined to reduce the fee award is

where the Plaintiffs have had only limited success on their claims."  *Id.* at 240.

Sabre argues that US Air's limited success warrants a 99% reduction because it

"obtain[ed] .0000003% of its alleged damages . . . and no injunctive relief."  Def.

Mem. at 19.  But that reasoning holds little weight, as "no legal rule requires

proportionality between the amount of fees requested and the damages recovered."

*CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 88–89 (2d Cir. 2013) (citation

omitted); *see also Kassim v. City of Schenectady,* 415 F.3d 246, 252 (2d Cir. 2005)

---

[10] Courts in this Circuit apply the *Johnson* factors to the lodestar figure with
respect to both discretionary-fee and mandatory-fee statutes.  *See, e.g.*, *Sheet Metal
Div.*, 63 F. Supp. 2d at 214.  As explained above, though *Farrar*'s only-reasonable-
fee-is-no-fee rule concerned an interpretation of "reasonable" fees, it relied on the
"prevailing party" status of the litigants and legislative history particular to § 1988
to go so far as to decide that the only reasonable fee was no fee in that
circumstance.

("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.").

The following cases are particularly instructive.  In the RICO context, the Second Circuit rejected the argument that a 15% reduction was inadequate based on the plaintiff's "limited success at trial."  *Bingham,* 66 F.3d at 565.  According to the Circuit in *Bingham*, the Supreme Court in *Hensley* made clear that "[t]he result is what matters."  *Id.* (citing *Hensley,* 461 U.S. at 435).  Thus, "[a]lthough plaintiff did not prevail on all of its claims . . . [it] obtained a jury verdict and a judgment against defendants.  It won the case."  *Id.* at 565–66.

In the Clayton Act context, "[a]n award of only nominal damages is a[n] element to be considered, but this does not mean that the fee award may also be nominal."  *USFL I,* 704 F. Supp. at 484–85 (cleaned up).  Even so, "[s]ome reduction of the gross lodestar amount is undoubtedly proper . . . , given the . . . recovery of only nominal damages."  *Id.* (citing *Hensley*, 461 U.S. at 430 n.3).  As the district court in *USFL I* observed:

> [T]he USFL did not succeed on the heart of its case, namely proving substantial damages and specific antitrust violations related to television.  In the context of the antitrust laws, and their enforcement by private attorneys general, this case was not the sort of clear-cut victory that unequivocally justifies a full fee, to verify and further the purposes of the antitrust provisions.

*Id.* at 485.  Given the factual similarities between the instant action and those in *USFL I* described above, "some reduction in the basic lodestar amount is mandated by the limited success" of US Air.  *Id.* at 486.  *See also USFL II*, 887 F.2d at 411–12

14

("That the USFL only received nominal damages is relevant in determining the amount of fees allowed and may be a factor used in reducing a fee award.").

However, at this juncture, while a downward adjustment is undoubtedly warranted, the Court is unable to determine it without first calculating the lodestar, as it is obligated to "at least provide the number of hours and hourly rate it used to produce the lodestar figure" and "failing to calculate it as a starting point is legal error." *Millea*, 658 F.3d at 166–67 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554–55 (2010)). The Court's eventual reduction will be guided by comparable cases in this Circuit, which do not necessarily dictate the extreme slashing that Sabre seeks. *See, e.g.*, *Husain*, 579 F. App'x at 5–7 (in civil rights suit, vacating 35% reduction as too low based on lack of success, dubious time reporting, and requests of "fees for hours spent on motions [counsel] did not file and for repeatedly reviewing opinions and filings; . . . numerous adjournments; and . . . filings that were 'lengthy and not always on point.'"); *Sheehan*, 450 F. Supp. 2d at 330 (in ERISA action, 30% reduction based on "failure to succeed on all [of plaintiff's] claims and recover a greater amount"); *USFL I,* 704 F. Supp. at 484 ("voluntary" 20% reduction by plaintiff; 10% reduction for "vagueness" of time entries; 20% reduction "given the limited success of the USFL, and its recovery of only nominal damages").

For the same reason, a determination as to the extent to which US Air's claims were "inextricably intertwined and involv[ing] common core of facts or . . . based on related legal theories," *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d

Cir. 1999), for purposes of recovering costs and fees, would be premature.  The Court has not yet had "the opportunity to scrutinize US Air's billing records," *see* Def. Mem. at 24, and, as with any other reduction from the lodestar, the Court must make that assessment sequentially.  *See, e.g.*, *Rivera*, 540 F. Supp. 2d at 339–44 (calculating lodestar figure before addressing downward adjustments); *Sheet Metal Div.*, 63 F. Supp. 2d at 214 ("Once the lodestar figure has been calculated, the Court may adjust the lodestar, taking into consideration several factors.").  Finally, the Court hopes, if this report and recommendation is adopted, that the parties will make further efforts through  private mediation or otherwise to resolve this fee dispute without further judicial involvement.

### III.    CONCLUSION

For the foregoing reasons, US Air should be awarded reasonable attorneys' fees, subject to a downward adjustment to be calculated following additional submissions by the parties.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield, United States Courthouse, 40 Foley Square New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Schofield.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS
WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE
APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v.
Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,
Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  April 10, 2023
            New York, New York

 

 

JAMES L. COTT
United States Magistrate Judge