**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

US AIRWAYS, INC.,

      Plaintiff,

  v.

SABRE HOLDINGS CORP.,
SABRE GLBL INC., and
SABRE TRAVEL INT'L LTD.,

      Defendants.

Civil Action No. 1:11-cv-02725-LGS-JLC

ECF Case

**DEFENDANTS' OBJECTIONS TO THE REPORT AND**
**RECOMMENDATION OF MAGISTRATE JUDGE COTT DATED APRIL 10, 2023**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

OBJECTIONS:  *FARRAR* DICTATES THAT THE ONLY "REASONABLE" FEE IS $0..........2

I.       The Report Conflated Distinct Statutory Issues In Finding *USFL* Controlling.................3

II.      The Report's View That *Farrar* Is Inapplicable To Mandatory Fee Statutes Is In
         Significant Tension With Second Circuit Law And Other On-Point Authority ................6

III.     Contrary To The Report, *Farrar*'s Reasoning Is Not "Specific" To Civil Rights
         Law .................................................................................................................................8

IV.      The Report Discounted Applicable Supreme Court Authority In Asserting That
         "Reasonable Attorney's Fee" Varies By Fee-Shifting Statute...........................................9

CONCLUSION.....................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*In re Aggrenox Antitrust Litigation*,
　　2017 WL 4679228 (D. Conn. Oct. 18, 2017) .................................................................10

*Alvarez v. City of New York*,
　　2017 WL 6033425 (S.D.N.Y. Dec. 5, 2017) .............................................................2, 7

*Barfield v. New York City Health & Hospitals Corp*.,
　　537 F.3d 132 (2d Cir. 2008)....................................................................................7, 8

*Bingham v. Zolt*,
　　66 F.3d 553 (2d Cir. 1995)...........................................................................................5

*Brokerage Concepts v. U.S. Healthcare, Inc.*,
　　1996 WL 741885 (E.D. Pa. Dec. 10, 1996) ...............................................................10

*City of Burlington v. Dague*,
　　505 U.S. 557 (1992) ......................................................................................... 3, 5, 9, 10

*Concord Boat Corp. v. Brunswick Corp.*,
　　34 F. Supp. 2d 1125 (E.D. Ark. 1998)......................................................................3, 6

*Doe v. Chao*,
　　511 F.3d 461 (4th Cir. 2007)........................................................................................7

*Doe v. Chao*,
　　435 F.3d 492 (4th Cir. 2006).................................................................................3, 7, 10

*Farrar v. Hobby*,
　　506 U.S. 103 (1992) .............................................................................................3, 4, 9

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*,
　　995 F.2d 414 (3d Cir. 1993).........................................................................................5

*Hardt v. Reliance Standard Life Insurance Co.*,
　　560 U.S. 242 (2010) .....................................................................................................4

*Hensley v. Eckerhart*,
　　461 U.S. 424 (1983) ..................................................................................................4, 6

*Husain v. Springer*,
　　579 F. App'x 3 (2d Cir. 2014).......................................................................................7

ii

*Independent Federation of Flight Attendants v. Zipes*,
    491 U.S. 754 (1989) ............................................................................10

*Louisiana Power & Light Co. v. Kellstrom*,
    50 F.3d 319 (5th Cir. 1995)............................................................5, 6

*Lumen View Technology, LLC v. Findthebest.com, Inc.*,
    63 F. Supp. 3d 321 (S.D.N.Y. 2014) ..............................................10

*Millea v. Metro-North Railroad*,
    658 F.3d 154 (2d Cir. 2011)........................................................7, 8, 9

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp 235 (S.D.N.Y. 1993) ....................................................5

*In re Namenda Indirect Purchaser Antitrust Litigation*,
    338 F.R.D. 527 (S.D.N.Y. 2021) .....................................................8

*Petrunich v. Sun Building Systems, Inc.*,
    625 F. Supp. 2d 199 (M.D. Pa. 2008)...............................................7

*Pino v. Locascio*,
    101 F.3d 235 (2d Cir. 1996).............................................................4

*Rivera v. Corporate Receivables*,
    540 F. Supp. 2d 329 (D. Conn. 2008)...............................................5

*Stochastic Decisions, Inc., v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993)........................................................7, 8

*USFL v. NFL*,
    887 F.2d 408 (2d Cir. 1989)........................................................4, 5

*In re Vitamin C Antitrust Litigation*,
    2013 WL 6858853 (E.D.N.Y. Dec. 30, 2013) .................................8

*William Inglis & Sons Baking Co. v. Continental Baking Co.*,
    1993 WL 424235 (N.D. Cal. July 30, 1993)....................................6

*Zhang v. Zhang*,
    2021 WL 1154084 (S.D.N.Y. Mar. 26, 2021) ...........................2, 7

## STATUTES

15 U.S.C. § 15(a) ....................................................................................3

42 U.S.C. § 1988(b) ................................................................................3

42 U.S.C. § 7604....................................................................................10

As set forth herein, Sabre respectfully objects to the April 10, 2023 Report and

Recommendation of Magistrate Judge James Cott.  (ECF No. 1276 (the "Report" or "Rpt.").)

## **INTRODUCTION**

After seeking over $1 billion in damages and declaratory and injunctive relief, USAir

walked away from 11 years of litigation with an award of one dollar (trebled to three) on one of

its claims—and either lost or abandoned its remaining claims.  For that achievement, USAir now

intends to seek attorney's fees in excess of $150 million.  But in *Farrar v. Hobby*, the Supreme

Court held that when, as here, a plaintiff obtains only nominal damages, the "reasonable

attorney's fee" is no fee at all.  Nonetheless, the Report recommended that this Court confine

*Farrar* to the civil rights context and invite USAir to proceed with its fee request.  With respect,

the Court should reject the Report, which rests on multiple errors of law.

*First*, the Report rejected *Farrar* in favor of the Second Circuit's earlier *USFL* decision,

but in doing so, conflated two distinct statutory inquiries:  (i) whether a plaintiff who obtained

nominal damages "prevailed" and was thus "entitled" to a reasonable fee; and (ii) what amount

of fees was "reasonable" for such a plaintiff.  *USFL* focused on the former.  *Farrar*, in relevant

part—as well as Sabre's opposition to USAir's fee request—focus on the latter.  *Second*, the

Report incorrectly viewed *Farrar* as inapplicable to mandatory fee statutes, which is a position

in significant tension with post-*Farrar* Second Circuit law and contrary to on-point authority in

other circuits.  *Third*, *Farrar*'s holding does not, as the Report argued, rest on reasons "specific"

to civil rights cases.  Courts, including the Second Circuit, have thus applied *Farrar* in various

other contexts, such as fee awards under the Clayton Act.  *Fourth*, the Report's implication that

the meaning of a "reasonable" fee varies by statute contradicts Supreme Court authority.

Thus, as explained further below, Sabre respectfully urges this Court not to adopt the

Report and to apply *Farrar* instead.  This course best reconciles all applicable caselaw and

avoids the aberrant conclusion that Congress deemed it "reasonable" to award multi-million

dollar fees for antitrust plaintiffs who only obtain nominal damages, but to award nothing to civil

rights plaintiffs who obtain the same while proving significant violations of the United States

Constitution.  *See, e.g.*, *Alvarez v. City of New York*, 2017 WL 6033425, at *1 (S.D.N.Y. Dec. 5,

2017) (denying fees even though plaintiff was shot "over twenty times").

## BACKGROUND

In April 2011, USAir asserted four antitrust claims against Sabre for over $1 billion (after

trebling), and injunctive and declaratory relief.  (ECF No. 1.)[1]  Following 11 years of litigation,

USAir lost or abandoned all claims but one, for which the jury awarded $1.  (ECF No. 1208.)

Thereafter, USAir informed Judge Cott it would submit a claim for over "$150 million" in fees.

(ECF No. 1256, Tr. 5:22-24, 12:4.)  Judge Cott then took briefing on whether USAir "is entitled

to fees (and the degree of recovery)."  (ECF No. 1264.)  His Report on that issue recommended

USAir "be awarded reasonable attorneys' fees, subject to a downward adjustment."  (Rpt. 1.)[2]

## OBJECTIONS:  *FARRAR* DICTATES THAT THE ONLY "REASONABLE" FEE IS $0

The Court should reject the recommendation that USAir receive a fee above zero.  When,

as here, "a specific objection" to a Report is made, "[a] district court must conduct a *de novo*

review" of, and grant no deference to, the challenged portions.  *Zhang v. Zhang*, 2021 WL

1154084, at *2 (S.D.N.Y. Mar. 26, 2021) (Schofield, J.).

Contrary to the Report's conclusion, *Farrar v. Hobby*, 506 U.S. 103 (1992) is directly

applicable and dictates that USAir's "reasonable attorney's fee" is zero.  In *Farrar*, the Court

---

[1] Sabre's opposition brief to USAir's motion (ECF No. 1268 ("Mem.")) contains additional background.

[2] Sabre does not understand the Report to provide any holding as to the amount of the "eventual" downward adjustment of any fees above zero, and thus makes no objections to the Report's commentary on that issue at this time.  (*See* Rpt. 11-16.)  Sabre reserves the right to object to any future recommendation on that question.

concluded that the district court abused its discretion in awarding $280,000 as a "reasonable attorney's fee" under the civil rights fee-shifting statute. *Id.* at 114-16. The Court held that when "a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.*

As Sabre explained (Mem. 9-11), the plain terms of the civil rights statute and the Clayton Act, as well as Supreme Court precedent on the interpretation of fee-shifting statutes, dictate that *Farrar* controls here. Like the statute in *Farrar*, the Clayton Act provides for "a reasonable attorney's fee." 15 U.S.C. § 15(a); 42 U.S.C. § 1988. "[T]he word 'reasonable' is a term of art frequently used by Congress in fee-shifting statutes; accordingly, the Supreme Court [has held that its] 'case law construing what is a 'reasonable' fee applies uniformly to all [fee-shifting statutes].'" *Doe v. Chao*, 435 F.3d 492, 504 (4th Cir. 2006) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (third alt. in original)). Thus, *Farrar*'s holding that nominal damages warrant a "reasonable attorney's fee" of $0 applies to civil rights and antitrust cases alike, as the lone post-*Farrar* nominal damages antitrust case held. *See Concord Boat Corp. v. Brunswick Corp.*, 34 F. Supp. 2d 1125, 1133-34 (E.D. Ark. 1998) (awarding $0 in fees).

Nevertheless, the Report found *Farrar* is inapplicable by: (i) conflating distinct legal issues; (ii) invoking inapposite authority in lieu of Second Circuit precedent supporting *Farrar*'s applicability to mandatory fee statutes (with which other on-point authority is consistent); (iii) overlooking that *Farrar*'s reasoning is not specific to, and has been applied outside of, civil rights cases; and (iv) discounting controlling precedent on how to interpret fee-shifting statutes.

## I.    The Report Conflated Distinct Statutory Issues In Finding *USFL* Controlling

As its main ground for recommending that the Court not apply *Farrar*, the Report invoked *USFL v. NFL*, 887 F.2d 408 (2d Cir. 1989) ("*USFL*")—decided years before *Farrar*—as

"controlling" because it purportedly addressed "an identical issue to the one here." (Rpt. 6.) But the portions of *USFL* the Report invoked concern a distinct legal question.

In *USFL*, the Second Circuit affirmed an award of about 50% of an antitrust plaintiff's fees after a $1 verdict. *USFL*, 887 F.2d at 415. The panel divided its opinion into two analytical steps: (i) whether the plaintiff was "entitled" to "reasonable" fees, *id.* at 412; and, if so, (ii) the amount of a reasonable fee, *id.* at 415. (Mem. 12-13.) On the first issue, the appellant argued the lower court "erred in not applying the 'prevailing party' standard" from the civil rights case in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *USFL*, 887 F.2d at 412. But because "prevailing party" appears "nowhere" in the Clayton Act as a condition to receiving a reasonable fee, and the Clayton Act mandates a "reasonable" fee to an injured plaintiff, the Second Circuit held "the *Hensley* prevailing party analysis [was] not warranted." *Id*. Critically, it was in ***the context of this first step*** that, as the Report put it, *USFL* found civil rights cases "inapposite." (Rpt. 6.)

That first analytical step is not the basis for Sabre's objection to USAir's fee request— and it was not the step *Farrar*'s "only-reasonable-fee-is-no-fee" rule addressed. Instead, the issue is how, under *Farrar*, the distinct "inquiry" into the reasonableness of a fee request "plays out when," as in this case, a plaintiff "won only nominal damages." *Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir. 1996); *see also Farrar*, 506 U.S. at 123 (disagreeing with the majority opinion "reach[ing] out and decid[ing] what amount of attorney's fees constitutes a reasonable amount in this instance") (White, J., dissenting). None of the portions of *USFL* the Report invoked address this question. Nor does *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010), another decision the Report invoked. (Rpt. 8.) Rather, *Hardt* addressed the "prevailing party" analysis and even noted that the distinct "prevailing party" and "reasonable amount" analyses occur at separate "step[s]." 560 U.S. at 249.

4

On the relevant question—whether the amount of a "reasonable" fee should be $0 after *Farrar*—*USFL* is in line with Sabre's position.  (*See* Mem. 12-13.)  *USFL* makes clear that "Congress 'intended that the ***amount of fees*** awarded under'" the civil rights statute '"be governed by the same standards which prevail in other types of equally complex Federal litigation, ***such as antitrust cases***.'"  887 F.2d at 412 (emphasis added) (quoting Cong. record).  In fact, multiple courts have read *USFL* consistently with the rule that the civil rights "standard regarding [the] amount of reasonable fee[s] applies to all fee-shifting statutes, including mandatory ones."  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 330 & n.23 (5th Cir. 1995) (*USFL* does not "mandate[] an opposite conclusion" in antitrust case (citation omitted)); *Gulfstream III v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 418-19 & n.5 (3d Cir. 1993) (citing *USFL* on whether plaintiff is "entitled to seek attorneys' fees," and agreeing "standards for calculating attorneys' fees in antitrust and civil rights cases . . . may be interchangeable").

Of course, at the time of *USFL*, the Supreme Court had not yet held—in the civil rights context—that "the only reasonable fee" for a nominal recovery "is usually no fee at all."  But after *Farrar* established that rule, *USFL* mandates that it apply in antitrust cases as well.  *See also Dague*, 505 U.S. at 562 (Supreme Court caselaw on reasonableness applies uniformly).

The three cases the Report cited in asserting that *USFL* is "good law" (Rpt. 11) do not call for a different result.  None cite *USFL* for the proposition that civil rights cases are inapplicable when assessing what amount of fees is "reasonable" under a mandatory fee statute.  To the contrary, despite citing *USFL*, each case invokes civil rights cases in assessing the "reasonableness" of a fee award—consistent with Sabre's position here.  *See Bingham v. Zolt*, 66 F.3d 553, 565-66 (2d Cir. 1995) (applying *Hensley* in assessing fee amount); *Miltland v. Myers*, 840 F. Supp 235, 239 (S.D.N.Y. 1993) (same); *Rivera v. Corp. Receivables*, 540 F. Supp. 2d

5

329, 342-43 (D. Conn. 2008) (same).  The Court should thus reject the Report's reliance on *USFL*'s "prevailing party" holding, which does not bear on—let alone "directly reject[]" (Rpt. 6)—Sabre's distinct "reasonableness" argument under *Farrar*. *See also Hensley*, 461 U.S. at 433 ("prevailing party" standard "brings the plaintiff only across the statutory threshold," and assessing "what fee is 'reasonable'" still "remains").  Thus, applying *Farrar* is fully appropriate.

## II.    The Report's View That *Farrar* Is Inapplicable To Mandatory Fee Statutes Is In Significant Tension With Second Circuit Law And Other On-Point Authority

Next, the Court should reject the Report's related view that *Farrar* applies only to discretionary fee shifting under the civil rights statute, and not the mandatory one under the Clayton Act.  (Rpt. 6-9.)  Courts—including the Second Circuit, *see infra*—have rejected this distinction because the analysis to "determin[e] reasonable attorneys' fees" is "essentially the same" under all statutes, and any "differences" between mandatory and discretionary fee-shifting statutes "end" before the "reasonableness" step. *William Inglis & Sons Baking Co. v. Cont'l Baking Co.*, 1993 WL 424235, at *2 (N.D. Cal. July 30, 1993) (rejecting the view that "*Farrar* is inapposite" as involving a "discretionary, not mandatory" statute), *aff'd in relevant part*, 82 F.3d 424 (9th Cir. 1996.  In other words, "*Farrar* appl[ies] to all cases," *Kellstrom*, 50 F.3d at 337-38 (Garza, J., concurring in part), and a contrary view "confuse[s] determination of the <u>right</u> to recover fees with determination of the <u>reasonable amount</u> of that fee." *Id.* at 330 (majority op.).

Consequently, multiple courts have applied *Farrar* to deny fees under mandatory fee-shifting statutes, including the Clayton Act, and the Report identifies no case finding *Farrar* inapplicable in this context. *See, e.g.*, *Concord Boat*, 34 F. Supp. 2d at 1134 (applying "*Farrar* analysis" to award $0 as "reasonable" fee for $1 antitrust verdict); *Doe*, 435 F.3d at 503-07 & n.19 (applying *Dague* and *Farrar* in mandatory fee case where "district court erred in its reasonableness analysis by failing to 'give primary consideration to the amount of damages

6

awarded as compared to the amount sought,'" and in a subsequent opinion, holding "no fee award was appropriate," 511 F.3d 461, 468 (4th Cir. 2007)); *Petrunich v. Sun Bldg. Sys., Inc.*, 625 F. Supp. 2d 199, 205 (M.D. Pa. 2008) (Vanaskie, J.) (applying *Farrar* and denying fees under mandatory fee statute because the "nature of a nominal damages award . . . bears directly on the size, if any," of a "reasonable" fee).

While the Report rejected these directly applicable authorities on the ground that they were from other circuits (Rpt. 9-11), they are consistent with Second Circuit law applying *Farrar* to mandatory fee statutes. For instance, in *Millea v. Metro-N. R. Co.*, 658 F.3d 154 (2d Cir. 2011)—on which the Report relied—the Second Circuit interpreted the FMLA's mandatory fee-shifting provision and found it "[t]rue" that under *Farrar*, a "court should award no attorney's fees" in certain "nominal damages" FMLA cases.[3] *Id*. at 166-68. And *Barfield v. New York City Health & Hosps. Corp*., 537 F.3d 132 (2d Cir. 2008), a mandatory fee case, directed courts to heed *Farrar*'s pronouncement "that 'the most critical factor' in [assessing] what constitutes reasonable attorney's fees . . . 'is the degree of success obtained.'" *Id.* at 152 (quoting *Farrar*, 506 U.S. at 114); *Zhang*, 2021 WL 1154084, at *2 (same in mandatory fee case).

Instead, the Report relied on *Stochastic Decisions, Inc., v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993), but gave that decision an undue interpretation. According to the Report, *Stochastic* "ma[k]e[s] plain" that "*Farrar*'s only-reasonable-fee-is-no-fee-rule does not apply" to mandatory fee statutes. (Rpt. 10.) But the question of the reasonable fee award for nominal recovery—as in *Farrar* and in this case—was not presented in *Stochastic*. There, the plaintiff

---

[3] While *Millea* commented that "prevail[ing] on a technicality in a mostly frivolous lawsuit" precludes fees under *Farrar*, *Millea* cannot be read as holding that *Farrar* applies <u>only</u> in those circumstances. A long line of prior Second Circuit precedent sets the standards for denying fees under *Farrar*, and subsequent caselaw continues to apply those standards. *See, e.g.*, *Alvarez*, 2017 WL 6033425, at *3 (synthesizing Second Circuit test for denying fees under *Farrar*); *see also Husain v. Springer*, 579 F. App'x 3, 4-5 (2d Cir. 2014) (citing cases in explaining how "[t]his Court has read *Farrar* to call for the denial of attorneys' fees").

obtained over $1.5 million, and the Second Circuit held the district court properly "evaluat[ed] the reasonableness of the fees in comparison to the results obtained." *Id.* at 1168. Although *Stochastic* cited *USFL* for the statement that a "*Hensley* analysis 'is of limited applicability' to statutes that mandate an award of attorney fees," *id.* at 1168, that statement—i.e., the statement in *USFL*—concerned *Hensley*'s test for assessing who is a "prevailing party," not what amount of fees is "reasonable." To read *Stochastic* otherwise would be incompatible with the operative portions of *USFL*, as well as *Dague*, *Millea*, *Barfield*, and the on-point out-of-circuit cases discussed above. Thus, *Farrar* applies, and the Report's contrary conclusion should be rejected.

## III.   Contrary To The Report, *Farrar*'s Reasoning Is Not "Specific" To Civil Rights Law

The Report further erred in contending that a "close review" of *Farrar* (including Justice O'Connor's concurrence) shows that it does not "extend[] beyond" the civil rights statute. (Rpt. 6-9.) ***First***, the Report asserts that *Farrar*'s holding rests on "reasons" that are "specific to civil rights cases"—namely, ensuring that damage awards only "compensate injuries caused by" constitutional violations; accounting for the fact that a civil rights plaintiff who obtained nominal damage failed to "prove actual, compensable injury;" and preventing "windfalls to attorneys." (Rpt. 7.) But each of these reasons also applies to the Clayton Act. As in civil rights cases, damages may only compensate injuries caused by an antitrust violation, *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 550 (S.D.N.Y. 2021); an antitrust plaintiff that won nominal damages failed to prove measurable damages (*see* Mem. 13-14); and under the Clayton Act, "allowing 'an attorney to receive a windfall would be manifestly unreasonable." *In re Vitamin C Antitrust Litig.*, 2013 WL 6858853, at *6 (E.D.N.Y. Dec. 30, 2013) (citation omitted).

Relatedly, *Farrar*'s holding rested on a rationale—the importance of a plaintiff's lack of success to the "reasonableness" analysis—that is not, as the Report stated, cabined to "civil rights litigation" (Rpt. 7 (emphasis omitted)). As *Farrar* made clear, lack of success is "the most

8

critical factor" in the "reasonableness" analysis, as that consideration "promotes the court's 'central' responsibility" to assess reasonableness in each case. *Farrar*, 506 U.S. at 114-15 (citations omitted). In limiting *Farrar* to civil rights cases, the Report overlooked that this rationale has been invoked when extending *Farrar* to mandatory fee statutes, including by the Second Circuit in *Barfield* and *Millea* and by courts denying fees under mandatory statutes discussed above. That alone belies the view that *Farrar* is limited to civil rights law.

**Second**, Justice O'Connor's concurrence does not, as the Report suggests, show that *Farrar* is specific to the civil rights statute's "prevailing party" language. (Rpt. 7-8.) To the contrary, that concurrence explained that—as "the Court makes clear"—a "*de minimis* or technical victory . . . is part of the determination of what constitutes a reasonable fee," not whether a plaintiff is a "prevailing party." *Farrar*, 506 U.S. at 117 (O'Connor, J., concurring). Thus, *Farrar* controls the determination of a reasonable fee here.

## IV. The Report Discounted Applicable Supreme Court Authority In Asserting That "Reasonable Attorney's Fee" Varies By Fee-Shifting Statute

Finally, the Court should reject the Report's implication that the meaning of the phrase "reasonable attorney's fee" in the civil rights fee statute differs from the meaning of identical language in the Clayton Act. (Rpt. 9.) For the reasons explained above, this implication is at odds with *USFL* and numerous other decisions. And it is also contrary to the Supreme Court's directive in *Dague* that its "case law construing what is a 'reasonable' fee applies uniformly to all" fee-shifting statutes.[4] *Dague*, 505 U.S. at 562. The report, however, interpreted *Dague*'s

---

[4] In full, *Dague* states: The applicable federal statutes "authorize a court to 'award costs of litigation (including ***reasonable attorney . . . fees***)' to a 'prevailing or substantially prevailing party.' 42 U.S.C. § 6972(e); 33 U.S.C. § 1365(d). This language is similar to that of many other federal fee-shifting statutes, *see, e.g.*, 42 U.S.C. §§ 1988, 2000e–5(k), 7604(d); our case law construing what is a 'reasonable' fee applies uniformly to all of them." *Dague*, 505 U.S. at 561-62 (emphasis in original). In interpreting this passage, the Report omitted *Dague*'s original emphasis on "reasonable attorney . . . fee," and added other emphasis in seeking to focus on "prevailing party." (Rpt. 9 n.5.)

directive as applying only to cases involving statutes that award fees to a "prevailing party."
(Rpt. 9 & n.5.)  For multiple reasons, the Court should reject that interpretation.

*First*, the Report identified no precedent to support its reading.  Meanwhile, cases are
legion interpreting *Dague* as applying beyond "prevailing party" statutes.  As they make clear,
"decisions that discuss what constitutes a 'reasonable' attorneys' fee primarily arose in the
context of civil rights laws, but 'case law construing what is a "reasonable" fee applies uniformly
to all . . . federal fee-shifting statutes,'" including the Clayton Act.  *In re Aggrenox Antitrust
Litig.*, 2017 WL 4679228, at *2 n.2 (D. Conn. Oct. 18, 2017) (quoting *Dague*, 505 U.S. at 562);
*Doe*, 435 F.3d at 504 (same in mandatory fee case applying *Farrar* and ultimately denying fees);
*Brokerage Concepts v. U.S. Healthcare, Inc.*, 1996 WL 741885, at *2 (E.D. Pa. Dec. 10, 1996)
(same interpretation in Clayton Act fee decision); *Lumen View Tech. v. Findthebest.com*, 63 F.
Supp. 3d 321, 324 n.1 (S.D.N.Y. 2014) (same interpretation in discretionary fee case).

*Second*, a statute cited in *Dague*'s relevant passage—42 U.S.C. § 7604(d)—belies the
Report's reading because it does not include the phrase "prevailing party," but was listed as one
under which the Supreme Court's "reasonableness" caselaw uniformly applied.  *See* n.4, *supra*.

*Third*, the Report's reading of *Dague* would create the very inconsistency in fee
precedent that the Supreme Court sought to avoid.  Indeed, *Dague* itself supported its directive
with a citation to *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754 (1989), where the
Supreme Court sought to interpret statutes to achieve uniformity, not discord, in fee precedent.
*See id.* at 758 n.2 (explaining that "fee-shifting statutes' similar language is 'a strong indication'
that they are to be interpreted alike," and collecting Supreme Court cases directing uniformity in
fee cases (citation omitted)).  *Dague* thus compels *Farrar*'s application here.

## CONCLUSION

For the foregoing reasons, Sabre's objections to the Report should be sustained.

DATED: April 24, 2023
    New York, NY

Respectfully submitted,

/s/ *Boris Bershteyn*

Boris Bershteyn
Evan R. Kreiner
Evan H. Levicoff
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
boris.bershteyn@skadden.com
evan.kreiner@skadden.com
evan.levicoff@skadden.com

Steven C. Sunshine
Tara L. Reinhart
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Phone: (202) 371-7860
steve.sunshine@skadden.com
tara.reinhart@skadden.com

*Counsel for Sabre Holdings Corporation,
Sabre GLBL Inc., and Sabre Travel
International Ltd.*