UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

US AIRWAYS, INC., FOR AMERICAN
AIRLINES, INC., AS SUCCESSOR AND
REAL PARTY IN INTEREST,

Plaintiff,

-against-

SABRE HOLDINGS CORPORATION;
SABRE GLBL INC.; and SABRE TRAVEL
INTERNATIONAL LIMITED,

Defendants.

Civ. A. No. 1:11-cv-02725-LGS-JLC

---

**US AIRWAYS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
COSTS, INCLUDING ATTORNEY'S FEES AND EXPENSES, UNDER 15 U.S.C. § 15**

Andrew J. Frackman
afrackman@omm.com
Anton Metlitsky
ametlitsky@omm.com
Mia N. Gonzalez
mgonzalez@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
Telephone:  (212) 326-2000

Ian Simmons (admitted *pro hac vice*)
isimmons@omm.com
Patrick Jones (admitted *pro hac vice*)
pjones@omm.com
1625 Eye Street, NW
Washington, DC  20006
Telephone:  (202) 383-5300

Madhu Pocha (admitted *pro hac vice*)
mpocha@omm.com
1999 Avenue of the Stars
Los Angeles, CA  90067
Telephone:  (310) 553-6700

R. Paul Yetter (admitted *pro hac vice*)
pyetter@yettercoleman.com
Bryce L. Callahan (admitted *pro hac vice*)
bcallahan@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, TX  77002
Telephone:  (713) 632-8000

*Attorneys for Plaintiff US Airways, Inc.,
for American Airlines, Inc., as Successor
and Real Party in Interest*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................... 1

II.   US AIRWAYS' REQUEST FOR FEES AND EXPENSES IS REASONABLE............ 4

    A.   US Airways' Hourly Rates are Reasonable ........................................................ 5

    B.   US Airways' Legal Team's Hours are Reasonable. ............................................ 6

    C.   US Airways is Entitled to Recover Reasonable Attorney's Expenses ................. 9

III.  SABRE CANNOT MEET ITS BURDEN TO ESTABLISH A SUBSTANTIAL
     REDUCTION TO THE LODESTAR AMOUNT ......................................................... 11

    A.   The Size of the Jury Award does not Permit a Significant Downward
       Adjustment Under the *Johnson* Factors .............................................................. 11

    B.   Sabre's Attempt to Artificially Compartmentalize the Work Related to
       Different Claims Lacks Merit and Should be Rejected ...................................... 14

         1.   All US Airways' Claims are Based on a Common Core of Facts
            and Legal Theories..................................................................................... 15

         2.   US Airways' Vertical Restraints Section 1 Claim is Subsumed
            Within its Winning Monopolization Claim ............................................... 18

         3.   Voluntary Dismissal of US Airways' Conspiracy to Monopolize
            Claim had no Bearing on the Scope of Work ........................................... 20

         4.   The Facts Underlying the Horizontal Conspiracy Claim
            Overlapped with Facts Underlying US Airways' Monopolization
            Claim.......................................................................................................... 21

         5.   US Airways is Entitled to Recover Fees Related to the Appeal of
            the 2016 Verdict........................................................................................ 22

    C.   Any Downward Adjustment Should Be Minimal................................................ 23

IV.   US AIRWAYS IS ENTITLED TO STATUTORY COSTS ......................................... 24

V.    CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Abshire v. Walls*,
   830 F.2d 1277 (4th Cir. 1987) .................................................................................... 17

*Am. Safety Equip. Corp. v. J. P. Maguire & Co.*,
   391 F.2d 821 (2d Cir. 1968) ....................................................................................... 12

*Anderson v. City of N.Y.*,
   132 F. Supp. 2d 239 (S.D.N.Y. 2001) ........................................................................ 24

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
   369 F.3d 91 (2d Cir. 2004) ......................................................................................... 10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
   522 F.3d 182 (2d Cir. 2008) ............................................................................. 4, 5, 11

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
   548 U.S. 291 (2006) .................................................................................................... 24

*Automotive Products, plc v. Tilton Engineering, Inc.*,
   1993 WL 660164 (C.D. Cal. Sept. 16, 1993) ............................................................. 17

*BD v. DeBuono*,
   177 F. Supp. 2d 201 (S.D.N.Y. 2001) ........................................................................ 10

*Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*,
   652 F.3d 277 (2d Cir. 2011) ......................................................................................... 5

*Bingham v. Zolt*,
   66 F.3d 553 (2d Cir. 1995) .................................................................................. 23, 24

*Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*,
   212 F. Supp. 2d 226 (S.D.N.Y. 2002) ...................................................................... 5, 6

*Blum v. Stenson*,
   465 U.S. 886 (1984) ..................................................................................................... 5

*Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*,
   549 F. Supp. 2d 274 (E.D.N.Y. 2008) ....................................................................... 10

*Bourgal v. Atlas Transit Mix Corp.*,
   1996 WL 75290 (E.D.N.Y. Feb. 7, 1996) .................................................................. 10

*Brown v. Green 317 Madison*, LLC,
   2014 WL 1237448 (E.D.N.Y. Feb. 4, 2014) .............................................................. 24

*Capitol Recs., LLC v. ReDigi Inc.*,
   No. 1:12-CV-95 (RJS), 2022 WL 3348385 (S.D.N.Y. Aug. 12, 2022) ........................ 4

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Carco Grp., Inc. v. Maconachy*,
  2011 WL 6012426 (E.D.N.Y. Dec. 1, 2011) *rev'd on other grounds*, 718 F.3d 72
  (2d Cir. 2013) ...................................................................................................................... 10

*Carter v. Inc. Vill. of Ocean Beach*,
  759 F.3d 159 (2d Cir. 2014) ................................................................................................ 24

*Cf. Mercer v. Duke Univ.*,
  401 F.3d 199 (4th Cir. 2005) ............................................................................................... 13

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986) ............................................................................................................... 7

*Close-Up Int'l, Inc. v. Berov*,
  2007 WL 4053682 (E.D.N.Y. Nov. 13, 2007) ...................................................................... 10

*Cohen v. Bank of N.Y. Mellon Corp.*,
  2014 WL 1652229 (S.D.N.Y. Apr. 24, 2014) ....................................................................... 24

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962) ............................................................................................................... 8

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
  482 U.S. 437 (1987) ............................................................................................................. 24

*Diplomatic Man, Inc. v. Nike, Inc.*,
  2009 WL 935674 (S.D.N.Y. Apr. 7, 2009) ....................................................................... 3, 6

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
  62 F.4th 704 (2d Cir. 2023) ................................................................................................... 8

*Gierlinger v. Gleason*,
  160 F.3d 858 (2d Cir. 1998) ................................................................................................ 17

*Grant v. Martinez*,
  973 F.2d 96 (2d Cir. 1992) ..................................................................................................... 8

*Gray v. Toyota Motor Sales, U.S.A., Inc.*,
  2013 WL 3766530 (E.D.N.Y. July 16, 2013) ........................................................................ 9

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
  995 F.2d 414 (3d Cir. 1993) ................................................................................................ 17

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................................. 15

*Home Placement Serv., Inc. v. Providence J. Co.*,
  819 F.2d 1199 (1st Cir. 1987) ............................................................................................. 12

*In re Frontier Communications Corp.*,
  No. 20-22476 (RDD) (S.D.N.Y. Bankr. Nov. 20, 2020) ........................................................ 5

iii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re LATAM Airlines Group S.A.*,
   No. 20-11254 (JLG) (S.D.N.Y. Bankr. Feb. 10, 2023) ............................................. 5

*In re Purdue Pharma L.P.*,
   No. 19-23649 (RDD) (S.D.N.Y. Bankr. June 27, 2022) ......................................... 5

*In re Trident Holdings Co., LLC*,
   No. 19-10384 (SHL) (S.D.N.Y. Bankr.) ................................................................ 5

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd*, 396 F.3d 96 (2d Cir. 2005) ............... 10

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
   2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) ......................................................... 10

*Jarvis v. Ford Motor Co.*,
   2003 WL 1484370 (S.D.N.Y. Mar. 21, 2003) ........................................................ 24

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) .................................................................................. 11

*Litton Sys. Inc. v. American Tel. & Tel. Co.*,
   613 F. Supp. 824 (S.D.N.Y. 1985) ................................................................... 15, 23

*Lunday v. City of Albany*,
   42 F.3d 131 (2d Cir. 1994) ...................................................................................... 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   105 S. Ct. 3346 (1985) ............................................................................................ 12

*Mugavero v. Arms Acres, Inc.*,
   No. 03 CIV.05724 PGG, 2010 WL 451045 (S.D.N.Y. Feb. 9, 2010) ..................... 8

*Natural Organics, Inc. v. Nutraceutical Corp.*,
   2009 WL 2424188 (S.D.N.Y. Aug. 6, 2009) ......................................................... 24

*Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018) .............................................................................................. 1

*Perkins v. Standard Oil Co. of Cal.*,
   399 U.S. 222 (1970) ................................................................................................ 22

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF*,
   2017 WL 473910 (N.D.N.Y. Feb. 3, 2017) ........................................................... 24

*Quaratino v. Tiffany & Co.*,
   166 F.3d 422 (2d Cir. 1997) ............................................................................. passim

*Reith v. Allied Interstate, Inc.*,
   2012 WL 5458007 (S.D.N.Y. Nov. 8, 2012) ......................................................... 24

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sabre Global Technologies Ltd. v. Hawaiian Airlines, Inc.*,
   22-cv-07395 (S.D.N.Y.) .......................................................................................... 13

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993) .............................................................................................. 12

*Standard Oil Co. of New Jersey v. United States*,
   221 U.S. 1 (1911) .................................................................................................... 8

*Summit Tech., Inc. v. Nidek Co.*,
   435 F.3d 1371 (Fed. Cir. 2006) ........................................................................... 24

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
   2007 WL 840368 (S.D.N.Y. Mar. 21, 2007) ........................................................ 9

*Telenor Mobile Commc'ns AS v. Storm LLC*,
   2009 WL 585968 (S.D.N.Y. Mar. 9, 2009) ................................................. 5, 6, 7

*TigerCandy Arts, Inc. v. Blairson Corp.*,
   2012 WL 760168 (S.D.N.Y. Feb. 23, 2012) ...................................................... 24

*U.S. Football League v. Nat'l Football League* ("*USFL*"),
   887 F.2d 408 (2d Cir. 1989) .......................................................................... passim

*U.S. Football League v. Nat'l Football League*,
   704 F. Supp. 474 (S.D.N.Y. 1989) ............................................................... 10, 14

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015) ............................................................................... 12

*United States v. Merritt Meridian Constr. Corp.*,
   95 F.3d 153 (2d Cir. 1996) ................................................................................. 24

*US Airways v. Sabre Holdings Corp.*,
   938 F.3d 43 (2d Cir. 2019) ................................................................................. 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................... 8

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
   51 F. Supp. 2d 302 (S.D.N.Y. 1999) ................................................................. 10

## Statutes

15 U.S.C. § 15 ............................................................................................................ 2

28 U.S.C. § 1821 ................................................................................................. 2, 24

28 U.S.C. § 1920 ................................................................................................. 2, 24

28 U.S.C. § 1920(1) ................................................................................................ 24

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

28 U.S.C. § 1920(2) ................................................................................................ 24

28 U.S.C. § 1920(3) ................................................................................................ 24

28 U.S.C. § 1920(5) ................................................................................................ 24

28 U.S.C. §§ 1920(3)–1920(4) ............................................................................... 24

**Other Authorities**

7 Moore et al., Moore's *Federal Practice* § 54.103(3)(c)(i) (3d ed. 2011) .................................. 24

**Rules**

Local Civ. R. 54.1(c) ................................................................................................. 2

Local Civ. R. 54.1(c)(10) .......................................................................................... 24

Local Civ. R. 54.1(c)(2) ............................................................................................ 24

## I.   <u>PRELIMINARY STATEMENT</u>

For more than a decade, US Airways and its successor-in-interest, American Airlines,[1] fought to prove Sabre is a monopolist that used its dominant position to stifle competition in the market for airline ticket distribution, injuring market participants.  On May 19, 2022, a jury vindicated those efforts, finding that Sabre's monopolistic, exclusionary conduct violated Section 2 of the Sherman Act, injured competition, and injured US Airways.  ECF No. 1208. The result was historic—the first jury verdict in a two-sided market case following *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018) ("*Amex*"), which heightened the requirements for proving Sherman Act violations in such cases.  Material changes in Sabre's relationships with airline customers have followed on the heels of US Airways' victory.

Winning required an enormous effort over 12 years, as detailed in the accompanying Declaration of Andrew J. Frackman ("Frackman Decl." or "Frackman Declaration").  Among other things, US Airways' legal team:

- Reviewed over 2.5 million documents, Frackman Decl. ¶ 8;

- Participated in over 60 party and third-party fact depositions, *id.*;

- Drafted or responded to over 1,000 written discovery requests, *id.* ¶ 38;

- Briefed and argued multiple motions to dismiss and for summary judgment, *id.* ¶ 7;

- Litigated 40 *Daubert* motions and motions *in limine*, *id.* ¶¶ 7; 51; 66;

- Prepared 30 expert reports, reply reports, and expert written directs, *id.* ¶¶ 42; 61–62;

- Took and defended 17 expert depositions, *id.*;

- Prepared for and prosecuted an eight-week jury trial in 2016, which involved more than 40 witnesses via live and deposition testimony, more than 500 exhibits and

---

[1] For purposes of this motion, "US Airways" refers to both US Airways as well as its successor-in-interest American Airlines.

demonstratives, and extensive briefing and arguments on countless legal and fact issues, *id.* ¶ 55;

- Litigated an appeal in the Second Circuit to address the intervening *Amex* decision and to resuscitate US Airways' improperly dismissed monopolization claim, *id.* ¶¶ 57–59; and

- Tried a second, three-week jury trial in 2022, which—although it leveraged prior work extensively—required presenting a new theory of liability with the aid of several new expert and fact witnesses, *id.* ¶¶ 61–62; 69.

And US Airways prevailed against a tenacious adversary, represented by six different law firms. Frackman Decl. ¶ 6.

Because it prevailed, US Airways is now entitled to recover attorney's fees, expenses, and costs incurred and paid for during this 12-year battle.[2]  15 U.S.C. § 15; *see* Report & Recommendation of Judge Cott, ECF No. 1276, at 11 (Apr. 10, 2023) ("Report"), (holding that "US Air is thus entitled to reasonable attorneys' fees"), *adopted by*, Opinion and Order on Report & Recommendation, ECF No. 1283, at 2 (June 1, 2023) ("Order").  US Airways' fees, expenses, and costs are summarized in Exhibit A to the Frackman Declaration, which is reproduced below with an additional column providing the amount US Airways now seeks.  This amount—$139,183,723.42—reflects a 15 percent reduction to US Airways' attorney's fees and expert consultants' fees, on top of other reductions already taken off the amount US Airways paid (or has approved for payment).[3]  Although US Airways believes that recovery of the entire $158,981,115.60 would be reasonable, US Airways implemented this 15 percent discount following the Court's guidance that "US Air should be awarded reasonable attorney's fees,

---

[2] US Airways uses "fees" to refer to US Airways' payments to counsel for time spent on this litigation; "costs" to refer to standard statutory costs recoverable by any prevailing litigant, *see* 28 U.S.C. § 1920; 28 U.S.C. § 1821, Local Civ. R. 54.1(c); and "expenses" to refer to other expenditures reasonably necessary to prosecute cases with the complexity of this litigation.

[3] These amounts reflect expenses incurred through May 31, 2023.  US Airways reserves the right to seek fees, expenses, and costs from June 1, 2023 onwards and will include any such fees, expenses, and costs, as part of its reply in support of US Airways' Motion for Costs, Including Attorney's Fees, under 15 U.S.C. § 15.

subject to a downward adjustment." Report at 16.

| Category | Recoverable Amount | Amount Sought by US Airways | Supporting Exhibits |
|---|---|---|---|
| Attorney's Fees | $108,729,852.53 | $92,420,374.65 | Exhibits B–E |
| Attorney's Expenses | $49,174,802.46 | $45,686,848.16 | Exhibits F–K |
| Statutory Costs | $1,076,500.61 | $1,076,500.61 | Exhibits L–M |
| **Total** | $158,981,115.60 | $139,183,723.42 | |

The mandatory fee provision in the Clayton Act exists to encourage private plaintiffs to undertake the significant financial investment and risk required to prosecute complex cases like this one, even where the monetary returns are uncertain. US Airways has paid (or approved for payment) all of these fees, after its in-house counsel found this work to be reasonable and necessary in light of the complexity, difficulty, duration, and significance of the case. *See* Declaration of Robert Bruce Wark, American's Senior Vice President and Deputy General Counsel ("Wark Decl."), ¶¶ 2–3; Declarations of Paul D. Jones, American's former Senior Vice President and General Counsel, ECF No. 861, at 2; ECF No. 902, at 2. The fact of US Airways' review, approval, and payment of these fees is prima facie evidence of the reasonableness of the amount. *See Diplomatic Man, Inc. v. Nike, Inc.*, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) (finding the fact of payment by a "highly sophisticated business client" to be "prima facie evidence of the reasonableness of the amount").

Sabre will continue to argue that because US Airways did not prevail on all of its claims and was only awarded nominal damages, it should not recover all of its fees, expenses, and costs. But these arguments are wrong.

US Airways is entitled to fees, expenses, and costs for ***all*** the work that contributed to its monopolization claim victory—including work on its other closely related claims. *See U.S. Football League v. Nat'l Football League* ("*USFL*"), 887 F.2d 408, 414 (2d Cir. 1989)

3

("[B]ecause the USFL was successful in proving an antitrust injury, all that is required under section 4 of the Clayton Act, it is entitled to attorney's fees for all work done in relation to the common core of facts that resulted in that injury.").  Sabre will not be able to sustain its burden of showing that the work touching on the other claims was not "inextricably intertwined" with US Airways' successful monopolization claim because all the claims arose from a common nucleus of facts.  *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1997); *see also USFL*, 887 F.2d at 413 ("[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified.").  The Court, which heard the two trials and the evidence common to both the Section 1 and Section 2 claims, knows better.  Thus, the Court need not engage in any "hair-splitting" to allocate time spent in connection with successful and unsuccessful claims.  *See Quarantino*, 166 F.3d at 426 n.8.  Nor is the size of the ultimate damages award determinative since there is no question that the jury found Sabre liable as a monopolist and that Sabre injured US Airways.  Order at 6 (citing *USFL*, 887 F.2d at 410–11).

## II.   <u>US AIRWAYS' REQUEST FOR FEES AND EXPENSES IS REASONABLE</u>

There is no bona fide question about the reasonableness of O'Melveny's rates, since they are no higher than those of Sabre's own counsel or of comparable firms in this District.  Nor should there be a serious issue about the reasonableness of the effort required to prevail in two lengthy jury trials given the tenacious defense of Sabre's counsel, and especially considering the novelty and difficulty of the case and the skill required to obtain a victory.  *See* Report at 11 (citing *Capitol Recs., LLC v. ReDigi Inc.*, No. 1:12-CV-95 (RJS), 2022 WL 3348385, at *1–3 (S.D.N.Y. Aug. 12, 2022); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 189–90 (2d Cir. 2008)).  The lodestar amount of US Airways' fees is further presumptively reasonable since US Airways is seeking recovery of fees and expenses that it ***actually paid*** to achieve its historic antitrust judgment.  *See Telenor Mobile Commc'ns AS v.*

*Storm LLC*, 2009 WL 585968, at *5–6 (S.D.N.Y. Mar. 9, 2009) ("[H]ighly sophisticated business entity['s] . . . willingness to incur the costs must primarily have been based on what it believed was necessary and proper . . . to prosecute its case").

### A.    US Airways' Hourly Rates are Reasonable

Although we do not anticipate that Sabre and its counsel Skadden will argue that O'Melveny's rates are unreasonable, we point out that they are no more than the rates charged by Sabre's own many law firms—Skadden, Cravath, and Cleary, among others.[4]  And they are consistent with those of peer firms in this District in similarly complex cases.[5]  *See Arbor Hill*, 522 F.3d at 184 ("[I]n setting a reasonable hourly rate," a district court should "bear in mind all of the case-specific variables"); *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (stating that the relevant community is "the district in which the reviewing court sits"); *Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*, 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002) (finding rate reasonable where "courts in this District have frequently awarded comparable rates to firms of comparable size and reputation").

Moreover, the "skill, experience, and reputation" of US Airways' counsel is consistent with the rates charged.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  For example, the

---

[4] *See, e.g.*, Omnibus Order, *In re Purdue Pharma L.P.,* No. 19-23649 (RDD) (S.D.N.Y. Bankr. June 27, 2022), ECF No. 4927 (approving Skadden's attorney's fees request (ECF No. 4842, at 6) of up to $1,850/hour rate for partners, including lead trial counsel for Sabre in this case, and up to $1,180/hour rate for associates, in 2022); Omnibus Order, *In re Trident Holdings Co., LLC*, No. 19-10384 (SHL) (S.D.N.Y. Bankr.), ECF No. 879 (approving Skadden's attorney's fees request (ECF No. 670) of up to $1,695/hour rate for partners and up to $1,050/hour rate for associates, in 2019); Omnibus Order, *In re Frontier Communications Corp.*, No. 20-22476 (RDD) (S.D.N.Y. Bankr. Nov. 20, 2020), ECF No. 1343 (approving Cravath's attorney's fees request (ECF No. 1280) of up to $1,725/hour rate for partners, and up to $1,210/hour rate for associates, in 2020); Order, *In re LATAM Airlines Group S.A.*, No. 20-11254 (JLG) (S.D.N.Y. Bankr. Feb. 10, 2023), ECF No. 7353 (approving Cleary's attorney's fees request (ECF No. 7230) of up to $1,785/hour rate for partners, and up to $1,170/hour rate for associates, in 2023). US Airways uses examples from bankruptcy litigation because such matters are similarly complex and more recent fee applications are publicly accessible.

[5] *See, e.g.*, Omnibus Order, *In re Purdue Pharma L.P.,* No. 19-23649 (RDD) (S.D.N.Y. Bankr. April 4, 2023), ECF No. 5529 (approving, with a $15,000 reduction in fees, Davis Polk's attorney's fees request (ECF No. 5422, at 32) of up to $1,950/hour rate for partners and up to $1,315/hour rate for associates, in 2023).

senior partners leading US Airways' 2022 trial efforts—Andrew Frackman and Paul Yetter—collectively brought more than 75 years of experience to the case, with specialized knowledge in antitrust law, complex litigation, and trial practice.  *See* Frackman Decl. ¶ 15.  Charles Diamond, who led the 2016 trial with Mr. Frackman, was one of O'Melveny's most experienced antitrust trial lawyers, having successfully led many complex trials over the course of his career.  *See* Frackman Decl. ¶ 15; *see also id.* Exs. D–E (providing details on each attorney and legal staff member for which US Airways seeks fees).

### B.    US Airways' Legal Team's Hours are Reasonable.

That US Airways has reviewed and paid outside counsel's fees, Wark Decl. ¶¶ 1–2, also should dispose of any question of the reasonableness of the hours expended on the case, *see Telenor Mobile*, 2009 WL 585968, at \*2; *Diplomatic Man, Inc. v. Nike, Inc.*, 2009 WL 935674, at \*6 ("[T]he fact that Nike, a highly sophisticated business client, has paid these bills, presumably after careful review by its general counsel or other senior business executives, is prima facie evidence of the reasonableness of the amount as a whole (beyond just the reasonableness of the hourly rates charged), since Nike could not have assumed that it would be reimbursed in full, or even in part."); *Bleecker Charles Co.*, 212 F. Supp. 2d at 230 ("As numerous courts have recognized, negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market.").

Any suggestion by Sabre that US Airways' hours are unreasonable falls flat in light of Sabre's own tenacious decade-long defense, which this Court saw firsthand.  *See Telenor Mobile*, 2009 WL 585968, at \*2 (finding "no disparity between the parties in the staffing of the matter").  That Sabre "chose to litigate the case in the same way" as US Airways—indeed, one can say in light of Sabre's many repeated and duplicative motions that Sabre did not limit itself in any way—"further attest[s] to the broad reasonableness of [US Airways'] counsel's approach

to handling the case, in the context of its significance, complexity and difficulty." *Id.*; *see also City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986) (instructing that defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response"). The detail of US Airways' attorneys' efforts is set forth in the accompanying Frackman Declaration. *See* Frackman Decl. ¶¶ 29–73.

Quibbling about relatively minor differences in quantum should carry little weight. After all, as the plaintiff, US Airways' fees should be higher than Defendants'. US Airways not only had the burden of prosecuting this complex case, Sabre had the benefit of having previously tried a related case against American Airlines in 2012, and thus was familiar with large portions of the factual record of that prior case (that factual record was incorporated into the additional facts obtained in the US Airways case). Frackman Decl. ¶ 6, n.4. Although we do not have access to all of Sabre's fee information, the information available shows Sabre's attorneys' efforts have been commensurate with US Airways'. Through just the first six years of this 12-year case, "[a]fter excluding legally unrecoverable items, Sabre's fees and expenses . . . were $48,819,177.50." ECF No. 890, at 24. But that figure understates the "reasonable fee" because Sabre's then-lead counsel, Bartlit Beck, had the benefit of the prior American Airlines trial and also charged a "reduced monthly fee in exchange for the opportunity to earn certain [undisclosed] bonus payments contingent on various events in the case." *See* ECF No. 890, at 23; *see, e.g.*, *id.* (describing one such "bonus of almost $2.7 million that Sabre paid" following "dismissal of US Airways' declaratory judgment claim"). As the Court is aware, six years of litigation and a second trial is not even included in this early, partial total.

Nor is the total sought by US Airways' out of line with those of plaintiffs' in other lengthy, complex antitrust cases. The Court of Appeals affirmed the approximately $523 million

fee award to plaintiffs' counsel in the *Merchant Interchange Cases*. *See Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 712 (2d Cir. 2023). "Federal antitrust cases are complicated, lengthy, and bitterly fought," *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005), especially monopolization cases in which plaintiffs must be "given the full benefit of their proof," *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962), and the evidence can include "a vast amount of confusing and conflicting testimony relating to innumerable, complex, and varied business transactions, extending over [many] years," *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 30–31 (1911). That is why Congress enacted a mandatory fees provision in the Clayton Act.

Although the fact of US Airways' payment of these fees establishes their presumptive reasonableness, to expedite resolution of this application, US Airways has provided the actual time entries for which it is seeking compensation.[6] Frackman Decl. Ex. B. In addition, US Airways has included summaries of the work performed and amount paid during each stage of the litigation, Frackman Decl. ¶¶ 29–73, Ex. C, and the names of each timekeeper, their average billing rates, hours expended, and total amounts billed, in addition to descriptions of each timekeeper from O'Melveny and Yetter Coleman, *see id.* Exs. D–E. US Airways' requested hours—though considerable—are reasonable given the length, complexity, and difficulty of the litigation. *See Mugavero v. Arms Acres, Inc.*, No. 03 CIV.05724 PGG, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) ("Courts base the hours inquiry not on what appears necessary in hindsight, but on whether 'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). To further ensure reasonableness, US Airways has excluded charges of timekeepers who

---

[6] By submitting outside counsel's time entries, US Airways is not waiving its attorney-client and work product privileges as to the underlying communications and work reflected in the time entries.

billed less than 100 hours over the life of the case—eliminating over $1.6 million in charges actually paid by US Airways.  Frackman Decl. ¶ 9.  It has also excluded over $2.9 million in fees for all Cadwalader work before March 2011 and after April 2012 and other work billed and paid but not directly related to the core set of issues on which US Airways prevailed.  Frackman Decl. ¶ 9.  In total, US Airways has already reduced its fees and expenses claim by over $4.5 million with these adjustments.

### C. US Airways is Entitled to Recover Reasonable Attorney's Expenses

US Airways' request includes certain recoverable out-of-pocket, administrative and consulting expenses (in addition to customary statutory costs, which are detailed in Section IV below).  Those expenses are detailed in the accompanying Frackman Declaration and Exhibits F through K, as well as accompanying declarations and exhibits from US Airways' principal economic consultants, The Brattle Group and Compass Lexecon.  *See* David J. Hutchings' Decl. in Supp. Of Mot. Under 15 U.S.C. § 15 (June 23, 2023) ("Brattle Decl."); David Molin's Decl. in Supp. Of Mot. Under 15 U.S.C. § 15 (ECF No. 904) ("Compass Decl.").

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *USFL*, 887 F.2d at 416.  Here, these include discovery costs, lodging, travel, and meals; data hosting; phone and internet services; online research; and other miscellaneous expenses.  *See* Frackman ¶¶ 20–21, Decl. Ex. F.  O'Melveny and Yetter Coleman incurred $3,157,666.10 in out-of-pocket expenses and $458,707.09 in administrative expenses, *see* Frackman Decl. Exs. F–H, and Cadwalader and Trachtenberg incurred an additional $678,804.26 and $5,443.87 in expenses, respectively, *see id.* Exs. J–K. These expenses are common, unavoidable, and regularly awarded.[7]

---

[7] *See Gray v. Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 3766530, at *6 (E.D.N.Y. July 16, 2013) (awarding discovery vendor costs); *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 2007 WL 840368, at *5, 7 (S.D.N.Y. Mar. 21, 2007)

US Airways' request also includes payments to third-party consultants and vendors for trial preparation services.  In complex antitrust cases, it is "common practice" to allow recovery for a broad spectrum of "consultants [and] litigation and trial support services[.]"  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003), *aff'd*, 396 F.3d 96 (2d Cir. 2005).[8]  Inclusion of these consultant expenses is particularly appropriate given the complexity and novelty of the issues here.  Summaries of the work performed by the consultants and a breakdown of the $44,874,191.14 in expenses that US Airways is entitled to recover are listed in Exhibit I to the Frackman Declaration and explained in more detail in the Brattle and Compass Declarations and Exhibits.  Working at the direction of counsel, US Airways' consultants provided key assistance, support, and specialized knowledge necessary to build and present effectively US Airways' claims to the jury.  Frackman Decl. ¶¶ 20, 43; Brattle Decl. ¶ 2; Compass Decl. ¶¶ 3, 5.  Because these consultants worked at lower hourly rates than the attorneys, they helped US Airways prosecute its case more efficiently and cost effectively.  *See U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474, 483 (S.D.N.Y. 1989) ("As a simple matter of economics, it is desirable to reduce the cost of litigation by encouraging the utilization of less expensive non-lawyer personnel where possible.").

---

(use of contract attorneys); *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 274, 287 (E.D.N.Y. 2008) ("[E]xpenses relating to travel, including transportation and meals, are routinely recoverable."); *id.* at 286–87 ("[E]xpenditures for photocopies, telephone calls, postage, court fees, facsimiles, transcripts, messenger services, process servers and outside vendor services are routinely recoverable"); *Bourgal v. Atlas Transit Mix Corp.*, 1996 WL 75290, at *6 (E.D.N.Y. Feb. 7, 1996) (non-lawyer proofreading, collating, faxing, copying and serving documents recoverable); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) ("[O]nline research may properly be included in a fee award.").  Cost of physical storage of litigation-related documents and media is also "properly reimbursable."  *See Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 51 F. Supp. 2d 302, 308 (S.D.N.Y. 1999) ("the cost of storage of documents"); *Close-Up Int'l, Inc. v. Berov*, 2007 WL 4053682, at *7 (E.D.N.Y. Nov. 13, 2007) (similar).  By analogy, data-hosting expenses are recoverable.

[8] *See also BD v. DeBuono*, 177 F. Supp. 2d 201, 204 (S.D.N.Y. 2001) ("[L]itigation consulting services fall properly under the rubric of attorneys' fees."); *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752, at *16 (S.D.N.Y. Oct. 17, 2008) ("Lawyers often use litigation support specialists and receive reimbursement for such services when awarded attorneys' fees."); *Carco Grp., Inc. v. Maconachy*, 2011 WL 6012426, at *6 (E.D.N.Y. Dec. 1, 2011) (finding consultants to be properly considered "the equivalent of additional litigation support staff"), *rev'd on other grounds*, 718 F.3d 72 (2d Cir. 2013).

### III.   SABRE CANNOT MEET ITS BURDEN TO ESTABLISH A SUBSTANTIAL REDUCTION TO THE LODESTAR AMOUNT

Sabre has advanced two arguments in opposition to this motion that we expect it will renew.  *See* ECF No. 1268, at 18–24.  First, it argues that the lodestar amount should be reduced because of the size of the jury verdict.  This Court has already, correctly, noted "that reasoning holds little weight."  Report at 13.  Second, it argues that the lodestar amount should be reduced because US Airways did not prevail on all of its claims.  But the record evidence refutes the notion that the claims were not intertwined.

#### A.   The Size of the Jury Award does not Permit a Significant Downward Adjustment Under the *Johnson* Factors

Courts in this Circuit review the reasonableness of a fees application by applying the *Johnson* factors.  Report at 12 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).  As this Court has noted, "'many of the [*Johnson*] factors are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'"  Report at 13 (quoting *Miltland*, 840 F. Supp. at 239).  Sabre's argument about the size of the award relates solely to *Johnson* factor eight, just one of the twelve factors.[9]  And it is fundamentally wrong.

*First*, success in an antitrust case is not merely about the recovery of damages because an antitrust case is about harm to the ***market as a whole***.  An antitrust plaintiff is serving as a private attorney general, not just to protect itself, but to protect all consumers from the impact of

---

[9] *See Arbor Hill*, 522 F.3d at 187 n.3 ("The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." (citing *Johnson*, 488 F.2d at 717–19)).

a distorted, inefficient market.[10]  It is thus different from a normal tort claim.  When a

monopolist distorts the proper functioning of the market, all market participants are harmed, as is

society as a whole.  *See Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 826 (2d

Cir. 1968) ("Antitrust violations can affect hundreds of thousands—perhaps millions—of people

and inflict staggering economic damage.").  And all benefit from cessation of the unlawful

conduct.  The mandatory fee provision of Section 15 of the Clayton Act recognizes this fact and

is designed to incentivize private attorneys general to make the substantial investment needed to

rectify market-wide misconduct, as US Airways did here.  *See Home Placement Serv., Inc. v.*

*Providence J. Co.*, 819 F.2d 1199, 1210 (1st Cir. 1987) ("In all successful antitrust cases, the

award of reasonable attorney's fees as part of costs is mandatory in order to encourage private

prosecution of antitrust violations"); *see also* Order at 6 ("Because of the importance of the

policy of encouraging private parties to bring antitrust actions, recovery of their reasonable

attorney's fees must be sustained regardless of the amount of damages awarded." (citing *USFL*,

887 F.2d at 412)).

  ***Second***, US Airways' victory has served a significant public purpose in protecting

market-wide competition by disciplining a monopolist's conduct.  *See United States v. Apple,*

*Inc.*, 791 F.3d 290, 332 (2d Cir. 2015) ("It is axiomatic that the antitrust laws were passed for the

protection of competition, not competitors.").  The size of the damages award bears little on this

market-wide success.  The record of Sabre's exclusionary conduct (detailed in numerous

pleadings, two published summary judgment orders, and a published decision by the Second

---

[10] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 105 S. Ct. 3346, 3358 (1985) ("A claim under the antitrust laws is not merely a private matter.  The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general who protects the public's interest."); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) ("The purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market.  The law directs itself . . . against conduct which unfairly tends to destroy competition itself.  It does not out of solicitude for private concerns but out of concern for the public interest.").

Circuit) leading to the verdict puts similarly situated monopolists—and Sabre itself—on notice of unlawful conduct under *Amex*. *Cf. Mercer v. Duke Univ.*, 401 F.3d 199, 206–09 (4th Cir. 2005) (granting fees despite nominal damages award "[b]ecause [the plaintiff]'s case was the first of its kind, [the appellate decision] and the jury's verdict will serve as guidance to other[s] facing similar issues"). And Sabre's own conduct has changed since US Airways brought this action and since it prevailed. That makes sense. No public company can continue to act the same after having been found to be a monopolist that violated the Sherman Act through its longstanding business practices. Since US Airways' victory, for the first time in nearly two decades Sabre signed a distribution deal with a legacy full-service airline (American Airlines) that does not include the "full content" restrictions that US Airways challenged in court.[11] Furthermore, Sabre has agreed with numerous airlines to distribute tickets using a new distribution technology (referred to as NDC in the industry) that it had previously resisted.[12] And while Sabre had in the past engaged in retaliatory biasing against airlines that imposed fees to recover the cost of bookings through Sabre,[13] since US Airways' victory Sabre has not engaged in that type of retaliatory biasing against Hawaiian Airways' imposition of the same type of fees.[14]

    ***Third***, damages were always a secondary consideration in the prosecution of this case, which is why US Airways offered to forgo them in pursuit of a bench trial in 2015. *See*

---

[11] *A Modern Retailing Experience: American Airlines Signs Agreements with All Three Major Global Distribution Systems*, AMERICAN AIRLINES NEWSROOM, Oct. 24, 2022, https://news.aa.com/news/news-details/2022/A-Modern-Retailing-Experience-American-Airlines-Signs-New-Agreements-With-All-Three-Major-Global-Distribution-Systems-MKG-OTH-10/default.aspx.

[12] *Beyond NDC*, SABRE.COM, https://www.sabre.com/insights/ndc/ (announcing NDC launches with Finnair, American Airlines, United Airlines, Aeromexico, and Air Canada since March 2023) (last accessed June 17, 2023).

[13] *See, e.g.*, ECF No. 1220, 4/26/2022 Trial Tr. 414:19–418:19 (Madeleine Gray, former Sabre technology executive, testifying that, in retaliation for Northwest Airlines implementing a $7.50 GDS surcharge, Sabre applied "penalty points" to artificially push Northwest's flights further down travel agent screens and "zeroed out" inventory on the airline's international flights).

[14] *Sabre Global Technologies Ltd. v. Hawaiian Airlines, Inc.*, 22-cv-07395 (S.D.N.Y.).

Frackman Decl. ¶ 47 n.16.  The parties would have proceeded with a bench trial and injunctive

relief (and thus the issue of the damages award would have been moot), but for the 2012 merger

of US Airways with American Airlines, which this Court held barred any prospective relief.  *See*

ECF No. 350.  So, to maintain a justiciable controversy, US Airways reinstated its damages

claim.  *See* ECF Nos. 350, 378; Frackman Decl. ¶ 47 n.16.

     ***Fourth,*** the most potent and important part of US Airways' claim is the one it prevailed

on—monopolization.  A finding that Sabre possesses monopoly power and abused it over the

course of many years is far more significant for the industry and market as a whole than a mere

finding that the 2011 contract between US Airways and Sabre was anticompetitive.  This is also

why US Airways' success on appeal in getting its Section 2 claim reinstated deserves full credit.

Given that US Airways did not prioritize damages and prevailed on its principal and most

important claim for relief, a substantial fee award is even more reasonable than in *USFL*, where

the court reduced the fee award by 20 percent due to lack of success (following a "voluntary" 20

percent reduction) because the plaintiff "did not succeed on the heart of its case."  704 F. Supp.

at 485.

### B.    <u>Sabre's Attempt to Artificially Compartmentalize the Work Related to</u> <u>Different Claims Lacks Merit and Should be Rejected</u>

     Binding law provides that US Airways is entitled to fees for work done on claims that US

Airways dropped or did not prevail on because the work overlapped with the work supporting its

successful Section 2 claim.  The Court of Appeals has repeatedly held that "[a]ttorney's fees may

be awarded for unsuccessful claims as well as successful ones . . . where they are inextricably

intertwined and involve a common core of facts or are based on related legal theories."

*Quaratino*, 166 F.3d at 425; *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (per

curiam) (forgoing a reduction so long as the unsuccessful claims were not "wholly unrelated to

the plaintiff's successful claims" (quotations omitted)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("[T]he fee award should not be reduced simply because the plaintiff failed on every contention raised in the lawsuit . . . The result is what matters."). Relying on these precedents, courts in this District have rejected an "issue-by-issue analysis . . . in favor of a more straightforward 'bottom line' approach" in various types of cases, including antitrust. *Litton Sys. Inc. v. American Tel. & Tel. Co.*, 613 F. Supp. 824, 830 (S.D.N.Y. 1985). When claims are not "severable," courts need not engage in any "hair-splitting" to allocate time spent in connection with successful and unsuccessful claims. *Quaratino*, 166 F.3d at 426 n.8. And a prevailing plaintiff like US Airways need not "identify which hours were spent on issues it clearly won and which hours were spent on issues it did not clearly win." *Litton*, 613 F. Supp. at 830.

Here, this Court having heard the evidence on all of the claims during two lengthy trials knows that the claims were inextricably intertwined, and the same common core of facts and legal theories supported both the Section 1 and Section 2 claims. While Sabre bears the burden of justifying a reduction in fees based on an argument that US Airways' claims are not intertwined, *USFL*, 887 F.2d at 413–414, in the interest of expediting resolution of this motion, we address the issue here, at least at a high level. We are prepared to address any specific arguments that Sabre may try to advance to show that the work was not intertwined.

1.  **All US Airways' Claims are Based on a Common Core of Facts and Legal Theories**

All four of US Airways' claims—(1) monopolization, (2) conspiracy to monopolize, (3) vertical restraints, and (4) horizontal conspiracy, *see* Frackman Decl. ¶ 31—were based on a common core of facts and legal theories. Although these claims have slightly different legal elements, they all center on the same facts, summarized in the table below, including Sabre's power to compel US Airways and other airlines to agree to its terms; the presence (or lack

thereof) of alternatives to Sabre; and how Sabre's anticompetitive conduct stifled innovation and prevented airlines and travel agents from pursuing other, better distribution methods.

| Issue | Monopolization, § 2 | Conspiracy to Monopolize, § 2 | Vertical Restraints, § 1 | Horizontal Conspiracy, § 1 |
|---|---|---|---|---|
| **"Full content" contracts** | Component of Sabre's suite of exclusionary conduct | Conspiracy forced US Airways to sign anticompetitive deal with Sabre | Core challenged conduct | Global Distribution Systems ("GDS") sought same scope of "full content" from legacy airlines |
| **Contracts with travel agents** | Component of Sabre's suite of exclusionary conduct | Core challenged conduct | Core challenged conduct | GDSs had virtually identical provisions in contracts with travel agents |
| **Retaliation against airlines** | Component of Sabre's suite of exclusionary conduct | Probative of monopoly power | Probative of market power | Engaged in joint retaliation against airlines |
| **Lack of alternative channels** | Probative of monopoly power / anticompetitive effects | Probative of monopoly power | Probative of market power | Probative of GDSs' market power and anticompetitive effects |
| **Travel Agent Lock-in** | Probative of monopoly power / anticompetitive effects | Probative of monopoly power / anticompetitive effects | Probative of monopoly power / anticompetitive effects | Probative of GDSs' monopoly power and anticompetitive effects |
| **Excessive prices and profits** | Probative of monopoly power / anticompetitive effects | Probative of monopoly power / anticompetitive effects | Probative of monopoly power / anticompetitive effects | Probative of lack of competition between GDSs |
| **Sabre's antiquated technology** | Probative of monopoly power / anticompetitive effects | Probative of monopoly power / anticompetitive effects | Probative of monopoly power / anticompetitive effects | Probative of lack of competition between GDSs |

Sabre's contention that the case proceeded in "distinct phases," permitting disaggregation

16

of work (ECF No. 1268 at 21–22), is wrong.  There were no "distinct phases" to this case.  Sabre relies on *Automotive Products, plc v. Tilton Engineering, Inc.*, 1993 WL 660164 (C.D. Cal. Sept. 16, 1993).  But in that case, the court segregated fees for "the first phase of the trial which was purely directed towards . . . patent issues . . . separate from and independent from [the] antitrust claims."  *Id.* at 6.  Here, **all** of US Airways' claims sound in antitrust law and share common issues, so no such distinction exists.

Even if the case had proceeded in "distinct phases," work done in connection with different phases—or even different proceedings—is "properly . . . included in the calculation of a reasonable attorney's fee" where "the work was useful and of a type ordinarily necessary to secure the final result obtained from the litigation."  *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993) (awarding fees for work incurred in separate proceeding since otherwise a party "would have had to duplicate at least some of th[e] work").  For instance, the Second Circuit held in *Gierlinger v. Gleason* that it was appropriate to award fees in connection with **three** separate trials where the first trial verdict was reversed and remanded, the second trial ended in a mistrial, and the plaintiff ultimately prevailed in the third trial because the "time spent . . . in pretrial discovery and preparation" was "reasonable and necessary" to the ultimate victory.  160 F.3d 858, 877–81 (2d Cir. 1998).  As explained below, the same is true for the work developing US Airways' secondary claims.  In each instance, US Airways' successful primary monopolization claim encompassed and incorporated the more discrete issues underlying the secondary claims.  US Airways is entitled to fees related to the development of its secondary claims because they are based on the same factual record—and work by outside counsel developing that record—as its primary, successful monopolization claim.  *See Abshire v. Walls*, 830 F.2d 1277, 1282–83 (4th Cir. 1987) (holding that claims based

on different legal theories were, nonetheless, based on a "common core of facts" since the successful claims required "developing and presenting the facts surrounding the entire sequence of events").

### 2. US Airways' Vertical Restraints Section 1 Claim is Subsumed Within its Winning Monopolization Claim

As this Court already stated back in 2022, US Airways' successful monopolization claim is broader than, and subsumes, US Airways' Section 1 vertical restraints claim. ECF No. 1171 ("US Airways' § 1 claim arises out of the two contracts, and its § 2 claim is based *on the contracts and other alleged anticompetitive behavior by Sabre*.") (emphasis added).

Sabre itself has acknowledged (well before this fee dispute) that the Section 1 claims presented in 2016 and Section 2 claim presented in 2022 are based on the same evidentiary support. In 2019, when Sabre opposed additional discovery on the reinstated Section 2 claims, it argued to this Court that US Airways "took discovery on a Section 2 case" and "tried a Section 2 case" in 2016, including with testimony from US Airways' economic expert (who also testified in the second trial) that "Sabre is a monopolist, has monopoly power, is guilty of monopolization, has taken monopoly activities, monopoly rents." ECF No. 945, 11/20/2019 Conf. Tr., at 25. The reason no additional fact discovery was needed in advance of the 2022 trial for the reinstated Section 2 claim was that that discovery had already been conducted as part of the work preceding the 2016 trial on the Section 1 claims. *See* Frackman Decl. ¶ 64.[15] The principal additional work for the monopolization claim was the portion of the economic experts' work to prove that Sabre possessed "monopoly" power, in addition to "market power" needed for the Section 1 claim, and that the "net" Sabre booking fee was anticompetitive, as required by

---

[15] The only fact witness deposed after the 2016 trial was an Air Canada executive who replaced another Air Canada witness deposed previously. Frackman Decl. ¶ 64.

the Supreme Court in *Amex*.  Frackman Decl. ¶¶ 60–61.  US Airways also had to replace its

technology expert, but the parties agreed that the scope of the opinions would be no different

from those offered by the technology expert at the 2016 trial, *see* Frackman Decl. ¶ 63, further

confirming the overlap and intertwined nature of the Section 1 and Section 2 claims.

The record confirms that there was substantial overlap in the evidence presented in

support of both the Section 1 and Section 2 claims.  For example:

- The vast majority of evidence proffered in support of US Airways' 2022 victory was also proffered at the first trial: 31 of the 44 witnesses who testified in 2016 testified again in 2022, and 72 percent of the exhibits admitted in 2022 were admitted in 2016.  Frackman Decl. ¶ 68.

- Both of US Airways' witnesses who testified in 2016 and 2022 about US Airways' agreements with Sabre—John Gustafson, one of the lead negotiators of the 2011 agreement, and Scott Kirby, former President of US Airways and one of the lead negotiators of the 2006 agreement—testified to a variety of issues relevant to both the Section 1 and Section 2 claims, including: (1) the nature of the restraints in the distribution agreements and Sabre's insistence on them; (2) US Airways' reliance upon the corporate travel agent business coming through Sabre, giving Sabre leverage over US Airways; and (3) benefits to US Airways and consumers of removing full content contract provisions.  Frackman Decl. ¶ 68, n.18–20.

- In both 2016 and 2022, US Airways marshalled testimony from executives from other airlines regarding Sabre's retaliation against those airlines and the necessity of doing business with Sabre regardless of how odious the offered terms were. Frackman Decl. ¶ 68, n.21.  This testimony established Sabre's market power over the airlines and the economic harm that would come to US Airways from failure to reach a deal with Sabre, critical elements of both the Section 1 and Section 2 claims, and evidence of exclusionary conduct Sabre engaged in to preserve its monopoly power, a critical element of a Section 2 claim.

Since the claims are intertwined, any attempt to isolate the work done in support of the Section 1

claim from that supporting the Section 2 claim would be artificial; the work cannot be separated.

The Court of Appeals' opinion in *USFL* is instructive on this point.  In *USFL*, the NFL

claimed the USFL was not entitled to fees, because the only evidence of harm the USFL had

presented was related to its unsuccessful "television-related Section 1 claims," rather than its

19

winning Section 2 claim.  887 F.2d at 412–413.  But "the jury's rejection of plaintiffs' television-related Section 1 claims d[id] not mean that the jury could not have properly considered some of the NFL's television-related conduct to have been anticompetitive."  *Id.*  Fees related to the television-related evidence were warranted because it could not "be said that the television evidence was completely distinct, either factually or legally, from the broad monopolization claim that plaintiff prevailed upon."  *Id.*  The same is true here.  Sabre would have to demonstrate that the evidence related to US Airways' contracts with Sabre was "completely distinct, either factually or legally," from the broad monopolization claim US Airways prevailed upon.  *See id.*  But Sabre cannot do that, because the evidence of Sabre's imposition of the contractual restraints on numerous airlines, including US Airways in 2011, was evidence of Sabre's exclusionary conduct relevant to the Section 2 claim.  Because the Section 1 and Section 2 claims are not "severable," this Court need not—and in many instances, cannot—engage in "hair-splitting" to allocate time spent in connection with one or the other.  *See Quaratino*, 166 F.3d at 426 n.8.

### 3.    Voluntary Dismissal of US Airways' Conspiracy to Monopolize Claim had no Bearing on the Scope of Work

Sabre's suggestion that US Airways' award should be reduced because it dropped its conspiracy to monopolize claim can be easily rejected.  There was no work performed to support that claim that was not equally relevant to US Airways' successful monopolization claim.

US Airways alleged that Sabre conspired to preserve Sabre's monopoly power by entering into agreements that "lock[ed] travel agents into Sabre and disincentiviz[ed] their use of other distribution channels."  ECF No. 1, ¶ 167.[16]  Although US Airways ultimately agreed to

---

[16] After US Airways' conspiracy to monopolize claim was reinstated by the Second Circuit, US Airways added new allegations to its Fourth Amended Complaint that "Sabre and the travel agents have entered into oral agreements to discourage airlines' challenges to Sabre's market dominance."  ECF No. 952, at ¶ 69.  But no additional discovery

dismiss its "conspiracy to monopolize" theory before the 2022 trial, Sabre's relationships and

agreements with travel agents remained one of the core categories of exclusionary conduct US

Airways challenged in the 2022 trial.[17]  As with the contractual restraints claim, because the

factual and legal bases of the monopolization and conspiracy to monopolize claims were the

same, the claims are not "severable" and this Court need not engage in any "hair-splitting" to

allocate time spent in connection with one or the other.  *See Quaratino*, 166 F.3d at 426 n.8.

> ### 4.   The Facts Underlying the Horizontal Conspiracy Claim Overlapped with Facts Underlying US Airways' Monopolization Claim

US Airways presented evidence of Sabre's agreements with competing GDSs in support

of its successful monopolization claim in the 2022 trial.  Accordingly, Sabre's argument that the

fees associated with that factual work should not be awarded lacks any basis.

US Airways alleged that Sabre entered into a conspiracy with its GDS rivals to "entrench

the dominance of each GDS and to impede competition on the merits."  ECF No. 1, ¶ 170.  The

2016 jury rejected that claim, and US Airways did not pursue it thereafter.  But the relevant

underlying evidence was admitted and played an important role in the 2022 trial.  In both trials,

US Airways introduced evidence concerning Project Cervantes—a content-sharing agreement

between Sabre and Amadeus, another GDS.  Although Sabre objected to the introduction of this

evidence in the 2022 trial on the grounds that "the GDS conspiracy claim . . . is no longer in US

Air's complaint in this case," the Court overrode that objection in light of US Airways'

explanation that the content-sharing agreement showed that Sabre did not need to reach an

agreement with airlines in order to maintain access their content.  *See* ECF No. 1220, 4/26/2022

---

was taken related to the new allegations and, as noted above, US Airways subsequently agreed to dismiss the conspiracy to monopolize claim.

[17] *See, e.g.*, ECF No. 1226, 5/2/2022 Trial Tr. 987:3–11, 988:6–997:3 (Professor Stiglitz' testimony about exclusionary travel agent contracts).

Trial Tr. 338:9–340:11.  In 2022, US Airways' witnesses testified that the content-sharing

agreement eliminated the risk to Sabre of not reaching an agreement with US Airways and other

airlines, thereby reinforcing its monopoly and negotiating power, because even if Sabre failed to

come to terms with a given airline, Sabre's travel agents could still access the airlines'

information by way of the content sharing agreement and had no reason to switch to using

another GDS or use multiple GDSs.[18]  Like the evidence of Sabre's "full content" agreements

and agreements with travel agents, this was part of the overall presentation of Sabre's monopoly

power and exclusionary conduct that led the jury to find that Sabre violated Section 2, and thus is

recoverable.  *See USFL*, 887 F.2d at 412–413.

> 5.    **US Airways is Entitled to Recover Fees Related to the Appeal of the 2016 Verdict**

Any attempt by Sabre to deprive US Airways of its fees on appeal should also be rejected

since US Airways won on the biggest issue—the reversal of the dismissal of its Section 2 claim,

which was the basis for its ultimate victory.  *US Airways v. Sabre Holdings Corp.*, 938 F.3d 43,

61 (2d Cir. 2019).  Moreover, while Sabre got the reversal, in light of *Amex*, of the Section 1

judgment, it lost its gambit for entry of judgment, and the Court of Appeals remanded for retrial.

*Id.* ¶ 59.  This mixed outcome cannot justify deprivation of US Airways' fees on appeal because

it was a successful party in that appeal and in this case.  *See Perkins v. Standard Oil Co. of Cal.*,

399 U.S. 222, 223 (1970) ("Both the language and purpose" of Section 4 of the Clayton Act

"authorize the award of counsel fees for legal services performed at the appellate stages of a

successfully prosecuted antitrust action.").  And for all the reasons discussed above, the

---

[18] *See, e.g.*, ECF No. 1220, 4/26/2022 Trial Tr. 435:9–23 (Madeleine Gray, a former Sabre executive, testifying that the content sharing agreement "meant that . . . if Sabre didn't have a participating contract, a contract with that airline to participate in the Sabre system, well, there was not going to be any leverage there."); ECF No. 1224, 4/28/2022 Trial Tr. 799:12–800:10 (Gustafson testifying that the content sharing agreement between Amadeus and Sabre "meant that there was very little risk in Sabre's not having an agreement with a particular airline because they could go get the content from Amadeus . . . So it was very low risk for Sabre, but it was very high risk for the airlines.").

intertwined issues and common legal theories between US Airways' Section 1 and 2 claims also entitles US Airways to recover for its appellate work. *See Litton Sys.*, 613 F. Supp. at 830 ("[S]ince the arguments presented [on appeal] were so interrelated, . . . the fact that [plaintiff] prevailed on one of them justifies an award of the reasonable costs and attorney's fees incurred in litigating both of them.").

     **C.**    **Any Downward Adjustment Should Be Minimal**

As noted above, US Airways has already excluded $4.5 million of charges of legal and consulting timekeepers, eliminating fees of timekeepers who billed less than 100 hours, fees for work by Cadwalader before March 2011 and after April 2012, and other work billed and paid but not directly related to the core set of issues on which US Airways prevailed. Frackman Decl. ¶ 9. In light of the considerations above—including that US Airways actually paid all of the fees sought, that there is no basis to dispute outside counsel's rates, that US Airways did not prioritize damages, that the verdict already has had a positive impact on the industry, and the substantial overlap between US Airways' claims—US Airways believes these discounts are sufficient and its fee request is reasonable. Nonetheless, in light of the Court's observations (Report at 15), US Airways has reduced its attorney's and expert consultants' fees by an additional 15 percent.

This 15 percent reduction mirrors the 15 percent reduction imposed in *Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995), a case this Court has already found "particularly instructive." Report at 14. A 15 percent reduction, when combined with the cuts already made by US Airways, would amount to approximately $24.5 million in reductions to the fees and expenses actually paid by US Airways in litigating this lawsuit. In *Bingham*, the plaintiff won "only a small part of the damages sought," "did not prevail on all of its claims," and "prevailed against only three of eight defendants." 66 F.3d at 565. Nonetheless, the Court of Appeals rejected the defendant's argument that the reduction should have been greater because "the plaintiff obtained a jury

verdict and a judgment against defendants. It won the case." *Id.* at 566. "Th[at] result is what

matters." *Id.* at 565.

So too here.  US Airways spent significant resources and shouldered considerable risk to

hold Sabre to account.  And it prevailed—to the benefit of the entire market.  US Airways

obtained the result it sought from the beginning: "a jury verdict and a judgment against

defendants.  It won the case." *See Bingham*, 66 F.3d at 566.

## IV.   US AIRWAYS IS ENTITLED TO STATUTORY COSTS

US Airways is also entitled to recover those costs that "fall within an allowable category

of taxable costs." *See Natural Organics, Inc. v. Nutraceutical Corp.*, 2009 WL 2424188, at *2

(S.D.N.Y. Aug. 6, 2009); *see also Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163 (2d Cir.

2014).  Recoverable costs are set forth in 28 U.S.C. § 1920, *see also Crawford Fitting Co. v. J.T.

Gibbons, Inc.*, 482 U.S. 437, 441 (1987), and are described with greater specificity in Local Civil

Rule 54.1(c).  Covered costs include fees paid to the court clerk and marshal;[19] photocopying,

printing and scanning;[20] depositions and transcripts;[21] docket fees;[22] and witness fees.[23]  Here,

---

[19] *See* 28 U.S.C. § 1920(1); *TigerCandy Arts, Inc. v. Blairson Corp.*, 2012 WL 760168, at *11 (S.D.N.Y. Feb. 23, 2012); *see also* Local Civ. R. 54.1(c)(10) (reimbursing "the reasonable and actual fees of the Clerk" and permitting recovery for process servers); *United States v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 172 (2d Cir. 1996) (includes reimbursement of service of process fees up to the amount charged by the Marshals Service).

[20] *See* 28 U.S.C. §§ 1920(3)–1920(4); *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1380 (Fed. Cir. 2006) ("section 1920(4) does not demand page-by-page precision;" only an amount "reasonably accurate under the circumstances."); *PPC Broadband, Inc. v. Corning Optical Commc'ns RF*, 2017 WL 473910, at *4 (N.D.N.Y. Feb. 3, 2017) (party cannot be expected to track each page when 100,000 copies were required in complex case).

[21] *See* 28 U.S.C. § 1920(2); 7 Moore et al., *Moore's Federal Practice* § 54.103(3)(c)(i) (3d ed. 2011) ("[Section] 1920 . . . permit[s] the awarding of the routine expenses incurred in taking depositions."); Local Civ. R. 54.1(c)(2) (cost of a deposition plus one copy is recoverable if the deposition was used at trial."); *Anderson v. City of N.Y.*, 132 F. Supp. 2d 239, 246 (S.D.N.Y. 2001) (allowing deposition transcripts to be taxed as costs under § 1920); *Cohen v. Bank of N.Y. Mellon Corp.*, 2014 WL 1652229, at *2 (S.D.N.Y. Apr. 24, 2014) (awarding costs for daily trial transcripts when the trial lasted 8 days); *Jarvis v. Ford Motor Co.*, 2003 WL 1484370, at *1 (S.D.N.Y. Mar. 21, 2003) (pretrial transcripts recoverable if obtained for use in case).

[22] *See* 28 U.S.C. § 1920(5); *Reith v. Allied Interstate, Inc.*, 2012 WL 5458007, at *3 (S.D.N.Y. Nov. 8, 2012) (finding costs, which included fees for admission pro hac vice, to be reasonable); *Brown v. Green 317 Madison*, LLC, 2014 WL 1237448, at *14 (E.D.N.Y. Feb. 4, 2014) (finding "pro hac vice fees to be reasonable").

[23] *See* 28 U.S.C. § 1920(3); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 292 (2006) (28 U.S.C. § 1821 details the allowable per diem, mileage, and subsistence costs for witnesses).

US Airways is entitled to recover $1,076,500.61 in statutory costs.  *See* Frackman Decl. ¶ 3, Exs. L–M.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant US Airways' motion and award it $139,183,723.42.

Dated:  June 23, 2023
       New York, New York

By:   */s/ Andrew J. Frackman*

Andrew J. Frackman
afrackman@omm.com
Anton Metlitsky
ametlitsky@omm.com
Mia N. Gonzalez
mgonzalez@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

Ian Simmons (admitted *pro hac vice*)
isimmons@omm.com
Patrick Jones (admitted *pro hac vice*)
pjones@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

Madhu Pocha (admitted *pro hac vice*)
mpocha@omm.com
1999 Avenue of the Stars
O'MELVENY & MYERS LLP
Los Angeles, CA  90067
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

R. Paul Yetter (admitted *pro hac vice*)
pyetter@yettercoleman.com
Bryce L. Callahan (admitted *pro hac vice*)
bcallahan@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, TX  77002
Phone:  (713) 632-8000
Facsimile:  (713) 632-8002

*Attorneys for Plaintiff US Airways, Inc., for*
*American Airlines, Inc., as Successor and*
*Real Party in Interest*

26